## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FOUNTAIN POINTE CONDOMINIUM
ASSOCIATION,

                Plaintiff,

v.

MARVIN MARKS, MARVIN L. MARKS
and MARLENE MARKS LIVING
TRUST, and AMERICAN REVERSE
MORTGAGE,

                Defendants.

Civil Action No. 26-1572

### NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1441, 1442(a)(2), and 1444 the United States of America, on behalf of intervenor defendant, the United States Department of Housing and Urban Development, removes this action to the United States District Court for the Eastern District of Pennsylvania and states the following in support of removal.

The United States Department of Housing and Urban Development is an agency of the United States that has a mortgage interest in the property at issue in a state court proceeding now pending in the Court of Common Pleas of Philadelphia County, captioned *Fountain Pointe Condominium Association v. Marvin Marks, Marvin L. Marks and Marlene Marks Living Trust, et al.*, Case ID No. 251202237.

1. The above-referenced action was filed in the Philadelphia Court of Common Pleas on December 16, 2025, by Plaintiff Fountain Pointe Condominium Association ("the Condo Association"). The suit seeks to reduce to judgment unpaid condo association fees that the Condo Association asserts accrued between January 2022

and November 2025 on a condo located at 148 Benjamin Court in Philadelphia ("the Property") that is owned by Marvin and Marlene Marks.

2. The Condo Association named as defendants Marvin Marks, The Marvin L. Marks and Marlene Marks Living Trust, and American Reverse Mortgage. The Condo Association asserted American Reverse Mortgage holds a reverse mortgage in the amount of $327,000 secured by the Property.

3. The Condo Association's Complaint also seeks a determination regarding the priority of the condo association debt vis-à-vis other liens on the Property, including the reverse mortgage. However, the Condo Association incorrectly identified the reverse mortgage as being held by American Reverse Mortgage, when it is held by HUD.

4. While American Reverse Mortgage was the original holder of the reverse mortgage in 2006, it assigned the reverse mortgage to Seattle Mortgage Company in 2006.

5. The reverse mortgage was subsequently assigned a number of times—with all assignments recorded with the Philadelphia Commissioner of Records and available through a title search. The last assignment of the reverse mortgage was to HUD in 2019.

6. HUD has interests related to the subject of this action, insofar as it holds a mortgage on the real property that is the subject of the action, disposition of this case will impair HUD's legal enforceable interest, and HUD's interests are not being adequately represented by existing parties.

7. The Condo Association did not name HUD as a defendant to this action and HUD was not served with process.

8. On February 3, 2026, the state court granted a motion for default judgment in favor of the Condo Association and against Marvin Marks, Marlene Marks, and the Marks Living Trust.

9. On February 20, 2026, the Condo Association filed a Motion to Execute its Judgment on the property free and clear of mortgages.

10. In its motion, the Condo Association asserts that "[t]here are mortgages against [the Property] that were never approved or allowed" by it. Mot. at ¶ 3. It further asserts that the incorrectly named mortgage holder, American Reverse Mortgage, "could not be served as the Corporation is dissolved." Mot. at ¶ 5.

11. The Condo Association further alleges, though it never named HUD or served it with process, that "Asset Management Corporation servicer of U.S. Department of Housing and Urban Development has no interest in [the Property]." Mem. of Law at 1. This is not the case.

12. The Condo Association did not name HUD as a defendant to this action, even though HUD holds a lien on the property by virtue of its reverse mortgage, and even though the Condo Association now seeks to sell the Property free and clear of the reverse mortgage.

13. Thus, although HUD was not named as a defendant in the state court suit, HUD's *reverse mortgage* was named as a lien upon the property, with the

original lienholder—which assigned its interest in 2006—named rather than HUD as the current lienholder.

14. Accordingly, this state court action is *in the nature* of an action under 28 U.S.C. § 2410 insofar as it is an action to foreclose a mortgage or other lien upon real property on which the United States has or claims a mortgage or other lien.

15. Upon approval of its petition to intervene, HUD will also be named as a defendant in this action. And, HUD has a colorable federal defense to such an action—namely, that its reverse mortgage is entitled to lien priority and the Property should not be sold free and clear of HUD's reverse mortgage.

16. After learning of the pendency of this lawsuit, HUD filed a motion to intervene with the Philadelphia Court of Common Pleas.

17. Upon the granting of HUD's motion to intervene, HUD will file this Notice of Removal.

18. A copy of the Complaint and other exhibits filed in the state court action are attached collectively as Exhibit A to this Notice of Removal, as required by 28 U.S.C. § 1446(a). This Notice of Removal is filed, in the alternative, pursuant to Title 28, United States Code, Sections 1441, 1442(a)(1) and 1444.

WHEREFORE, notice is given that the above-referenced action, Case ID No. 251202237, currently pending in the Court of Common Pleas for Philadelphia County, Civil Division, is removed from the Court of Common Pleas for Philadelphia County into this Court for trial or such other determination as this Court may make

regarding the action in accordance with its jurisdictional limits under 28 U.S.C.

§§ 1441, 1442(a)(2) and 1444.

Dated: March 11, 2026                     Respectfully submitted,

                                          DAVID METCALF
                                          United States Attorney

                                          /s/*Gregory B. David / srb*
                                          GREGORY B. DAVID
                                          Assistant United States Attorney
                                          Chief, Civil Division

                                          /s/ *Erin E. Lindgren*
                                          ERIN E. LINDGREN
                                          Assistant United States Attorney
                                          United States Attorney's Office
                                          Eastern District of Pennsylvania
                                          615 Chestnut Street, Suite 1250
                                          Philadelphia, PA 19106
                                          Tel: (215) 861-8564
                                          Fax: (215) 861-8618
                                          Email: Erin.Lindgren@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on this date I caused a copy of the United States' Notice of Removal and the exhibits attached thereto to be filed with the Clerk of Court, and I caused a copy of the foregoing documents to be sent by first-class, U.S. mail, postage paid to:

Ronald Harper Sr.
Andrea Harper
140 Maplewood Avenue
Philadelphia, PA 19144-3307
Harper140@aol.com
Lawabp@aol.com
Counsel for Plaintiff Fountain Pointe Condominium Association

Marvin Marks
148 Benjamin Court
Philadelphia, PA 19144

Marvin Marks & Marlene Marks Living Trust
148 Benjamin Court
Philadelphia, PA 19144

Marvin Marks & Marlene Marks Living Trust
9200 Blue Grass Road
Philadelphia, PA 19144

American Reverse Mortgage
605 SW First Avenue
Ocala, FL 34471

Dated: March 11, 2026

*/s/ Erin E. Lindgren*
ERIN E. LINDGREN
Assistant United States Attorney

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Fountain Pointe Condominium Association | Secretary of Housing & Urban Development |

| (b) County of Residence of First Listed Plaintiff Philadelphia | County of Residence of First Listed Defendant Philadelphia |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Ronald J. Harper, Esq., Id No. 10345, 140 West Maplewood Ave., Phila. Pa. 19144/(215) 844-4848 | Erin E. Lindgren, AUSA, USAO (EDPA) 615 Chestnut St., Suite 1250, Phila, PA 19106/(215) 861-8564 |

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*　　　Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☒ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. §§ 1441, 1442(a)

Brief description of cause:
Other real property action

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY**　*(See instructions):*　JUDGE _____ DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| Mar 11, 2026 | /s/ Erin E. Lindgren, AUSA |

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.** **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction:   Philadelphia, PA

---

***RELATED CASE IF ANY:***  Case Number:_____  Judge:_____

1. Does this case involve property included in an earlier numbered suit?  Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?  Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?  Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?  Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.  Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

*A.*  *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☐ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief  **\*see certification below\***
☒ 16. All Other Federal Question Cases. *(Please specify):*___Federal property interest_____

*B.*  *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):*_____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases:  *(Please specify)*_____
  _____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☑   Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐   None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

# Exhibit A

# State Court Docket

 **The Philadelphia Courts**
**Civil Docket Access**

 No Items in Cart   **LOGIN**

Civil Docket Report

A $5 Convenience fee will be added to the transaction at checkout.

## Case Description

| | |
|---|---|
| **Case ID:** | 251202237 |
| **Case Caption:** | FOUNTAIN POINTE CONDOMINIUM ASSOCIATION VS MARKS E |
| **Filing Date:** | Tuesday , December 16th, 2025 |
| **Court:** | MAJOR NON JURY EXPEDITED |
| **Location:** | CITY HALL |
| **Jury:** | NON JURY |
| **Case Type:** | CONTRACTS OTHER |
| **Status:** | LISTED FOR CASE MGMT CONF |

## Related Cases

*No related cases were found.*

## Case Event Schedule

| Event | Date/Time | Room | Location | Judge |
|---|---|---|---|---|
| CASE MANAGEMENT CONFERENCE | 20-MAR-2026 02:00 PM | VIA ADVANCED COMMUN. TECH. | REMOTE HEARING | *unassigned* |

## Case motions

| Motion | Assign/Date | Control No | Date/Received | Judge |
|---|---|---|---|---|
| MISCELLANEOUS MOTION/PETITION | *pending* | 26025048 | 20-FEB-2026 | HALL, CHRISTOPHER |

## Case Parties

| Seq # | Assoc | Expn Date | Type | Name |
|---|---|---|---|---|
| 1 | | | ATTORNEY FOR PLAINTIFF | HARPER SR, RONALD J |
| **Address:** | 140 W MAPLEWOOD AVENUE PHILADELPHIA PA 19144-3307 (215)844-4848 Harper140@aol.com | **Aliases:** | *none* | |

| 2 | | | PLAINTIFF | FOUNTAIN POINTE CONDOMINIUM ASSOCIATION |
|---|---|---|---|---|
| **Address:** | 9200 BLUE GRASS ROAD PHILADELPHIA PA 19114 | **Aliases:** | *none* | |

| 3 | | | DEFENDANT | MARKS, MARVIN |
|---|---|---|---|---|
| **Address:** | 148 BENJAMIN COURT PHILADELPHIA PA 19114 | **Aliases:** | *none* | |

| 4 | | | DEFENDANT | MARVIN L MARKS & MARLENE MARKS LIVING TRUST AKA MARKS LIVING |
|---|---|---|---|---|
| **Address:** | 148 BENJAMIN COURT 9200 BLUE GRASS ROAD PHILADELPHIA PA 19114 | **Aliases:** | *none* | |

| 5 | | | DEFENDANT | AMERICAN REVERSE MORTGAGE |
|---|---|---|---|---|
| **Address:** | 605 SW FIRST AVENUE OCALA FL 34471 | **Aliases:** | *none* | |

| 6 | | 05-JAN-2026 | MOTION ASSIGMENT JUDGE | TURNER, CAROLINE |
|---|---|---|---|---|
| **Address:** | ROOM 692, CITY HALL BROAD AND MARKET STS. PHILADELPHIA PA 19107 | **Aliases:** | *none* | |

| 7 | | | JUDGE | HALL, CHRISTOPHER |
|---|---|---|---|---|
| **Address:** | STOUT CENTER PHILADELPHIA PA 19107 | **Aliases:** | *none* | |

| 8 | | | TEAM LEADER | ROBERTS, JOSHUA |
|---|---|---|---|---|
| **Address:** | 538 CITY HALL PHILADELPHIA PA 19107 | **Aliases:** | *none* | |

| 9 | | | MOTION ASSIGMENT JUDGE | KISIELEWSKI, BRIAN |
|---|---|---|---|---|
| **Address:** | RM. 692 CITY HALL BROAD AND MARKET STS. PHILADELPHIA PA 19107 | **Aliases:** | *none* | |

| 10 | 1 | | ATTORNEY FOR PLAINTIFF | PAUL, ANDREA B |
|---|---|---|---|---|
| **Address:** | 140 W. MAPLEWOOD AVENUE PHILADELPHIA PA 19144 (215)844-4848 lawabp@aol.com | **Aliases:** | *none* | |

| 11 | | | ATTORNEY FOR PETITIONER | HUGHES, BRYAN C |
|---|---|---|---|---|
| **Address:** | US ATTORNEYS OFFICE EASTERN DISTRICT OF PA 615 CHESTNUT ST SUITE 1250 PHILADELPHIA PA 19106 (215)861-8433 bryan.hughes@usdoj.gov | **Aliases:** | *none* | |

| 12 | 11 | | INTERVENOR | US DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT |
|---|---|---|---|---|
| **Address:** | NA NA PA NA | **Aliases:** | *none* | |

## Docket Entries

| Filing Date/Time | Docket Type | Filing Party | Disposition Amount |
|---|---|---|---|
| 16-DEC-2025 01:22 PM | ACTIVE CASE | | |
| **Docket Entry:** | E-Filing Number: 2512038903 | | |

| 16-DEC-2025 01:22 PM | COMMENCEMENT OF CIVIL ACTION | HARPER SR, RONALD J | |
| --- | --- | --- | --- |
| **Documents:** | ⚐ Click link(s) to preview/purchase the documents<br>Final Cover | 🛒 **Click HERE to purchase all documents related to this one docket entry** | |
| **Docket Entry:** | *none.* | | |

| | | | |
| --- | --- | --- | --- |
| 16-DEC-2025 01:22 PM | COMPLAINT FILED NOTICE GIVEN | HARPER SR, RONALD J | |
| **Documents:** | ⚐ Click link(s) to preview/purchase the documents<br>DOC121625FP CIVIL ACTION.pdf | 🛒 **Click HERE to purchase all documents related to this one docket entry** | |
| **Docket Entry:** | COMPLAINT WITH NOTICE TO DEFEND WITHIN TWENTY (20) DAYS AFTER SERVICE IN ACCORDANCE WITH RULE 1018.1 FILED. | | |

| | | | |
| --- | --- | --- | --- |
| 16-DEC-2025 01:22 PM | WAITING TO LIST CASE MGMT CONF | HARPER SR, RONALD J | |
| **Docket Entry:** | *none.* | | |

| | | | |
| --- | --- | --- | --- |
| 19-DEC-2025 06:56 AM | ATTEMPTED SERVICE - NOT FOUND | | |
| **Documents:** | ⚐ Click link(s) to preview/purchase the documents<br>Affidavit of Service | 🛒 **Click HERE to purchase all documents related to this one docket entry** | |
| **Docket Entry:** | MARVIN L MARKS & MARLENE MARKS LIVING TRUST AKA MARKS LIVING AND MARVIN MARKS NOT FOUND ON 12/18/2025. | | |

| | | | |
| --- | --- | --- | --- |
| 19-DEC-2025 03:02 PM | MOTION FOR ALTERNATIVE SERVICE | HARPER SR, RONALD J | |
| **Documents:** | ⚐ Click link(s) to preview/purchase the documents<br>DOC121925FP MOTION ALTERNATE SERVICE.pdf<br>DOC121925EXH A2.pdf<br>DOC121925EXH B.pdf<br>DOC121925EXH C.pdf<br>DOC121925EXH D.pdf<br>DOC121925EXH E.pdf<br>Motion CoverSheet Form | 🛒 **Click HERE to purchase all documents related to this one docket entry** | |
| **Docket Entry:** | 14-25124614 MOTION FOR ALTERNATIVE SERVICE (FILED ON BEHALF OF FOUNTAIN POINTE CONDOMINIUM ASSOCIATION) | | |

| 19-DEC-2025 03:32 PM | MOTION ASSIGNED | | |
|---|---|---|---|
| **Docket Entry:** | 14-25124614 MOTION FOR ALTERNATIVE SERVICE ASSIGNED TO JUDGE: HALL, CHRISTOPHER . ON DATE: DECEMBER 19, 2025 | | |
| | | | |
| 29-DEC-2025 01:07 PM | ORDER ENTERED/236 NOTICE GIVEN | HALL, CHRISTOPHER | |
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents<br>ORDER_8.pdf | 🛒 **Click HERE to purchase all documents related to this one docket entry** | |
| **Docket Entry:** | 14-25124614 UPON CONSIDERATION OF PLAINTIFF?S MOTION FOR ALTERNATIVE SERVICE, IT IS ORDERED AND DECREED THAT THE MOTION IS GRANTED AND PLAINTIFF SHALL POST THE PREMISES LOCATED AT 148 BENJAMIN COURT, PHILADELPHIA, PA 19114 WITH THE COMPLAINT IN CIVIL ACTION UPON THE DEFENDANTS, MARVIN MARKS AND THE MARVIN L MARKS AND MARLENE MARKS LIVING TRUST A/K/A MARKS LIVING TRUST. SEE ORDER FOR FULL TERMS. ?BY THE COURT: HALL, J., 12/22/2025 | | |
| | | | |
| 29-DEC-2025 01:07 PM | NOTICE GIVEN UNDER RULE 236 | | |
| **Docket Entry:** | NOTICE GIVEN ON 29-DEC-2025 OF ORDER ENTERED/236 NOTICE GIVEN ENTERED ON 29-DEC-2025. | | |
| | | | |
| 03-JAN-2026 08:20 AM | AFFIDAVIT OF SERVICE FILED | | |
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents<br>Affidavit of Service | 🛒 **Click HERE to purchase all documents related to this one docket entry** | |
| **Docket Entry:** | AFFIDAVIT OF SERVICE OF PLAINTIFF'S COMPLAINT UPON MARVIN L MARKS & MARLENE MARKS LIVING TRUST AKA MARKS LIVING AND MARVIN MARKS BY POSTING OF PREMISES ON 01/02/2026 FILED. | | |
| | | | |
| 30-JAN-2026 11:19 AM | RETURNED MAIL RECEIVED | | |
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents<br>MAILR_11.pdf | 🛒 **Click HERE to purchase all documents related to this one docket entry** | |
| **Docket Entry:** | RETURN MAIL ORDER DATED 22-DEC-2025 AS UNDELIVERABLE AT THE ADDRESS ON FILE WITH THE COURT TO THE FOLLOWING PARTY: AMERICAN REVERSE MORTGAGE | | |
| | | | |
| 02-FEB-2026 12:04 PM | PRAECIPE TO REINSTATE CMPLT | HARPER SR, RONALD J | |

| Documents: | ☒ Click link(s) to preview/purchase the documents<br>DOC020226FP PRAECIPE TO REINSTATE CIVIL ACTION.pdf<br>DOC020226FP CIVIL ACTION.pdf | Click HERE to purchase all documents related to this one docket entry | |
| --- | --- | --- | --- |
| **Docket Entry:** | COMPLAINT WITH NOTICE TO DEFEND WITHIN TWENTY (20) DAYS AFTER SERVICE IN ACCORDANCE WITH RULE 1018.1 REINSTATED. (FILED ON BEHALF OF FOUNTAIN POINTE CONDOMINIUM ASSOCIATION) | | |

| 03-FEB-2026<br>09:11 AM | JUDGMENT ENTERED BY DEFAULT | HARPER SR, RONALD J | $52,943.75 |
| --- | --- | --- | --- |
| **Documents:** | ☒ Click link(s) to preview/purchase the documents<br>DOC020226FP PRAECIPE FOR DEFAULT JUDGMT.pdf | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | PRAECIPE FOR ENTRY OF DEFAULT JUDGMENT FILED. JUDGMENT IN FAVOR OF FOUNTAIN POINTE CONDOMINIUM ASSOCIATION AND AGAINST MARVIN L MARKS & MARLENE MARKS LIVING TRUST AKA MARKS LIVING FOR FAILURE TO FILE ANSWER WITHIN REQUIRED TIME. NOTICE UNDER RULE 236 GIVEN. NOTICE UNDER 237.1 GIVEN. AFFIDAVIT OF NON-MILITARY SERVICE FILED. DAMAGES ASSESSED: $52,943.75 | | |

| 20-FEB-2026<br>09:39 AM | MISCELLANEOUS MOTION/PETITION | HARPER SR, RONALD J | |
| --- | --- | --- | --- |
| **Documents:** | ☒ Click link(s) to preview/purchase the documents<br>DOC021926FP MOTION TO EXECUTE JGMT FREE AND CLEAR OF MORTGAGES.pdf<br>DOC022026FP EXHIBIT A3.pdf<br>DOC021926FP EXHIBIT B.pdf<br>DOC022026FP EXHIBIT C.pdf<br>DOC021926FP EXHIBITD.pdf<br>DOC022026FP EXHIBIT E.pdf<br>Motion CoverSheet Form | Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | 48-26025048 RESPONSE DATE 03/12/2026. PLAINTIFF'S MOTION TO EXECUTE JUDGMENT FREE AND CLEAR OF MORTGAGES (FILED ON BEHALF OF FOUNTAIN POINTE CONDOMINIUM ASSOCIATION) | | |

| 24-FEB-2026<br>02:03 PM | LISTED FOR CASE MGMT CONF | | |
| --- | --- | --- | --- |
| **Docket Entry:** | *none.* | | |

| 25-FEB-2026<br>07:35 AM | NOTICE GIVEN | | |
| --- | --- | --- | --- |
| **Docket Entry:** | OF CASE MANAGEMENT CONFERENCE SCHEDULED FOR 20-MAR-2026. | | |

| 25-FEB-2026 03:09 PM | ENTRY OF APPEARANCE-CO COUNSEL | HARPER SR, RONALD J | |
|---|---|---|---|
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents DOC022526FPVM ENTRY OF APPEARANCE.pdf | 🛒 Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | ENTRY OF APPEARANCE OF RONALD J HARPER AS CO-COUNSEL FILED. (FILED ON BEHALF OF FOUNTAIN POINTE CONDOMINIUM ASSOCIATION) | | |
| | | | |
| 25-FEB-2026 03:36 PM | ENTRY OF APPEARANCE-CO COUNSEL | PAUL, ANDREA B | |
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents DOC022526FPVM ENTRY OF APPEARANCE.pdf | 🛒 Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | ENTRY OF APPEARANCE OF ANDREA B PAUL AS CO-COUNSEL FILED. (FILED ON BEHALF OF FOUNTAIN POINTE CONDOMINIUM ASSOCIATION) | | |
| | | | |
| 27-FEB-2026 07:31 AM | NOTICE GIVEN | | |
| **Docket Entry:** | OF CASE MANAGEMENT CONFERENCE SCHEDULED FOR 20-MAR-2026. | | |
| | | | |
| 27-FEB-2026 09:42 AM | RETURNED MAIL RECEIVED | | |
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents MAILR_20.pdf | 🛒 Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | RETURN MAIL ORDER DATED 22-DEC-2025 AS UNDELIVERABLE AT THE ADDRESS ON FILE WITH THE COURT TO THE FOLLOWING PARTY: MARVIN L MARKS & MARLENE MARKS LIVING TRUST AKA MARKS LIVI | | |
| | | | |
| 27-FEB-2026 10:49 AM | AFFIDAVIT OF SERVICE FILED | PAUL, ANDREA B | |
| **Documents:** | ⚲ Click link(s) to preview/purchase the documents DOC022726FP AFFT OF SERVICE.pdf | 🛒 Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | AFFIDAVIT OF SERVICE OF CASE MANAGEMENT CONFERENCE INFORMATION UPON MARVIN MARKS, MARVIN L MARKS & MARLENE MARKS LIVING TRUST AKA MARKS LIVING AND AMERICAN REVERSE MORTGAGE BY FIRST CLASS REGULAR MAIL ON 02/27/2026 FILED. (FILED ON BEHALF OF FOUNTAIN POINTE CONDOMINIUM ASSOCIATION) | | |
| | | | |

| 09-MAR-2026 04:10 PM | PETITION TO INTERVENE | HUGHES, BRYAN C | |
|---|---|---|---|
| **Documents:** | ⏦ Click link(s) to preview/purchase the documents<br>26.03.09 State Court - Petition to Intervene_Fountain Pointe.pdf<br>Exhibit A- Reverse Mortgage.pdf<br>Exhibit B- SMC Assignment.pdf<br>Exhibit C- MERS Assignment.pdf<br>Exhibit D- Champion Assignment.pdf<br>Exhibit E-Corrective MERS Assignment.pdf<br>Exhibit F- Corrective Assignment.pdf<br>Exhibit G- HUD Assignment.pdf<br>Exhibit 1- Notice of Filing of Removal (State Court).pdf<br>Exhibit 1(a) Notice of Removal - Fountain Pointe 2070-1717-5045 v.1.pdf<br>Motion CoverSheet Form | 🛒 Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | 67-26032167 PETITION TO INTERVENE (FILED ON BEHALF OF US DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT) | | |

| | | | |
|---|---|---|---|

| 09-MAR-2026 04:10 PM | CITY CHARGE SUBSEQUENT FILINGS | HUGHES, BRYAN C | |
|---|---|---|---|
| **Docket Entry:** | *none.* | | |

| | | | |
|---|---|---|---|

| 10-MAR-2026 10:25 AM | MOTION ASSIGNED | | |
|---|---|---|---|
| **Docket Entry:** | 67-26032167 PETITION TO INTERVENE ASSIGNED TO JUDGE: HALL, CHRISTOPHER . ON DATE: MARCH 10, 2026 | | |

| | | | |
|---|---|---|---|

| 10-MAR-2026 02:24 PM | ORDER ENTERED/236 NOTICE GIVEN | HALL, CHRISTOPHER | |
|---|---|---|---|
| **Documents:** | ⏦ Click link(s) to preview/purchase the documents<br>ORDER_25.pdf | 🛒 Click HERE to purchase all documents related to this one docket entry | |
| **Docket Entry:** | 67-26032167 UPON CONSIDERATION OF THE PETITION TO INTERVENE FILED BY THE UNITED STATES OF AMERICA, ON BEHALF OF ITS AGENCY THE U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, AND ANY RESPONSE THERETO, IT IS HEREBY ORDERED AND DECREED THAT SAID PETITION TO INTERVENE IS GRANTED AND THE INTERVENOR HAS NOW BEEN ADDED TO THE CASE. IT IS FURTHER ORDERED THAT THE CLERK OF COURT SHALL FILE THE UNITED STATES? NOTICE OF FILING OF NOTICE OF REMOVAL, ATTACHED AS EXHIBIT 1 TO THE GOVERNMENT?S INTERVENTION PETITION, ON THE DOCKET OF THIS CASE. ...BY THE COURT: HALL, J. 03/10/2026 | | |

| | | | |
|---|---|---|---|

| 10-MAR-2026 02:24 PM | NOTICE GIVEN UNDER RULE 236 | | |
|---|---|---|---|

| Docket Entry: | NOTICE GIVEN ON 10-MAR-2026 OF ORDER ENTERED/236 NOTICE GIVEN ENTERED ON 10-MAR-2026. | | |
|---|---|---|---|
| | | | |
| 11-MAR-2026 07:31 AM | NOTICE GIVEN | | |
| Docket Entry: | OF CASE MANAGEMENT CONFERENCE SCHEDULED FOR 20-MAR-2026. | | |

▶ Case Description    ▶ Related Cases    ▶ Event Schedule    ▶ Case Parties    ▶ Docket Entries

Search Home

# State Court Complaint

**RONALD J. HARPER, Esquire**
Identification No. 10345
140 West Maplewood Avenue
Philadelphia, Pa. 19144
(215) 844-4848

Attorney for Plaintiff

Filed and Attested by the
Office of Judicial Records
16 DEC 2025 01:41 pm
L. BREWINGTON

FOUNTAIN POINTE CONDOMINIUM ASSOCIATION
9200 BLUE GRASS ROAD
PHILADELPHIA, PA. 19114

vs.

MARVIN MARKS
148 BENJAMIN COURT
PHILADELPHIA, PA. 19114
and
THE MARVIN L. MARKS and MARLENE MARKS
LIVING TRUST a/k/a MARKS LIVING TRUST
148 BENJAMIN COURT
9200 BLUE GRASS ROAD
PHILADELPHIA, PA. 19114
and
AMERICAN REVERSE MORTGAGE
605 SW FIRST AVENUE
OCALA, FL. 34471

: COURT OF COMMON PLEAS
:
:
:
:
:
:
: TERM. 20
:
:
:
:
: NO.
:
:
:
:
:

| NOTICE | AVISO |
|---|---|
| **CIVIL ACTION** | |
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. |
| *You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.* | *Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.* |
| **Philadelphia Bar Association**<br>**Lawyer Referral**<br>**and Information Service**<br>**One Reading Center**<br>**Philadelphia, Pennsylvania 19107**<br>**(215) 238-6333**<br>**TTY (215) 451-6197** | **Asociacion De Licenciados**<br>**De Filadelfia**<br>**Servicio De Referencia E**<br>**Informacion Legal**<br>**One Reading Center**<br>**Filadelfia, Pennsylvania 19107**<br>**(215) 238-6333**<br>**TTY (215) 451-6197** |

10-284

Case ID: 251202237

**RONALD J. HARPER, Esquire**
Identification No. 10345                                    Attorney for Plaintiff
140 West Maplewood Avenue
Philadelphia, Pa. 19144
(215) 844-4848

---

FOUNTAIN POINTE CONDOMINIUM ASSOCIATION  :
9200 BLUE GRASS ROAD                          : COURT OF COMMON PLEAS
PHILADELPHIA, PA. 19114                        :
                                               :
          vs.                                  :
MARVIN MARKS                                   :
148 BENJAMIN COURT                             :
PHILADELPHIA, PA. 19114                        :          TERM. 20
          and                                  :
THE MARVIN L. MARKS and MARLENE MARKS          :
LIVING TRUST a/k/a MARKS LIVING TRUST          :
148 BENJAMIN COURT                             :
9200 BLUE GRASS ROAD                           : NO.
PHILADELPHIA, PA. 19114                        :
          and                                  :
AMERICAN REVERSE MORTGAGE                      :
605 SW FIRST AVENUE                            :
OCALA, FL. 34471                               :
                                               :
                                               :

---

## CIVIL ACTION

1.      The Plaintiff is a Pennsylvania Condominium Association, incorporated in the Commonwealth of Pennsylvania.

2.      The Defendant, Marvin Marks is an adult individual residing in the County of Philadelphia and a citizen of the Commonwealth of Pennsylvania.

3.      The Defendant, Marks Living Trust is an entity allegedly created by Plaintiff Marvin Marks to be effective during his lifetime to pay monthly payments due to Plaintiff.

4.      Previously said Defendant operated under the Marvin L. Marks and Marlene Marks Living Trust.

Case ID: 251202237

5.      The Defendant American Reverse Mortgage is a financial services company based in Ocala, Florida.

6.      On or about December 5, 2006, Defendant obtained a Reverse Mortgage with the Defendant American Reverse Mortgage in the amount of $327,000.00 securing the premises at 148 Benjamin Court, Philadelphia, Pa. which is located in Fountain Pointe Condominiums.

7.      The Defendant, Marvin Marks with Marlene Marks owned 148 Benjamin Court which they conveyed to Marvin L. Marks and Marlene Marks Living Trust on September 17, 2003. A true and correct copy of the Deed is attached as Exhibit A.

8.      They are thereby the owners and members of Plaintiff Fountain Pointe Condominium Association, subject to Condominium Rules, Dues and Fees.

### COUNT I-BREACH OF CONTRACT and
### VIOLATION OF THE UNIFORM CONDOMINIUM ACT.

**FOUNTAIN POINTE CONDOMINIUM ASSOCIATION vs.
MARVIN MARKS and THE MARVIN L. MARKS and
MARLENE MARKS LIVING TRUST a/k/a MARKS LIVING TRUST**

9.      Paragraph 1 through 8 are incorporated by reference as through set forth at length.

10.      As per Agreements with Plaintiff, Defendants are responsible for and have agreed to pay monthly Condominium dues, late fees, fines, legal fees and monthly association fees. Pursuant to Sections 3302 et seq the parties are subject to the Pennsylvania Uniform Condominium Act allowing Plaintiff to assess monthly condominium dues, late fees, fines, legal fees and association fees.

A copy of the Condominium Act 68 Pa. C.S.A. is attached as Exhibit B.

11.      Defendants have failed to pay Condominium dues, fees and charges since January 2002 to present.

12.     Plaintiff is, also entitled to 1% per month on the outstanding balance along with $40.00 per month in late fees.

13.     Plaintiff is entitled to legal fees and costs incurred for all collection efforts.

14.     A Demand Letter was sent to Defendant Marvin Marks on November 26, 2025. A true and correct copy is attached as Exhibit C.

15.     Defendants have continued and failed to pay the Condominium dues, charges and fees in violation of Condominium governing documents and Pennsylvania law, causing great financial loss to Plaintiff.

16.     The current amount due and owing from Defendants is continuing and is as follows:

|  |  |
|---|---|
| Unpaid Condominium fees, late charges from January 2022 through November 2025 | $27,326.86 |
| Plus ongoing 1% per month | |
| Plus ongoing Condominium fees | |
| Plus ongoing legal fees and costs | |
| Plus any other fees Plaintiff is entitled to by operation of law or Contract | |

WHEREFORE, Plaintiff demands judgment in their favor against the Defendants in the amount of unpaid charges, fees, dues, legal fees, costs and amounts deemed appropriate.

## COUNT II
### FOUNTAIN POINTE CONDOMINIUM ASSOCIATION vs. MARVIN MARKS and THE MARVIN L. MARKS and MARLENE MARKS LIVING TRUST a/k/a MARKS LIVING TRUST and AMERICAN REVERSE MORTGAGE

17.     Paragraph 1 through 16 are incorporated by reference as though set forth at length.

18.    Defendants did not notify Plaintiff of the Reverse Mortgage taken on 148 Benjamin Court.

19.    The said Reverse Mortgage is not a Permitted Mortgage as per the Condominium Rules.

20.    The Mortgage taken was for 327,000.00.

**WHEREFORE**, Plaintiff requests this Honorable Court to enter the following Order:

    a.    Declare that the Reverse Mortgage from American Reverse Mortgage is subordinate to the monies owned to Plaintiff and

    b.    Declare that the Reverse Mortgage from American Reverse Mortgage is subordinate to all ongoing charges, fees, dues and fees due to Plaintiff.

## COUNT III
### FOUNTAIN POINTE CONDOMINIUM ASSOCIATION vs. AMERICAN REVERSE MORTGAGE

21.    Paragraph 1 through 20 are incorporated by reference as though set forth at length.

22.    The Defendants entered into a Reverse Mortgage on 148 Benjamin Court, Philadelphia, Pa. with American Reverse Mortgage.  See Exhibit D1 and D2.

23.    Should Defendant American Reverse Mortgage make any payments to Defendants Marvin Marks and The Marvin Marks and Marlene Marks Living Trust a/k/a Marks Living Trust on a monthly basis, said payments should be applied toward Condominium fees, dues and charges and paid over to Plaintiff.

24.    Defendant, American Reverse Mortgage or its successor's rights are subordinate to Plaintiff.

**WHEREFORE**, Plaintiff requests this Honorable Court to enter Judgment in its favor and against Defendant American Reverse Mortgage and its successors.

RONALD J. HARPER, Esquire
Attorney for Plaintiff

## VERIFICATION

I, Nancy Marino, President of Board of Directors of Fountain Pointe Condominium Association, hereby verifies that these statements are true and correct to the best of my personal knowledge or information and belief. I understand that the statements are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities.

*Nancy Marino*
NANCY MARINO

Case ID: 251202237

# EXHIBIT A

Case ID: 251202237

**City of Philadelphia Department of Records**

## RECORDING INFORMATION SUMMARY (RIS)

The information provided by you will be relied upon by the Department of Records for examination and indexing purposes. If there is any conflict between the RIS and the attached document, the information on the RIS shall prevail for examination and indexing purposes.

**1) RETURN DOCUMENT TO:**
Name: _Marvin L. Marks of Marlene Marks_
Address: _148 Benjamin Court_
_Philadelphia, PA 19114_
Telephone: _215 - 673 - 6762_

**2) Type of Document:**
- [x] Deed
- [ ] Sheriff's Deed
- [ ] Deed of Condemnation
- [ ] Other Deed
- [ ] Mortgage
- [ ] Release of Mortgage
- [ ] Assignment of Mortgage
- [ ] Satisfaction of Mortgage
- [ ] Lease/Memorandum of Lease
- [ ] Assignment of Lease & Rent
- [ ] Easement
- [ ] Other _____ (specify)

**3)** Date of Document: _9 / 11 / 2003_
   month    day    year

**4)** Grantor/Mortgagor/Assignor/Lessor/Other:
   a) _Marks, Marvin L_
   b) _Marks, Marlene_
   (Last Name First Name Middle Initial)

**5)** [ ] Additional names on Continuation Page of RIS

**6)** Grantee/Mortgagee/Assignee/Lessee/Other:
   a) _The Marvin L. Marks and Marlene_
   b) _Marks Living Trust_
   (Last Name First Name Middle Initial)

**7)** [ ] Additional names on Continuation Page of RIS

**8)** Property Address:
   a) House No. & Street Name: _148 Benjamin Court_
   Condo Name(if applicable) _Fountain Pointe_  Unit # _G-148_  Philadelphia, PA  Zip Code: _19114_
   BRT Account # (optional): _____  Parcel Identification Number (PIN) (optional): _X_

**9)** [ ] Additional addresses on Continuation Page of RIS

**10)** Grantee's Mailing Address (Deed Only):
   (If Grantee is at a different address than the Property Address listed in Section 8, complete this section.)
   a) Grantee or Designee Name: _____
   House No. & Street Name: _____
   City: _____  State: _____  Zip Code: _____ - _____

**11)** Recording Information to be Referenced. Mortgage to be released/satisfied/assigned/modified:
   a) Name of Original Mortgagee: _____     Recorder's Index Information of Original Mortgage:
   Recording Date of Original Mortgage: _____ / _____ / _____     Initials, Book and Page or Doc. ID#
       month   day   Year

**12)** [ ] Additional references on Continuation Page of RIS

**13)** If applicable, please check: [ ] Consolidation  [ ] Subdivision

**14)** Signature Information
   _Marvin L. Marks_
   a) 'OR -or- 'EE Name
   _215 - 673 - 6762_
   b) 'OR -or- 'EE Telephone Number
   _Marvin L. Marks_        _Marlene Marks_
   c) 'OR -or- 'EE Signature

**15)** Page 1 of _____

82-337 (Rev. 01/01/01)

for Records Department use only

**50962491**
Page: 1 of 5
07/06/2004 10:21AM

This Document Recorded                    Doc Id: 50962491
07/06/2004   State RTT: 0.00              Receipt #: 339690
10:21AM      Local RTT: 0.00              Rec Fee: 74.00
Doc Code: D   Commissioner of Records, City of Philadelphia

Unofficial Copy

<span style="color:red">Case ID: 251202237</span>

## QUIT CLAIM DEED

THIS INDENTURE made the 17 day of September 2003.

BETWEEN MARVIN L. MARKS  and MARLENE MARKS, his wife, (hereinafter called the "Grantor") having an address of 148 Benjamin Court, Philadelphia, Philadelphia County, Commonwealth of Pennsylvania, 19114 and THE MARVIN L. MARKS AND MARLENE MARKS LIVING TRUST (hereinafter called the "Grantee"); having an address of 148 Benjamin Court, Philadelphia, Philadelphia County, Commonwealth of Pennsylvania, 19114.

WITNESSETH, that the said party of the first part, for and in consideration of the sum of One ($1.00) Dollar lawful money of the United States of America, to them well and truly paid by the said party of the second part, at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, have remised, released and quit-claimed, and by these presents, does remise, release and quit-claim unto the said party of the second part and to their successors and assigns forever,

ALL THAT CERTAIN Unit designated as G-148, being a Unit in Fountain Pointe of Philadelphia, a Condominium located n the City of Philadelphia, Commonwealth of Pennsylvania, which has heretofore been submitted to the provisions of the Pennsylvania Uniform Condominium Act (68 Pa. C.S. § Section 3101 et seq.) by the recording of the Declaration of Condominium of Century Village of Philadelphia, a Condominium dated 5-18-90 and recorded 6-1-90 in the Department of Records in and for the City of Philadelphia in Deed Book FHS 1631 page 481 and subject to any amendments therto togther with an undivided 0.8772% interest in and to the common elements.

BEING Unit G-148, Premises known as 148 Benjamin Court.

BEING PARCEL ID NO.  16860  00148  G148  .

FOR chain of title, see deed recorded in the aforesaid County in Deed Book 1988, Page 583.

TOGETHER with all and singular, the tenements, hereditaments and appurtenances thereunto belonging, or in any wise appertaining, and the reversions, remainders, rents, issues and profits thereof:  AND also, all the estate, right, title, interest, property, claim and demand whatsoever, as well in law as in equity, of the said party of the first part, of, in, or to the above-described premises, and every part and parcel thereof, with the appurtenances.

TO HAVE AND TO HOLD all and singular the above-mentioned and described premises, together with the appurtenances, unto the said party of the second part, his heirs and assigns forever.

Case ID: 251202237

IN WITNESS WHEREOF, the Grantors have hereunto set their hand and seal.

MARVIN L. MARKS

MARLENE MARKS

SEALED and DELIVERED )
in the Presence of us:                )

COMMONWEALTH OF PENNSYLVANIA              )
                                                                          ) SS.
COUNTY OF PHILADELPHIA              )

On this the 17 day of September, 20 03 before me, the Undersigned Officer, a Notary Public of the Commonwealth of Pennsylvania, personally appeared MARVIN L. MARKS and MARLENE MARKS known to me to be the persons whose names are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Notary Public

NOTARIAL SEAL
ADRIENNE S. REDHOUSE, Notary Public
Tredyffrin Twp., Chester County
My Commission Expires August 28, 2006

I hereby certify the address of the above-named within Grantee is: having an address of 148 Benjamin Court, Philadelphia, Philadelphia County, Commonwealth of Pennsylvania, 19114.

The address of the above-named property is: having an address of 148 Benjamin Court, Philadelphia, Philadelphia County, Commonwealth of Pennsylvania, 19114.

Unofficial Copy

DEED

MARVIN L. MARKS  and MARLENE MARKS
Grantor

TO

THE MARVIN L. MARKS AND MARLENE MARKS LIVING TRUST
Grantee

Case ID: 251202237

# PHILADELPHIA REAL ESTATE
# TRANSFER TAX CERTIFICATION

| Book No. | Page No. |
|---|---|

Date Recorded

City/Tax Paid

Complete each section and file in duplicate with Recorder of Deeds when (1) the full value / consideration is not set forth in the deed, (2) when the deed is without consideration, or by gift, or (3) a tax exemption is claimed. A Statement of Value is not required if the transfer is wholly exempt from tax based on: (1) family relationship or (2) public utility easement. If more space is needed, attach additional sheet(s).

## A    CORRESPONDENT - All inquiries may be directed to the following person:

Name: MARVIN L. MARKS AND MARLENE MARKS

Telephone Number: Area Code 215-673-6762

| Street Address | City | State | Zip Code |
|---|---|---|---|
| 148 BENJAMIN COURT | PHILADELPHIA | PA | 19114 |

## B    TRANSFER DATA

Date of Acceptance of Document: 09-19-03

| Grantor(s)/Lessor(s) | Grantee(s)/Lessee(s) |
|---|---|
| MARVIN L. MARKS AND MARLENE MARKS | MARVIN L. MARKS AND MARLENE MARKS LIVING TRUST |

| Street Address | Street Address |
|---|---|
| 148 BENJAMIN COURT | 148 BENJAMIN COURT |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| PHILADELPHIA | PA | 19114 | PHILADELPHIA | PA | 19114 |

## C    PROPERTY LOCATION

| Street Address | City, Township, Borough |
|---|---|
| 148 BENJAMIN COURT | PHILADELPHIA |

| County | School District | Tax Parcel Number |
|---|---|---|
| PHILADELPHIA | PHILADELPHIA | 16860 00148 G1K |

## D    VALUATION DATA

| 1. Actual Cash Consideration | 2. Other Consideration | 3. Total Consideration |
|---|---|---|
| $1.00 | + $0.00 | $1.00 |

| 4. County Assessed Value | 5. Common Level Ratio Factor | 6. Fair Market Value |
|---|---|---|
| $ 63500 | x 3.19 | $ 202,50 |

## E    EXEMPTION DATA

| 1A. Amount of Exemption Claimed | 1b. Percentage of Interest Conveyed |
|---|---|
| 100% | 100% |

2. Check Appropriate Box Below for Exemption Claimed

☐ Will or intestate succession _____ _____ _____
                                                      (Name of Decedent)            (Estate File Number)

☐ Transfer to Industrial Development Agency.

■ Transfer to a trust (Attach complete copy of trust agreement identifying all beneficiaries.)

☐ Transfer between principal and agent. (Attach complete copy of agency/straw party agreement.)

☐ Transfers to the Commonwealth, the United States and instrumentalities by gift, dedication, condemnation or in lieu of condemnation. (If condemnation or in lieu of condemnation, attach copy of resolution.)

☐ Transfer from mortgagor to a holder of a mortgage in default. Mortgage Book Number _____, Page Number _____

☐ Corrective or confirmatory deed. (Attach complete copy of the prior deed being corrected or confirmed.)

☐ Statutory corporate consolidation, merger or division. (Attach copy of articles.)

☐ Other (Please explain exemption claimed, if other than listed above.) _____

Under penalties of law, I declare that I have examined this Statement, including accompanying information, and to the best of my knowledge and belief, it is true, correct and complete.

| Signature of Correspondent or Responsible Party | Date |
|---|---|
| X Marvin L. Marks    Marlene Marks | 09-19-03 |

Case ID: 251202237

# EXHIBIT B

Case ID: 251202237

UNIFORM CONDOMINIUM ACT (68 PA.C.S.) – OMNIBUS AMENDMENTS
Act of Dec. 18, 1992, P.L. 1279, No. 168          Cl. 68
Session of 1992
No. 1992-168

SB 862

AN ACT

Amending Title 68 (Real and Personal Property) of the
Pennsylvania Consolidated Statutes, adding and revising
provisions relating to condominiums; and making editorial
changes.

The General Assembly of the Commonwealth of Pennsylvania
hereby enacts as follows:
Section 1. Section 3102 of Title 68 of the Pennsylvania
Consolidated Statutes is amended to read:
§ 3102. Applicability of subpart.
(a) General rule.--This subpart applies to all condominiums
created within this Commonwealth after the effective date of
this subpart. [Sections] **Subsection (b) and sections** 3105
(relating to separate titles and taxation), 3106 (relating to
applicability of local ordinances, regulations and building
codes), 3107 (relating to eminent domain), 3203 (relating to
construction and validity of declaration and bylaws), 3204
(relating to description of units), **3222 (relating to master
associations), 3223 (relating to merger or consolidation of
condominiums),** 3302(a)(1) through (6), **(9)** and (11) through
(16) (relating to powers of unit owners' association), 3311
(relating to tort and contract liability), 3315 (relating to
lien for assessments), 3316 (relating to association records),
3407 (relating to resales of units) and 3412 (relating to
effect of violations on rights of action), and section 3103
(relating to definitions) to the extent necessary in
construing any of those sections, apply to all condominiums
created in this Commonwealth before the effective date of this
subpart; but those sections apply only with respect to events
and circumstances occurring after the effective date of this
subpart and do not invalidate existing provisions of the
declaration, code of regulations or declaration plan of those
condominiums.
(b) Prior statutory law.--The provisions of the act of July
3, 1963 (P.L.196, No.117), known as the ["]Unit Property
Act,["] do not apply to condominiums created after the
effective date of this subpart and do not invalidate any
amendment to the declaration, code of regulations or
declaration plan of any condominium created before the
effective date of this subpart if the amendment would be
permitted by this subpart. The amendment must be adopted in
conformity with the procedures and requirements specified by
those instruments and by the provisions of the ["]Unit
Property Act.["] If the amendment grants to any person any
rights, powers or privileges permitted by this subpart, all
correlative obligations, liabilities and restrictions in this
subpart also apply to that person. **By amendment to the**

declaration, code of regulations and declaration plan, a condominium created pursuant to the Unit Property Act may be made subject to all of the provisions of this subpart in lieu of the provisions of the Unit Property Act, effective as of the date of recordation of such amendments and without in any way terminating the condominium status of the property or in any way affecting any lien or encumbrance on the property, if the terms of such amended documents conform to the requirements of this subpart and if such amendments have been approved by all the persons whose actions would have been required to effect a removal of the property from the Unit Property Act pursuant to section 601 thereof. No amendment of:

      (1) the declaration, code of regulations or declaration plan of a condominium created pursuant to the Unit Property Act; or

      (2) the declaration, bylaws or plats and plans of a condominium created pursuant to this subpart; may increase the obligations or responsibilities of a declarant (as such and not as a unit owner) without the joinder of the declarant in such amendment.

    (c) Condominiums outside Commonwealth.--This subpart does not apply to condominiums or units located outside this Commonwealth, but the public offering statement provisions (sections 3402 through 3405) apply to all dispositions thereof in this Commonwealth unless exempt under section 3401(b)(5) (relating to applicability; waiver).

    Section 2. The definitions of "affiliate of a declarant," "common expenses," "conversion condominium," "declarant," "dispose or disposition," "limited common element," "offering," "purchaser" and "special declarant rights" in section 3103 of Title 68 are amended and the section is amended by adding definitions to read:

  § 3103. Definitions.

    The following words and phrases when used in this subpart and in the declaration and bylaws shall have the meanings given to them in this section unless specifically provided otherwise or unless the context clearly indicates otherwise:

      * * *

    "Affiliate of a declarant." Any person who controls, is controlled by, or is under common control with a declarant.

      (1) A person "controls" a declarant if the person:

          (i) is a general partner, officer, director or [employee] **employer** of the declarant;

          (ii) directly or indirectly or acting in concert with one or more other persons, or through one or more subsidiaries, owns, controls, holds with power to vote, or holds proxies representing, more than 20% of the voting interests of the declarant;

          (iii) controls in any manner the election of a majority of the directors of the declarant; or

          (iv) has contributed more than 20% of the capital of the declarant.

      (2) A person "is controlled by" a declarant if the declarant:

          (i) is a general partner, officer, director or employee of the person;

          (ii) directly or indirectly or acting in concert with one or more other persons, or through one or more

Case ID: 251202237

subsidiaries, owns, controls, holds with power to vote, or holds proxies representing, more than 20% of the voting interests of the person;

(iii) controls in any manner the election of a majority of the directors of the person; or

(iv) has contributed more than 20% of the capital of the person.

**(3) Control does not exist if the powers described in paragraphs (1) and (2) are held solely as security for an obligation and are not exercised.**

* * *

"Common expenses." Expenditures made or liabilities incurred by or on behalf of the association, together with any allocations to reserves, **including general common expenses and limited common expenses.**

* * *

"Conversion [condominium] **building.**" A [condominium containing any] building that, at any time before [recording of the declaration] **the conversion notice date with respect to the condominium in which the building is located,** was occupied wholly or partially by persons other than purchasers and persons who occupy with the consent of purchasers.

**"Conversion notice." The notice required to be given to tenants or subtenants by the terms of section 3410(a) (relating to condominiums containing conversion buildings).**

**"Conversion notice date." The date on which the conversion notice is placed in the United States mail, in the case of mailed notices, or delivered to the unit leased by the recipient, in the case of hand-delivered notices.**

* * *

"Declarant."

(1) If the condominium has been created, "declarant" means:

(i) any person who has executed a declaration, or an amendment to a declaration to add additional real estate, other than persons holding interests in the real estate solely as security for an obligation, persons whose interests in the real estate will not be conveyed to unit owners, or, in the case of a leasehold condominium, a lessor who possesses no special declarant rights and who is not an affiliate of a declarant who possesses special declarant rights; or

(ii) any person who succeeds under section 3304 (relating to transfer of special declarant rights) to any special declarant rights.

(2) If the condominium has not yet been created, "declarant" means any person who offers to dispose of or disposes of his interest in a unit **to be created and** not previously disposed of.

(3) If a declaration is executed by a trustee of a land trust, "declarant" means the beneficiary of the trust.

"Dispose" or "disposition." A voluntary transfer of any legal or equitable interest in a unit **or a proposed unit,** other than as security for an obligation.

* * *

Case ID: 251202237

"Limited common element." A portion of the common elements allocated by **or pursuant to** the declaration or by operation of section 3202(2) or (4) (relating to unit boundaries) for the exclusive use of one or more but fewer than all of the units.

**"Limited common expenses." All expenses identified as such pursuant to section 3314(c) (relating to assessments for common expenses).**

**"Master association." An organization described in section 3222 (relating to master associations), whether or not it is an association described in section 3301 (relating to organization of unit owners' association).**

["Offering."] **"Offer" or "offering."** Any advertisement, inducement, solicitation or attempt to encourage any person to acquire any interest in a unit, other than as security for an obligation. An advertisement in a newspaper or other periodical of general circulation, or in any broadcast medium to the general public, of a condominium not located in this Commonwealth, is not an **offer or** offering if the advertisement states that an **offer or** offering may be made only in compliance with the law of the jurisdiction in which the condominium is located.

**"Original lease termination date." The date on which the lease or sublease of a residential tenant or subtenant in possession of a unit in a conversion building will expire by the terms of such lease or sublease, after taking into account any renewal or extension rights that may have been exercised prior to the conversion notice date.**

* * *

"Purchaser." Any person, other than a declarant, who by means of a [voluntary transfer] **disposition** acquires a legal or equitable interest in a unit, other than:

(1) a leasehold interest (including renewal options) of less than [five] **20** years, **but a person who will become a unit owner in a leasehold condominium upon consummation of the disposition shall be deemed to be a purchaser;** or

(2) as security for an obligation.

* * *

**"Residential tenant" or "residential subtenant." A tenant or subtenant, respectively, who is a natural person lawfully occupying real estate for residential use.**

"Special declarant rights." Rights reserved for the benefit of a declarant to:

(1) Complete improvements indicated on plats and plans filed with the declaration (section 3210).

(2) Convert convertible real estate in a flexible condominium (section 3211).

(3) Add additional real estate to a flexible condominium (section 3211).

(4) Withdraw withdrawable real estate from a flexible condominium (section 3212).

(5) Convert a unit into two or more units, common elements, or into two or more units and common elements (section 3215).

(6) Maintain [sales] offices, [management offices,] signs [advertising the condominium,] and models (section 3217).

Case ID: 251202237

(7) Use easements through the common elements for the purpose of making improvements within the condominium or within any convertible or additional real estate (section 3218).

**(8) Cause the condominium to be merged or consolidated with another condominium (section 3223).**

**(9) Make the condominium subject to a master association (section 3222).**

[(8)] **(10)** Appoint or remove any officer of the association **or any master association** or any executive board member during any period of declarant control (section 3303(c)).

\* \* \*

Section 3. Sections 3201, 3205, 3208, 3210, 3211, 3215, 3217, 3218, 3219 and 3220 of Title 68 are amended to read:

§ 3201. Creation of condominium.

[(a) General rule.--]A condominium may be created pursuant to this subpart only by recording a declaration executed, in the same manner as a deed, by all persons whose interests in the real estate will be conveyed to unit owners and by every lessor of a lease the expiration or termination of which will terminate the condominium or reduce its size, provided, however, in any such lease wherein the lessor is the Commonwealth of Pennsylvania, a municipal government or any agency thereof, said lessor need not execute the declaration if they shall have previously given written consent to its filing and agreed to be bound by the provisions of the Pennsylvania Uniform Condominium Act, in which case said declaration shall be executed by the lessee then in possession of the subject property. The declaration shall be recorded in every county in which any portion of the condominium is located in the same records as are maintained for the recording of deeds of real property and shall be indexed against each declarant as the grantor and the name of the condominium as the grantee.

[(b) Substantial completion prerequisite to recording.--A declaration or an amendment to a declaration adding units to a condominium, may not be recorded unless all structural components and mechanical systems of all buildings containing or comprising any units thereby created are substantially completed in accordance with the plans, as evidenced by a recorded certificate of completion executed by an independent registered surveyor, architect or professional engineer. Whenever a plat or plan complying with section 3210 (relating to plats and plans) has been previously recorded pursuant to the act of July 31, 1968 (P.L.805, No.247), known as the "Pennsylvania Municipalities Planning Code," or an ordinance regulating land development, the plat or plan may be incorporated into the declaration by reference.

(c) Substantial completion prerequisite to conveyance.--No interest in a unit may be conveyed until the unit is substantially completed as evidenced by a recorded certificate of completion executed by an independent registered architect, surveyor or professional engineer.

(d) Construction of section.--Nothing contained in this section shall prevent the offering for sale of a unit or interest in a unit or the execution of any agreement to sell

Case ID: 251202237

and purchase a unit or any interest in a unit (as opposed to actual conveyance) prior to completion of the unit.]

§ 3205. Contents of declaration; all condominiums.

The declaration for a condominium must contain:

(1) The name of the condominium which must include the word "condominium" or be followed by the words "a condominium."

(2) The name of every county in which any part of the condominium is situated.

(3) A legally sufficient description of the real estate included in the condominium.

(4) A description or delineation of the boundaries of each unit including the unit's identifying number.

(5) A statement of the maximum number of units that may be created by the subdivision or conversion of units owned by the declarant pursuant to section 3215(c) (relating to subdivision or conversion of units).

(6) A description of any limited common elements as provided in section 3209 (relating to limited common elements) **and limited common expenses, if any, and how they are to be assessed.**

(7) A description of any common elements not within the boundaries of any convertible real estate which may be allocated subsequently as limited common elements together with a statement that they may be so allocated and a description of the method by which the allocations are to be made.

(8) An allocation to each unit of an undivided interest in the common elements, a portion of the votes in the association and a percentage or fraction of the common expenses of the association (section 3208).

(9) Any restrictions created by the declarant on use, occupancy and alienation of the units.

(10) The recording data for recorded easements and licenses appurtenant to or included in the condominium or to which any portion of the condominium is or may become subject.

**(11) If all or any of the units are or may be owned in time-share estates as defined in section 3403(a) (relating to public offering statement; time-share estates), which units may be owned in time-share estates and the maximum number of time-share estates that may be created in the condominium, it being intended that time-share estates shall not be permitted except if and to the extent expressly authorized by the declaration.**

**(12) If the declarant wishes to retain the special declarant right to cause section 3222 (relating to master associations) to become applicable to a condominium, then:**

**(i) an explicit reservation of such right;**

**(ii) a statement of the time limit, not exceeding seven years after the recordation of the declaration, upon which the option reserved under subparagraph (i) will lapse, together with a statement of any circumstances that will terminate the option before the expiration of the time limit; and**

**(iii) the information required to be included in the declaration by the provisions of section 3222.**

Case ID: 251202237

(13) If the declarant wishes to retain the special declarant right to merge or consolidate the condominium pursuant to section 3223 (relating to merger or consolidation of condominiums), then:

(i) an explicit reservation of such right;

(ii) a statement of the time limit, not exceeding seven years after the recording of the declaration, upon which any option reserved under subparagraph (i) will lapse, together with a statement of any circumstances that will terminate the option before the expiration of the time limit;

(iii) a statement of the name and location of each other condominium that may be subject to such a merger or consolidation if such other condominiums exist and if such other condominiums do not exist, then the declaration shall include the following:

(A) A statement of the extent to which the common element interest, relative voting strength in the association and share of common expense liability of each unit in the condominium at the time the merger or consolidation is effectuated may be increased or decreased by actions pursuant to any option reserved under subparagraph (i), including the formulas to be used for those reallocations.

(B) Legally sufficient descriptions of each portion of real estate which is part of any other condominiums which may be created and with which the condominium may merge or consolidate.

(C) If mergers or consolidations may be effectuated at different times, a statement to that effect together with:

(I) either a statement fixing the boundaries of those condominiums and regulating the order in which they may be merged or consolidated or a statement that no assurances are made in those regards; and

(II) a statement as to whether, if any other condominiums are merged or consolidated with the condominium, all or any of such condominiums must be merged or consolidated.

(D) A statement of:

(I) the maximum number of units that may be created within any such other condominiums, the boundaries of which are fixed pursuant to clause (C);

(II) how many of those units will be restricted exclusively to residential use; and

(III) the maximum number of units per acre that may be created within any such other condominiums, the boundaries of which are not fixed pursuant to clause (C).

(E) If any of the units that may be built within any such other condominiums are not to be restricted exclusively to residential use, a statement with respect to each portion of such

Case ID: 251202237

other condominiums of the maximum percentage of the real estate areas and the maximum percentage of the floor areas of all units that may be created therein that are not restricted exclusively to residential use.

(F) A statement of the extent to which any buildings and units that may be part of such other condominiums will be compatible with the other buildings and units in the condominium in terms of architectural style, quality of construction, principal materials employed in construction and size or a statement that no assurances are made in those regards.

(G) A statement that all restrictions in the declaration affecting use, occupancy and alienation of units will apply to units created within any such other condominiums or a statement of any differentiations that may be made as to those units.

(H) General descriptions of all other improvements and limited common elements that may be made or created within such other condominiums or a statement that no assurances are made in that regard.

(I) A statement of any limitations as to the locations of any buildings or other improvements that may be made within such other condominiums or a statement that no assurances are made in that regard.

(J) A statement that any limited common elements created within any such other condominiums will be of the same general types and sizes as those within the condominium or a statement of any other assurances in that regard or a statement that no assurances are made in that regard.

(K) A statement that the proportion of limited common elements to units created within such other condominiums will be approximately equal to the proportion existing within the condominium or a statement of any other assurances in that regard or a statement that no assurances are made in that regard.

(L) A statement of the extent to which any assurances made in the declaration regarding such other condominiums pursuant to clauses (C) through (K) apply in the event any such condominiums are not merged or consolidated with the condominium or a statement that those assurances do not apply if the condominiums are not merged or consolidated with the condominium; and

(iv) a summary description of the other provisions which materially change any rights, obligations or liabilities that will be included in the agreement of merger or consolidation if such right is exercised.

[(11)] **(14)** Any other matters the declarant deems appropriate.

§ 3208. Allocation of common element interests, votes and common expense liabilities.

(a) General rule.--The declaration shall allocate a fraction or percentage of undivided interests in the common elements and in the common expenses of the association, and a portion of the votes in the association, to each unit and state the formulas used to establish those allocations. **Such formulas may take into account unusual attributes of identified units if the formulas state how the deviation from the normal rule applies to such units.**

(b) Flexible condominiums.--[In a flexible condominium, the common element interest and common expense liability allocated to each unit must be equal, or proportionate to the relative size of each unit, unless the declaration as originally recorded:

(1) requires that any units created in additional or convertible real estate be substantially identical to the other units in the condominium and provides that common element interests and common expense liabilities will be allocated to those units in accordance with the formulas used for the initial allocations; or

(2) identifies all other types of units that may be created in additional or convertible real estate in terms of architectural style, quality of construction, principal materials to be used and ranges of sizes and states the formulas upon which any reallocations of common element interests and common expense liabilities will be made, or states the common element interest and common expense liability to be allocated to each unit that may be created.]

**If units may be added to, including by conversion of convertible real estate to one or more units, or withdrawn from the condominium, the declaration must state the formulas to be used to reallocate the fractions or percentages of undivided interests in the common elements and in the common expenses of the association and the portions of the votes in the association among all units included in the condominium after the addition or withdrawal.**

(c) Votes.--[The number of votes allocated to each unit must be equal, proportionate to that unit's common expense liability, or proportionate to that unit's common element interest. If the declaration allocates an equal number of votes in the association to each unit, each unit that may be subdivided or converted by the declarant into two or more units, common elements, or both (section 3215), must be allocated a number of votes in the association proportionate to the relative size of that unit compared to the aggregate size of all units and the remaining votes in the association must be allocated equally to the other units.] **Each unit in the condominium shall be allocated one or more votes in the condominium association. The declaration shall specify how votes in the condominium shall be allocated among the units and may provide:**

**(1) for different allocations of votes among the units on particular matters specified in the declaration; and**

> **(2) for class voting on specified issues affecting a particular class of units if necessary to protect the valid interests of the owners of such units and not affecting units outside of the class.**
**Cumulative voting shall only be permitted if so provided expressly in the declaration and only for the purpose of electing members of the executive board. A declarant may not utilize cumulative or class voting for the purpose of evading any limitations imposed upon declarants by this subpart.** The declaration may provide that different allocations of votes shall be made to the units on particular matters specified in the declaration.

(d) Alteration or partition of allocations.--Except in the case of eminent domain (section 3107), expansion or conversion of a flexible condominium (section 3211), withdrawal of withdrawable real estate (section 3212), relocation of boundaries between adjoining units (section 3214) or subdivision of units (section 3215), the common element interest, votes and common expense liability allocated to any unit may not be altered without unanimous consent of all unit owners. The common elements are not subject to partition and any purported conveyance, encumbrance, judicial sale or other voluntary or involuntary transfer of an undivided interest in the common elements made without the unit to which it is allocated is void.

(e) Calculations for undivided interests.--Except for minor variations due to rounding, the sums of the undivided interests in the common elements and common expense liabilities allocated at any time to all the units shall each equal one if stated as fractions or 100% if stated as percentages. In the event of discrepancy between the common element interest, votes or common expense liability allocated to a unit and the result derived from application of the formulas, the allocated common element interest, vote or common expense liability prevails.

§ 3210. Plats and plans.

(a) General rule.--Plats and plans are a part of the declaration. Separate plats and plans are not required by this subpart if all the information required by this section is contained in either a plat or plan. Each plat and plan must be clear and legible [and contain]. **The plats and plans must contain, on the first page of the plats and plans,** a certification that [the plat or plan accurately depicts all existing conditions and contains] **all of the plats and plans contain** all information required by this section.

(b) Contents of plat.--Each plat must show:

(1) The name, location and dimensions of the condominium.

(2) The location and dimensions of all existing improvements.

(3) The intended location and dimensions of any contemplated improvement to be constructed anywhere within the condominium labeled either "MUST BE BUILT" or "NEED NOT BE BUILT" but need not show contemplated improvements within the boundaries of convertible real estate.

(4) The location and dimensions of any convertible real estate, labeled as such.

Case ID: 251202237

(5) The location and dimensions of any withdrawable real estate, labeled as such.

(6) The extent of any encroachments by or upon any portion of the condominium.

(7) To the extent feasible, the location and dimensions of all easements serving or burdening any portion of the condominium.

(8) The location and dimensions of any vertical unit boundaries not shown or projected on plans recorded pursuant to subsection (c) and that unit's identifying number.

(9) The location with reference to established datum of any horizontal unit boundaries not shown or projected on plans recorded pursuant to subsection (c) and that unit's identifying number.

(10) The location and dimensions of any real estate in which the unit owners will own only an estate for years, labeled as "leasehold real estate."

(11) The distance between noncontiguous parcels of real estate comprising the condominium.

(12) The location and dimensions of limited common elements, including porches, balconies and patios, other than parking spaces and the other limited common elements described in section 3202(2) and (4) (relating to unit boundaries) **not shown on plans recorded pursuant to subsection (c).**

(13) All other matters customarily shown on land surveys.

(c) Contents of plan.--Plans of every building that contains or comprises all or part of any unit and is located or must be built within any portion of the condominium, other than within the boundaries of any convertible real estate, must show:

(1) The location and dimensions of the vertical boundaries of each unit, to the extent those boundaries lie within or coincide with the boundaries of the building in which the unit is located, and that unit's identifying number.

(2) Any horizontal unit boundaries, with reference to established datum, not shown on plats recorded pursuant to subsection (b), and that unit's identifying number.

(3) Any units that may be converted by the declarant to create additional units or common elements (section 3215(c)), identified appropriately.

**(4) The location and dimensions of limited common elements, including porches, balconies and patios, other than parking spaces and other limited common elements described in section 3202(2) and (4) not shown on plats recorded pursuant to subsection (b).**

(d) Horizontal boundaries of unit partly outside building.--Unless the declaration provides otherwise, the horizontal boundaries of part of a unit located outside of a building have the same elevation as the horizontal boundaries of the inside part and need not be depicted on the plats and plans.

(e) Converting or adding real estate.--Upon converting convertible real estate or adding additional real estate (section 3211), the declarant shall record new plats for that

Case ID: 251202237

real estate conforming to the requirements of subsection (b) and new plans for any buildings on that real estate conforming to the requirements of subsection (c). If less than all of any convertible real estate is being converted, the new plats must also show the location and dimensions of the remaining portion.

(f) Converting units.--If a declarant converts any unit into two or more units, limited common elements, or both (section 3215), he shall record new plans showing the location and dimensions of any new units and limited common elements thus created as well as the location and dimensions of any portion of that space not being converted.

(g) Alternative recording.--Instead of recording new plats and plans as required by subsections (e) and (f), the declarant may record new certifications of plats and plans previously recorded if those plats and plans show all improvements required by subsections (e) and (f).

(h) Who may make certifications.--Any certification of a plat or plan required by this section or section 3201(b) (relating to creation of condominium) must be made by an independent registered surveyor, architect or professional engineer.

§ 3211. Conversion and expansion of flexible condominiums.

(a) General rule.--To convert convertible real estate or add additional real estate pursuant to an option reserved under section 3206(1) (relating to contents of declaration; flexible condominiums), the declarant shall prepare, execute and record an amendment to the declaration (section 3219) and comply with section 3210 (relating to plats and plans). The declarant is the unit owner of any units thereby created. The amendment to the declaration must assign an identifying number to each unit formed in the convertible or additional real estate and reallocate common element interests, votes in the association and common expense liabilities. The amendment must describe or delineate any limited common elements formed out of the convertible or additional real estate, showing or designating the unit to which each is allocated to the extent required by section 3209 (relating to limited common elements).

(b) Creations within [added] **additional** real estate.--Convertible or withdrawable real estate may be created within any additional real estate added to the condominium if the amendment adding that real estate includes all matters required by section 3205 (relating to contents of declaration; all condominiums) or section 3206 (relating to contents of declaration; flexible condominiums), as the case may be, and the plat includes all matters required by section 3210(b) (relating to plats and plans). This provision does not extend the time limit on conversion or contraction of a flexible condominium imposed by the declaration pursuant to section 3206(2).

(c) Liability for expenses and right to income.--Until conversion occurs or the period during which conversion may occur expires, whichever occurs first, the declarant alone is liable for real estate taxes assessed against convertible real estate and all other expenses in connection with that real estate. No other unit owner and no other portion of the condominium is subject to a claim for payment of those taxes

Case ID: 251202237

or expenses. Unless the declaration provides otherwise, any income or proceeds from convertible real estate inures to the declarant.

§ 3215. Subdivision or conversion of units.

(a) General rule.--If the declaration expressly so permits, a unit·may be subdivided into two or more units or, in the case of a unit owned by a declarant, may be subdivided or converted into two or more units, common elements, or a combination of units and common elements. Subject to the provisions of the declaration and other provisions of law, upon application of a unit owner to subdivide a unit or upon application of a declarant to convert a unit the association shall prepare, execute and record an amendment to the declaration, including the plats and plans, subdividing or converting that unit.

(b) Execution and contents of amendment.--The amendment to the declaration must be executed by the owner of the unit to be subdivided, assign an identifying number to each unit created and reallocate the common element interest, votes in the association and common expense liability formerly allocated to the subdivided unit to the new units in any reasonable manner prescribed by the owner of the subdivided unit.

(c) Conversion of unit of declarant to common elements.--In the case of a unit owned by a declarant, if a declarant converts all of a unit to common elements, the amendment to the declaration must reallocate among the other units the common element interest, votes in the association and common expense liability formerly allocated to the converted unit on [the same basis used for the initial allocation thereof] **a pro rata basis, inter se.**

§ 3217. [Use for sales purposes.] **Declarant's offices, models and signs.**

[A declarant may maintain sales offices, management offices and models in the condominium only if the declaration so provides and specifies the rights of a declarant with regard to the number, size, location and relocation thereof. Any sales office, management office or model not designated a unit by the declaration is a common element, and if a declarant ceases to be a unit owner, he ceases to have any rights with regard thereto unless it is removed promptly from the condominium in accordance with a right to remove reserved in the declaration. Subject to any limitations in the declaration, a declarant may maintain signs on the common elements advertising the condominium.]

**(a) Common elements.--A declarant may maintain offices and models in the common element portion of the condominium only in connection with the management, sale or rental of units owned by the declarant in the condominium if the declaration so provides and specifies the rights of a declarant with regard to the number, size, location and relocation thereof. At such time as a declarant ceases to be a unit owner, he ceases to have any rights with regard to such portions of the common elements so used unless such portions are removed promptly from the condominium in accordance with a right to remove reserved in the declaration. Upon the relocation of a model or office constituting a common element, a declarant may remove all personal property and fixtures therefrom. Any**

Case ID: 251202237

fixtures not so removed shall be deemed common elements, and any personal property not so removed shall be deemed the property of the association.

**(b)** Signs.--Subject to any limitations in the declaration, a declarant may maintain signs in his units and on the common elements advertising units in the condominium owned by the declarant for sale or lease.

**(c)** Units.--A declarant shall have the right to locate, relocate and maintain offices and models used only in connection with the management, sale or rental of units owned by the declarant in the condominium in his unit or units in the condominium, notwithstanding the fact that the declaration would otherwise preclude use of units for such purpose, but subject to all other provisions in the declaration, including, without limitation, modification or elimination of declarant's rights pursuant to this subsection by specific reference thereto.

§ 3218. Easement to facilitate completion, conversion and expansion.

Subject to the provisions of the declaration, a declarant has an easement through the common elements as may be reasonably necessary for the purpose of discharging a declarant's obligations or exercising special declarant rights, [whether arising under this subpart or reserved in the declaration] **however arising.**

§ 3219. Amendment of declaration.

(a) Number of votes required.--Except in cases of amendments that may be executed by a declarant under [sections] **section** 3210(e) and (f) (relating to plats and plans), 3211(a) (relating to conversion and expansion of flexible condominiums) or 3212(a) (relating to withdrawal of withdrawable real estate); the association under [sections] **subsection (f) or section** 3107 (relating to eminent domain), 3207(d) (relating to leasehold condominiums), 3209(c) (relating to limited common elements) or 3215(a) (relating to subdivision or conversion of units); or certain unit owners under [sections] **section** 3209(b) (relating to limited common elements), 3214(a) (relating to relocation of boundaries between adjoining units), 3215(b) (relating to subdivision or conversion of units) or 3220(b) (relating to termination of condominium), and except as limited by subsection (d), the declaration, including the plats and plans, may be amended only by vote or agreement of unit owners of units to which at least 67% of the votes in the association are allocated, or any larger majority the declaration specifies. The declaration may specify a smaller number only if all of the units are restricted exclusively to nonresidential use.

(b) Limitation of action to challenge amendment.--No action to challenge the validity of an amendment adopted by the association pursuant to this section may be brought more than one year after the amendment is recorded.

(c) Recording amendment.--Every amendment to the declaration must be recorded in every county in which any portion of the condominium is located in the same records as are maintained for the recording of deeds of real property and shall be indexed in the name of the condominium in both the grantor and grantee index. An amendment is effective only upon recordation.

Case ID: 251202237

(d) When unanimous consent required.--Except to the extent expressly permitted or required by other provisions of this subpart, no amendment may create or increase special declarant rights, increase the number of units or change the boundaries of any unit, the common element interest, common expense liability or voting strength in the association allocated to a unit, or the uses to which any unit is restricted, in the absence of unanimous consent of the unit owners.

(e) Officer authorized to execute amendment.--Amendments to the declaration required by this subpart to be recorded by the association shall be prepared, executed, recorded and certified by any officer of the association designated for that purpose or, in the absence of designation, by the president of the association.

**(f) Corrective amendments.--Except as otherwise provided in the declaration, if any amendment to the declaration is necessary in the judgment of the executive board to cure any ambiguity or to correct or supplement any provision of the declaration, including the plats and plans, that is defective, missing or inconsistent with any other provision thereof or with this subpart or if an amendment is necessary in the judgment of the executive board to conform to the requirements of any agency or entity that has established national or regional standards with respect to loans secured by mortgages or deeds of trust on units in condominium projects (such as the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation), then, at any time and from time to time, the executive board may at its discretion effect an appropriate corrective amendment without the approval of the unit owners or the holders of any liens on all or any part of the condominium, upon receipt by the executive board of an opinion from independent legal counsel to the effect that the proposed amendment is permitted by the terms of this subsection.**

§ 3220. Termination of condominium.

(a) Number of votes required.--Except in the case of a taking of all the units by eminent domain (section 3107), a condominium may be terminated only by agreement of unit owners of units to which at least 80% of the votes in the association are allocated, or any larger percentage the declaration specifies. The declaration may specify a smaller percentage only if all of the units in the condominium are restricted exclusively to nonresidential uses.

(b) Execution and recording agreement and ratifications.-- [An agreement of unit owners to terminate a condominium must be evidenced by their execution of a termination agreement or ratifications thereof. If, pursuant to a termination agreement, the real estate constituting the condominium is to be sold following termination, the termination agreement must set forth the terms of the sale.] **An agreement of unit owners to terminate a condominium must be evidenced by their execution of a termination agreement or ratifications thereof, in the same manner as a deed, by the requisite number of unit owners who are owners of record as of the date preceding the date of recordation of the termination agreement. The termination agreement must specify the date it was first executed or ratified by a unit owner. The termination**

Case ID: 251202237

**agreement will become null and void unless it is recorded on or before the earlier of:**

>    **(1) The expiration of one year from the date it was first executed or ratified by a unit owner.**

>    **(2) Such date as shall be specified in the termination agreement.**

**If, pursuant to a termination agreement, the real estate constituting the condominium is to be sold following termination, the termination agreement must set forth the terms of the sale.** A termination agreement and all ratifications thereof must be recorded in every county in which a portion of the condominium is located in the same records as are maintained for the recording of deeds of real property and shall be indexed in the name of the condominium in both the grantor index and the grantee index. A termination agreement is effective only upon recordation.

(c) Status if real estate sold.--The association, on behalf of the unit owners, may contract for the sale of the condominium, but the contract is not binding on the unit owners until approved pursuant to subsections (a) and (b). If the real estate constituting the condominium is to be sold following termination, title to that real estate, upon termination, vests in the association as trustee for the holders of all interests in the units. Thereafter, the association has all powers necessary and appropriate to effect the sale. Until the sale has been concluded and the proceeds thereof distributed, the association continues in existence with all powers it had before termination. Proceeds of the sale must be distributed to unit owners and lienholders as their interests may appear, in proportion to the respective interests of unit owners as provided in subsection (f). Unless otherwise specified in the termination agreement, as long as the association holds title to the real estate, each unit owner and his successors in interest have an exclusive right to occupancy of the portion of the real estate that formerly constituted his unit. During the period of that occupancy, each unit owner and his successors in interest remain liable for all assessments and other obligations imposed on unit owners by this subpart or the declaration.

(d) Status if real estate not sold.--If the real estate constituting the condominium is not to be sold following termination, title to the real estate, upon termination, vests in the unit owners as tenants in common in proportion to their respective interests as provided in subsection (f) and liens on the units shift accordingly. While the tenancy in common exists, each unit owner and his successors in interest have an exclusive right to occupancy of the portion of the real estate that formerly constituted his unit.

(e) Distribution of assets of association.--Following termination of the condominium, [and after payment of or provision for the claims of the association's creditors, the assets of the association shall be distributed to unit owners in proportion to their respective interests as provided in subsection (f). The proceeds of sale described in subsection (c) and held by the association as trustee are not assets of the association.] **the proceeds of any sale of real estate, together with the assets of the association, shall be held by the association as trustee or unit owners and holders of liens**

Case ID: 251202237

on the units as their interests may appear. Following termination, creditors of the association holding liens on the units which were recorded, filed of public record or otherwise perfected before termination may enforce those liens in the same manner as any lienholder. All other creditors of the association are to be treated as if they had perfected liens on the units immediately before termination.

(f) Respective interests of unit owners.--The respective interests of unit owners referred to in subsections (c), (d) and (e) are as follows:

(1) Except as provided in paragraph (2), the respective interests of unit owners are the fair market values of their units, limited common elements and common element interests immediately before the termination, as determined by one or more independent appraisers selected by the association. The decision of the independent appraisers shall be distributed to the unit owners and becomes final unless disapproved within 30 days after distribution by unit owners of units to which 25% of the votes in the association are allocated. The proportion of any unit owner's interest to that of all unit owners is determined by dividing the fair market value of that unit owner's unit and common element interest by the total fair market values of all the units and common elements.

(2) If any unit or any limited common element is destroyed to the extent that an appraisal of the fair market value thereof prior to destruction cannot be made, the interests of all unit owners are their respective common element interests immediately before the termination.

(g) Effect of foreclosure or enforcement of lien.--[Foreclosure] **Except as provided in subsection (h), foreclosure** or enforcement of a lien or encumbrance against the entire condominium does not of itself terminate the condominium, and foreclosure or enforcement of a lien or encumbrance against a portion of the condominium, other than withdrawable real estate, does not withdraw that portion from the condominium. Foreclosure or enforcement of a lien or encumbrance against withdrawable real estate does not of itself withdraw that real estate from the condominium but the person taking title thereto has the right to require from the association, upon request, an amendment excluding the real estate from the condominium.

**(h) Exclusion from condominium upon foreclosure.--If a lien or encumbrance against a portion of the real estate comprising the condominium has priority over the declaration and if the lien or encumbrance has not been partially released, the parties foreclosing the lien or encumbrance may, upon foreclosure, record an instrument excluding the real estate subject to that lien or encumbrance from the condominium.**

Section 4. Title 68 is amended by adding sections to read:
§ 3222. Master associations.

(a) Applicability of section.--If the declaration for a condominium provides that any of the powers described in section 3302 (relating to powers of unit owners' association) with respect to the condominium are to be exercised by or may be delegated to a profit or nonprofit corporation or unincorporated association (a "master association") which

exercises those or other powers on behalf of one or more other condominiums or other incorporated or unincorporated associations, then, except as modified by this section, all provisions of this subpart applicable to unit owners' associations shall apply to any such master association insofar as its actions affect the condominium.

(b) Powers.--Unless a master association is acting in the capacity of an association described in section 3301 (relating to organization of unit owners' association) with respect to a condominium which is part of the master association, it may exercise with respect to the condominium only such powers set forth in section 3302 and only to the extent expressly permitted in the declaration of condominium which provides for the delegation of powers from its condominium association to the master association and accepted by such master association as indicated in the provisions of the declaration or other organizational documents of such master association.

(c) Liability of executive board members and officers.--If the declaration of a condominium provides that the executive board may delegate certain powers to a master association, the members of the executive board have no liability for the acts or omissions of the master association with respect to those powers following such delegation. The officers and members of the governing board of the master association are subject to liability to the condominium association whose powers are delegated thereto and the unit owners of such condominium on the same basis as officers and executive board members of such condominium immediately before such delegation of powers.

(d) Rights and responsibilities of persons electing governing body.--The rights and responsibilities of unit owners with respect to the unit owners' association set forth in sections 3303 (relating to executive board members and officers), 3308 (relating to meetings), 3309 (relating to quorums), 3310 (relating to voting; proxies) and 3320 (relating to declarant delivery of items to association) apply in the conduct of the affairs of a master association with respect to the exercise of powers delegated pursuant to a condominium declaration to such master association, but apply only to those persons who elect the governing body of a master association, whether or not those persons are otherwise unit owners within the meaning of this subpart.

(e) Election of master association governing body.-- Notwithstanding the provisions of section 3303(e) with respect to the election of the executive board by all unit owners after the period of declarant control ends and even if a master association is also an association described in section 3301, the instrument creating the master association and the declaration of each condominium or the organizational documents of other associations the powers of which are assigned pursuant to the declaration or organizational documents or delegated to the master association shall provide that the governing body of the master association must be elected after the period of declarant control in any of the following ways:

(1) All unit owners of all condominiums and other properties subject to the master association elect all members of the governing body of the master association.

Case ID: 251202237

(2) All members of the governing bodies of the condominium associations and other property owners' associations subject to the master association elect all members of the master association governing body.

(3) All unit owners of each condominium and other property owners' associations subject to the master association elect specified members of the master association governing body.

(4) All members of the governing bodies of the condominiums and other property associations subject to the master association elect specified members of the master association governing body.

(f) Delegation of responsibility and authority.--The provisions of this section shall apply to a condominium if and when:

(1) there occurs either a date specified in the declaration or any amendment thereto from and after which this section shall apply to the condominium;

(2) there occurs an event or action that the declaration or any amendment thereto states shall cause this section to become applicable, and the association causes to be recorded an instrument duly executed by the president of the association stating that:

(i) such event or action has occurred and the date of such occurrence, thereby causing this section to become applicable to the condominium; and

(ii) that a copy of such instrument has been sent to all unit owners; or

(3) the declarant executes and records an instrument stating that this section shall thereafter apply to the condominium and that a copy of such instrument has been sent to the executive board and all unit owners.

Paragraph (3) shall be applicable only if the declarant shall have expressly reserved in the declaration, pursuant to section 3205(12) (relating to contents of declaration; all condominiums), the special declarant right to make this section applicable to the condominium and only if the instrument exercising such right shall have been recorded during the time period allowed for the exercise of such right.

(g) Delegation of all powers.--If all the powers of a condominium association are delegated to a master association and accepted by such master association pursuant to subsection (b), then the governing body of the master association may act in all respects as the executive board of the condominium and no separate executive board need be elected or exist.

§ 3223. Merger or consolidation of condominiums.

(a) General rule.--Any two or more condominiums by agreement of the unit owners as provided in subsection (b) may be merged or consolidated into a single condominium. In the event of a merger or consolidation, unless the agreement otherwise provides, the resultant condominium is, for all purposes, the legal successor of all of the preexisting condominiums, and the operations and activities of all associations of the preexisting condominiums shall be merged or consolidated into a single association which shall hold all powers, rights, obligations, assets and liabilities of all preexisting associations. The resultant condominium shall, in addition, be subject in all respects to the provisions and

Case ID: 251202237

requirements of this subpart regardless of whether or not any of the preexisting condominiums shall have been established under this subpart.

(b) Requirements of agreement.--The merger or consolidation of two or more condominiums pursuant to subsection (a) must be evidenced by a recorded agreement duly executed by the president of the association of each of the preexisting condominiums following approval by owners of units to which are allocated the percentage of votes in each condominium required to terminate such condominium. Any such agreement must be recorded in every county in which a portion of the condominium is located and is not effective until so recorded.

(c) Reallocations.--Every merger or consolidation agreement must provide for the reallocation of the common element interests, common expense liability, including both general and limited common expenses, and portion of the votes in the resulting association among the units of the resulting condominium either:

(1) by stating the reallocations or the formulas upon which they are based; or

(2) by stating the common element interests, common expense liability, including both general and limited common expenses, and portion of the votes in the resulting association which are allocated to all of the units comprising each of the preexisting condominiums, and providing that the common element interests, common expense liability, including both general and limited common expenses, and portion of the votes in the association for the resulting condominium shall be the same as was allocated to each unit formerly comprising a part of the preexisting condominium by the declaration of the preexisting condominium.

(d) Action by declarant.--Notwithstanding the provisions of subsections (a) and (b), if a declarant expressly retained the special declarant right to merge or consolidate a condominium pursuant to section 3205(13) (relating to contents of declaration; all condominiums) and if the declarant exercised such right within the time period allowed for such exercise by giving written notice to that effect to all unit owners accompanied by a copy of the agreement evidencing such merger or consolidation, then such agreement may be executed by the declarant rather than by the president of the association of that condominium and without the necessity for approval or consent by unit owners or their mortgagees, provided that the agreement is recorded within the time period allowed for the exercise of this special declarant right.

Section 5. Sections 3301, 3302, 3303, 3304, 3306, 3308, 3310, 3311, 3312, 3313, 3314, 3315 and 3316 of Title 68 are amended to read:

§ 3301. Organization of unit owners' association.

A unit owners' association shall be organized no later than the date [the condominium is created] **the first unit of the condominium is conveyed to a person other than a successor declarant.** The membership of the association at all times shall consist exclusively of all the unit owners or, following termination of the condominium, of all former unit owners entitled to distributions of proceeds under section 3220 (relating to termination of condominium) or their heirs,

Case ID: 251202237

successors or assigns. The association shall be organized as a profit or nonprofit corporation or as an unincorporated association.

§ 3302. Powers of unit owners' association.

(a) General rule.--Subject to the provisions of the declaration, the association, even if unincorporated, may:

(1) Adopt and amend bylaws and rules and regulations.

(2) Adopt and amend budgets for revenues, expenditures and reserves and collect assessments for common expenses from unit owners.

(3) Hire and terminate managing agents and other employees, agents and independent contractors.

(4) Institute, defend or intervene in litigation or administrative proceedings in its own name on behalf of itself or two or more unit owners on matters affecting the condominium.

(5) Make contracts and incur liabilities.

(6) Regulate the use, maintenance, repair, replacement and modification of common elements.

(7) Cause additional improvements to be made as a part of the common elements.

(8) Acquire, hold, encumber and convey in its own name any right, title or interest to real or personal property, **but common elements may be conveyed or subjected to a security interest only pursuant to the provisions of section 3318 (relating to conveyance or encumbrance of common elements).**

(9) Grant easements, leases, licenses and concessions through or over the common elements, **but any such easement, lease, license or concession:**

**(i) that is not for the benefit of all or substantially all of the unit owners shall not be granted without the same unit owner approval that is required for an amendment to the declaration; or**

**(ii) that materially impairs any right or benefit that one or more unit owners may have with respect to the common elements shall not be granted without the prior written approval of those unit owners.**

(10) Impose and receive any payments, fees or charges for the use, rental or operation of the common elements other than limited common elements described in section 3202(2) and (4) (relating to unit boundaries).

(11) Impose charges for late payment of assessments and, after notice and an opportunity to be heard, levy reasonable fines for violations of the declaration, bylaws and rules and regulations of the association.

(12) Impose reasonable charges for the preparation and recordation of amendments to the declaration, resale certificates required by section 3407 (relating to resales of units) or statements of unpaid assessments.

(13) Provide for the indemnification of its officers and executive board and maintain directors' and officers' liability insurance.

(14) Exercise any other powers conferred by the declaration or bylaws.

Case ID: 251202237

(15) Exercise all other powers that may be exercised in this Commonwealth by legal entities of the same type as the association.

(16) Exercise any other powers necessary and proper for the governance and operation of the association.

**(17) Assign its right to future income, including the right to receive the payments made on account of common expense assessments, but only to the extent the declaration expressly so provides.**

**(18) Assign or delegate any powers of the association listed in this section to a master association subject to the provisions of section 3222 (relating to master associations) and accept any assignment or delegation of powers from one or more condominiums or other incorporated or unincorporated associations.**

(b)  Restriction on limitations in declaration.--Notwithstanding subsection (a), the declaration may not impose limitations on the power of the association to deal with the declarant that are more restrictive than the limitations imposed on the power of the association to deal with other persons.

§ 3303.  Executive board members and officers.

(a)  Powers and fiduciary status.--Except as provided in the declaration, the bylaws, in subsection (b) or other provisions of this subpart, the executive board may act in all instances on behalf of the association. [The] **In the performance of their duties, the** officers and members of the executive board [appointed by the declarant are subject to liability as fiduciaries of the unit owners for their acts or omissions] **shall stand in a fiduciary relation to the association and shall perform their duties, including duties as members of any committee of the board upon which they may serve, in good faith in a manner they reasonably believe to be in the best interests of the association and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances. In performing his duties, an officer or executive board member shall be entitled to rely in good faith on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by any of the following:**

**(1) One or more other officers or employees of the association whom the officer or executive board member reasonably believes to be reliable and competent in the matters presented.**

**(2) Counsel, public accountants or other persons as to matters which the officer or executive board member reasonably believes to be within the professional or expert competence of such person.**

**(3) A committee of the executive board upon which he does not serve, duly designated in accordance with law, as to matters within its designated authority, which committee the officer or executive board member reasonably believes to merit confidence.**

**An officer or executive board member shall not be considered to be acting in good faith if he has knowledge concerning the matter in question that would cause his reliance to be unwarranted.**

(b)  Limitation on authority.--The executive board may not act on behalf of the association to amend the declaration (section 3219), to terminate the condominium (section 3220) or to elect members of the executive board or determine the qualifications, powers and duties or terms of office of executive board members (section 3303(e)) but the executive board may fill vacancies in its membership for the unexpired portion of any term. **The executive board shall deliver to all unit owners copies of each budget approved by the executive board and notice of any capital expenditure approved by the executive board promptly after either such approval.** In addition to other rights conferred by the declaration, bylaws or this subpart, the unit owners, by majority or any larger vote specified in the declaration, may reject any budget or capital expenditure approved by the executive board, within 30 days after the approval.

(c)  Status during period of declarant control.--Subject to subsection (d), the declaration may provide for a period of declarant control of the association during which period a declarant or persons designated by him may appoint and remove the officers and members of the executive board. Any period of declarant control extends from the date of the first conveyance of a unit to a person other than a declarant for a period not exceeding seven years in the case of a flexible condominium containing convertible real estate or to which additional real estate may be added, or five years in the case of any other condominium. Regardless of the period provided in the declaration, a period of declarant control terminates no later than 180 days after conveyance of 75% of the units to unit owners other than a declarant. A declarant may voluntarily surrender the right to appoint and remove officers and members of the executive board before termination of that period but in that event he may require, for the duration of the period of declarant control, that specified actions of the association or executive board, as described in a recorded instrument executed by the declarant, be approved by the declarant before they become effective.

(d)  Election of members during transfer of declarant control.--Not later than 60 days after conveyance of 25% of the units to unit owners other than a declarant, not less than 25% of the members of the executive board shall be elected by unit owners other than the declarant. Not later than 60 days after conveyance of 50% of the units to unit owners other than a declarant, not less than 33 1/3% of the members of the executive board shall be elected by unit owners other than the declarant.

(e)  Election of members and officers following declarant control.--Not later than the termination of any period of declarant control, the unit owners shall elect an executive board of at least three members at least a majority of whom must be unit owners, **except that the executive board may consist of two members, both of whom must be unit owners, if the condominium consists of two units.** The executive board shall elect the officers. The persons elected shall take office upon election.

(f)  Calculation of percentages of units conveyed.--In determining whether the period of declarant control has terminated under subsection (c), or whether unit owners other

than a declarant are entitled to elect members of the
executive board under subsection (d), the percentage of the
units conveyed is presumed to be that percentage which would
have been conveyed if all the units the declarant has built or
reserved the right to build in the declaration were included
in the condominium.

§ 3304.  Transfer of special declarant rights.

(a)  Execution and recording instrument of transfer.--No
special declarant rights (section 3103) created or reserved
under this subpart may be transferred except by an instrument
evidencing the transfer recorded in every county in which any
portion of the condominium is located in the same records as
are maintained for the recording of deeds of real property and
shall be indexed in the name of the condominium in both the
grantor and grantee index. The instrument is not effective
unless executed by the transferee.

(b)  Liability of declarant following transfer.--Upon
transfer of any special declarant right, the liability of a
transferor declarant is as follows:

(1)  A transferor is not relieved of any obligation or
liability arising before the transfer and remains liable
for warranty obligations imposed upon him by this subpart.
Lack of privity does not deprive any unit owner of standing
to bring an action to enforce any obligation of the
transferor.

(2)  If [a transferor retains any special declarant
right or if] a successor to any special declarant right is
an affiliate of a declarant (section 3103), the transferor
[is subject to liability for all obligations and
liabilities imposed on a declarant by this subpart or by
the declaration arising after the transfer and] is jointly
and severally liable with [the] **any** successor for the
liabilities and obligations **or liabilities** of the successor
[which relate] **relating** to the condominium.

**(2.1)  If a transferor retains any special declarant
right, but transfers one or more other special declarant
rights to a successor who is not an affiliate of the
declarant, the transferor is liable for any obligations or
liabilities imposed on a declarant by this subpart or by
the declaration relating to the retained special declarant
rights arising after the transfer.**

(3)  A transferor [who retains no special declarant
right] has no liability for any act or omission or any
breach of a contractual or warranty obligation arising from
the exercise of a special declarant right by a successor
declarant who is not an affiliate of the transferor **and to
whom the special declarant right has not theretofore been
assigned.**

(c)  Rights of purchaser in foreclosure, etc. proceedings.-
-Unless otherwise provided in a mortgage instrument or deed of
trust, in case of foreclosure of a mortgage, sale by a trustee
under a deed of trust or sale under [the Federal Bankruptcy
Act] **11 U.S.C. (relating to bankruptcy)** or receivership
proceedings of any units owned by a declarant in the
condominium **or additional real estate in a flexible
condominium**, a person acquiring title to all the units being
foreclosed or sold, but only upon his request, succeeds to all
special declarant rights **related to such units or additional**

Case ID: 251202237

**real estate,** or only to any rights reserved in the declaration
pursuant to section 3217 (relating to [use for sales purposes]
**declarant's offices, models and signs) and held by that
declarant** to maintain models, sales offices and signs. The
judgment or instrument conveying title shall provide for
transfer of only the special declarant rights requested.

(d) Rights of declarant following foreclosure, etc.
proceedings.--Upon foreclosure, **tax sale, judicial sale,** sale
by a trustee under a deed of trust or sale under [the Federal
Bankruptcy Act] **11 U.S.C. (relating to bankruptcy)** or
receivership **or similar** proceedings of all units **and other
real estate** in a condominium owned by a declarant:

(1) the declarant ceases to have any special declarant
rights; and

(2) the period of declarant control (section 3303(c))
terminates unless the judgment or instrument conveying
title provides for transfer of all special declarant rights
**held by that declarant** to a successor declarant.

(e) Liabilities and obligations of successors.--The
liabilities and obligations of persons who succeed to special
declarant rights are as follows:

(1) A successor to any special declarant right who is
an affiliate of a declarant is subject to all obligations
and liabilities imposed on [any declarant] **the transferor**
by this subpart or by the declaration.

(2) A successor to any special declarant right, other
than a successor described in paragraph (3) or (4), who is
not an affiliate of a declarant is subject to all
obligations and liabilities imposed [upon a declarant] by
this subpart or the declaration [but he is not subject to
liability for misrepresentations or warranty obligations on
components made by any previous declarant or made before
the condominium was created, or for a breach of fiduciary
obligation by any previous declarant.]:

(i) **on a declarant which relate to his exercise
or nonexercise of special declarant rights; or**

(ii) **on his transferor, other than:**

(A) **misrepresentations by any previous
declarant, except to the extent knowingly
continued or permitted to continue without
correcting such misrepresentations;**

(B) **warranty obligations on improvements
made by any previous declarant or made before the
condominium was created;**

(C) **breach of any fiduciary obligation by
any previous declarant or his appointees to the
executive board; or**

(D) **any liability or obligation imposed on
the transferor as a result of the transferor's
acts or omissions after the transfer.**

(3) A successor to only a right reserved in the
declaration to maintain models, sales offices and signs
(section 3217), if he is not an affiliate of a declarant,
may not exercise any other special declarant right and is
not subject to any liability or obligation as a declarant
except the obligation to provide a public offering
statement and any liability arising as a result thereof.

Case ID: 251202237

(4)  A successor to all special declarant rights **held by his transferor** who is not an affiliate of [a] **that transferor** declarant and who succeeded to those rights pursuant to a deed in lieu of foreclosure or a judgment or instrument conveying title to units under subsection (c) may declare his intention in a recorded instrument to hold those rights solely for transfer to another person. Thereafter, until transferring all special declarant rights to any person acquiring title to any unit owned by the successor or until recording an instrument permitting exercise of all those rights, that successor may not exercise any of those rights other than [the] **any** right **held by his transferor** to control the executive board in accordance with the provisions of section 3303(c) (relating to executive board members and officers) for the duration of any period of declarant control and any attempted exercise of those rights is void. So long as a successor declarant may not exercise special declarant rights under this subsection he is not subject to any liability or obligation as a declarant other than liability for the successor's acts and omissions under section 3303(c).

(f)  Limitation on liability of successor.--Nothing in this section subjects any successor to a special declarant right to any claims against or other obligations of a transferor declarant other than claims and obligations arising under this subpart or the declaration.

§ 3306.  Bylaws.

(a)  Mandatory provisions.--The bylaws of the association must provide for:

(1)  The number of members of the executive board and the titles of the officers of the association.

(2)  Election by the executive board of a president, treasurer, secretary and any other officers of the association the bylaws specify.

(3)  The qualifications, powers and duties, terms of office and manner of electing and removing executive board members and officers and filling vacancies.

(4)  Which, if any, of its powers the executive board or officers may delegate to other persons or to a managing agent.

(5)  Which of its officers may prepare, execute, certify and record amendments to the declaration on behalf of the association.

**(6)  The method of amending the bylaws.**

(b)  Other provisions.--Subject to the provisions of the declaration, the bylaws may provide for any other matters the association deems necessary and appropriate.

§ 3308.  Meetings.

The bylaws must require that meetings of the association be held at least once each year and provide for special meetings. The bylaws must specify which of the association's officers, not less than ten nor more than 60 days in advance of any meeting, shall cause notice to be hand delivered or sent prepaid by United States mail to the mailing address of each unit or to any other mailing address designated in writing by the unit owner. The notice of any meeting must state the time and place of the meeting and the items on the agenda, including the general nature of any proposed amendment to the

Case ID: 251202237

declaration or bylaws, **any budget or assessment changes and, where the declaration or bylaws require approval of unit owners, any proposal to remove an executive board member or officer.**

§ 3310.  Voting; proxies.

(a)  [Multiple owners of a unit.--If only one of the multiple owners of a unit is present at a meeting of the association, he is entitled to cast all the votes allocated to that unit.] **Unit owner other than natural person.--If the owner of a unit is a corporation, joint venture, partnership or unincorporated association, the natural person who shall be entitled to cast the vote for such unit shall be the person named in a certificate executed by such entity pursuant to its governing documents. If the owner of a unit is a trust, the trustee or trustees shall be deemed to be the owner for the voting purposes. Where the ownership of a unit is in more than one person, the natural person who shall be entitled to cast the vote of such unit shall be the person named in a certificate executed by all of the owners of such unit and filed with the secretary or, in the absence of such named person from the meeting or the failure to execute and file such a certificate, the person who shall be entitled to cast the vote of such unit shall be the person owning such unit who is present.** If more than one of the multiple owners are present, the votes allocated to that unit may be cast only in accordance with their unanimous agreement unless the declaration expressly provides otherwise. There [is] **shall be deemed to be** unanimous agreement if any one of the multiple owners casts the votes allocated to that unit without protest being made promptly to the person presiding over the meeting by any of the other owners of the unit. **Such certificate shall be valid until revoked by a subsequent certificate similarly executed. Except where execution by owners of a unit in the same manner as a deed is required in this subpart and subject to the provisions of the declaration and bylaws, wherever the approval or disapproval of a unit owner is required by this subpart, the declaration or the bylaws, such approval or disapproval shall be made only by the person who would be entitled to cast the vote of such unit at any meeting of the association.**

(b)  Proxies.--Votes allocated to a unit may be cast pursuant to a proxy duly executed by a unit owner. If a unit is owned by more than one person, each owner of the unit may vote or register protest to the casting of votes by the other owners of the unit through a duly executed proxy. A unit owner may not revoke a proxy given pursuant to this section except by actual notice of revocation to the person presiding over a meeting of the association. A proxy is void if it is not dated or purports to be revocable without notice. A proxy terminates one year after its date unless it specifies a shorter term.

[(c)  Cumulative and class voting.--The declaration may provide for cumulative voting only for the purpose of electing members of the executive board and for class voting on specified issues affecting the class if necessary to protect valid interests of the class. A declarant may not utilize cumulative or class voting for the purpose of evading any limitation imposed on declarants by this subpart.]

Case ID: 251202237

(d)  Units owned by association.--No votes allocated to a unit owned by the association may be cast.

§ 3311.  Tort and contract liability.

(a)  General rule.--

(1)  An action in tort alleging a wrong done by a declarant or his agent or employee in connection with a portion of any convertible or withdrawable real estate or other portion of the condominium which the declarant has the responsibility to maintain may not be brought against the association or against a unit owner other than a declarant.

(2)  Except as otherwise provided by paragraph (1):

(i)  An action in tort alleging a wrong done by the association or by an agent or employee of the association, or an action arising from a contract made by or on behalf of the association, shall be brought against the association.

(ii)  A unit owner shall not be subject to suit or, except as otherwise provided by subsection (b), be otherwise directly or indirectly held accountable for the acts of the association or its agents or employees on behalf of the association.

(3)  If the tort or breach of contract occurred during any period of declarant control (section 3303(c)), the declarant is liable to the association for all unreimbursed losses suffered by the association as a result of that tort or breach of contract, including costs and reasonable attorney's fees. **If a claim for a tort or breach of contract is made after the period of declarant control, the association shall have no right against the declarant under this paragraph unless the association shall have given the declarant:**

**(i)  notice of the existence of such a claim promptly after the date on which one or more members of the executive board who are not designees of the declarant learns of the existence of such a claim; and**

**(ii)  an opportunity to defend against such claim on behalf of the association but at the declarant's expense.**

Any statute of limitation affecting the association's right of action under this section is tolled until the period of declarant control terminates.

(4)  A unit owner is not precluded from bringing an action contemplated by this subsection because he is a unit owner or a member or officer of the association.

(b)  Lien of judgment.--[A] **Except as otherwise provided in this subpart, a** judgment for money against the association, if and when entered of record against the name of the association in the office of the clerk of the court of common pleas of the county or counties where the condominium is located, or in the office of the branch of the court of common pleas embracing such county or counties, shall also constitute a lien against each unit for a pro rata share of the amount of that judgment, including interest thereon, based on the common expense liability allocated to that unit (section 3208). No other property of a unit owner is subject to the claims of creditors of the association.

(c)  Indexing judgment.--A judgment against the association shall be indexed in the name of the condominium.

(d)  Applicability of section.--The provisions of this section shall be applicable to all associations without regard to whether the association is organized as a corporation or as an unincorporated association.

§ 3312.  Insurance.

(a)  Insurance to be carried by association.--Commencing not later than the time of the first conveyance of a unit to a person other than a declarant, the association shall maintain, to the extent reasonably available:

(1)  Property insurance on the common elements and units exclusive of improvements and betterments installed in units [by unit owners] insuring against all risks of direct physical loss commonly insured against or, in the case of a conversion [condominium] **building**, against fire and extended coverage perils. The total amount of insurance after application of any deductibles shall be not less than 80% of the actual cash value of the insured property exclusive of land, excavations, foundations and other items normally excluded from property policies.

(2)  Comprehensive general liability insurance, including medical payments insurance, in an amount determined by the executive board but not less than any amount specified in the declaration covering all occurrences commonly insured against for death, bodily injury and property damage arising out of or in connection with the use, ownership or maintenance of the common elements.

(b)  Other insurance carried by association.--If the insurance described in subsection (a) is not maintained, the association promptly shall cause notice of that fact to be hand delivered or sent prepaid by United States mail to all unit owners. The declaration may require the association to carry any other insurance and the association in any event may carry any other insurance it deems appropriate to protect the association or the unit owners.

(c)  Contents of insurance policies.--Insurance policies carried pursuant to subsection (a) must provide that:

(1)  Each unit owner is an insured person under the policy with respect to liability arising out of his ownership of an undivided interest in the common elements or membership in the association.

(2)  The insurer waives its right to subrogation under the policy against any unit owner of the condominium or members of his household.

(3)  No act or omission by any unit owner, unless acting within the scope of his authority on behalf of the association, will void the policy or be a condition to recovery under the policy.

(4)  If, at the time of a loss under the policy, there is other insurance in the name of a unit owner covering the same property covered by the policy, the policy is primary insurance not contributing with the other insurance.

(d)  Proceeds from property insurance.--Any loss covered by the property policy under subsection (a)(1) shall be adjusted with the association but the insurance proceeds for that loss shall be payable to any insurance trustee designated for that

Case ID: 251202237

purpose or otherwise to the association and not to any mortgagee or beneficiary under a deed of trust. The insurance trustee or the association shall hold any insurance proceeds in trust for unit owners and lienholders as their interests may appear. Subject to the provisions of subsection (g), the proceeds shall be disbursed first for the repair or restoration of the damaged common elements and units and unit owners and lienholders are not entitled to receive payment of any portion of the proceeds unless there is a surplus of proceeds after the common elements and units have been completely repaired or restored or the condominium is terminated.

(e)  Unit owner may obtain insurance.--An insurance policy issued to the association does not prevent a unit owner from obtaining insurance for his own benefit.

(f)  Evidence and cancellation of insurance.--An insurer that has issued an insurance policy under this section shall issue certificates or memoranda of insurance to the association and, upon request, to any unit owner, mortgagee or beneficiary under a deed of trust. The insurance may not be cancelled until 30 days after notice of the proposed cancellation has been mailed to the association, each unit owner and each mortgagee or beneficiary under a deed of trust to whom certificates of insurance have been issued.

(g)  Disposition of insurance proceeds.--

(1)  Any portion of the condominium damaged or destroyed shall be repaired or replaced promptly by the association unless:

(i)  the condominium is terminated;

(ii)  repair or replacement would be illegal under any state or local health or safety statute or ordinance; or

(iii)  eighty percent of the unit owners, including every owner of a unit or assigned limited common element which will not be rebuilt, vote not to rebuild.

The cost of repair or replacement in excess of insurance proceeds and reserves is a common expense.

(2)  If the entire condominium is not repaired or replaced:

(i)  the insurance proceeds attributable to the damaged common elements shall be used to restore the damaged area to a condition compatible with the remainder of the condominium;

(ii)  the insurance proceeds attributable to units and limited common elements which are not rebuilt shall be distributed to the owners of those units and the owners of the units to which those limited common elements were assigned; and

(iii)  the remainder of the proceeds shall be distributed to all the unit owners in proportion to their common element interests.

If the unit owners vote not to rebuild any unit, that unit's entire common element interest, votes in the association and common expense liability are automatically reallocated upon the vote as if the unit had been condemned under section 3107(a) (relating to eminent domain) and the association promptly shall

Case ID: 251202237

prepare, execute and record an amendment to the declaration reflecting the reallocations.

(3) Notwithstanding the provisions of this subsection, section 3220 (relating to termination of condominium) governs the distribution of insurance proceeds if the condominium is terminated.

(h) Nonresidential condominiums.--The provisions of this section may be varied or waived in the case of a condominium all of whose units are restricted to nonresidential use.

§ 3313. Surplus funds.

[Unless otherwise provided in the declaration, any surplus funds of the association remaining after payment of or provision for common expenses and any prepayment of reserves must be credited to the unit owners to reduce their future common expense assessments.] **Any amounts accumulated from assessments for limited common expenses and income from the operation of limited common elements to which such limited common expenses pertain in excess of the amount required for actual limited common expenses and reserves for future limited common expenses shall be credited to each unit assessed for a share of such limited common expenses in proportion to the share of such limited common expenses so assessed, these credits to be applied, unless the declaration provides otherwise, to the next monthly assessments of limited common expenses against that unit under the then current fiscal year's budget, and thereafter, until exhausted. Any amounts accumulated from assessments for general common expenses and income from the operation of the common elements, other than limited common elements with regard to which limited common expenses are assessed, in excess of the amount required for actual general common expenses and reserves for future general common expenses shall be credited to each unit in accordance with such unit's interests in common elements, these credits to be applied, unless the declaration provides otherwise, to the next monthly assessments of general common expenses against that unit under the then current fiscal year's budget, and thereafter, until exhausted.**

§ 3314. Assessments for common expenses.

(a) General rule.--Until the association makes a common expense assessment, the declarant shall pay all the expenses of the condominium. After any assessment has been made by the association, assessments shall be made at least annually and shall be based on a budget adopted at least annually by the association. **The budgets of the association shall segregate limited common expenses from general common expenses if and to the extent appropriate.**

(b) Allocation and interest.--Except for assessments under subsection (c), common expenses shall be assessed against all the units in accordance with the common expense liability allocated to each unit (section 3208) **in the case of general common expenses and in accordance with subsection (c) in the case of special allocations of expenses.** Any past due assessment or installment thereof shall bear interest at the rate established by the association not exceeding 15% per year.

(c) [Limited] **Special allocations of** expenses.--Except as provided by the declaration:

(1) [any] **Any** common expense associated with the maintenance, repair or replacement of a limited common element shall be assessed in equal shares against the units to which that limited common element was assigned at the time the expense was incurred[; and].

(2) [any] **Any** common expense benefiting fewer than all of the units shall be assessed exclusively against the units benefited.

**(3) The costs of insurance shall be assessed in proportion to risk and the costs of utilities that are separately metered to each unit shall be assessed in proportion to usage.**

**(4) If any common expense is caused by the negligence or misconduct of any unit owner, the association may assess that expense exclusively against his unit.**

(d) Reallocation.--If common expense liabilities are reallocated, common expense assessments and any installment thereof not yet due shall be recalculated in accordance with the reallocated common expense liabilities.

§ 3315. Lien for assessments.

(a) General rule.--The association has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes due. The association's lien may be foreclosed in like manner as a mortgage on real estate. **A judicial or other sale of the unit in execution of a common element lien or any other lien shall not affect the lien of a mortgage thereon, except the mortgage for which the sale is being held, if the mortgage is or shall be prior to all other liens upon the same property except those liens identified in 42 Pa.C.S. § 8152(a) (relating to judicial sale as affecting lien of mortgage) and liens for condominium assessments created under this section.** Unless the declaration otherwise provides, fees, charges, late charges, fines and interest charged pursuant to section 3302(a)(10), (11) and (12) (relating to powers of unit owners' association) **and reasonable costs and expenses of the association, including legal fees, incurred in connection with collection of any sums due the association by the unit owner or enforcement of the provisions of the declaration, bylaws, rules or regulations against the unit owner** are enforceable as assessments under this section. If an assessment is payable in installments[, the full amount of the assessment becomes effective as a lien from the time the first installment thereof becomes due] **and one or more installments is not paid when due, the entire outstanding balance of the assessment becomes effective as a lien from the due date of the delinquent installment.**

(b) Priority of lien.--

(1) General rule.--A lien under this section is prior to all other liens and encumbrances on a unit except:

(i) Liens and encumbrances recorded before the recordation of the declaration.

(ii) [Mortgages and deeds of trust on the unit securing first mortgage holders and recorded before the due date of the assessment or the due date of the first installment payable on the assessment.] **Mortgages and deeds of trust on the unit securing first mortgage holders and recorded before the due**

Case ID: 251202237

**date of the assessment, if the assessment is not payable in installments, or the due date of the unpaid installment, if the assessment is payable in installments.**

(iii) Liens for real estate taxes and other governmental assessments or charges against the unit.

(2) Limited nondivestiture.--The association's lien for common expenses shall be divested by a judicial sale of the unit:

(i) As to unpaid common expense assessments made under section 3314(b) (relating to assessments for common expenses) that come due during the six months immediately preceding institution of an action to enforce collection of a lien against a unit by a judicial sale, only to the extent that the six months unpaid assessments are paid out of the proceeds of the sale.

(ii) As to unpaid common expense assessments made under section 3314(b) other than the six months assessment referred to in subparagraph (i), in the full amount of these unpaid assessments, whether or not the proceeds of the judicial sale are adequate to pay these assessments. To the extent the proceeds of the sale are sufficient to pay some or all of these additional assessments, after satisfaction in full of the costs of the judicial sale, and the liens and encumbrances of the types described in paragraph (1) and the unpaid common expense assessments that come due during the six-month period described in subparagraph (i), they shall be paid before any remaining proceeds may be paid to any other claimant, including the prior owner of the unit.

(3) Monetary exemption.--The lien is not subject to the provisions of 42 Pa.C.S. § 8123 (relating to general monetary exemption).

(c) Notice and perfection of lien.--Subject to the provisions of subsection (b), recording of the declaration constitutes record notice and perfection of the lien.

(d) Limitation of actions.--A lien for unpaid assessments is extinguished unless proceedings to enforce the lien are instituted within three years after the assessments become payable.

(e) Other remedies preserved.--Nothing in this section shall be construed to prohibit actions or suits to recover sums for which subsection (a) creates a lien or to prohibit an association from taking a deed in lieu of foreclosure.

(f) Costs and attorney's fees.--A judgment or decree in any action or suit brought under this section shall include costs and reasonable attorney's fees for the prevailing party.

(g) Statement of unpaid assessments.--The association shall furnish to a unit owner upon written request a recordable statement setting forth the amount of unpaid assessments currently levied against his unit **and any credits of surplus in favor of his unit pursuant to section 3313 (relating to surplus funds).** The statement shall be furnished within ten business days after receipt of the request and is binding on the association, the executive board and every unit owner.

§ 3316. Association records.

During the period of declarant control, the association shall keep detailed financial records, including, without limitation, a record of expenses paid by the declarant until the commencement of common expense assessments by the association under section 3314(a) (relating to assessments for common expenses), the commencement date of common expense assessments by the association and, for the period commencing on such date, a record for each unit in the condominium (including those owned by the declarants) of its common expense assessments and the payments thereof. The association shall keep financial records sufficiently detailed to enable the association to comply with section 3407 (relating to resales of units). All financial and other records shall be made reasonably available for examination by any unit owner and his authorized agents.

Section 6. Title 68 is amended by adding sections to read:

§ 3318. Conveyance or encumbrance of common elements.

(a) General rule.--Portions of the common elements may be conveyed or subjected to a security interest by the association if the persons entitled to cast at least 80% of the votes in the association, including 80% of the votes allocated to units not owned by a declarant or any larger percentage the declaration specifies, agree to that action, but all the owners of units to which any limited common element is allocated must agree in order to convey that limited common element or subject it to a security interest. The declaration may specify a smaller percentage only if all of the units are restricted exclusively to nonresidential uses. Proceeds of the sale are an asset of the association.

(b) Required agreement.--An agreement to convey common elements or subject them to a security interest must be evidenced by the execution of an agreement, or ratifications thereof, in the same manner as a deed, by the requisite number of unit owners. The agreement must specify a date after which the agreement will be void unless recorded before that date. The agreement and all ratifications thereof must be recorded in every county in which a portion of the condominium is situated and is effective only upon recordation.

(c) Association powers.--The association on behalf of the unit owners may contract to convey common elements or subject them to a security interest, but the contract is not enforceable against the association until approved pursuant to subsections (a) and (b). Thereafter, the association has all powers necessary and appropriate to effect the conveyance or encumbrance, including the power to execute deeds or other instruments.

(d) Other conveyances or encumbrances void.--Any purported conveyance, encumbrance, judicial sale or other voluntary transfer of common elements, unless made pursuant to this section, is void.

(e) Right of access and support.--A conveyance or encumbrance of common elements pursuant to this section does not deprive any unit of its right of access and support.

(f) Preexisting encumbrances.--Unless the declaration otherwise provides, a conveyance or encumbrance of common elements pursuant to this section does not affect the priority or validity of preexisting encumbrances.

(g) Limitation.--Common elements which may be conveyed or encumbered pursuant to this section shall not include any land, buildings or other facilities:

    (1) containing or comprising one or more units; or

    (2) necessary for the use or operation of one or more units.

§ 3319. Other liens affecting the condominium.

(a) General rule.--Except as provided in subsection (b), a judgment for money against the association, if and when the judgment has been perfected as a lien on real property, is not a lien on the common elements, but is a lien in favor of the judgment lienholder against all of the units in the condominium at the time the judgment was entered. No other property of a unit owner is subject to the claims of creditors of the association.

(b) If security interest in common elements.--If the association has granted a security interest in the common elements to a creditor of the association pursuant to section 3318 (relating to conveyance or encumbrance of common elements), the holder of that security interest shall exercise its right against the common elements before its judgment lien on any unit may be enforced.

(c) Release upon payment of unit owner's share.--Whether perfected before or after the creation of the condominium, if a lien other than a deed of trust or mortgage, including a judgment lien or lien attributable to work performed or materials supplied before creation of the condominium, becomes effective against two or more units, the unit owner of an affected unit may pay to the lienholder the amount of the lien attributable to his unit, and the lienholder, upon receipt of payment, promptly shall deliver a release of the lien covering that unit. The amount of the payment must be proportionate to the ratio which that unit owner's common expense liability bears to the common expense liabilities of all unit owners whose units are subject to the lien. After payment, the association may not assess or have a lien against that unit owner's unit for any portion of the common expenses incurred in connection with that lien.

(d) Indexing of judgments.--A judgment against the association must be indexed in the name of the condominium and the association and, when so indexed, is notice of the lien against the units.

§ 3320. Declarant delivery of items to association.

Except as set forth in paragraph (9), not later than 60 days after the required termination of the period of declarant control pursuant to section 3303(c) (relating to executive board members and officers) or the declarant's earlier voluntary termination of control, the declarant shall deliver to the association all property of the unit owners and of the association held by or controlled by the declarant, including, without limitation, all of the following items, if applicable, as to each condominium or other owners' association operated by the association:

    (1) The original or a certified copy or a photocopy of the recorded declaration and all amendments thereto. If a photocopy is delivered, such photocopy shall reflect the recording information and shall be accompanied by an affidavit executed by the declarant certifying such

photocopy to be a true, correct and complete copy of the actual recorded declaration and all amendments thereto.

(2) The association articles of incorporation, if incorporated, with evidence of filing with the Department of State.

(3) A copy of the bylaws.

(4) A complete set of all executive board minutes and resolutions and all other books and records of the association.

(5) A complete copy of all rules and regulations that may have been adopted.

(6) Copies of all Federal, State and local tax returns filed by or on behalf of the association and copies of any tax-exempt elections made by or on behalf of the association.

(7) Copies of all past and current budgets of the association.

(8) Resignations of officers and members of the executive board who are required to resign because the declarant is required to relinquish or has relinquished control of the association.

(9) Not later than 90 days after the required termination of the period of declarant control pursuant to section 3303(c) or the declarant's earlier voluntary termination of control, a complete audit of the finances of the association for the time period between the last audit of the association's financial books and records and the date of termination of the period of declarant control, prepared by an independent certified public accountant in accordance with generally accepted accounting principles, the costs of which audit are to be borne equally by the declarant and the association. If the condominium consists of not more than 12 units, a warranty from the declarant to the association that the books and records of the association completely and accurately reflect all activities of the association from its inception through the date of termination of the period of declarant control may be substituted for the audit referred to in this paragraph.

(10) All association funds or control thereof.

(11) All tangible personal property and inventories thereof:

(i) that may have been represented or should have been represented by the declarant in any public offering statement, sales materials or other writings to be part of the common elements; or

(ii) that is otherwise property of the association.

(12) A copy of the plans or drawings and specifications, if any, utilized in the construction, rehabilitation, renovation or remodeling of any buildings and improvements within the condominium and in the construction and installation of any mechanical components and equipment serving the buildings and improvements and property, if and to the extent the construction, rehabilitation, renovation, remodeling or installation was performed by or on behalf of the declarant and substantially completed during the period commencing three

Case ID: 251202237

years prior to the date of the first public offering statement regarding the condominium, unless no public offering statement is required for any unit in the condominium in which event such period shall commence on the date of the recordation of the condominium declaration or amendment thereto with respect to such improvements, and ending on the date by which compliance with this section is required. In the event such construction, rehabilitation, renovation, remodeling or installation was substantially completed within such period but not by or on behalf of the declarant, the obligation of the declarant under this paragraph shall be to provide all such plans, drawings and specifications in the possession of the declarant and to use reasonable efforts to obtain and provide any such plans, drawings or specifications not within the possession of the declarant. If such construction, rehabilitation, renovation, remodeling or installation was substantially completed more than three years prior to the commencement of the period described in this paragraph, the obligations of the declarant under this paragraph shall be to provide all such plans, drawings and specifications in the possession of the declarant. To the extent previously made available to the declarant, the declarant in all cases shall deliver to the association owners, operating, care and maintenance manuals and other information regarding mechanical components and equipment serving any buildings and improvements in the condominium. A declarant's delivery of any plans, drawings or specifications pursuant to this paragraph shall not constitute a representation or warranty of the accuracy or completeness of such plans, drawings or specifications and shall not expand or otherwise affect the declarant's warranties created under section 3411 (relating to warranty against structural defects).

(13) All insurance policies insuring the association then in force.

(14) Copies of any certificates or statements of occupancy which may have been issued with respect to the improvements comprising the condominium, if and to the extent available.

(15) Any other permits issued by governmental bodies applicable to the condominium property which are then currently in force, all notices of violations of governmental requirements then outstanding and uncured and all reports of investigations for the presence of hazardous conditions as defined in section 3402(a)(26) (relating to public offering statement; general provisions).

(16) Any written warranties then in force and effect from contractors, subcontractors, suppliers or manufacturers who have performed work with respect to the condominium property or have supplied equipment or services to the condominium property.

(17) A roster of unit owners and mortgagees and their respective addresses and telephone numbers, if known, as shown on the declarant's records.

(18) Employment contracts in which the association is or is to be one of the contracting parties.

(19) Service and other contracts and leases in which the association is or is to be one of the contracting

parties and service contracts in which the association has
directly or indirectly an obligation or a responsibility to
pay some or all of the fees or charges of the person or
persons performing such services.
    Section 7.  Section 3401, 3402, 3403, 3404, 3405, 3406,
3407, 3408, 3409, 3410, 3411 and 3414 of Title 68 are amended
to read:
§ 3401.  Applicability; waiver.
    (a)  General rule.--This chapter applies to all units
subject to this subpart, except as provided in subsection (b)
and section 3411 (relating to warranty against structural
defects) or as modified or waived by agreement of [purchasers
of units in a condominium in which all units are restricted to
residential use.] the purchaser of any unit which is intended
for nonresidential use at the time of sale of such unit by the
declarant or by agreement of purchasers of units in a
condominium who are or intend to be in the business of buying
and selling condominium units, provided that:
        (1)  a purchaser of a unit intended for residential use
    at the time of sale by the declarant may not modify or
    waive the provisions of section 3411 with regard to such
    unit and the common elements;
        (2)  with regard to any limited common element
    appurtenant only to nonresidential units, the unit owners
    of all such units have agreed to such modification or
    waiver and, with regard to any common elements, other than
    limited common elements, in a condominium in which all
    units are restricted to nonresidential use, all unit owners
    have agreed to such modification or waiver; and
        (3)  no modification or waiver shall prevent any unit
    owner from indirectly benefiting from any provision in this
    chapter by reason of such unit owner being a unit owner in
    the condominium and a member of the association.
    (b)  Public offering statements.--A public offering
statement need not be prepared or delivered in the case of:
        (1)  a gratuitous transfer of a unit;
        (2)  a disposition pursuant to court order;
        (3)  a disposition by a government or governmental
    agency;
        (4)  a disposition by foreclosure or deed in lieu of
    foreclosure;
        (5)  a disposition of a condominium situated wholly
    outside this Commonwealth pursuant to a contract executed
    wholly outside this Commonwealth; or
        (6)  a transfer to which section 3407 (relating to
    resales of units) applies.
    (c)  Resale certificates.--A resale certificate as
described in section 3407 need not be prepared or delivered in
the cases described in subsection (b)(1) through (5).
    (d)  Unified public offering statement.--If a unit is part
of a condominium and is part of any other real estate regime
in connection with the sale of which the delivery of a public
offering statement is required under the laws of this
Commonwealth, a single public offering statement conforming to
the requirements of sections 3402 (relating to public offering
statement; general provisions), 3403 (relating to public
offering statement; time-share estates) and 3404 (relating to
public offering statement; condominiums containing conversion

Case ID: 251202237

**buildings) as those requirements relate to any real estate regimes in which the unit is located and to any other requirements imposed under the laws of this Commonwealth may be prepared and delivered in lieu of providing two or more public offering statements.**

§ 3402.  Public offering statement; general provisions.

(a)  General rule.--Except as provided in subsection (b), a public offering statement must contain or fully and accurately disclose:

(1)  The name and principal address of the declarant and of the condominium.

(2)  A general description of the condominium, including without limitation the types, number and declarant's schedule of commencement and completion of construction of all buildings, units and amenities. **The public offering statement shall also contain a narrative description of the type and character of units offered, including a statement of the degree of completion to be provided or undertaken by the declarant of such units and the common elements necessary for use and enjoyment of such units upon the conveyance by the declarant of the units offered.**

(3)  The total number of additional units that may be included in the condominium and the proportion of units the declarant intends to rent or market in blocks of units to investors.

(4)  A brief narrative description of any options reserved by a declarant to withdraw withdrawable real estate under section 3206(1) (relating to contents of declaration; flexible condominiums) and the expected effects that withdrawal would have on the remaining portion of the condominium.

(5)  Copies and a brief narrative description of the significant features of the declaration (other than the plats and plans), **and** the bylaws, [and] rules and regulations, **the agreement of sale,** copies of any contracts and leases to be signed by **the** purchasers **prior to or** at closing and a brief narrative description of any **other** contracts or leases **or agreements of a material nature to the condominium** that will or may be subject to cancellation by the association under section 3305 (relating to termination of contracts and leases of declarant).

(6)  Any current balance sheet and a projected budget for the association, either within or as an exhibit to the public offering statement, for one year after the date of the first conveyance to a purchaser, and thereafter the current budget of the association, a statement of who prepared the budget and a statement of the budget's **material** assumptions, **including those** concerning occupancy and inflation factors. The budget must include, without limitation:

(i)  A statement of the amount, or a statement that there is no amount, included in the budget as a reserve for repairs and replacement.

(ii)  A statement [of any other reserves] **containing a description of any provisions made in the budget for reserves for anticipated material capital**

Case ID: 251202237

**expenditures or any other reserves or, if no provision
is made for reserves, a statement to that effect.**

(iii) The projected common expense assessment by
category of expenditures for the association.

(iv) The projected monthly common expense
assessment for each type of unit.

(7) Any:

(i) services not reflected in the budget that the
declarant provides, or expenses that he pays, and that
he expects may become at any subsequent time a common
expense of the association; and

**(ii) personal property not owned by the
association but provided by the declarant and being
used or to be used in the operation and enjoyment of
the common elements which is or will be required in
connection with the operation and enjoyment of the
common elements after such personal property is no
longer provided by the declarant, and** the projected
common expense assessment **for the association and for
each type of unit** attributable to each of those
services or expenses [for the association and for each
type of unit] **and purchase or rental of such personal
property.**

(8) Any initial or special fee due from the purchaser
at closing together with a description of the purpose and
method of calculating the fee.

(9) A description of any liens, defects or
encumbrances on or affecting the title to the condominium.

(10) A description of any financing **for purchasers**
offered **or arranged** by the declarant.

(11) The terms and significant limitations of any
warranties provided by the declarant including statutory
warranties and limitations on the enforcement thereof or on
damages.

(12) A statement in at least ten-point bold face type,
appearing on the first page of the public offering
statement, [that] **as follows:**

(i) [Within 15 days after receipt of a public
offering statement a] **That within 15 days after
receipt of a public offering statement, or within
seven days in the case of the sale of a time-share
estate, or an amendment to the public offering
statement that materially and adversely affects the
rights or obligations of the purchaser, the** purchaser,
before conveyance, may cancel any contract for
purchase of a unit from a declarant.

(ii) [If] **That if** a declarant fails to provide a
public offering statement, **and any amendments thereto,**
to a purchaser before conveying a unit, that purchaser
may recover from the declarant damages as provided in
section 3406(c) (relating to purchaser's right to
cancel) [and a description of such damages].

**(iii) A description of such damages.**

[(iii) If] **(iv) That if** a purchaser receives the
public offering statement more than 15 days before
signing a contract, he cannot cancel the contract, **or
more than seven days in the case of the sale of a
time-share estate, except that, in accordance with**

Case ID: 251202237

**subparagraph (i), he shall have the right to cancel the contract before conveyance within 15 days (seven days in the case of the sale of a time-share estate) after receipt of any amendment thereto that would have a material and adverse effect on the rights or obligations of that purchaser.**

(13) A statement of any judgments against the association, the status of any pending suits to which the association is a party and the status of any pending suits material to the condominium of which a declarant has actual knowledge.

(14) A statement that any deposit made in connection with the purchase of a unit will be held in an escrow account in accordance with the provisions of section 3408 (relating to escrow of deposits) and will be returned to the purchaser if the purchaser cancels the contract pursuant to section 3406.

(15) Any restraints on alienation of any portion of the condominium.

(16) A description of [the] **all** insurance coverage provided **or intended to be provided if such insurance is not then in effect** for the benefit of unit owners, **including the types and extent of coverage and the extent to which such coverage includes or excludes improvements or betterments made to units.**

(17) Any current or expected fees or charges to be paid by unit owners for the use of the common elements and other facilities related to the condominium.

(18) The extent to which financial arrangements have been provided for completion of all improvements labeled "MUST BE BUILT" pursuant to section 3414 (relating to declarant's obligation to complete and restore).

(19) All unusual and material circumstances, features and characteristics of the condominium and the units.

(20) In the case of a leasehold condominium, at least the following information:

(i) The name and address of each lessor and his assignee, if any.

(ii) Any relationship between the declarant and any lessor or assignee.

(iii) A description of the leased property.

(iv) The rent and any provision in the lease for increases in the rent and any other charges or payments required to be paid by the lessee under the lease.

(v) Whether the lessee has any right to terminate the lease.

(vi) The information contained in the declaration as required by section 3207(a) (relating to leasehold condominiums).

(vii) The following notice in bold type: "Purchasers should be aware that this is a leasehold condominium and the purchaser's interest therein may be less valuable than a fee interest, may depreciate over time and may be of questionable marketability."

[[(21) A statement containing a description of any provisions made in the budget for reserves for capital

expenditures or, if no provision is made for reserves, a statement to this effect.

(22)] **(21)** A statement containing a declaration as to the present condition of all structural components and major utility installations in the subject property, including the dates of construction, installation and major repairs if known or ascertainable, and the expected useful life of each item, together with the estimated cost (in current dollars) of replacing each of the same.

**(22) A description of how votes are allocated among the units and a statement as to whether cumulative or class voting is permitted and, if so, under what circumstances. Such statement shall also explain the operation of such cumulative or class voting.**

**(23) A description of any circumstances under which the association is to become a master association or part of a master association.**

**(24) A statement of all governmental approvals and permits required for the use and occupancy of the condominium indicating the name and expiration date of each such approval or permit that has been obtained and, as to any governmental approvals or permits that have not been obtained, a statement indicating when each such permit or approval is expected to be obtained and the person who shall bear the expense of obtaining each such permit or approval.**

**(25) A statement as to whether there are any outstanding and uncured notices of violations of governmental requirements and, if there are any such notices of violations, a description of the alleged violation and a statement indicating when each violation is expected to be cured and the person who shall bear the expense of curing such violation.**

**(26) A statement as to whether the declarant has knowledge of any one or more of the following:**

   **(i) Hazardous conditions, including contamination affecting the condominium site by hazardous substances, hazardous wastes or the like, or the existence of underground storage tanks for petroleum products or other hazardous substances.**

   **(ii) Any investigation conducted to determine the presence of hazardous conditions on or affecting the condominium site.**

   **(iii) Any finding or action recommended to be taken in the report of any such investigation or by any governmental body, agency or authority in order to correct any hazardous conditions, and any action taken pursuant to those recommendations.**

**If the declarant has no knowledge of such matters, the declarant shall make a statement to that effect. Declarant shall also set forth the address and phone number of the regional offices of the Department of Environmental Resources and the United States Environmental Protection Agency where information concerning environmental conditions affecting the condominium site may be obtained.**

(b) Exceptions.--If a condominium composed of not more than 12 units is not a flexible condominium and no power is reserved to a declarant to make the condominium part of a

Case ID: 251202237

larger condominium, group of condominiums or other real estate, a public offering statement may but need not include the information otherwise required by subsection (a)(3), (4) and (18) and the narrative descriptions of documents required by subsection (a)(5).

(c)  Amendment for material change in information.--A declarant promptly shall amend the public offering statement to report any material change in the information required by this section.

§ 3403.  Public offering statement; time-share estates.

(a)  Definition.--For purposes of this section, "time-share estate" means either:

(1)  an "interval estate," meaning a combination of:

(i)  an estate for years in a unit, during the term of which title to the unit rotates among the time-share owners thereof, vesting in each of them in turn for periods established by a fixed recorded schedule, with the series thus established recurring regularly until the term expires, coupled with

(ii)  a vested undivided fee simple interest in the remainder in that unit, the magnitude of that interest having been established by the declaration or by the deed creating the interval estate; or

(2)  a "time-span estate," meaning a combination of:

(i)  an undivided interest in a present estate in fee simple in a unit, the magnitude of that interest having been established by the declaration or by the deed conveying the time-span estate, coupled with

(ii)  the exclusive right to possession and occupancy of that unit during a regularly recurring period designated by that deed or by a recorded document referred to therein.

(b)  General rule.--If the declaration provides that ownership or occupancy of [the] **any** units are or may be owned in time-shares, the public offering statement shall contain or disclose in addition to the information required by section 3402 (relating to public offering statement; general provisions):

(1)  The total number of units in which time-share estates may be created.

(2)  The total number of time-share estates that may be created in the condominium.

(3)  The projected common expense assessment for each time-share estate and whether those assessments may vary seasonally.

(4)  A statement of any services not reflected in the budget which the declarant provides, or expenses which he pays, and which he expects may become at any subsequent time a common expense of the association, and the projected common expense assessment attributable to each of those services or expenses for each time-share estate.

(5)  The extent to which the time-share owners of a unit are jointly and severally liable for the payment of real estate taxes and all assessments and other charges levied against that unit.

(6)  The extent to which a suit for partition may be maintained against a unit owned in time-share estates.

Case ID: 251202237

(7) The extent to which a time-share estate may become subject to a tax or other lien arising out of claims against other time-share owners of the same unit.

(8) A statement in at least ten-point bold face type, appearing on the first page of the public offering statement, that:

(i) Within seven days after receipt of a public offering statement a purchaser, before conveyance, may cancel any contract for purchase of a unit from a declarant.

(ii) If a declarant fails to provide a public offering statement to a purchaser before conveying a unit, the purchaser may recover from the declarant damages as provided in section 3406(c) (relating to purchaser's right to cancel) and a description of such damages.

(iii) If a purchaser receives the public offering statement more than seven days before signing a contract, he cannot cancel the contract.

§ 3404.  Public offering statement; [conversion] condominiums **containing conversion buildings.**

(a) General rule.--The public offering statement of a [conversion] condominium **containing a conversion building** must contain, in addition to the information required by section 3402 (relating to public offering statement; general provisions):

(1) A statement by the declarant, based on a report prepared by an independent registered architect or professional engineer[,]:

**(i)** describing the age and present condition **and, if known or reasonably ascertainable, the dates of construction, installation and major repairs** of all structural components and mechanical and electrical installations, including, but not limited to, roofs, plumbing, heating, air conditioning[,] **and** elevators [and pest control conditions], material to the use and enjoyment of the condominium[.]**; and**

**(ii) describing the results of the inspection of the units and common elements required pursuant to section 3411(c) (relating to warranty against structural defects) for visible conditions that adversely affect the health or safety of residential occupants. The statement should also state the extent to which the report by the architect or professional engineer is based upon a visual inspection of the units as well as the common elements.**

(2) A statement by the declarant of the expected useful life of each item reported on in paragraph (1) including the current replacement costs of such item.

(3) A list of any outstanding notices of uncured violations of building code or other municipal regulations, together with the estimated cost of curing those violations.

**(4) A statement by the declarant, based on a report prepared by an independent licensed exterminating company, describing the presence at the condominium of any visible pest conditions dangerous to health and safety, such as the presence of insects and rodents dangerous to health or**

Case ID: 251202237

**safety, and outlining actions taken or to be taken to
eliminate the existence of pest conditions dangerous to
health or safety.**

(b)  Applicability of section.--This section applies only
to units that may be occupied for residential use.

§ 3405.  Public offering statement; condominium securities.

If an interest in a condominium is currently registered
with the Securities and Exchange Commission of the United
States, a declarant satisfies all requirements relating to the
preparation of a public offering statement in this subpart if
he delivers to the purchaser a copy of the public offering
statement filed with the Securities and Exchange Commission.
An interest in a condominium is not, **in and of itself,** a
security under the provisions of the act of December 5, 1972
(P.L.1280, No.284), known as the ["]Pennsylvania Securities
Act of 1972[.**"], and the offer and sale of condominium units
in accordance with the requirements of this chapter shall not
also be subject to the registration requirements of sections
201 or 301 of the Pennsylvania Securities Act of 1972 or the
promotional real estate sales requirements of the act of
February 19, 1980 (P.L.15, No.9), known as the Real Estate
Licensing and Registration Act.**

§ 3406.  Purchaser's right to cancel.

(a)  General rule.--[Unless] **In cases where** delivery of a
public offering statement is [not] required under section
3401[(b)] (relating to applicability; waiver), a declarant
shall provide a purchaser of a unit with a copy of the public
offering statement and all amendments thereto not later than
the date [of any] **the purchaser executes the** contract of sale
**for such unit or, if no contract of sale is executed, 15 days
before conveyance of such unit.** Unless a purchaser is given
the public offering statement [more than 15 days before
execution of a contract for the purchase of a unit], **including
all the currently effective amendments thereof, within the
time period referred to in the preceding sentence,** the
purchaser, before conveyance, may cancel the contract within
15 days after first receiving the public offering statement
**and all currently effective amendments thereof,** except in the
case of the sale of a time-share estate. Unless a purchaser of
a time-share estate is given the public offering statement,
**including all the currently effective amendments thereof,** more
than seven days before [execution of a] **the purchaser executes
the** contract for the purchase of [a] **such** unit **or, if no
contract of sale is executed, seven days before conveyance of
such unit,** the purchaser, before conveyance, may cancel the
contract within seven days after first receiving the public
offering statement **and all currently effective amendments
thereof. If a public offering statement is amended after the
public offering statement has been received by a purchaser of
a unit, the amendment shall be provided to the purchaser
promptly after it becomes effective, and, if the amendment
materially and adversely affects the rights or obligations, or
both, of the purchaser, then the purchaser, before conveyance,
may cancel the contract of sale within 15 days, or seven days
in case of the sale of a time-share estate, after receiving
the amendment.**

(b)  Method and effect of cancellation.--If a purchaser
elects to cancel a contract pursuant to subsection (a), he may

Case ID: 251202237

do so by hand delivering notice thereof to the declarant, or by mailing notice thereof by prepaid United States mail to the declarant or to his agent for service of process. Cancellation is without penalty and all payments made by the purchaser before cancellation shall be refunded promptly.

(c)  Penalty for noncompliance by declarant.--If a declarant fails to provide a purchaser to whom a unit is conveyed with a public offering statement and all amendments thereto as required by subsection (a), the purchaser, in addition to any other relief, is entitled to receive from the declarant an amount equal to 5% of the sales price of the unit up to the maximum of $2,000, or actual damages, whichever is the greater amount. A minor omission or error in the public offering statement or an amendment thereto, that is not willful, shall entitle the purchaser to recover only actual damages, if any.

§ 3407.  Resales of units.

(a)  Information supplied by unit owner.--In the event of a resale of a unit by a unit owner other than a declarant, the unit owner shall furnish to a purchaser before execution of any contract for sale of a unit, or otherwise before conveyance, a copy of the declaration (other than the plats and plans), the bylaws, the rules or regulations of the association and a certificate containing:

(1)  A statement disclosing the effect on the proposed disposition of any right of first refusal or other restraint on the free alienability of the unit.

(2)  A statement setting forth the amount of the monthly common expense assessment and any unpaid common expense or special assessment currently due and payable from the selling unit owner **and any surplus fund credits to be applied with regard to the unit pursuant to section 3313 (relating to surplus funds).**

(3)  A statement of any other fees payable by unit owners.

(4)  A statement of any capital expenditures proposed by the association for the current and two next succeeding fiscal years.

(5)  A statement of the amount of any reserves for capital expenditures and of any portions of those reserves designated by the association for any specified project.

(6)  The most recent regularly prepared balance sheet and income and expense statement, if any, of the association.

(7)  The current operating budget of the association.

(8)  A statement of any judgments against the association and the status of any pending suits to which the association is a party.

(9)  A statement describing any insurance coverage provided for the benefit of unit owners.

(10)  A statement as to whether the executive board has knowledge that any alterations or improvements to the unit or to the limited common elements assigned thereto violate any provision of the declaration.

(11)  A statement as to whether the executive board has knowledge of any violations of [the health or building codes] **applicable governmental requirements or knowledge of the existence of any hazardous conditions pursuant to**

Case ID: 251202237

section 3402(a)(26) (relating to public offering statement;
**general provisions)** or with respect to the unit, the
limited common elements assigned thereto or any other
portion of the condominium.

(12) A statement of the remaining term of any
leasehold estate affecting the condominium and the
provisions governing any extension or renewal thereof.

**(13) A statement as to whether the declaration
provides for cumulative voting or class voting.**

**(14) A statement as to whether an agreement to
terminate the condominium has been submitted to the unit
owners for approval and remains outstanding.**

**(15) A statement of whether the condominium is a
master association or is part of a master association or
could become a master association or part of a master
association.**

**(16) A statement describing which units, if any, may
be owned in time-share estates and the maximum number of
time-share estates that may be created in the condominium.**

**(17) A statement of whether the declarant retains the
special declarant right to cause a merger or consolidation
of the condominium and, if so, the information describing
such right which was supplied by the declarant pursuant to
section 3205(13) (relating to contents of declaration; all
condominiums), if any.**

(b) Information supplied by association.--The association,
within ten days after a request by a unit owner, shall furnish
a certificate containing the information **and copies of
documents** necessary to enable the unit owner to comply with
this section. A unit owner providing a certificate pursuant to
subsection (a) is not liable to the purchaser for any
erroneous information provided by the association and included
in the certificate.

(c) Liability for error or inaction by association.--A
purchaser is not liable for any unpaid assessment or fee
greater than the amount set forth in the certificate prepared
by the association. A unit owner is not liable to a purchaser
for the failure or delay of the association to provide the
certificate in a timely manner but the purchase contract is
voidable by the purchaser until the certificate has been
provided and for five days thereafter or until conveyance,
whichever first occurs.

§ 3408. Escrow of deposits.

Any deposit (which shall not include any installment
payment under an installment sales contract **nor payments
specifically stated in a sales contract to be in payment of or
on account of extras, changes or custom work**) made in
connection with the purchase or reservation of a unit from a
declarant shall be placed in escrow and held in this
Commonwealth **by a licensed real estate broker, an attorney
admitted to practice in this Commonwealth, a financial
institution or a licensed title insurance company,** in an
account, **or in the form of a certificate of deposit,**
designated solely for that purpose [by an] **with a financial
institution** whose accounts are insured by a governmental
agency or instrumentality until:

(1) delivered to the declarant at closing, or in the
case of the sale of a unit pursuant to an installment sales

Case ID: 251202237

contract, upon the expiration of 30 days from the date of
occupancy of the unit;

    (2) delivered to the declarant because of purchaser's
default under a contract to purchase the unit; or

    (3) refunded to the purchaser.

§ 3409. Release of liens.

    (a) General rule.--Before conveying a unit, other than by
deed in lieu of foreclosure, to a purchaser other than a
declarant, a declarant shall record or furnish to the
purchaser releases of all liens affecting that unit and its
common element interest which the purchaser does not expressly
agree to take subject to or assume, or shall provide a surety
bond or substitute collateral for or insurance against the
lien adequate in nature and amount. This subsection does not
apply to any **convertible or** withdrawable real estate in which
no unit has been conveyed.

    (b) [Lien against multiple units.--Whether perfected
before or after creation of the condominium, if a lien other
than a deed of trust or mortgage, including a lien
attributable to work performed or materials supplied before
creation of the condominium, becomes effective against two or
more units, the unit owner of an affected unit may pay to the
lienholder the amount of the lien attributable to his unit and
the lienholder, upon receipt of payment, promptly shall
deliver a release of the lien covering that unit and its
common element interest. The amount of the payment must be
proportionate to the ratio which that unit owner's common
expense liability bears to the common expense liabilities of
all unit owners whose units are subject to the lien. After
payment, the association may not assess or have a lien against
that unit owner's unit for any portion of the common expenses
incurred in connection with that lien.] **Other liens.--Before
conveying real estate to the association, the declarant shall
have the real estate released from:**

    **(1) All liens, the foreclosure of which would deprive
unit owners of any right of access to or easements of
support of their units.**

    **(2) All other liens on that real estate unless the
public offering statement describes certain real estate
which may be conveyed subject to liens in specified
amounts.**

§ 3410. [Conversion condominiums] **Condominiums containing
conversion buildings.**

    (a) Notice of conversion.--[A] **The** declarant of every
[conversion] condominium **containing one or more conversion
buildings** shall give each of the **residential** tenants and [any
subtenant] **residential subtenants, if any, lawfully** in
possession of a unit or units in a **conversion** building or
buildings [subject to this subpart], **a conversion** notice [of
the conversion] no later than one year before the declarant
will require [the tenants and any] **such residential tenant and
residential** subtenant [in possession] to vacate. The
**conversion** notice must set forth generally the rights of
**residential** tenants and **residential** subtenants under this
section and shall be **hand delivered to the unit or** mailed by
prepaid United States **certified or** registered mail return
receipt requested to the **residential** tenant and **residential**
subtenant at the address of the unit and not more than one

Case ID: 251202237

other mailing address provided by a **residential** tenant. Every notice shall be accompanied by a public offering statement concerning the proposed sale of condominium units within such building or buildings. Except as otherwise provided in subsection (f), no **residential** tenant or **residential** subtenant **in a conversion building** may be required by the declarant to vacate [upon less] **the unit he leases earlier** than one [year's] **year after the conversion** notice **date**, except by reason of nonpayment of rent, waste or conduct that disturbs other tenants' peaceful enjoyment of the premises and the terms of the tenancy, **including those terms that apply to a period occurring in whole or in part after the conversion notice date**, may not be altered, **but may be enforced**, during that period. Failure of a declarant to give notice [as required by] **to a residential tenant or residential subtenant entitled to such notice pursuant to** this subsection is a defense to an action for possession **against such residential tenant or residential subtenant.**

(b) Offer to tenant to purchase unit.--For six months after [delivery or mailing of the notice described in subsection (a)] **the conversion notice date**, the declarant shall offer to convey each unit or proposed unit occupied for residential use **in a conversion building** to the tenant who leases that unit. If [a] **the** tenant fails to purchase [the] **his** unit during that six-month period, the declarant may not offer to dispose of an interest in that unit during the following six months at a price or on terms more favorable to the offeree than the price or terms offered to the tenant. This [section] **subsection** shall not apply to any rental unit which immediately prior to the conversion **notice date** was restricted **or devoted** exclusively to nonresidential use **or the boundaries of which unit, after the creation of the condominium, will not substantially conform to the boundaries of such unit on the conversion notice date.** [The purchase option set forth in this subsection shall be recorded in the recorder of deeds office in any county in which the proposed conversion condominium is located.]

(c) Effect of wrongful conveyance.--If a declarant, in violation of subsection (b), conveys a unit to a purchaser for value who has no knowledge of the violation, recordation of the deed conveying the unit extinguishes any right a tenant may have under subsection (b) to purchase that unit if the deed states that the seller has complied with subsection (b) but does not affect the right of a tenant to recover damages from the declarant for a violation of subsection (b).

(d) Notice to vacate.--If a [notice of] conversion **notice** specifies a date by which a unit or proposed unit must be vacated, the **conversion** notice also constitutes **a notice of termination of the tenant's lease, subject to revocation in accordance with subsection (j), and** a notice to quit specified by section 501 of the act of April 6, 1951 (P.L.69, No.20), known as ["]The Landlord and Tenant Act of 1951.["]

(e) Improper lease termination prohibited.--

(1) Nothing in this section permits termination of a lease by a declarant in violation of its terms.

(2) Nothing in this section or in any lease shall prohibit a **residential** tenant, after receiving notice pursuant to subsection (a), from terminating any lease

Case ID: 251202237

without any liability for such termination provided such
tenant gives the building owner 90 days' written notice of
the intent to terminate the lease.

(3) The **declarant or** owner of any proposed conversion
condominium shall not engage in any activity of any nature
which would coerce the tenant into terminating any lease,
including but not limited to stampeding, harassing tenants
or withholding normal services or repairs.

(f) Units leased to senior citizens and [blind and]
disabled persons.--

(1) For the purpose of this subsection, an eligible
tenant or subtenant shall be a natural person who, [at the
time the notice described in subsection (a) is given by the
declarant,] **on the conversion notice date, lawfully
occupies a unit in a conversion building as his principal
residence** and is 62 years of age or older or is [blind or]
disabled, and has occupied the unit for at least two years.
**For the purpose of this subsection, a person shall be
deemed to be "disabled" if on the conversion notice date he
is totally and permanently unable to engage in any
substantial gainful activity by reason of any medically
determinable physical or mental impediment, including, but
not limited to, blindness.**

(2) Within [30] **60** days after [receipt of] the
**conversion** notice [from the declarant referred to in
subsection (a)] **date**, any tenant, or subtenant, in
possession of a unit, who believes that he is an eligible
tenant or subtenant shall so notify the declarant and shall
provide the declarant with proof of his eligibility. Any
eligible tenant or subtenant who has established his
eligibility as aforesaid shall be entitled to remain in
possession of his unit for two years following the
**conversion notice** date [of the notice referred to in
subsection (a)], notwithstanding any prior termination date
in his lease, except by reason of nonpayment of rent, waste
or conduct that disturbs other occupants' peaceful
enjoyment of the condominium, and the terms of the tenancy,
**including terms that apply to a time period after the
conversion notice date,** may not be altered, **but may be
enforced,** during the time period between the **original lease
termination** date [on which the tenant's lease would
otherwise terminate] and the expiration of this two-year
period except [that the rental may be increased to the
extent necessary to reflect any increase in real estate
taxes and utility charges, applicable to the unit and not
separately paid by the tenant, for the time·period between
the date of the notice referred to in subsection (a) and
the date on which the tenant's lease would otherwise
terminate.] **as is otherwise provided in paragraph (3).**

(3) **The monthly rental payable by the tenant during
the time period commencing upon the later to occur of the
original lease termination date or the first anniversary of
the conversion notice date and ending upon the expiration
of the two-year period described in paragraph (2) shall be
the same monthly rental as was payable for the month
immediately preceding the original lease termination date,
except that, at the landlord's option, such monthly rental
may be increased by the lesser of 5% of such monthly rental**

Case ID: 251202237

**or the same percentage increase as the percentage increase, if any, in the Consumer Price Index as calculated and published by the United States Department of Labor for the six-month time period commencing on the first day of the first full calendar month after the conversion notice date.**

(4) Failure of a declarant to comply with the provisions of this subsection is a defense to an action for possession.

(g)  Tenant meetings; open to the public.--[At] **With respect to any conversion building containing one or more units then occupied for residential use,** at least 30 days before the [notice of] conversion [is given] **notice date,** the declarant shall hold a tenant meeting open to the public in the municipality where the [conversion is] proposed **conversion building is located** at a place and time convenient to the persons who may be directly affected by the conversion. **At least ten days' notice of the time and place of the meeting shall be given to residential tenants and subtenants in lawful possession of their units in the same manner as is required for the giving of the conversion notice and to the general public by a notice in a newspaper of general circulation in the municipality in which the condominium is located, except that no notice to the general public need be given with respect to conversion buildings as to which the provisions of section 3402(b) (relating to public offering statement; general provisions) are applicable. At such meeting, representatives of the declarant shall briefly describe the following and may, but shall not be required to, discuss other matters:**

(1) **The rights and obligations of tenants and subtenants pursuant to this section.**

(2) **Improvements, if any, then planned to be made to the condominium by the declarant.**

(3) **The anticipated approximate range of initial unit sales prices. Specific unit sales prices need not, however, be provided.**

(4) **The anticipated approximate range of estimated monthly common expenses for various types of units, however, specific per unit estimates need not be provided.**

(h)  Community development grants.--If Federal funds under Title I of the Community Development Act of 1974 have been used to finance the rehabilitation of multifamily rental housing, with the intent that such housing subsequent to the rehabilitation is to be used for residential rental purposes, such housing shall not be converted to a condominium for a period of ten years from the date the rehabilitation is completed.

(i)  Revocation.--**A declarant may subsequently revoke a conversion notice if the declarant has expressly reserved the right of revocation in the conversion notice and if the notice of revocation:**

(1) **is given prior to the conveyance of any unit in the condominium occurring after the conversion notice date other than a unit or units conveyed to a successor declarant or as a result of foreclosure of a mortgage on the unit or a deed in lieu thereof;**

(2) **is given in the same manner as is required for the giving of the conversion notice; and**

Case ID: 251202237

(3) is given to all persons who were entitled to receive the conversion notice and who continue to be in lawful occupancy at the time such notice of revocation is given.

The giving of a notice of revocation revokes all rights granted under this section, but does not revoke the rights granted to residential tenants under subsection (a) or (f), and such rights shall be deemed to have been incorporated in each residential tenant's lease.

(j) Waiver of purchase rights.--Notwithstanding any provisions of this subpart prohibiting waiver of rights, any tenant may waive his right to purchase a unit pursuant to subsection (b) if the waiver is in writing, is acknowledged and is given in consideration of:

(1) an extension of the term of the tenant's tenancy and right of occupancy under this subpart beyond the time period required by subsection (b);

(2) the tenant entering into an agreement to purchase another unit in the condominium; or

(3) all occupants of the unit making alternative living arrangements.

(k) Alteration of terms of tenancy.--Notwithstanding any provisions of subsection (a) or (f), the terms of the tenancy of a tenant or subtenant may be altered with the express written consent of that tenant or subtenant, and such altered terms shall then be the terms of tenancy referred to in this section.

(l) Application of section.--The provisions of this section shall apply only with respect to conversion buildings in which one or more residential tenants or residential subtenants are in lawful occupancy on the conversion notice date and the only tenants who are entitled to exercise the rights granted under this section are residential tenants or residential subtenants:

(1) who are in lawful occupancy of conversion building on the date the declarant gives the conversion notice; or

(2) who commence their tenancy after the notice of conversion is given to the other residential tenants without having been notified in writing, at or prior to the commencement of their tenancy, that the property is then a condominium and that they are not entitled to the rights granted under this section.

Such rights continue only so long as the lawful occupancy of the tenant or subtenant continues.

§ 3411. Warranty against structural defects.

(a) Definition.--As used in this section, "structural defects" means those defects in components constituting any unit or common element which reduce the stability or safety of the structure below accepted standards or restrict the normal intended use of all or part of the structure and which require repair, renovation, restoration or replacement. Nothing in this section shall be construed to make the declarant responsible for any items of maintenance relating to the units or common elements.

(b) General rule.--A declarant warrants against structural defects in each of the units for two years from the date each is conveyed to a bona fide purchaser, and all of the common elements for two years. **Any conveyance of a unit during the**

Case ID: 251202237

**two-year warranty period shall be deemed to transfer to the purchaser all of the declarant's warranties created under this section.** The two years shall begin as to each of the common elements whenever the common element has been completed or, if later:

(1) as to any common element within any additional real estate or portion thereof, at the time the first unit therein is conveyed to a bona fide purchaser;

(2) as to any common element within any convertible real estate or portion thereof, at the time the first unit therein is conveyed to a bona fide purchaser; and

(3) as to any common element within any other portion of the condominium, at the time the first unit therein is conveyed to a bona fide purchaser.

(c) [Conversion condominiums.--A declarant of a conversion condominium warrants against structural defects in components installed by the declarant, work done or improvements made by the declarant, and that the unit and common elements have been inspected for structural and mechanical defects and that any such defects found have been repaired. Otherwise, the declarant of a conversion condominium may offer the units, common elements, or both in an "as is" condition. The declarant of a conversion condominium may also give a more extensive warranty in writing. The times at which these warranties commence and the duration of these warranties shall be as provided in subsection (b).] **Condominiums containing conversion buildings.--A declarant of a condominium containing one or more conversion buildings warrants as follows:**

**(1) That there are no structural defects in components installed anywhere in the condominium by or on behalf of the declarant or in work done or improvements made by or on behalf of the declarant anywhere in the condominium.**

**(2) That all units and common elements in each conversion building have been inspected for visible structural and mechanical defects and for other visible conditions that adversely affect the health or safety of residential occupants, as required by section 3404(a)(1) (relating to public offering statement; condominiums containing conversion buildings), except that no such inspection is required of any unit if the tenant or other lawful occupant of the unit does not permit such inspection to be conducted.**

**(3) That any such defects and other visible conditions found have been repaired.**

**The warranties set forth in subsection (b) shall be applicable to any units and common elements that are located within a building that contains or comprises one or more units and is not a conversion building. Otherwise, such a declarant may offer the units, common elements, or both, in an "as is" condition. The declarant of a condominium containing any conversion buildings may also give a more extensive warranty in writing. The times at which the warranties required by this subsection commence and the duration of such warranties shall be as provided in subsection (b).**

(d) Exclusion or modification of warranty.--Except with respect to a purchaser of a unit for residential use, the warranty against structural defects:

Case ID: 251202237

(1) may be excluded or modified by agreement of the parties; and

(2) is excluded by expression of disclaimer, such as "as is," "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties.

(e)  Limitation of actions.--No action to enforce the warranty created by this section shall be commenced later than six years after the warranty begins.

§ 3414.  Declarant's obligation to complete and restore.

(a)  Completing improvements.--The declarant shall complete all improvements labeled "MUST BE BUILT" on plats or plans prepared pursuant to section 3210 (relating to plats and plans).

(b)  Repair and restoration.--The declarant is subject to liability for the prompt repair and restoration, to a condition compatible with the remainder of the condominium, of any portion of the condominium affected by the exercise of rights reserved pursuant to or created by sections 3211 (relating to conversion and expansion of flexible condominiums), 3212 (relating to withdrawal of withdrawable real estate), 3217 (relating to [use for sales purposes] **declarant's offices, models and signs**) and 3218 (relating to easement to facilitate completion, conversion and expansion).

**(c)  Substantial completion prerequisite to conveyance.--A unit which is part of or constitutes a structure shall not be conveyed unless all structural components and common element mechanical systems of the structure containing or constituting such unit or units are substantially completed to the extent required of declarant so as to permit the use of such unit or units and any limited common elements appurtenant thereto for their intended use. Such substantial completion shall be evidenced by a recorded certification of completion executed by an independent registered surveyor, architect or professional engineer with regard to any such structure.**

**(d)  Substantial completion of unit.--No interest in a unit shall be conveyed until the unit is substantially completed in accordance with the descriptions set forth in both the declaration pursuant to section 3205(4) (relating to contents of declaration; all condominiums) and in the public offering statement pursuant to section 3402(a) (relating to public offering statement; general provisions) as evidenced by a recorded certificate of completion executed by an independent registered surveyor, architect or professional engineer.**

**(e)  Construction of section.--Nothing contained in this subpart shall prevent the offering for sale of a unit or interest in a unit or the execution of any agreement to sell and purchase a unit or any interest in a unit (as opposed to actual conveyance) prior to the completion of the unit or any other portion of the condominium.**

Section 8. (a) Except as set forth in this section, the amendments to 68 Pa.C.S. made by this act shall apply only with respect to events and circumstances occurring after the effective date of this act. The changes to 68 Pa.C.S. made by this act neither invalidate otherwise valid provisions of the declaration, code of regulations, bylaws, declaration plan or plats and plans of any condominium created prior to the effective date of this act nor invalidate otherwise proper

actions of any declarant, condominium association, council or executive board taken prior to the effective date of this act.

(b) The amendment of 68 Pa.C.S. §§ 3208(b) and (c), 3215(c), 3217(c) and 3306(a)(6) shall apply only to condominiums created after the effective date of this act.

(c) The amendment of 68 Pa.C.S. § 3220 shall apply only with regard to a termination agreement or ratifications thereof not executed by any unit owner prior to the effective date of this act.

(d) The amendment of 68 Pa.C.S. § 3308 shall apply only with regard to notices of meetings given after the effective date of this act.

(e) The amendment of 68 Pa.C.S. § 3311(a)(3) shall apply only with regard to a claim for a tort or breach of contract for which litigation shall have been initially instituted after the effective date of this act.

(f) The amendment of 68 Pa.C.S. §§ 3313 and 3314 shall apply only with regard to fiscal years of the association commencing after the effective date of this act.

(g) The amendment of 68 Pa.C.S. §§ 3402(a) and 3404 shall apply only with regard to a public offering statement not delivered to any purchaser prior to the effective date of this act.

(h) The amendment of 68 Pa.C.S. § 3411(c) shall not apply to a conversion building in a condominium with regard to which there has been a conveyance or binding agreement to sell any unit in the conversion building to a bona fide purchaser prior to the effective date of this act.

Section 9. This act shall take effect in 45 days.


APPROVED--The 18th day of December, A. D. 1992.

ROBERT P. CASEY

Case ID: 251202237

# EXHIBIT C

Case ID: 251202237

## HARPER, PAUL & HARVEY

*Attorneys at Law*

140 West Maplewood Avenue
Philadelphia, Pennsylvania 19144-3307

Telephone (215) 844-4848
TeleFax (215) 844-0464

GERMANTOWN

RONALD J. HARPER
ANDREA B. PAUL
SHARON N. HARVEY

November 26, 2025

Marvin Marks
148 Benjamin Court
Philadelphia, Pa. 19114

      RE:    **Fountain Pointe Condominium Association**
             Premises:    **148 Benjamin Court**
                        **Philadelphia, Pa. 19114**

Dear Mr. Marks:

      Please be advised that I represent the Fountain Pointe Condominium Association. Your condominium dues, assessments, charges and fees are delinquent.

      By this letter, we demand payment of the sums due immediately in the amount of $27,326.85, see attached.

      Failure to make payment shall leave us no alternative but to file a lawsuit against you for all fees due plus legal fees, interest and costs.

                       Sincerely,

                       RONALD J. HARPER

RJH/dw
cc:    Fountain Pointe Condominium Association

2:16 PM
11/25/25
Accrual Basis

# FOUNTAIN POINTE CONDOMINIUMS
## Customer Open Balance
### All Transactions

| Type | Date | Num | Memo | Due Date | Open Balance | Amount |
|---|---|---|---|---|---|---|
| **G148** | | | | | | |
| Invoice | 01/01/2022 | G148CF | | 01/01/2022 | 1,750.00 | 4,200.00 |
| Invoice | 05/01/2022 | G148BC | | 05/01/2022 | 39.00 | 389.00 |
| Invoice | 05/01/2022 | G148LF | | 05/01/2022 | 295.00 | 295.00 |
| Invoice | 05/01/2022 | G148I... | | 05/01/2022 | 448.35 | 448.35 |
| Invoice | 06/13/2022 | G148I... | | 06/13/2022 | 150.00 | 150.00 |
| Invoice | 12/03/2022 | G148CF | | 12/14/2022 | 4,500.00 | 4,500.00 |
| Invoice | 01/11/2023 | G148CF | | 01/11/2023 | 450.00 | 450.00 |
| Invoice | 01/11/2023 | G148LF | | 01/11/2023 | 450.00 | 450.00 |
| Invoice | 01/11/2023 | G148... | | 01/11/2023 | 675.00 | 675.00 |
| Invoice | 01/02/2024 | G148CF | | 01/02/2024 | 4,500.00 | 4,500.00 |
| Invoice | 01/11/2024 | G148LF | | 01/11/2024 | 450.00 | 450.00 |
| Invoice | 10/24/2024 | G148I | | 10/24/2024 | 675.00 | 675.00 |
| Invoice | 01/11/2024 | G148ER | | 01/11/2024 | 675.00 | 675.00 |
| Invoice | 11/19/2024 | G148BC | | 11/19/2024 | 260.00 | 260.00 |
| Invoice | 12/05/2024 | G148BC | | 12/05/2024 | 39.00 | 389.00 |
| Invoice | 12/11/2024 | G148LF | | 12/11/2024 | 39.00 | 389.00 |
| Invoice | 01/02/2025 | G148CF | | 01/11/2025 | 37.50 | 37.50 |
| Invoice | 01/11/2025 | G148BC | | 01/11/2025 | 2,700.00 | 4,500.00 |
| Invoice | 03/12/2025 | G148BC | | 03/12/2025 | 39.00 | 389.00 |
| Invoice | 03/12/2025 | G148BC | | 03/12/2025 | 389.00 | 389.00 |
| Invoice | 04/15/2025 | G148BC | | 04/15/2025 | 389.00 | 389.00 |
| Invoice | 05/05/2025 | G148BC | | 05/05/2025 | 389.00 | 389.00 |
| Invoice | 06/06/2025 | G148BC | | 06/06/2025 | 389.00 | 389.00 |
| Invoice | 07/14/2025 | G148BC | | 07/14/2025 | 389.00 | 389.00 |
| Invoice | 08/19/2025 | G148BC | | 08/19/2025 | 389.00 | 389.00 |
| Invoice | 11/24/2025 | G148BC | | 11/24/2025 | 829.00 | 829.00 |
| Invoice | 11/24/2025 | G148BC | | 11/24/2025 | 369.00 | 369.00 |
| Invoice | 11/24/2025 | G149BC | | 11/24/2025 | 369.00 | 369.00 |
| **Total G148** | | | | | **21,376.85** | **27,326.85** |
| **TOTAL** | | | | | **21,376.85** | **27,326.85** |

Case ID: 251202237

# EXHIBIT D1

Case ID: 251202237

This Document Prepared By:
**AMERICAN REVERSE MORTGAGE**

605 SW FIRST AVENUE
OCALA, FLORIDA 34474

Recording Requested by &
When Recorded Return To:
US Recordings, Inc.
2925 Country Drive
St Paul, MN 55117

Parcel No:

**51596112**
Page: 1 of
12/20/2006

This Document Recorded          Doc Id: 51596112
12/20/2006  M                   Receipt #: 560109
11:11AM                         Rec Fee: 126.50
Doc Code: M   Commissioner of Records, City Philadelphia

[Space Above This Line For Recording Data]

**Commonwealth of Pennsylvania**          FHA Case No. 441-7866087-958/255
4403138

# ADJUSTABLE RATE OPEN-END
# HOME EQUITY CONVERSION MORTGAGE

### THIS MORTGAGE ("SECURITY INSTRUMENT") SECURES FUTURE ADVANCES

THIS MORTGAGE ("Security Instrument") is given on **DECEMBER 05, 2006** . The mortgagor is
**THE MARVIN L MARKS AND MARLENE MARKS LIVING TRUST**
By Marvin L. Marks and Marlene Marks as Trustees and
Individuals.

whose address is **148 BENJAMIN COURT,**                                    ("Borrower").
**PHILADELPHIA, PENNSYLVANIA 19114**
This Security Instrument is given to
**AMERICAN REVERSE MORTGAGE**
, which is
, and whose address is
organized and existing under the laws of **THE STATE OF FLORIDA**
**605 SW FIRST AVENUE, OCALA, FLORIDA 34474**          ("Lender").  Borrower has agreed to repay to Lender
amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity
Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement
to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"). This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest at a rate subject
to adjustment, and all renewals, extensions and modifications of the Note up to a maximum principal amount of
**THREE HUNDRED TWENTY SEVEN THOUSAND AND 00/100** - - - - - - - - - - - - - - - - - - - - - - - - -
(U.S. $  **327,000.00**    ); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to
protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and
(c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.
For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property
located in  **PHILADELPHIA**          County, Pennsylvania:

32XC : 02/02                          Page 1

Case ID: 251202237

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which has the address of **148 BENJAMIN COURT**

[Street]

**PHILADELPHIA**                    , **PENNSYLVANIA**          **19114**        ("Property Address");
[City]                                [State]                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

**2. Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and to Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be

DOXA : 02/02                                                    Page 2

Case ID: 251202237

lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4.  Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted.  Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**5.  Charges to Borrower and Protection of Lender's Rights in the Property.**  Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.  Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement.  Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6.  Inspection.**  Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned property without notice to the Borrower.

**7.  Condemnation.**  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender.  The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

03XA : 02/02                                           Page 3

Case ID: 251202237

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

  **(a) Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

    (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

    (ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property).

  **(b) Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

    (i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

    (ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

    (iii) An obligation of the Borrower under this Security Instrument is not performed.

  **(c) Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in this Paragraph (a) (ii) or (b) occur.

  **(d) Notice to Secretary and Borrower.** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9 (a) (ii) or (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

    (i) Correct the matter which resulted in the Security Instrument coming due and payable; or

    (ii) Pay the balance in full; or

    (iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

    (iv) Provide the Lender with a deed in lieu of foreclosure.

  **(e) Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

  **(f) Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within **SIXTY DAYS** from the date hereof, if permitted by applicable law Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **SIXTY DAYS** from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure

Case ID: 251202237

proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

**12. Lien Status.**

**(a)  Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

**(b)  Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

**(c)  Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**13. Relationship to Second Security Instrument.**

**(a)  Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

**(b)  Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

(i)  This Security Instrument is assigned to the Secretary; or

(ii)  The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

**(c)  Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i)  Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii)  Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

05XA : 02/02                                         Page 5

Case ID: 251202237

**(d) No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

**14. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**15. Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

**16. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

**17. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**18. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**19. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**20. Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence to the extent permitted by applicable law.

Case ID: 251202237



**21. Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

**22. Adjustable Rate Feature.** Under the Note, the initial stated interest rate of        6.4500 % which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in Statistical Release H15 (519) ("Index") plus a margin. If the Index is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of **MARCH, 2007**        , and on ☐         that day of each succeeding ☒ the first day of each succeeding month ("Change Date") until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

☐   (Annually Adjusting Variable Rate Feature) The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

☒   (Monthly Adjusting Variable Rate Feature) The Calculated Interest Rate will never increase above **SIXTEEN AND 450/1000**        percent (    16.45000    %).

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**24. Waivers.** Borrower to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Paragraph 11 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

**28. Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower as well as Loan Advances of interest, MIP, Servicing Fees, and other charges shall be obligatory.

Case ID: 251202237

**29. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument, as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

[X] Condominium Rider    [ ] Shared Appreciation Rider    [ ] Planned Unit Development Rider
[ ] Other (Specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

*Of The Marvin L.
Marks and Marlene
Marks Living Trust.

_____ -Borrower
MARVIN L. MARKS

_____
MARVIN L MARKS, AS TRUSTEE *

_____ -Borrower
MARLENE MARKS

_____
MARLENE MARKS, AS TRUSTEE *

[Space Below This Line For Acknowledgment]

COMMONWEALTH OF _Penna_ ,                    COUNTY SS: _Phila_

On this, the _2nd_ day of _December_ 2006 before me _DEBRA J. POHL_ the undersigned officer, personally appeared Marvin L. Marks and Marlene Marks as Trustee of The Marvin L. Marks and Marlene Marks Living Trust and as Individuals.

known to me (or satisfactorily proven) to be the person whose name _____ subscribed to the within instrument, and acknowledged that _they_ executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
DEBRA J POHL, Notary Public
City of Philadelphia, Phila. County
My Commission Expires December 23, 2008

_____ , notary public

_____
Title of Officer  notary public

Certificate of Residence
I hereby certify that the correct address of the mortgagee is
AMERICAN REVERSE MORTGAGE
605 SW FIRST AVENUE
OCALA, FLORIDA 34474

By: _____
Name: Heidi Coyenhearer
Title: Agent of Title Co.

35XC : 06/97                                        Page 8

Case ID: 251202237

Lender: AMERICAN REVERSE MORTGAGE

Borrower: MARVIN L. MARKS AND MARLENE MARKS

Property Address: 148 BENJAMIN COURT
PHILADELPHIA, PENNSYLVANIA 19114

Loan Number: 4463138

# PENNSYLVANIA
# CERTIFICATE OF RESIDENCE

I, _Heidi Cenweaver_                                      , on behalf of
AMERICAN REVERSE MORTGAGE

(Mortgagee) certify, pursuant to Pennsylvania Statute Section 625 that the following address
605 SW FIRST AVENUE
OCALA, FLORIDA 34474
is the precise address of Mortgagee.

Date: DECEMBER 05, 2006

AMERICAN REVERSE MORTGAGE

By: _Heidi Cenweaver_

675P 01/04

Case ID: 251202237



# CONDOMINIUM RIDER
## (Home Equity Conversion Mortgage)

441-7866087-958/255
440.138

THIS CONDOMINIUM RIDER is made this **05TH** day of **DECEMBER, 2006**, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **AMERICAN REVERSE MORTGAGE**

("Lender") of the same date and covering the Property described in the Security Instrument and located at:

**148 BENJAMIN COURT, PHILADELPHIA, PENNSYLVANIA 19114**
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:
**FOUNTAIN POINTE**
[Name of Condominium Project]

("Condominium Project"). If the owners association or other entity which acts for the Condominium Project ("Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring all property subject to the condominium documents, including all improvements now existing or hereafter erected on the Property, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender or the Secretary require, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the payment of the premium for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 3 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the condominium unit or to the common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the Condominium Project.

20XA : 11/96    Page 1 of 2

Case ID: 251202237

C. If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_____ (Seal)
MARVIN L. MARKS                                    -Borrower
MARVIN L MARKS, AS TRUSTEE

_____ (Seal)
MARLENE MARKS                                      -Borrower
MARLENE MARKS, AS TRUSTEE

21XA : 11/95                                    Page 2 of 2

Case ID: 251202237

# EXHIBIT A

AS G-148, OF THE FOUNTAIN POINTE OF PHILADELPHIA CONDOMINIUM
ACCORDING TO THE DECLARATION OF CONDOMINIUM FILED IN BOOK FHS 1631
PAGE 481, AND ANY AMENDMENTS THERETO, IN THE PHILADELPHIA COUNTY
RECORDS.    TOGETHER WITH AN UNDIVIDED 0.8772 PERCENTAGE INTEREST IN
THE COMMON ELEMENTS THERETO.
TAX PARCEL ID: 129N19-319
ADDRESS: 148 BENJAMIN COURT
         PHILADELPHIA, PA  19114

U3544⊙148-01AI12
MORTGAGE
LOAN# 4403138
Recordings

Case ID: 251202237

# EXHIBIT D2

Case ID: 251202237

This Document Prepared By:
**AMERICAN REVERSE MORTGAGE**

105 SW FIRST AVENUE
OCALA, FLORIDA 34474

Recording Requested by &
When Recorded Return To:
US Recordings, Inc.
2925 Country Drive
St. Paul, MN 55117

Parcel No:

51655821
Page: 1 of 13
03/23/2007 03:26PM

This Document Recorded
03/23/2007
03:26PM
Doc Code: M

Doc Id: 51655821
Receipt #: 584776
Rec Fee: 126.50
Commissioner of Records, City of Philadelphia

51596111
Page: 1 of 12
12/20/2006 11:11AM

This Document Recorded
12/20/2006
11:11AM
Doc Code: M

Doc Id: 51596111
Receipt #: 550109
Rec Fee: 126.50
Commissioner of Records, City of Philadelphia

This Mortgage is being re-recorded to correct the Sequence in which it was recorded

[Space above This Line For Recording Data]

Commonwealth of Pennsylvania

FHA Case No. 441-7866087-958/255
4403138

## ADJUSTABLE RATE OPEN-END
## HOME EQUITY CONVERSION SECOND MORTGAGE

### THIS MORTGAGE ("SECURITY INSTRUMENT") SECURES FUTURE ADVANCES

THIS MORTGAGE ("Security Instrument" or "Second Security Instrument") is given on **DECEMBER 05, 2006** . The mortgagor is
**THE MARVIN L MARKS AND MARLENE MARKS LIVING TRUST
By Marvin L. Marks and Marlene Marks as Trustees and
Individuals.**

whose address is    **148 BENJAMIN COURT,
PHILADELPHIA, PENNSYLVANIA 19114**                       ("Borrower"). This Security Instrument is given
to the Secretary of Housing and Urban Development, whose address is 451 Seventh Street, S.W., Washington, DC
20410 ("Lender" or "Secretary"). Borrower has agreed to repay to Lender amounts which Lender is obligated to
advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the
same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's
Note dated the same date as this Security Instrument ("Second Note"). This Security Instrument secures to
Lender: (a) the repayment of the debt evidenced by the Second Note, with interest, at a rate subject to adjustment,
and all renewals, extensions and modifications of the Note, up to a maximum principal amount of
**THREE HUNDRED TWENTY SEVEN THOUSAND AND 00/100 -----------------------------**

(U.S. $   327,000.00    ); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to
protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and
(c) the performance of Borrower's covenants and agreements under this Security Instrument and the Second Note.
For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property
located in  **PHILADELPHIA**          County, Pennsylvania:

35XC : 02/02                              Page 1

Case ID: 251202237

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which has the address of    148 BENJAMIN COURT

[Street]

PHILADELPHIA                    ,  PENNSYLVANIA              19114        ("Property Address");
[City]                              [State]                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is only encumbered by a First Security Instrument given by Borrower and dated the same date as this Security Instrument ("First Security Instrument"). Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.**  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Second Note.

**2. Payment of Property Charges.**  Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement. Lender may require Borrower to pay specified property charges directly to the party owed payment even though Lender pays other property charges as provided in this Paragraph.

**3. Fire, Flood and Other Hazard Insurance.**  Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's

10XA : 09/97                                    Page 2

Case ID: 251202237

security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under the Second Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

5. Charges to Borrower and Protection of Lender's Rights in the Property. Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6. Inspection. Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

7. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

13XA : 11/96                                         Page 3

Case ID: 251202237

**8. Fees.** Lender may collect fees and charges authorized by the Secretary for the Home Equity Conversion Mortgage Insurance Program.

**9. Grounds for Acceleration of Debt.**

(a) **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property); or

(iii) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(iv) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(v) An obligation of the Borrower under this Security Instrument is not performed.

(b) **Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in Paragraph 9(a)(ii)-(v) occur.

(c) **Notice to Borrower.** Lender shall notify Borrower whenever the loan becomes due and payable under Paragraph 9 (a)(ii)-(v). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

(d) **Trusts.** Conveyance of Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

Case ID: 251202237

**12. Lien Status.**

(a) **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except the First Security Instrument described in Paragraph 13(a), this Second Security Instrument and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**13. Relationship to First Security Instrument.**

(a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and this Second Security Instrument. Borrower also has executed a First Note and First Security Instrument.

(b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the First Note unless:

(i) The First Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the holder of the First Note for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the First Note.

(c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the First Note, or pay any rents and revenues of the Property under Paragraph 19 to the holder of the First Note or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest or shared appreciation under the First Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the First Note.

(d) **No Duty of the Secretary.** The Secretary has no duty to the holder of the First Note to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though the holder of the First Note may be unable to collect amounts owed under the First Note because of restrictions in this Paragraph 13.

15XA : 11/96                                    Page 5

Case ID: 251202237

(e) **Restrictions on Enforcement.** Notwithstanding anything else in this Security Instrument, the Borrower shall not be obligated to comply with the covenants hereof, and Paragraph 19 shall have no force and effect, whenever there is no outstanding balance under the Second Note.

**14. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**15. Successors and Assigns Bound; Joint and Several Liability.** Borrower may not assign any rights or obligations under this Security Instrument or the Second Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

**16. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to the Secretary shall be given by first class mail to the HUD Field Office with jurisdiction over the Property or any other address designated by the Secretary. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

**17. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Second Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Second Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Second Note are declared to be severable.

**18. Borrower's Copy.** Borrower shall be given one conformed copy of the Second Note and this Security Instrument.

**NON-UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

**19. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19, except as provided in the First Security Instrument.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**20. Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender at its option may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence to the extent permitted by applicable law.

Case ID: 251202237

**21. Lien Priority.** The full amount secured by this Security Instrument shall have a lien priority subordinate only to the full amount secured by the First Security Instrument.

**22. Adjustable Rate Feature.** Under the Second Note, the initial stated interest rate of ___ 6.4500 % which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in Statistical Release H.15 (519) ("Index") plus a margin. If the Index is no longer available, Lender will use as a new Index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of **MARCH, 2007** , and on ☐ that day of each succeeding ☒ the first day of each succeeding month ("Change Date") until the loan is repaid in full.

The value of the Index will be determined using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

☐ (Annually Adjusting Variable Rate Feature) The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

☒ (Monthly Adjusting Variable Rate Feature) The Calculated Interest Rate will never increase above **SIXTEEN AND 450/1000** percent ( 16.45000 %).

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**24. Waivers.** Borrower to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Paragraph 11 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

**28. Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower as well as Loan Advances of interest, MIP, Servicing Fees and other charges shall be obligatory.

Case ID: 251202237

**29. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☒ Condominium Rider     ☐ Shared Appreciation Rider     ☐ Planned Unit Development Rider
☐ Other (Specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

*Of The Marvin L.
Marks and Marlene
Marks Living Trust

_____ -Borrower
**MARVIN L. MARKS**

_____
**MARVIN L. MARKS, AS TRUSTEE** *

_____ -Borrower
**MARLENE MARKS**

_____
**MARLENE MARKS, AS TRUSTEE** *

[Space Below This Line For Acknowledgment]

COMMONWEALTH OF _Penna_ , _____ , COUNTY SS: _Phila_

On this, the _6th_ day of _December 2004_ before me _DEBRA J. POHL_ , the undersigned officer, personally appeared

Marvin L. Marks and Marlene Marks as Trustees of The Marvin L. Marks and Marlene Marks Living Trust and as Individuals.

known to me (or satisfactorily proven) to be the person whose name _____ subscribed to the within instrument, and acknowledged that _they_ executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
DEBRA J. POHL, Notary Public
City of Philadelphia, Phila. County
My Commission Expires December 23, 2008

_Debra J. Pohl, notary public_

_notary public_
Title of Officer

Certificate of Residence
I hereby certify that the correct address of the mortgagee is
**SECRETARY OF HOUSING AND URBAN DEVELOPMENT**
**451 SEVENTH STREET, S.W.**
**WASHINGTON, DC 20410**

By: _Heidi Copenheaver_
Name: _Heidi Copenheaver_
Title: _Agent of Title Co._

39XC : 05/97

Page 9 of 9

Case ID: 251202237

Lender: AMERICAN REVERSE MORTGAGE

Borrower: MARVIN L. MARKS AND MARLENE MARKS

Property Address: 148 BENJAMIN COURT
PHILADELPHIA, PENNSYLVANIA 19114

Loan Number: 4403138

## PENNSYLVANIA
## CERTIFICATE OF RESIDENCE

I, _Heidi Copenheaver_,                                              , on behalf of

AMERICAN REVERSE MORTGAGE

(Mortgagee) certify, pursuant to Pennsylvania Statute Section 625 that the following address
605 SW FIRST AVENUE
OCALA, FLORIDA 34474
is the precise address of Mortgagee.

Date: DECEMBER 05, 2006

AMERICAN REVERSE MORTGAGE

By: _Heidi Aheam_

67SP : 01/04

Case ID: 251202237

# CONDOMINIUM RIDER
## (Home Equity Conversion Mortgage)

441-7866087-958/255
#403138

THIS CONDOMINIUM RIDER is made this **05TH** day of **DECEMBER, 2006** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **SECRETARY OF HOUSING AND URBAN DEVELOPMENT**

("Lender") of the same date and covering the Property described in the Security Instrument and located at:

**148 BENJAMIN COURT, PHILADELPHIA, PENNSYLVANIA 19114**
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:
**FOUNTAIN POINTE**

[Name of Condominium Project]

("Condominium Project"). If the owners association or other entity which acts for the Condominium Project ("Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring all property subject to the condominium documents, including all improvements now existing or hereafter erected on the Property, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender or the Secretary require, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the payment of the premium for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 3 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the condominium unit or to the common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the Condominium Project.

20XA : 11/96                                          Page 1 of 2

Case ID: 251202237

C. If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.



_____ (Seal)
MARVIN L. MARKS                    -Borrower

MARVIN L MARKS, AS TRUSTEE

_____ (Seal)
MARLENE MARKS                      -Borrower

MARLENE MARKS, AS TRUSTEE

21XA : 11/96                    Page 2 of 2

Case ID: 251202237

## EXHIBIT A

AS G-148, OF THE FOUNTAIN POINTE OF PHILADELPHIA CONDOMINIUM
ACCORDING TO THE DECLARATION OF CONDOMINIUM FILED IN BOOK FHS 1631
PAGE 481, AND ANY AMENDMENTS THERETO, IN THE PHILADELPHIA COUNTY
RECORDS.  TOGETHER WITH AN UNDIVIDED 0.8772 PERCENTAGE INTEREST IN
THE COMMON ELEMENTS THERETO.
TAX PARCEL ID: 129N19-319
ADDRESS: 148 BENJAMIN COURT
         PHILADELPHIA, PA  19114

U35449140-02A112
MORTGAGE
LOAN# 4403138
US Recordings

State of _Pa._

County of _Phila_

On _MAR 20_, 2007 before me, _DEBRA J. POHL_
                                        Notary (Print Name)

personally appeared:

**Marvin L. Marks and Marlene Marks**

proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which their person(s) acted, executed the instrument.

- **This Mortgage is being recorded to correct the sequence of which it was originally recorded.**

- Reference: Document #51596111 Pages 1-12 recorded on 12/20/2006.

_Marvin L. Marks_
Marvin L. Marks

_Marvin L. Marks as Trustee_
Marvin L. Marks, as Trustee

_Marlene Marks_
Marlene Marks

_Marlene Marks as Trustee_
Marlene Marks, as Trustee

In WITNESS WHEREOF, I hereunto set my hand and official Seal.

_Debra J. Pohl_
Notary Public

My Commission Expires: _12 23.08_

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
U36388639-01A113
RE-RCRD MTG/DOT
LOAN# 4403733
US Records

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
DEBRA J. POHL, Notary Public
City of Philadelphia, Phila. County
My Commission Expires December 23, 2008

Case ID: 251202237

# Affidavit of Service

## Affidavit / Return of Service

| Plaintiff: | FOUNTAIN POINTE CONDOMINIUM ASSOCIATIO | Court Term & No.: 251202237 |
|---|---|---|
| | | E-File# 2512047315 |

| Defendant: | MARVIN MARKS<br>MARVIN L MARKS & MARLENE MARKS LIVING | Document Served:<br>Plaintiff's Complaint |
|---|---|---|

| Serve at: | 148 BENJAMIN COURT | Company Reference/Control No.: |
|---|---|---|

Served and Made Known to _____ on _____ at _____, in the manner described below:

| Description | Age: | Height: | Weight: | Race: | Sex: |
|---|---|---|---|---|---|
| | Other: | | | | |

On 12/18/2025 at 11:55 AM, MARVIN L MARKS & MARLENE MARKS LIVING TRUST AKA MARKS LIVING... not found because No Answer

| Company Profile:<br>MICHAEL DOYLE<br>1315 WALNUT ST.<br>PHILADELPHIA PA 19107<br>PHONE: (215)545-7655 | Name of Server: MICHAEL H. DOYLE<br>Being duly sworn according to law, deposes and says that he/she is process server herein names; and that the facts herein set forth above are true and correct to the best of their knowledge, information and belief. |
|---|---|
| | Deputy Sheriff: |

**FILED AND ATTESTED PRO-PROTHY 19 DEC 2025 06:56 AM**

# Motion for Alternative Service

19 DEC 2025 03:02 pm

PHILADELPHIA COURT OF COMMON PLEAS
Civil Administration
PETITION/MOTION COVER SHEET
E BARRETT

| CONTROL NUMBER: |
| --- |
| *(RESPONDING PARTIES MUST INCLUDE THIS NUMBER ON ALL FILINGS)* |

| FOR COURT USE ONLY | |
| --- | --- |
| ASSIGNED TO JUDGE: | ANSWER/RESPONSE DATE: |

*Do not send Judge courtesy copy of Petition/Motion/Answer/Response. Status may be obtained online at http://courts.phila.gov*

December     Term, 2025
*Month*         *Year*

No. 02237

Fountain Pointe Condominium Association

Name of Filing Party:
Fountain Pointe Condominium Association

vs.

Marvin Marks etal

*(Check one)*   [✓] Plaintiff    [ ] Defendant

*(Check one)*   [✓] Movant    [ ] Respondent

**Has another petition/motion been decided in this case?**   [ ] Yes [✓] No

**Is another petition/motion pending?**
*If the answer to either question is yes, you must identify the judge(s):*   [ ] Yes [✓] No

INDICATE NATURE OF DOCUMENT FILED:
[ ] Petition (Attach Rule to Show Cause)   [✓] Motion
[ ] Answer to Petition   [ ] Response to Motion

TYPE OF PETITION/MOTION *(see list on reverse side)*

# Motion for Alternate Service

PETITION/MOTION CODE
*(see list on reverse side)*
**MTSVR**

ANSWER/RESPONSE FILED TO *(Please insert the title of the corresponding petition/motion to which you are responding):*

**I. CASE PROGRAM**

**Is this case in the** *(answer all questions)*:

**A. COMMERCE PROGRAM**

Name of Judicial Team Leader: _____

Applicable Petition/Motion Deadline: _____

Has deadline been previously extended by the Court?
[ ] Yes   [ ] No

**B. DAY FORWARD/MAJOR JURY PROGRAM** — Year_____

Name of Judicial Team Leader: _____

Applicable Petition/Motion Deadline: _____

Has deadline been previously extended by the Court?
[ ] Yes   [ ] No

**C. NON JURY PROGRAM**

Date Listed: Not listed to date

**D. ARBITRATION PROGRAM**

Arbitration Date: _____

**E. ARBITRATION APPEAL PROGRAM**

Date Listed: _____

**F. OTHER PROGRAM:**

Date Listed: _____

**II. PARTIES** (required for proof of service)
*(Name, address and **telephone number** of all counsel of record and unrepresented parties. Attach a stamped addressed envelope for each attorney of record and unrepresented party.)*

Ronald J. Harper, Esq
140 W. Maplewood Avenue
Philadelphia, PA 19144
215 844 4848

Marvin Marks and The Marvin L. Marks and Marlene Marks Living Trust aka
Marks Living Trust
148 Benjamin Court
Philadelphia, PA 19114

American Reverse Mortgage
605 SW First Avenue
Ocala, FL 34471

**III. OTHER**

By filing this document and signing below, the moving party certifies that this motion, petition, answer or response along with all documents filed, will be served upon all counsel and unrepresented parties as required by rules of Court (see PA. R.C.P. 206.6, Note to 208.2(a), and 440). Furthermore, moving party verifies that the answers made herein are true and correct and understands that sanctions may be imposed for inaccurate or incomplete answers.

_____    _____    Ronald J. Harper, Esq    10345
*(Attorney Signature/Unrepresented Party)*    *(Date)*    *(Print Name)*    *(Attorney I.D. No.)*

**The Petition, Motion and Answer or Response, if any, will be forwarded to the Court after the Answer/Response Date. No extension of the Answer/Response Date will be granted even if the parties so stipulate.**

30-1061 (Rev. 8/2014)

Case ID: 251202237
Control No.: 25124614

**IN THE COURT OF COMMON PLEAS
OF PHILADELPHIA COUNTY**

|  |  |
|---|---|
| FOUNTAIIN POINTE CONDOMINIUM ASSOCIATION | : COURT OF COMMON PLEAS |
| vs. | : |
| MARVIN MARKS | : DECEMBER TERM, 2025 |
| and | : |
| THE MARVIN L. MARKS and MARLENE MARKS | : |
| LIVING TRUST a/k/a MARKS LIVING TRUST | : NO. 02237 |
| and | : |
| AMERICAN REVERSE MORTGAGE | : |
| | : |

## ORDER

**AND NOW**, this          day of                    2025, upon consideration

of Plaintiff's Motion for Alternate Service, it is **ORDERED** and **DECREED** that the Motion is

granted and Plaintiff shall POST the premises at 148 Benjamin Court, Philadelphia, Pa. 19114

with the Complaint in Civil Action upon the Defendants, Marvin Marks and

The Marvin L. Marks and Marlene Marks Living Trust a/k/a Marks Living Trust.

_____
                                                                          J.

Case ID: 251202237
Control No.: 25124614

**RONALD J. HARPER, Esquire**
Identification No. 10345
140 West Maplewood Avenue
Philadelphia, Pa. 19144-3307
(215) 844-4848

Attorney for Plaintiff

| | |
|---|---|
| FOUNTAIIN POINTE CONDOMINIUM ASSOCIATION | : COURT OF COMMON PLEAS |
| vs. | : |
| MARVIN MARKS | : DECEMBER TERM, 2025 |
| and | : |
| THE MARVIN L. MARKS and MARLENE MARKS | : |
| LIVING TRUST a/k/a MARKS LIVING TRUST | : NO. 02237 |
| and | : |
| AMERICAN REVERSE MORTGAGE | : |
| | : |
| | : |

## <u>MOTION FOR ALTERNATE SERVICE FOR<br>DEFENDANTS MARVIN MARKS AND THE MARVIN L. MARKS AND<br>MARLENE MARKS LIVING TRUST a/k/a MARKS LIVING TRUST</u>

TO THE HONORABLE, JUDGES OF SAID COURT:

The Movant, Fountain Pointe Condominium Association by their attorney,

Ronald J. Harper, Esquire, respectfully represents:

1.      That Fountain Pointe Condominium Association is the Plaintiff in the above

captioned matter.

2.      That the Plaintiff's Civil Action was filed on December 16, 2025 in this matter.

A true and correct copy is attached as Exhibit A.

3.      That the Defendants, Marvin Marks and The Marvin L. Marks and

Marlene Marks Living Trust a/k/a Marks Living Trust could not be served because they were

not found/No Answer.  See copy of Return of Service made part hereof and marked Exhibit B.

Case ID: 251202237<br>Control No.: 25124614

4.    In accordance with the City of Philadelphia Office of Property Assessment,

Defendant Marvin L. Marks (and Marlene) are the owners of 148 Benjamin Court, Philadelphia,

Pa. 19114.  See Exhibit C.

5.    The actual Deed for the premises show that the owners of 148 Benjamin Court are

The Marvin L. Marks and Marlene Marks Living Trust. A true and correct copy of the Deed is

attached as Exhibit D.

6.    This lawsuit was filed by the Plaintiff for non-payment of Condominium charges,

dues, fees, costs, etc due for 148 Benjamin Court, Philadelphia, Pa. 19114

7.    The attached documentation is clear that the Defendants own the premises at

148 Benjamin Court, Philadelphia, Pa. 19114

8.    Search of the City of Philadelphia real estate documentation shows that the

Defendants are paying the real estate taxes on 148 Benjamin Court Philadelphia, Pa. 19114.

See Exhibit E.

9.    The Plaintiff requests Alternate Service by Posting the premises.

**WHEREFORE**, Plaintiff requests this Honorable Court to enter an Order allowing the

Plaintiff to serve Defendants by alternate service/Posting the Premises .

RONALD J. HARPER, Esquire
Attorney for Plaintiff

Case ID: 251202237
Control No.: 25124614

**RONALD J. HARPER, Esquire**
Identification No. 10345                          Attorney for Plaintiff
140 West Maplewood Avenue
Philadelphia, Pa. 19144-3307
(215) 844-4848

_____

FOUNTAIIN POINTE CONDOMINIUM ASSOCIATION : COURT OF COMMON PLEAS

         vs.                         :
MARVIN MARKS                    : DECEMBER TERM, 2025
       and                     :
THE MARVIN L. MARKS and MARLENE MARKS  :
LIVING TRUST a/k/a MARKS LIVING TRUST  : NO. 02237
       and                     :
AMERICAN REVERSE MORTGAGE        :
                                 :

_____

## <u>AFFIDAVIT OF GOOD FAITH INVESTIGATION</u>

COMMONWEALTH OF PENNSYLVANIA:
                              ss
COUNTY OF PHILADELPHIA:

      Ronald J. Harper, Esquire, duly sworn according to law deposes and says that I made a

Good Faith Investigation as follows:

      1.      The legal action involves Condominium fees due to Plaintiff.

      2.      The real estate that the fees are due for is 148 Benjamin Court, Philadelphia, Pa.

19114.

      3.      I checked the City of Philadelphia Office of Property Assessment and found the

owner of the premises stated as Marvin L. Marks (and Marlene) with a mailing address of

148 Benjamin Court, Philadelphia, Pa. 19114.

Case ID: 251202237
Control No.: 25124614

4.      I obtained the actual current Deed for 148 Benjamin Court, Philadelphia, Pa. and found that the owners are Defendant The Marvin L. Marks and Marlene Marks Living Trust a/k/a Marks Living Trust.  The address for the said Trust is 148 Benjamin Court, Philadelphia, Pa. 19114.

5.      It is Marvin L. Marks and Marlene Marks Living Trust that needs to be served.

6.      The real estate taxes are being paid.

7.      The Defendant Trust did pay Plaintiff until 2022.

This information is true and correct to the best of my knowledge.


_____
RONALD J. HARPER, Esquire
Attorney for Plaintiff


Sworn to and subscribed
before me this *19th* day
of *December* 2025


_____
NOTARY PUBLIC

Commonwealth of Pennsylvania - Notary Seal
Andrea B. Paul, Notary Public
Philadelphia County
My Commission Expires May 1, 2027
Commission Number 1195022

**RONALD J. HARPER, Esquire**
Identification No. 10345                                          Attorney for Plaintiff
140 West Maplewood Avenue
Philadelphia, Pa. 19144-3307
(215) 844-4848

---

|                                                                      | :                          |
| FOUNTAIIN POINTE CONDOMINIUM ASSOCIATION | : COURT OF COMMON PLEAS |
|                                                                      | :                          |
| vs.                                                              | :                          |
| MARVIN MARKS                                              | : DECEMBER TERM, 2025 |
| and                                                            | :                          |
| THE MARVIN L. MARKS and MARLENE MARKS       | :                          |
| LIVING TRUST a/k/a MARKS LIVING TRUST           | : NO. 02237           |
| and                                                            | :                          |
| AMERICAN REVERSE MORTGAGE                    | :                          |
|                                                                      | :                          |
|                                                                      | :                          |

---

## MEMORANDUM OF LAW

The Plaintiff Fountain Pointe Condominium Association has filed this lawsuit against the

Defendants Marvin Marks and The Marvin L. Marks and Marlene Marks Living Trust a/k/a

Marks Living Trust for various Condo fees, dues, costs and charges for 148 Benjamin Court,

Philadelphia, Pa. 19114.

According to the City of Philadelphia the real estate is owned by Defendant

Marvin Marks whose mailing address is 148 Benjamin Court, Philadelphia, Pa. 19114.  In

accordance with the actual Deed the property at 148 Benjamin Sourt, Philadelphia, Pa. 19114 is

owned by Defendant The Marvin L. Marks and Marlene Marks Living Trust.  The address of the

said Trust on the current Deed is 148 Benjamin Court, Philadelphia, Pa. 19114.

The case involves the real estate at 148 Benjamin Court, Philadelphia, Pa. 19114.

The Defendants Marvin Marks and The Marvin L. Marks and Marlene Marks Living Trust

should be served by Posting which is the appropriate alternate service.

_Ronald J Harper_
RONALD J. HARPER, Esquire
Attorney for Plaintiff

## VERIFICATION

I, **RONALD J. HARPER, Esquire,** for Plaintiff, verifies that the facts contained

in the foregoing pleadings are true and correct to the best of my knowledge, information

and belief.

This verification is made subject to the penalties of 18 Pa. C.S.A.   4904 relating

to unsworn falsification to authorities.


_____

RONALD J. HARPER, Esquire,
Attorney for Plaintiff

# Order #8

IN THE COURT OF COMMON PLEAS
OF PHILADELPHIA COUNTY

| | |
|---|---|
| FOUNTAIIN POINTE CONDOMINIUM ASSOCIATION | : COURT OF COMMON PLEAS |
| vs. | : |
| MARVIN MARKS | : DECEMBER TERM, 2025 |
| and | : |
| THE MARVIN L. MARKS and MARLENE MARKS | : |
| LIVING TRUST a/k/a MARKS LIVING TRUST | : NO. 02237 |
| and | : |
| AMERICAN REVERSE MORTGAGE | : |
| | : |

## ORDER

**AND NOW,** this _22nd_ day of _December_ 2025, upon consideration

of Plaintiff's Motion for Alternate Service, it is **ORDERED** and **DECREED** that the Motion is

granted and Plaintiff shall POST the premises at 148 Benjamin Court, Philadelphia, Pa. 19114

with the Complaint in Civil Action upon the Defendants, Marvin Marks and

The Marvin L. Marks and Marlene Marks Living Trust a/k/a Marks Living Trust.

_Christopher R. Hall_
_____
J.



ORDER-Fountain Pointe Condominium Association Vs Marks E [MEM]

25120223700008

Case ID: 251202237
Control No.: 25124614

# Affidavit of Service

**ANDREA B. PAUL, Esquire**
Identification No. 27192
140 West Maplewood Avenue
Philadelphia, Pa. 19144
(215) 844-4848



Attorney for Plaintiff

_Filed and Attested by the
Office of Judicial Records
27 FEB 2026 10:49 am
G. IMPERATO_

_____

FOUNTAIN POINTE CONDOMINIUM ASSOCIATION :COURT OF COMMON PLEAS
                                                  :
        vs.                                  :
MARVIN MARKS and                       : DECEMBER TERM, 2025
MARVIN L. MARKS and MARLENE MARKS    :
LIVING TRUST                                 :
        and                                : NO. 02237
AMERICAN REVERSE MORTGAGE         :
                                                  :
_____ :

### AFFIDAVIT OF SERVICE OF CASE MANAGEMENT
### <u>CONFERENCE INFORMATION</u>

COMMONWEALTH OF PENNSYLVANIA:
                                       ss.

COUNTY OF PHILADELPHIA9:

     **ANDREA B. PAUL, Esquire**, being duly sworn according to law, deposes and says that on February 27, 2026 she served a true and correct copy of the Case Management Conference Information upon Defendants at their last known addresses as per attached.

                                                                                  _____
                                                          ANDREA B. PAUL, Esquire
                                                          Attorney for Plaintiff

Sworn to and subscribed
before me this 27ᵗʰ  day
of _February_ , 2026

_____
NOTARY PUBLIC

Commonwealth of Pennsylvania · Notary Seal
BECKY L DUBOSE - Notary Public
Philadelphia County
My Commission Expires November 3, 2027
Commission Number 1294337

Case ID: 251202237

# HARPER, PAUL & HARVEY

*Attorneys at Law*

140 West Maplewood Avenue
Philadelphia, Pennsylvania 19144-3307

Telephone (215) 844-4848
TeleFax (215) 844-0464

GERMANTOWN

RONALD J. HARPER
ANDREA B. PAUL
SHARON N. HARVEY

February 27, 2026

Marvin Marks and Marvin L. Marks
and Marlene Marks Living Trust
148 Bejamin Court
Philadelphia, Pa. 19114

American Reverse Mortgage
605 SW First Avenue
Ocala, FL. 34471

> **RE:** **Fountain Pointe Condominium Association vs. Marvin Marks**
> **and The Marvin L. Marks and Marlene Marks Living Trust**
> **and American Reverse Mortgage**
> **Case No. 251202237**

Dear Sir/Madam:

Enclosed please find the Case Management Conference information for the Conference scheduled for Friday, March 20, 2026 at 2:00 p.m. via Zoom.

Sincerely,

ANDREA B. PAUL

ABP/dw
enclosure



**First Judicial District of Pennsylvania**

**Court of Common Pleas of Philadelphia County**

**Trial Division – Civil Section**

## CIVIL CASE MANAGEMENT CONFERENCE

## ADVICE TO COUNSEL

1.  Be sure to <u>fully</u> complete the Case Management Conference Memorandum <u>prior</u> to the Case Management Conference. Five (5) days prior to the Case Management Order issuance date, ***<u>all parties</u>*** are required to electronically file with the Court and serve upon all opposing counsel and/or opposing parties not electronically served by the court a fully completed Case Management Memorandum. ***<u>Failure to timely file a Case Management Memorandum may result in monetary sanctions.</u>*** To electronically file the Case Management Memorandum, access the "Existing Case" section of the court's electronic filing system. Select "Conference Submissions" as the filing category. Select "Management Memorandum" as the filing type. Any party not registered with the electronic filing system ("EFS") may submit the Memorandum via e-mail or USPS first class mail:

    CivilCaseManagement@courts.phila.gov.

    Civil Case Management Conference Center

    613 City Hall

    Philadelphia, PA 19107

2.  **Consult clients well in advance of the conference** to obtain pertinent information to prepare the memorandum. When supplying information on injuries or damages, it is insufficient for plaintiff to state "unknown," "to be supplied," or "under investigation." In stating factual positions as to liability, it is insufficient to use non-descriptive terms, such as "liability certain," "100% liability," or "clear liability." Litigants are asked to provide their date of birth, which is intended for Court use only and will not be made available to the public.

3.  Counsel and/or self-represented parties shall access the Case Management Conference through the Zoom link posted on the website and listed below. To access the site from the court's homepage select "Calendars" then "Common Pleas - Civil Remote Hearing Information."

    https://www.courts.phila.gov/remote-hearings/

Case ID: 251202237

Scroll down within the section "**Remote Hearing Information by Court Event Type"** under "General Program Hearings" to "Case Management Conference - Civil Case Management Center" and click on "Join Case Management Conference". The Zoom link may be updated periodically, so use the Zoom link that is present on the date of the Conference.

4.    Be <u>fully</u> prepared to discuss issues relating to service of process, venue, pleadings, discovery, joinder of additional parties, theories of liability, damages, applicable defenses, and status of settlement negotiations. Parties are encouraged to discuss these issues amongst themselves prior to the conference when possible. **Participation from fully prepared and cooperative parties leads to a more productive and meaningful conference**. Failure to file a Complaint or effectuate service of process prior to the conference date may result in issuance of a Rule to Show Cause.

5.    Conduct discovery as soon as practicable, even while awaiting disposition of preliminary objections. **The presumptive discovery deadlines are calculated from the filing date of an action, not from the date of the Case Management Conference**. The pendency of Preliminary Objections does not stay discovery. If a formal stay is necessary, the parties should petition the Court accordingly.

6.    Consider <u>voluntarily</u> transferring your case to the Compulsory Arbitration Program where appropriate. **The Case Managers can generate a *Praecipe* to Transfer and schedule a hearing date for you**. All cases having an amount in controversy, exclusive of interest and costs, of $50,000 and less (except cases involving title to real estate) shall be assigned to the Compulsory Arbitration Program. (See *Philadelphia County Rules*, Rule *1301) The Team Leader Judges may *sua sponte* remand matters to the Compulsory Arbitration Program accordingly.

7.    Be mindful that the **Case Management Conference is a Court proceeding**. The Case Managers are empowered by the Team Leader Judge to issue appropriate Orders to enforce compliance with program procedures and applicable Rules of Civil Procedure. Any Rule to Show Cause entered will be returnable before the Team Leader Judge. (See *Philadelphia County Rules*, General Court Regulation No. 95-2)

8.    After the Case Management Conference is completed, upon receipt of the Case Management Order, carefully review the entire Case Management Order. **Be sure to promptly note all deadlines on your calendaring or tickler system**. You will receive notice from the Court of actual Settlement Conference and Pre-trial Conference dates and related instructions in due course.

9.    Motions for Extraordinary Relief seeking extension of deadlines must be filed **before** the expiration of the deadlines at issue.

10.    If the case settles prior to the Conference, a Settlement Letter must be filed through the Electronic Filing System (EFS). In the EFS, access the "Existing Case" section, select

Case ID: 251202237

"Conference Submissions" as the filing category, then select "Settlement Letter" as the filing type.

11.    Any request for continuance **must** be made in writing.  Counsel must e-file letter requests electronically through the EFS.  Access the "Existing Case" section, then choose "Case Management Conference Continuance Request" as the filing type.  Self-represented litigants may send requests via first class mail, e-mail or the EFS, but **must** send a carbon copy to all opposing parties or their attorney of record:

> Civil Case Management Conference Center
> ATTN: Request for Continuance
> 613 City Hall
> Philadelphia PA, 19107
> CivilCaseManagement@courts.phila.gov

Requests should be made at least 72 hours prior to the scheduled Case Management Conference.

12.    Please direct any questions regarding Civil Case Management by e-mail to CivilCaseManagement@courts.phila.gov.

---

[1] Disclosure of date of birth is voluntary.  Effective September 5, 2017, in a continuing effort to implement the recommendations of the *Elder Law Task Force* appointed by the Supreme Court of Pennsylvania, litigants and other persons involved in civil proceedings on the Court of Common Pleas are being asked to provide date of birth information.

# Praecipe to Reinstate Complaint



Filed and Attested by the
Office of Judicial Records
02 FEB 2026 12:14 pm
B. BALILONIS

**RONALD J. HARPER, Esquire**
Identification No. 10345                                    Attorney for Plaintiff
140 West Maplewood Avenue
Philadelphia, Pa. 19144-3307
(215) 844-4848

|  |  |
|---|---|
| FOUNTAIN POINTE CONDOMINUM ASSN | : COURT OF COMMON PLEAS |
| | : |
| vs. | : DECEMBER TERM, 2025 |
| | : |
| MARVIN MARKS etal | :NO. 02237 |
| | : |
| | : |

### PRAECIPE TO REINSTATE
### CIVIL ACTION

TO THE PROTHONOTARY:

    Kindly Reinstate the Civil Action in the above captioned matter.


                                   _____
                                   RONALD J. HARPER, Esquire
                                   Attorney for Plaintiff

# Judgment Entered by Default



*Filed and Attested by the
Office of Judicial Records
03 FEB 2026 09:41 am
A. STAMATO*

# OFFICE OF THE PROTHONOTARY
## COURT OF COMMON PLEAS
### ROOM 284, CITY HALL • PHILADELPHIA, PA  19107

JOSEPH H. EVERS
Prothonotary

To: The Marvin L. Marks and Marlene Marks Living Trust
a/k/a Marks Living Trust
148 Benjamin Court
Philadelphia, Pa. 19114

|  |  |
|---|---|
| : | **COURT OF COMMON PLEAS** |
| : | (Philadelphia County) |
| Fountain Pointe Condominium Association    : | |
| : | _____ **December** Term, 2025 ____ |
| vs.    : | |
| The Marvin L. Marks and Marlene Marks    : | |
| Living Trust a/k/a Marks Living Trust etal:  : | No. __02237_____ |

# Notice

Pursuant to Rule 236 of the Supreme Court of Pennsylvania, you are hereby notified that a
Judgment has been entered against you in the above proceeding as indicated below.

JOSEPH H. EVERS
*Prothonotary*

- ☒ Judgment by Default
- ☐ Money Judgment
- ☐ Judgment in Replevin
- ☐ Judgment for Possession
- ☐ Judgment on Award of Arbitration
- ☐ Judgment on Verdict
- ☐ Judgment on Court Findings

### If you have any questions concerning this notice, please call:

Attorney _____ Ronald J. Harper _____, Esquire
*(Insert Attorney's Name)*

at this telephone number: __215-844-4848_____.

10-232 (Rev. 2/00)

Case ID: 251202237

**RONALD J. HARPER, Esquire**
Identification No. 10345                                    Attorney for Plaintiff
140 West Maplewood Avenue
Philadelphia, Pa. 19144-3307
(215) 844-4848

---

|  |  |
|---|---|
| FOUNTAIN POINTE CONDOMINIUM ASSOCIATION | : COURT OF COMMON PLEAS |
| vs. | : |
| MARVIN MARKS | : DECEMBER TERM, 2025 |
| and | : |
| THE MARVIN L. MARKS and MARLENE MARKS | : |
| LIVING TRUST a/k/a MARKS LIVING TRUST | : NO. 02237 |
| and | : |
| AMERICAN REVERSE MORTGAGE | : |

---

### PRAECIPE FOR DEFAULT JUDGMENT AGAINST DEFENDANT, THE MARVIN L. MARKS and MARLENE MARKS LIVING TRUST a/k/a MARKS LIVING TRUST AND ASSESSMENT OF DAMAGES

TO THE PROTHONOTARY:

    Enter Judgment in favor of the Plaintiff and against the Defendant, Marvin L. Marks and Marlene Marks Living Trust a/k/a Marks Living Trust, for failure to file an Answer in the above action within twenty (20) days from the date of service of the Civil Action and Assessment of Damages as follows:

| Real Debt | $27,326.86 |
|---|---|
| Interest | $18,116.89 |
| Costs/Legal Fees | $7,500.00 |
|  | $52,943.75 |

RONALD J. HARPER, Esquire
Attorney for Plaintiff

    AND NOW, to wit, this      day of      ,2026 Entry of Judgment is entered in favor of the above named Plaintiff and against the Defendant, The Marvin L. Marks and Marlene Marks Living Trust a/k/a Marks Living Trust in the amount of $52,943.75.

---

PROTHY.

**RONALD J. HARPER, Esquire**
Identification No. 10345                          Attorney for Plaintiff
140 West Maplewood Avenue
Philadelphia, Pa. 19144-3307
(215) 844-4848

---

|  |  |
|---|---|
| | : |
| FOUNTAIN POINTE CONDOMINIUM ASSOCIATION | : COURT OF COMMON PLEAS |
| | : |
| vs. | : |
| MARVIN MARKS | : DECEMBER TERM, 2025 |
| and | : |
| THE MARVIN L. MARKS and MARLENE MARKS | : |
| LIVING TRUST a/k/a MARKS LIVING TRUST | : NO. 02237 |
| and | : |
| AMERICAN REVERSE MORTGAGE | : |
| | : |
| | : |

---

## <u>CERTIFICATION OF ADDRESSES</u>

RONALD J. HARPER, Esquire, hereby certify the following:

1.     The current address of the Plaintiff is:

     9200 Blue Grass Road
     Philadelphia, Pa. 19114

2.     The current address of the Defendant is:

     148 Benjamin Court
     Philadelphia, Pa. 19114

                                *[signature]*
                                RONALD J. HARPER, Esquire
                                Attorney for Plaintiff

Case ID: 251202237

**RONALD J. HARPER, Esquire**
Identification No. 10345                                    Attorney for Plaintiff
140 West Maplewood Avenue
Philadelphia, Pa. 19144-3307
(215) 844-4848

---

|  |  |
|---|---|
| | : |
| FOUNTAIN POINTE CONDOMINIUM ASSOCIATION | : COURT OF COMMON PLEAS |
| | : |
| vs. | : |
| MARVIN MARKS | : DECEMBER TERM, 2025 |
| and | : |
| THE MARVIN L. MARKS and MARLENE MARKS | : |
| LIVING TRUST a/k/a MARKS LIVING TRUST | : NO. 02237 |
| and | : |
| AMERICAN REVERSE MORTGAGE | : |
| | : |
| | : |

---

## AFFIDAVIT OF NON-MILITARY SERVICE

COMMONWEALTH OF PENNSYLVANIA:
                                        ss.
COUNTY OF PHILADELPHIA          :

　　RONALD J. HARPER, Esquire, being duly sworn according to law, deposes and says that defendant, The Marvin L. Marks and Marlene Marks Living Trust a/ka Marks Living Trust, is not in the military service of the United States, or any State or Territory therein, and is not subject to the provisions of the solders' and sailors' Civil Relief act of 1940, and its amendments. On the contrary, the information is provided pertaining to defendant's age, employment and residence as follows:

|  |  |  |
|---|---|---|
| AGE | : | N/A |
| EMPLOYMENT: | | Trust |
| ADDRESS | : | 148 Benjamin Court |
| | | Philadelphia, Pa. 19114 |

_[signature]_
RONALD J. HARPER, Esquire
Attorney for Plaintiff

Sworn to and Subscribed
before me this _2nd_ day
of _February_ , 2026

_[signature]_
NOTARY PUBLIC

Commonwealth of Pennsylvania - Notary Seal
BECKY L DUBOSE - Notary Public
Philadelphia County
My Commission Expires November 3, 2027
Commission Number 1294337

Case ID: 251202237

**RONALD J. HARPER, Esquire**
Identification No. 10345
140 West Maplewood Avenue
Philadelphia, Pa. 19144-3307
(215) 844-4848

Attorney for Plaintiff

FOUNTAIN POINTE CONDOMINIUM ASSOCIATION : COURT OF COMMON PLEAS

         vs. :

MARVIN MARKS : DECEMBER TERM, 2025
     and :
THE MARVIN L. MARKS and MARLENE MARKS :
LIVING TRUST a/k/a MARKS LIVING TRUST : NO. 02237
     and :
AMERICAN REVERSE MORTGAGE :
                             :

## RULE 237.1 CERTIFICATION

TO THE PROTHONOTARY:

    I, hereby certify that on January 22, 2026, the 10 Day Notice Letter was mailed to The Marvin L. Marks and Marlene and Marks Living Trust a/k/a Marks Living Trust, 148 Benjamin Court, Philadelphia, Pa. 19114

 

                              _Ronald J Harper_
                              RONALD J. HARPER, Esquire
                              Attorney for Plaintiff

**RONALD J. HARPER, Esquire**
Identification No. 10345                                    Attorney for Plaintiff
140 West Maplewood Avenue
Philadelphia, Pa. 19144-3307
(215) 844-4848

|                                                              |                          |
| ------------------------------------------------------------ | ------------------------ |
|                                                              | :                        |
| FOUNTAIN POINTE CONDOMINIUM ASSOCIATION                      | : COURT OF COMMON PLEAS  |
|                                                              | :                        |
| vs.                                                          | :                        |
| MARVIN MARKS                                                 | : DECEMBER TERM, 2025    |
| and                                                          | :                        |
| THE MARVIN L. MARKS and MARLENE MARKS                        | :                        |
| LIVING TRUST a/k/a MARKS LIVING TRUST                        | : NO. 02237              |
| and                                                          | :                        |
| AMERICAN REVERSE MORTGAGE                                    | :                        |
|                                                              | :                        |
|                                                              | :                        |

TO:   The Marvin L. Marks and Marlene Marks Living Trust
      a/k/a Marks Living Trust
      148 Benjamin Court
      Philadelphia, Pa. 19114

Dated: January 22, 2026

## IMPORTANT NOTICE

    You are in default because you have failed to take action required of you in this case. Unless you act within ten (10) days from the date of this notice, a judgment may be entered against you without a hearing and you may lose your property or other important rights.

**YOU SHOULD TAKE THIS NOTICE TO A LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE FOLLOWING OFFICE TO FIND OUT WHERE YOU CAN GET LEGAL HELP:**

Philadelphia Bar Association        Associacion De Licenciados
Referral and Information           De Lawyer
One Reading Center                Filadelfia Serivicio De Referencia
1101 Market Street                 Informacion Legal
Philadelphia, Pa. 19107          One Reading Center
(215) 238-1701                     1101 Market Street
                                 Filadelfia, Pa. 19107
                                 (215) 238-1701

RONALD J. HARPER, Esquire
Attorney for Plaintiff

# Motion to Execute Judgment Free and Clear of Mortgages

20 FEB 2026 09:39 am

PHILADELPHIA COURT OF COMMON PLEAS
PETITION/MOTION COVER SHEET

Civil Administration

**CONTROL NUMBER:**

*(RESPONDING PARTIES MUST INCLUDE THIS NUMBER ON ALL FILINGS)*

| FOR COURT USE ONLY | |
|---|---|
| ASSIGNED TO JUDGE: | ANSWER/RESPONSE DATE: |

*Do not send Judge courtesy copy of Petition/Motion/Answer/Response.*
*Status may be obtained online at http://courts.phila.gov*

December _____ Term, 2025
*Month*       *Year*

No. 02237

Fountain Pointe Condominium Association

Name of Filing Party:
Fountain Pointe Condominium Association

vs.

Marvin Marks etal

*(Check one)* ☑ Plaintiff ☐ Defendant

*(Check one)* ☑ Movant ☐ Respondent

**Has another petition/motion been decided in this case?** ☑ Yes ☐ No

**INDICATE NATURE OF DOCUMENT FILED:**
☐ Petition (Attach Rule to Show Cause)   ☑ Motion
☐ Answer to Petition   ☐ Response to Motion

**Is another petition/motion pending?**
*If the answer to either question is yes, you must identify the judge(s):* ☐ Yes ☑ No

J. Hall

| TYPE OF PETITION/MOTION *(see list on reverse side)* | PETITION/MOTION CODE *(see list on reverse side)* |
|---|---|
| **Miscellaneous Motion** | MTMIS |

ANSWER/RESPONSE FILED TO *(Please insert the title of the corresponding petition/motion to which you are responding):*

**I. CASE PROGRAM**

**Is this case in the** *(answer all questions):*

**A. COMMERCE PROGRAM**

Name of Judicial Team Leader: _____

Applicable Petition/Motion Deadline: _____

Has deadline been previously extended by the Court?
☐ Yes ☐ No

**B. DAY FORWARD/MAJOR JURY PROGRAM** — Year_____

Name of Judicial Team Leader: _____

Applicable Petition/Motion Deadline: _____

Has deadline been previously extended by the Court?
☐ Yes ☐ No

**C. NON JURY PROGRAM**

Date Listed: Not listed to date

**D. ARBITRATION PROGRAM**

Arbitration Date: _____

**E. ARBITRATION APPEAL PROGRAM**

Date Listed: _____

**F. OTHER PROGRAM:** _____

Date Listed: _____

**II. PARTIES** (required for proof of service)
(Name, address and *telephone number* of all counsel of record and unrepresented parties. Attach a stamped addressed envelope for each attorney of record and unrepresented party.)

Marvin Marks and
The Marvin L. Marks and Marlene Marks
Living Trust
114 Benjamin Court
Philadelphia, PA 19114

American Reverse Mortgage
605 SW First Avenue
Ocala, FL 34471

Ronald J Harper, Esq
Attorney for Plaintiff
140 W. Maplewood Avenue
Philadelphia, PA 19144
215 844 4848

**III. OTHER**

By filing this document and signing below, the moving party certifies that this motion, petition, answer or response along with all documents filed, will be served upon all counsel and unrepresented parties as required by rules of Court (see PA. R.C.P. 206.6, Note to 208.2(a), and 440). Furthermore, moving party verifies that the answers made herein are true and correct and understands that sanctions may be imposed for inaccurate or incomplete answers.

| *(Attorney Signature/Unrepresented Party)* | 02/20/2026 | Ronald J. Harper, Esq | 10345 |
|---|---|---|---|
| | *(Date)* | *(Print Name)* | *(Attorney I.D. No.)* |

**The Petition, Motion and Answer or Response, if any, will be forwarded to the Court after the Answer/Response Date. No extension of the Answer/Response Date will be granted even if the parties so stipulate.**

30-1061 (Rev. 8/2014)

Case ID: 251202237
Control No.: 26025048

| | |
|---|---|
| FOUNTAIN POINTE CONDOMINIUM ASSOCIATION | : COURT OF COMMON PLEAS |
| | : |
| vs. | : |
| MARVIN MARKS and | : DECEMBER TERM, 2025 |
| MARVIN L. MARKS and MARLENE MARKS | : |
| LIVING TRUST | : |
| and | : NO. 02237 |
| AMERICAN REVERSE MORTGAGE | : |
| | : |
| | : |

## <u>ORDER</u>

**AND NOW**, this          day of                  2026, upon consideration of the

Motion to Execute Judgment Free and Clear of Mortgages, it is hereby **ORDERED** and

**DECREED** that Plaintiff may execute the Judgment entered in the above captioned matter free

and clear of Mortgages against 114 Benjamin Court, Philadelphia, Pa.

_____
                                                                                            J.

Case ID: 251202237
Control No.: 26025048

**RONALD J. HARPER, Esquire**
Identification No. 10345                                              Attorney for Plaintiff
140 West Maplewood Avenue
Philadelphia, Pa. 19144
(215) 844-4848

---

FOUNTAIN POINTE CONDOMINIUM ASSOCIATION     : COURT OF COMMON PLEAS
                                           :
          vs.                              :
MARVIN MARKS and                           : DECEMBER TERM, 2025
MARVIN L. MARKS and MARLENE MARKS          :
LIVING TRUST                               :
          and                              : NO. 02237
AMERICAN REVERSE MORTGAGE                  :
                                           :
                                           :

---

## MOTION TO EXECUTE JUDGMENT
## FREE AND CLEAR OF MORTGAGES

TO THE HONORABLE JUDGES OF SAID COURT:

Plaintiff, Fountain Pointe Condominium Association by their attorney,

Ronald J. Harper, Esquire comes and files this Motion as follows:

1.      On December 16, 2025, Plaintiff filed a Civil Action in this case, a true and

correct copy is attached as Exhibit A.

2.      Pursuant to a Motion for Alternate Service, Defendants Marvin Marks and

The Marvin L. Marks and Marlene Marks Living Trust a/k/a Marks Living Trust were served by

Posting the Civil Action at 148 Benjamin Court, Philadelphia, Pa. 19114.

3.      There are mortgages against 114 Benjamin Court, Philadelphia, Pa.; that were

never approved or allowed by Plaintiff, See Exhibit B.

4.      On February 3, 2026 Judgment by Default was entered against Defendant

Marvin L. Marks and Malene Marks Living Trust a/k/a Marks Living Trust who owns

114 Benjamin Court, Philadelphia, Pa. 19114.  See Exhibit C.

Case ID: 251202237
Control No.: 26025048

5.    Defendant, American Reverse Mortgage could not be served as the Corporation is Dissolved.  See Exhibit D.

6.    A company known as Asset Management Corp for HUD (US Department Housing and Urban Development) has removed 148 Benjamin Court, Philadelphia, Pa. 19114 from their Inventory.  See Exhibit E.

7.    In an effort to collect the judgment entered, Plaintiff shall file a Writ of Execution for a Sheriff Sale of 148 Benjamin Court, Philadelphia, Pa. 19114.

8.    Plaintiff requests that the Court enter the annexed Order.

**WHEREFORE,** Plaintiff requests this Honorable Court to enter the annexed Order.


RONALD J. HARPER, Esquire
Attorney for Plaintiff

**RONALD J. HARPER, Esquire**
Identification No. 10345
140 West Maplewood Avenue
Philadelphia, Pa. 19144
(215) 844-4848

Attorney for Plaintiff

---

FOUNTAIN POINTE CONDOMINIUM ASSOCIATION

vs.

MARVIN MARKS and
MARVIN L. MARKS and MARLENE MARKS
LIVING TRUST
        and
AMERICAN REVERSE MORTGAGE

: COURT OF COMMON PLEAS
:
:
: DECEMBER TERM, 2025
:
:
: NO. 02237
:
:
:

---

## MEMORANDUM OF LAW

### Factual Background

The premises situate at 114 Benjamin Court, Philadelphia, Pa. 19114 is a Condominium

governed by Fountain Pointe Condominium Association and it is located in Fountain Pointe

Condominiums in Philadelphia, Pa.

Plaintiff filed this lawsuit against the Marks Defendants due to their failure to pay

Condominium charges, dues and fees. Any Reverse Mortgage held by Defendant American

Reverse Mortgage was neither approved nor allowed pursuant to Condominium Rules.

American Reverse Mortgage was a Florida Corporation but is dissolved. They no longer exist.

Plaintiff has a judgment against Defendant Marvin L. Marks and Marlene Marks Living

Trust, owner of 114 Benjamin Court.

Asset Management Corporation servicer of U.S. Department of Housing and

Urban Development has no interest in 114 Benjamin Court, Philadelphia, Pa. They removed it

from their Inventory due to the Judgment in this case.

Case ID: 251202237
Control No.: 26025048

**Legal Argument**

Defendant American Reverse Mortgage is dissolved. It cannot be served or found. It cannot collect their Mortgage. U.S. Department of Urban Development has no interest in 114 Benjamin Coourt.

The annexed Order should be entered.


RONALD J. HARPER, Esquire
Attorney for Plaintiff

Case ID: 251202237
Control No.: 26025048

**RONALD J. HARPER, Esquire**
Identification No. 10345                          Attorney for Plaintiff
140 West Maplewood Avenue
Philadelphia, Pa. 19144
(215) 844-4848

---

FOUNTAIN POINTE CONDOMINIUM ASSOCIATION      : COURT OF COMMON PLEAS
                                             :
            vs.                              :
MARVIN MARKS and                             : DECEMBER TERM, 2025
MARVIN L. MARKS and MARLENE MARKS            :
LIVING TRUST                                 :
            and                              : NO. 02237
AMERICAN REVERSE MORTGAGE                     :
                                             :

---

## CERTIFICATE OF SERVICE

I, Ronald J. Harper, Esquire, hereby certifies that on February 20, 2026, I served a true

and correct copy of the Motion to Execute Judgment Free and Clear of Mortgages by first class

prepaid mail at last known addresses as follows:

        Marvin Marks and Marvin L. Marks and Marlene Marks Living Trust
        114 Benjamin Court
        Philadelphia, Pa. 19114

        American Reverse Mortgage
        605 SW First Avenue
        Ocala FL. 34471

                                  _____
                                  RONALD J. HARPER, Esquire
                                  Attorney for Plaintiff

Case ID: 251202237
Control No.: 26025048

20 FEB 2026 09:39 am

Civil Administration

J. BOYD

# EXHIBIT A

Case ID: 251202237
Control No.: 26025048

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

**For Prothonotary Use Only (Docket Number)**

## DECEMBER 2025

E-Filing Number: 2512038903

**02237**

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| FOUNTAIN POINTE CONDOMINIUM ASSOCIATION | MARVIN MARKS |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 9200 BLUE GRASS ROAD<br>PHILADELPHIA PA 19114 | 148 BENJAMIN COURT<br>PHILADELPHIA PA 19114 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | MARVIN L MARKS & MARLENE MARKS LIVING TRUST AKA MARKS LIVING |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 148 BENJAMIN COURT 9200 BLUE GRASS ROAD<br>PHILADELPHIA PA 19114 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | AMERICAN REVERSE MORTGAGE |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 605 SW FIRST AVENUE<br>OCALA FL 34471 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 3 | [X] Complaint   [ ] Petition Action   [ ] Notice of Appeal<br>[ ] Writ of Summons   [ ] Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| [ ] $50,000.00 or less<br>[X] More than $50,000.00 | [ ] Arbitration<br>[ ] Jury<br>[X] Non-Jury<br>[ ] Other: | [ ] Mass Tort<br>[ ] Savings Action<br>[ ] Petition | [ ] Commerce<br>[ ] Minor Court Appeal<br>[ ] Statutory Appeals | [ ] Settlement<br>[ ] Minors<br>[ ] W/D/Survival |

**CASE TYPE AND CODE**

10 - CONTRACTS OTHER

**STATUTORY BASIS FOR CAUSE OF ACTION**

**RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)**

**FILED
PRO PROTHY**

DEC **16** 2025

**L. BREWINGTON**

**IS CASE SUBJECT TO
COORDINATION ORDER?**
YES          NO

## TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: <u>FOUNTAIN POINTE CONDOMINIUM ASSOCIATION</u>

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| RONALD J. HARPER | 140 W MAPLEWOOD AVENUE<br>PHILADELPHIA PA 19144-3307 |

| PHONE NUMBER | FAX NUMBER |
|---|---|
| (215) 844-4848 | (215) 844-0464 |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 10345 | Harper140@aol.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| *RONALD HARPER* | Tuesday, December 16, 2025, 01:22 pm |

Case ID: 251202237
Control No.: 26025048

FINAL COPY (Approved by the Prothonotary Clerk)

**RONALD J. HARPER, Esquire**
Identification No. 10345
140 West Maplewood Avenue
Philadelphia, Pa. 19144
(215) 844-4848

Attorney for Plaintiff

*Filed And Attested by the Office of Judicial Records 16 DEC 2025 01:16 pm E. PREWINGTON*

FOUNTAIN POINTE CONDOMINIUM ASSOCIATION
9200 BLUE GRASS ROAD
PHILADELPHIA, PA. 19114

    vs.

MARVIN MARKS
148 BENJAMIN COURT
PHILADELPHIA, PA. 19114
    and
THE MARVIN L. MARKS and MARLENE MARKS
LIVING TRUST a/k/a MARKS LIVING TRUST
148 BENJAMIN COURT
9200 BLUE GRASS ROAD
PHILADELPHIA, PA. 19114
    and
AMERICAN REVERSE MORTGAGE
605 SW FIRST AVENUE
OCALA, FL. 34471

: COURT OF COMMON PLEAS
:
:
:
:
:
:
:
: TERM. 20
:
:
:
:
: NO.
:
:
:
:

| NOTICE | AVISO |
|---|---|
| **CIVIL ACTION** | |
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decider a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. |
| *You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.* | *Lleve esta demanda a un abogado immediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a las oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.* |
| Philadelphia Bar Association<br>Lawyer Referral<br>and Information Service<br>One Reading Center<br>Philadelphia, Pennsylvania 19107<br>(215) 238-6333<br>TTY (215) 451-6197 | Asociacion De Licenciados<br>De Filadelfia<br>Servicio De Referencia E<br>Informacion Legal<br>One Reading Center<br>Filadelfia, Pennsylvania 19107<br>(215) 238-6333<br>TTY (215) 451-6197 |

10-284

Case ID: 251202237
Control No.: 26025048

**RONALD J. HARPER, Esquire**
Identification No. 10345
140 West Maplewood Avenue
Philadelphia, Pa. 19144
(215) 844-4848

Attorney for Plaintiff

---

FOUNTAIN POINTE CONDOMINIUM ASSOCIATION :
9200 BLUE GRASS ROAD : COURT OF COMMON PLEAS
PHILADELPHIA, PA. 19114 :
:
vs. :
MARVIN MARKS :
148 BENJAMIN COURT :
PHILADELPHIA, PA. 19114 : TERM. 20
and :
THE MARVIN L. MARKS and MARLENE MARKS :
LIVING TRUST a/k/a MARKS LIVING TRUST :
148 BENJAMIN COURT :
9200 BLUE GRASS ROAD :
PHILADELPHIA, PA. 19114 : NO.
and :
AMERICAN REVERSE MORTGAGE :
605 SW FIRST AVENUE :
OCALA, FL. 34471 :
:
:

---

## CIVIL ACTION

1.     The Plaintiff is a Pennsylvania Condominium Association, incorporated in the

Commonwealth of Pennsylvania.

2.     The Defendant, Marvin Marks is an adult individual residing in the County of

Philadelphia and a citizen of the Commonwealth of Pennsylvania.

3.     The Defendant, Marks Living Trust is an entity allegedly created by Plaintiff

Marvin Marks to be effective during his lifetime to pay monthly payments due to Plaintiff.

4.     Previously said Defendant operated under the Marvin L. Marks and

Marlene Marks Living Trust.

Case ID: 250202237
Control No.: 26025048

5.    The Defendant American Reverse Mortgage is a financial services company based in Ocala, Florida.

6.    On or about December 5, 2006, Defendant obtained a Reverse Mortgage with the Defendant American Reverse Mortgage in the amount of $327,000.00 securing the premises at 148 Benjamin Court, Philadelphia, Pa. which is located in Fountain Pointe Condominiums.

7.    The Defendant, Marvin Marks with Marlene Marks owned 148 Benjamin Court which they conveyed to Marvin L. Marks and Marlene Marks Living Trust on September 17, 2003. A true and correct copy of the Deed is attached as Exhibit A.

8.    They are thereby the owners and members of Plaintiff Fountain Pointe Condominium Association, subject to Condominium Rules, Dues and Fees.

### COUNT I-BREACH OF CONTRACT and
### VIOLATION OF THE UNIFORM CONDOMINIUM ACT.

### FOUNTAIN POINTE CONDOMINIUM ASSOCIATION vs.
### MARVIN MARKS and THE MARVIN L. MARKS and
### MARLENE MARKS LIVING TRUST a/k/a MARKS LIVING TRUST

9.    Paragraph 1 through 8 are incorporated by reference as through set forth at length.

10.    As per Agreements with Plaintiff, Defendants are responsible for and have agreed to pay monthly Condominium dues, late fees, fines, legal fees and monthly association fees. Pursuant to Sections 3302 et seq the parties are subject to the Pennsylvania Uniform Condominium Act allowing Plaintiff to assess monthly condominium dues, late fees, fines, legal fees and association fees.

A copy of the Condominium Act 68 Pa. C.S.A. is attached as Exhibit B.

11.    Defendants have failed to pay Condominium dues, fees and charges since January 2002 to present.

Case ID: 250202237
Control No.: 26025048

12.     Plaintiff is, also entitled to 1% per month on the outstanding balance along with $40.00 per month in late fees.

13.     Plaintiff is entitled to legal fees and costs incurred for all collection efforts.

14.     A Demand Letter was sent to Defendant Marvin Marks on November 26, 2025. A true and correct copy is attached as Exhibit C.

15.     Defendants have continued and failed to pay the Condominium dues, charges and fees in violation of Condominium governing documents and Pennsylvania law, causing great financial loss to Plaintiff.

16.     The current amount due and owing from Defendants is continuing and is as follows:

| | |
|---|---|
| Unpaid Condominium fees, late charges from January 2022 through November 2025 | $27,326.86 |
| Plus ongoing 1% per month | |
| Plus ongoing Condominium fees | |
| Plus ongoing legal fees and costs | |
| Plus any other fees Plaintiff is entitled to by operation of law or Contract | |

**WHEREFORE**, Plaintiff demands judgment in their favor against the Defendants in the amount of unpaid charges, fees, dues, legal fees, costs and amounts deemed appropriate.

<u>**COUNT II**</u>
**FOUNTAIN POINTE CONDOMINIUM ASSOCIATION vs. MARVIN MARKS and THE MARVIN L. MARKS and MARLENE MARKS LIVING TRUST a/k/a MARKS LIVING TRUST and AMERICAN REVERSE MORTGAGE**

17.     Paragraph 1 through 16 are incorporated by reference as though set forth at length.

18.     Defendants did not notify Plaintiff of the Reverse Mortgage taken on

148 Benjamin Court.

19.     The said Reverse Mortgage is not a Permitted Mortgage as per the Condominium

Rules.

20.     The Mortgage taken was for 327,000.00.

**WHEREFORE**, Plaintiff requests this Honorable Court to enter the following Order:

    a.     Declare that the Reverse Mortgage from American Reverse Mortgage is subordinate to the monies owned to Plaintiff and

    b.     Declare that the Reverse Mortgage from American Reverse Mortgage is subordinate to all ongoing charges, fees, dues and fees due to Plaintiff.

### COUNT III
**FOUNTAIN POINTE CONDOMINIUM ASSOCIATION vs. AMERICAN REVERSE MORTGAGE**

21.     Paragraph 1 through 20 are incorporated by reference as though set forth at

length.

22.     The Defendants entered into a Reverse Mortgage on 148 Benjamin Court,

Philadelphia, Pa. with American Reverse Mortgage.  See Exhibit D1 and D2.

23.     Should Defendant American Reverse Mortgage make any payments to

Defendants Marvin Marks and The Marvin Marks and Marlene Marks Living Trust a/k/a Marks

Living Trust on a monthly basis, said payments should be applied toward Condominium fees,

dues and charges and paid over to Plaintiff.

24.     Defendant, American Reverse Mortgage or its successor's rights are subordinate

to Plaintiff.

**WHEREFORE,** Plaintiff requests this Honorable Court to enter Judgment in its favor and against Defendant American Reverse Mortgage and its successors.

RONALD J. HARPER, Esquire
Attorney for Plaintiff

Case ID: 251202237
Control No.: 26025048

## VERIFICATION

I, Nancy Marino, President of Board of Directors of Fountain Pointe Condominium Association, hereby verifies that these statements are true and correct to the best of my personal knowledge or information and belief. I understand that the statements are made subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities.

*Nancy Marino*
NANCY MARINO

# EXHIBIT A

## City of Philadelphia Department of Records
### RECORDING INFORMATION SUMMARY (RIS)

The information provided by you will be relied upon by the Department of Records for examination and indexing purposes. If there is any conflict between the RIS and the attached document, the information on the RIS shall prevail for examination and indexing purposes.

**1) RETURN DOCUMENT TO:**
Name: Marvin L. Marks of Marlene Marks
Address: 148 Benjamin Court
Philadelphia, PA 19114
Telephone: 215 - 673 - 6762

**2) Type of Document:**
- [✓] Deed
- [ ] Sheriff's Deed
- [ ] Deed of Condemnation
- [ ] Other Deed
- [ ] Mortgage
- [ ] Release of Mortgage
- [ ] Assignment of Mortgage
- [ ] Satisfaction of Mortgage
- [ ] Lease/Memorandum of Lease
- [ ] Assignment of Lease & Rent
- [ ] Easement
- [ ] Other _____ (specify)

**3) Date of Document:** 9 / 17 / 2003
month   day   year

**4) Grantor/Mortgagor/Assignor/Lessor:**
Other: _____
(Last Name First Name Middle Initial)
a) Marks, Marvin L
b) Marks, Marlene

**5)** [ ] Additional names on Continuation Page of RIS

**6) Grantee/Mortgagee/Assignee/Lessee:**
Other: _____
(Last Name First Name Middle Initial)
a) The Marvin L. Marks and Marlene
b) Marks Living Trust

**7)** [ ] Additional names on Continuation Page of RIS

**8) Property Address:**
a) House No. & Street Name: 148 Benjamin Court
Condo Name (if applicable): Fountain Pointe   Unit # G-148   Philadelphia, PA   Zip Code: 19114
BRT Account # (optional): _____   Parcel Identification Number (PIN) (optional): X

**9)** [ ] Additional addresses on Continuation Page of RIS

**10) Grantee's Mailing Address (Deed Only):**
(If Grantee is at a different address than the Property Address listed in Section 8, complete this section.)
a) Grantee or Designee Name: _____
House No. & Street Name: _____
City: _____   State: _____   Zip Code: _____ - _____

**11) Recording Information to be Referenced. Mortgage to be released/satisfied/assigned/modified:**
a) Name of Original Mortgagee: _____
Recording Date of Original Mortgage: ___/___/___   month day Year
Recorder's Index Information of Original Mortgage: Initials, Book and Page or Doc ID#

**12)** [ ] Additional references on Continuation Page of RIS

**13) If applicable, please check:** [ ] Consolidation   [ ] Subdivision

**14) Signature Information**
a) 'OR -or- 'EE Name: Marvin L. Marks
b) 'OR -or- 'EE Telephone Number: 215 - 673 - 6762
c) 'OR -or- 'EE Signature: Marvin L. Marks   Marlene Marks

**15) Page 1 of**

for Records Department use only

**50962491**
Page: 1 of 5
07/06/2004 10:21AM

This Document Recorded
07/06/2004   State RTT: 0.00
10:21AM   Local RTT: 0.00
Doc Code: D   Commissioner of Records, City of Philadelphia

Doc Id: 50962491
Receipt #: 330690
Rec Fee: 74.50

82-337 (Rev. 01/01/01)

Unofficial Copy

Case ID: 251202237
Control No.: 26025048

## QUIT CLAIM DEED

THIS INDENTURE made the 17 day of September 2003.

BETWEEN MARVIN L. MARKS and MARLENE MARKS, his wife, (hereinafter called the "Grantor") having an address of 148 Benjamin Court, Philadelphia, Philadelphia County, Commonwealth of Pennsylvania, 19114 and THE MARVIN L. MARKS AND MARLENE MARKS LIVING TRUST (hereinafter called the "Grantee"); having an address of 148 Benjamin Court, Philadelphia, Philadelphia County, Commonwealth of Pennsylvania, 19114.

WITNESSETH, that the said party of the first part, for and in consideration of the sum of One ($1.00) Dollar lawful money of the United States of America, to them well and truly paid by the said party of the second part, at and before the sealing and delivery of these presents, the receipt whereof, is hereby acknowledged, have remised, released and quit-claimed, and by these presents, does remise, release and quit-claim unto the said party of the second part and to their successors and assigns forever,

ALL THAT CERTAIN Unit designated as G-148, being a Unit in Fountain Pointe of Philadelphia, a Condominium located in the City of Philadelphia, Commonwealth of Pennsylvania, which has heretofore been submitted to the provisions of the Pennsylvania Uniform Condominium Act (68 Pa. C.S.A. Section 3101 et seq.) by the recording of the Declaration of Condominium of Century Village of Philadelphia, a Condominium dated 5-18-90 and recorded 6-1-90 in the Department of Records in and for the City of Philadelphia in Deed Book FHS 1631 page 481 and subject to any amendments therto togther with an undivided 0.8772% interest in and to the common elements.

BEING Unit G-148, Premises known as 148 Benjamin Court.

BEING PARCEL ID NO.  16860  00148  G 148  .

FOR chain of title see deed recorded in the aforesaid County in Deed Book 1988, Page 583.

TOGETHER with all and singular, the tenements, hereditaments and appurtenances thereunto belonging, or in any wise appertaining, and the reversions, remainders, rents, issues and profits thereof: AND also, all the estate, right, title, interest, property, claim and demand whatsoever, as well in law as in equity, of the said party of the first part, of, in, or to the above-described premises, and every part and parcel thereof, with the appurtenances.

TO HAVE AND TO HOLD all and singular the above-mentioned and described premises, together with the appurtenances, unto the said party of the second part, his heirs and assigns forever.

Case ID: 251202237
Control No.: 26025048

IN WITNESS WHEREOF, the Grantors have hereunto set their hand and seal.



**MARVIN L. MARKS**

**MARLENE MARKS**

SEALED and DELIVERED )
in the Presence of us:             )

COMMONWEALTH OF PENNSYLVANIA          )
                                                                    ) SS.
COUNTY OF PHILADELPHIA                      )

On this the 17 day of September, 20 02, before me, the Undersigned Officer, a Notary Public of the Commonwealth of Pennsylvania, personally appeared MARVIN L. MARKS and MARLENE MARKS known to me to be the persons whose names are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Notary Public

NOTARIAL SEAL
ADRIENNE S. REDHOUSE, Notary Public
Tredyffrin Twp., Chester County
My Commission Expires August 28, 2006

I hereby certify the address of the above-named within Grantee is: having an address of 148 Benjamin Court, Philadelphia, Philadelphia County, Commonwealth of Pennsylvania, 19114.

The address of the above-named property is: having an address of 148 Benjamin Court, Philadelphia, Philadelphia County, Commonwealth of Pennsylvania, 19114.

Case ID: 251202237
Case ID: 251202237
Control No.: 26025048



DEED

MARVIN L. MARKS  and MARLENE MARKS
Grantor

TO

THE MARVIN L. MARKS AND MARLENE MARKS LIVING TRUST
Grantee

Case ID: 251202237
Control No.: 26025048

| | Book No. | Page No. |
|---|---|---|

## PHILADELPHIA REAL ESTATE

## TRANSFER TAX CERTIFICATION

Date Received

City Tax Paid

Complete each section and file in duplicate with Recorder of Deeds when (1) the full value / consideration is not set forth in the deed, (2) when the deed is without consideration, or by gift, or (3) a tax exemption is claimed. A Statement of Value is not required if the transfer is wholly exempt from tax based on: (1) family relationship or (2) public utility easement. If more space is needed, attach additional sheet(s).

### A     CORRESPONDENT - All inquiries may be directed to the following person:

Name
**MARVIN L. MARKS AND MARLENE MARKS**

Telephone Number:
Area Code **215-673-6762**

| Street Address | City | State | Zip Code |
|---|---|---|---|
| 148 BENJAMIN COURT | PHILADELPHIA | PA | 19114 |

### B     TRANSFER DATA

Date of Acceptance of Document **9-15-03**

| Grantor(s)/Lessor(s) | Grantee(s)/Lessee(s) |
|---|---|
| MARVIN L. MARKS AND MARLENE MARKS | MARVIN L. MARKS AND MARLENE MARKS LIVING TRUST |
| Street Address | Street Address |
| 148 BENJAMIN COURT | 148 BENJAMIN COURT |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| PHILADELPHIA | PA | 19114 | PHILADELPHIA | PA | 19114 |

### C     PROPERTY LOCATION

| Street Address | City, Township, Borough |
|---|---|
| 148 BENJAMIN COURT | PHILADELPHIA |

| County | School District | Tax Parcel Number |
|---|---|---|
| PHILADELPHIA | PHILADELPHIA | 16860 00148 GUK |

### D     VALUATION DATA

| 1. Actual Cash Consideration | 2. Other Consideration | 3. Total Consideration |
|---|---|---|
| $1.00 | + $0.00 | = $1.00 |

| 4. County Assessed Value | 5. Common Level Ratio Factor | 6. Fair Market Value |
|---|---|---|
| $ 63500 | x 3.19 | $ 202,565 |

### E     EXEMPTION DATA

| 1A. Amount of Exemption Claimed | 1b. Percentage of Interest Conveyed |
|---|---|
| 100% | 100% |

2. Check Appropriate Box Below for Exemption Claimed.

☐ Will or intestate succession _____ (Name of Decedent) _____ (Estate File Number)

☐ Transfer to Industrial Development Agency.

■ Transfer to a trust (Attach complete copy of trust agreement identifying all beneficiaries.)

☐ Transfer between principal and agent. (Attach complete copy of agency/straw party agreement.)

☐ Transfers to the Commonwealth, the United States and Instrumentalities by gift, dedication, condemnation or in lieu of condemnation. (If condemnation or in lieu of condemnation, attach copy of resolution.)

☐ Transfer from mortgagor to a holder of a mortgage in default. Mortgage Book Number _____, Page Number _____.

☐ Corrective or confirmatory deed. (Attach complete copy of the prior deed being corrected or confirmed.)

☐ Statutory corporate consolidation, merger or division. (Attach copy of articles.)

☐ Other (Please explain exemption claimed, other than listed above.)

_____

_____

Under penalties of law, I declare that I have examined this Statement, including accompanying information, and to the best of my knowledge and belief, it is true, correct and complete.

| Signature of Correspondent or Responsible Party | | Date |
|---|---|---|
| X _Marvin L. Marks_ | _Marlene Marks_ | X 9-15-03 |

Case ID: 251202237
Control No.: 26025048

# EXHIBIT B

Case ID: 251202237
Control No.: 26025048

UNIFORM CONDOMINIUM ACT (68 PA.C.S.) - OMNIBUS AMENDMENTS
Act of Dec. 18, 1992, P.L. 1279, No. 168        Cl. 68
Session of 1992
No. 1992-168

SB 862

AN ACT

Amending Title 68 (Real and Personal Property) of the
Pennsylvania Consolidated Statutes, adding and revising
provisions relating to condominiums; and making editorial
changes.

The General Assembly of the Commonwealth of Pennsylvania
hereby enacts as follows:
Section 1. Section 3102 of Title 68 of the Pennsylvania
Consolidated Statutes is amended to read:
§ 3102. Applicability of subpart.
(a) General rule.--This subpart applies to all condominiums
created within this Commonwealth after the effective date of
this subpart. [Sections] **Subsection (b) and sections** 3105
(relating to separate titles and taxation), 3106 (relating to
applicability of local ordinances, regulations and building
codes), 3107 (relating to eminent domain), 3203 (relating to
construction and validity of declaration and bylaws), 3204
(relating to description of units), **3222 (relating to master
associations), 3223 (relating to merger or consolidation of
condominiums)**, 3302(a)(1) through (6), **(9)** and (11) through
(16) (relating to powers of unit owners' association), 3311
(relating to tort and contract liability), 3315 (relating to
lien for assessments), 3316 (relating to association records),
3407 (relating to resales of units) and 3412 (relating to
effect of violations on rights of action), and section 3103
(relating to definitions) to the extent necessary in
construing any of those sections, apply to all condominiums
created in this Commonwealth before the effective date of this
subpart; but those sections apply only with respect to events
and circumstances occurring after the effective date of this
subpart and do not invalidate existing provisions of the
declaration, code of regulations or declaration plan of those
condominiums.
(b) Prior statutory law.--The provisions of the act of July
3, 1963 (P.L.196, No.117), known as the ["]Unit Property
Act,["] do not apply to condominiums created after the
effective date of this subpart and do not invalidate any
amendment to the declaration, code of regulations or
declaration plan of any condominium created before the
effective date of this subpart if the amendment would be
permitted by this subpart. The amendment must be adopted in
conformity with the procedures and requirements specified by
those instruments and by the provisions of the ["]Unit
Property Act.["] If the amendment grants to any person any
rights, powers or privileges permitted by this subpart, all
correlative obligations, liabilities and restrictions in this
subpart also apply to that person. **By amendment to the**

Case ID: 251202237
Control No.: 26025048

declaration, code of regulations and declaration plan, a condominium created pursuant to the Unit Property Act may be made subject to all of the provisions of this subpart in lieu of the provisions of the Unit Property Act, effective as of the date of recordation of such amendments and without in any way terminating the condominium status of the property or in any way affecting any lien or encumbrance on the property, if the terms of such amended documents conform to the requirements of this subpart and if such amendments have been approved by all the persons whose actions would have been required to effect a removal of the property from the Unit Property Act pursuant to section 601 thereof. No amendment of:

    (1) the declaration, code of regulations or declaration plan of a condominium created pursuant to the Unit Property Act; or

    (2) the declaration, bylaws or plats and plans of a condominium created pursuant to this subpart;
may increase the obligations or responsibilities of a declarant (as such and not as a unit owner) without the joinder of the declarant in such amendment.

(c) Condominiums outside Commonwealth.--This subpart does not apply to condominiums or units located outside this Commonwealth, but the public offering statement provisions (sections 3402 through 3405) apply to all dispositions thereof in this Commonwealth unless exempt under section 3401(b)(5) (relating to applicability; waiver).

Section 2. The definitions of "affiliate of a declarant," "common expenses," "conversion condominium," "declarant," "dispose or disposition," "limited common element," "offering," "purchaser" and "special declarant rights" in section 3103 of Title 68 are amended and the section is amended by adding definitions to read:

§ 3103. Definitions.

The following words and phrases when used in this subpart and in the declaration and bylaws shall have the meanings given to them in this section unless specifically provided otherwise or unless the context clearly indicates otherwise:
    * * *

"Affiliate of a declarant." Any person who controls, is controlled by, or is under common control with a declarant.

    (1) A person "controls" a declarant if the person:

        (i) is a general partner, officer, director or [employee] **employer** of the declarant;

        (ii) directly or indirectly or acting in concert with one or more other persons, or through one or more subsidiaries, owns, controls, holds with power to vote, or holds proxies representing, more than 20% of the voting interests of the declarant;

        (iii) controls in any manner the election of a majority of the directors of the declarant; or

        (iv) has contributed more than 20% of the capital of the declarant.

    (2) A person "is controlled by" a declarant if the declarant:

        (i) is a general partner, officer, director or employee of the person;

        (ii) directly or indirectly or acting in concert with one or more other persons, or through one or more

Case ID: 251202237
Control No.: 26025048

subsidiaries, owns, controls, holds with power to
vote, or holds proxies representing, more than 20% of
the voting interests of the person;

(iii) controls in any manner the election of a
majority of the directors of the person; or

(iv) has contributed more than 20% of the capital
of the person.

**(3) Control does not exist if the powers described in
paragraphs (1) and (2) are held solely as security for an
obligation and are not exercised.**

\* \* \*

"Common expenses." Expenditures made or liabilities
incurred by or on behalf of the association, together with
any allocations to reserves, **including general common
expenses and limited common expenses.**

\* \* \*

"Conversion [condominium] **building.**" A [condominium
containing any] building that, at any time before
[recording of the declaration] **the conversion notice date
with respect to the condominium in which the building is
located,** was occupied wholly or partially by persons other
than purchasers and persons who occupy with the consent of
purchasers.

"Conversion notice." **The notice required to be given
to tenants or subtenants by the terms of section 3410(a)
(relating to condominiums containing conversion buildings).**

"Conversion notice date." **The date on which the
conversion notice is placed in the United States mail, in
the case of mailed notices, or delivered to the unit leased
by the recipient, in the case of hand-delivered notices.**

\* \* \*

"Declarant."

(1) If the condominium has been created, "declarant"
means:

(i) any person who has executed a declaration, or
an amendment to a declaration to add additional real
estate, other than persons holding interests in the
real estate solely as security for an obligation,
persons whose interests in the real estate will not be
conveyed to unit owners, or, in the case of a
leasehold condominium, a lessor who possesses no
special declarant rights and who is not an affiliate
of a declarant who possesses special declarant rights;
or

(ii) any person who succeeds under section 3304
(relating to transfer of special declarant rights) to
any special declarant rights.

(2) If the condominium has not yet been created,
"declarant" means any person who offers to dispose of or
disposes of his interest in a unit **to be created and** not
previously disposed of.

(3) If a declaration is executed by a trustee of a
land trust, "declarant" means the beneficiary of the trust.

"Dispose" or "disposition." A voluntary transfer of
any legal or equitable interest in a unit **or a proposed
unit,** other than as security for an obligation.

\* \* \*

Case ID: 251202237
Control No.: 26025048

"Limited common element." A portion of the common elements allocated by **or pursuant** to the declaration or by operation of section 3202(2) or (4) (relating to unit boundaries) for the exclusive use of one or more but fewer than all of the units.

**"Limited common expenses." All expenses identified as such pursuant to section 3314(c) (relating to assessments for common expenses).**

**"Master association." An organization described in section 3222 (relating to master associations), whether or not it is an association described in section 3301 (relating to organization of unit owners' association).**

["Offering."] **"Offer"** or **"offering."** Any advertisement, inducement, solicitation or attempt to encourage any person to acquire any interest in a unit, other than as security for an obligation. An advertisement in a newspaper or other periodical of general circulation, or in any broadcast medium to the general public, of a condominium not located in this Commonwealth, is not an **offer** or offering if the advertisement states that an **offer** or offering may be made only in compliance with the law of the jurisdiction in which the condominium is located.

**"Original lease termination date." The date on which the lease or sublease of a residential tenant or subtenant in possession of a unit in a conversion building will expire by the terms of such lease or sublease, after taking into account any renewal or extension rights that may have been exercised prior to the conversion notice date.**
\* \* \*

"Purchaser." Any person, other than a declarant, who by means of a [voluntary transfer] **disposition** acquires a legal or equitable interest in a unit, other than:

(1) a leasehold interest (including renewal options) of less than [five] **20** years, **but a person who will become a unit owner in a leasehold condominium upon consummation of the disposition shall be deemed to be a purchaser;** or

(2) as security for an obligation.
\* \* \*

**"Residential tenant" or "residential subtenant." A tenant or subtenant, respectively, who is a natural person lawfully occupying real estate for residential use.**

"Special declarant rights." Rights reserved for the benefit of a declarant to:

(1) Complete improvements indicated on plats and plans filed with the declaration (section 3210).

(2) Convert convertible real estate in a flexible condominium (section 3211).

(3) Add additional real estate to a flexible condominium (section 3211).

(4) Withdraw withdrawable real estate from a flexible condominium (section 3212).

(5) Convert a unit into two or more units, common elements, or into two or more units and common elements (section 3215).

(6) Maintain [sales] offices, [management offices,] signs [advertising the condominium,] and models (section 3217).

Case ID: 251202237
Control No.: 26025048

(7) Use easements through the common elements for the purpose of making improvements within the condominium or within any convertible or additional real estate (section 3218).

**(8) Cause the condominium to be merged or consolidated with another condominium (section 3223).**

**(9) Make the condominium subject to a master association (section 3222).**

[(8)] **(10)** Appoint or remove any officer of the association **or any master association** or any executive board member during any period of declarant control (section 3303(c)).

* * *

Section 3. Sections 3201, 3205, 3208, 3210, 3211, 3215, 3217, 3218, 3219 and 3220 of Title 68 are amended to read:

§ 3201. Creation of condominium.

[(a) General rule.--]A condominium may be created pursuant to this subpart only by recording a declaration executed, in the same manner as a deed, by all persons whose interests in the real estate will be conveyed to unit owners and by every lessor of a lease the expiration or termination of which will terminate the condominium or reduce its size, provided, however, in any such lease wherein the lessor is the Commonwealth of Pennsylvania, a municipal government or any agency thereof, said lessor need not execute the declaration if they shall have previously given written consent to its filing and agreed to be bound by the provisions of the Pennsylvania Uniform Condominium Act, in which case said declaration shall be executed by the lessee then in possession of the subject property. The declaration shall be recorded in every county in which any portion of the condominium is located in the same records as are maintained for the recording of deeds of real property and shall be indexed against each declarant as the grantor and the name of the condominium as the grantee.

[(b) Substantial completion prerequisite to recording.--A declaration or an amendment to a declaration adding units to a condominium, may not be recorded unless all structural components and mechanical systems of all buildings containing or comprising any units thereby created are substantially completed in accordance with the plans, as evidenced by a recorded certificate of completion executed by an independent registered surveyor, architect or professional engineer. Whenever a plat or plan complying with section 3210 (relating to plats and plans) has been previously recorded pursuant to the act of July 31, 1968 (P.L.805, No.247), known as the "Pennsylvania Municipalities Planning Code," or an ordinance regulating land development, the plat or plan may be incorporated into the declaration by reference.

(c) Substantial completion prerequisite to conveyance.--No interest in a unit may be conveyed until the unit is substantially completed as evidenced by a recorded certificate of completion executed by an independent registered architect, surveyor or professional engineer.

(d) Construction of section.--Nothing contained in this section shall prevent the offering for sale of a unit or interest in a unit or the execution of any agreement to sell


Case ID: 251202237
Case ID: 251202237
Control No.: 26025048

and purchase a unit or any interest in a unit (as opposed to actual conveyance) prior to completion of the unit.]

§ 3205. Contents of declaration; all condominiums.

The declaration for a condominium must contain:

(1) The name of the condominium which must include the word "condominium" or be followed by the words "a condominium."

(2) The name of every county in which any part of the condominium is situated.

(3) A legally sufficient description of the real estate included in the condominium.

(4) A description or delineation of the boundaries of each unit including the unit's identifying number.

(5) A statement of the maximum number of units that may be created by the subdivision or conversion of units owned by the declarant pursuant to section 3215(c) (relating to subdivision or conversion of units).

(6) A description of any limited common elements as provided in section 3209 (relating to limited common elements) **and limited common expenses, if any, and how they are to be assessed.**

(7) A description of any common elements not within the boundaries of any convertible real estate which may be allocated subsequently as limited common elements together with a statement that they may be so allocated and a description of the method by which the allocations are to be made.

(8) An allocation to each unit of an undivided interest in the common elements, a portion of the votes in the association and a percentage or fraction of the common expenses of the association (section 3208).

(9) Any restrictions created by the declarant on use, occupancy and alienation of the units.

(10) The recording data for recorded easements and licenses appurtenant to or included in the condominium or to which any portion of the condominium is or may become subject.

**(11) If all or any of the units are or may be owned in time-share estates as defined in section 3403(a) (relating to public offering statement; time-share estates), which units may be owned in time-share estates and the maximum number of time-share estates that may be created in the condominium, it being intended that time-share estates shall not be permitted except if and to the extent expressly authorized by the declaration.**

**(12) If the declarant wishes to retain the special declarant right to cause section 3222 (relating to master associations) to become applicable to a condominium, then:**

**(i) an explicit reservation of such right;**

**(ii) a statement of the time limit, not exceeding seven years after the recordation of the declaration, upon which the option reserved under subparagraph (i) will lapse, together with a statement of any circumstances that will terminate the option before the expiration of the time limit; and**

**(iii) the information required to be included in the declaration by the provisions of section 3222.**

Case ID: 251202237
Control No.: 26025048

(13) If the declarant wishes to retain the special declarant right to retain or consolidate the condominium pursuant to section 3223 (relating to merger or consolidation of condominiums), then:

(i) an explicit reservation of such right;

(ii) a statement of the time limit, not exceeding seven years after the recording of the declaration, upon which any option reserved under subparagraph (i) will lapse, together with a statement of any circumstances that will terminate the option before the expiration of the time limit;

(iii) a statement of the name and location of each other condominium that may be subject to such a merger or consolidation if such other condominiums exist and if such other condominiums do not exist, then the declaration shall include the following:

(A) A statement of the extent to which the common element interest, relative voting strength in the association and share of common expense liability of each unit in the condominium at the time the merger or consolidation is effectuated may be increased or decreased by actions pursuant to any option reserved under subparagraph (i), including the formulas to be used for those reallocations.

(B) Legally sufficient descriptions of each portion of real estate which is part of any other condominiums which may be created and with which the condominium may merge or consolidate.

(C) If mergers or consolidations may be effectuated at different times, a statement to that effect together with:

(I) either a statement fixing the boundaries of those condominiums and regulating the order in which they may be merged or consolidated or a statement that no assurances are made in those regards; and

(II) a statement as to whether, if any other condominiums are merged or consolidated with the condominium, all or any of such condominiums must be merged or consolidated.

(D) A statement of:

(I) the maximum number of units that may be created within any such other condominiums, the boundaries of which are fixed pursuant to clause (C);

(II) how many of those units will be restricted exclusively to residential use; and

(III) the maximum number of units per acre that may be created within any such other condominiums, the boundaries of which are not fixed pursuant to clause (C).

(E) If any of the units that may be built within any such other condominiums are not to be restricted exclusively to residential use, a statement with respect to each portion of such

Case ID: 251202237
Control No.: 26025048

other condominiums of the maximum percentage of the real estate areas and the maximum percentage of the floor areas of all units that may be created therein that are not restricted exclusively to residential use.

(F) A statement of the extent to which any buildings and units that may be part of such other condominiums will be compatible with the other buildings and units in the condominium in terms of architectural style, quality of construction, principal materials employed in construction and size or a statement that no assurances are made in those regards.

(G) A statement that all restrictions in the declaration affecting use, occupancy and alienation of units will apply to units created within any such other condominiums or a statement of any differentiations that may be made as to those units.

(H) General descriptions of all other improvements and limited common elements that may be made or created within such other condominiums or a statement that no assurances are made in that regard.

(I) A statement of any limitations as to the locations of any buildings or other improvements that may be made within such other condominiums or a statement that no assurances are made in that regard.

(J) A statement that any limited common elements created within any such other condominiums will be of the same general types and sizes as those within the condominium or a statement of any other assurances in that regard or a statement that no assurances are made in that regard.

(K) A statement that the proportion of limited common elements to units created within such other condominiums will be approximately equal to the proportion existing within the condominium or a statement of any other assurances in that regard or a statement that no assurances are made in that regard.

(L) A statement of the extent to which any assurances made in the declaration regarding such other condominiums pursuant to clauses (C) through (K) apply in the event any such condominiums are not merged or consolidated with the condominium or a statement that those assurances do not apply if the condominiums are not merged or consolidated with the condominium; and

(iv) a summary description of the other provisions which materially change any rights, obligations or liabilities that will be included in the agreement of merger or consolidation if such right is exercised.

[(11)] **(14)** Any other matters the declarant deems appropriate.

§ 3208. Allocation of common element interests, votes and common expense liabilities.

(a) General rule.--The declaration shall allocate a fraction or percentage of undivided interests in the common elements and in the common expenses of the association, and a portion of the votes in the association, to each unit and state the formulas used to establish those allocations. **Such formulas may take into account unusual attributes of identified units if the formulas state how the deviation from the normal rule applies to such units.**

(b) Flexible condominiums.--[In a flexible condominium, the common element interest and common expense liability allocated to each unit must be equal, or proportionate to the relative size of each unit, unless the declaration as originally recorded:

    (1) requires that any units created in additional or convertible real estate be substantially identical to the other units in the condominium and provides that common element interests and common expense liabilities will be allocated to those units in accordance with the formulas used for the initial allocations; or

    (2) identifies all other types of units that may be created in additional or convertible real estate in terms of architectural style, quality of construction, principal materials to be used and ranges of sizes and states the formulas upon which any reallocations of common element interests and common expense liabilities will be made, or states the common element interest and common expense liability to be allocated to each unit that may be created.]

**If units may be added to, including by conversion of convertible real estate to one or more units, or withdrawn from the condominium, the declaration must state the formulas to be used to reallocate the fractions or percentages of undivided interests in the common elements and in the common expenses of the association and the portions of the votes in the association among all units included in the condominium after the addition or withdrawal.**

(c) Votes.--[The number of votes allocated to each unit must be equal, proportionate to that unit's common expense liability, or proportionate to that unit's common element interest. If the declaration allocates an equal number of votes in the association to each unit, each unit that may be subdivided or converted by the declarant into two or more units, common elements, or both (section 3215), must be allocated a number of votes in the association proportionate to the relative size of that unit compared to the aggregate size of all units and the remaining votes in the association must be allocated equally to the other units.] **Each unit in the condominium shall be allocated one or more votes in the condominium association. The declaration shall specify how votes in the condominium shall be allocated among the units and may provide:**

    **(1) for different allocations of votes among the units on particular matters specified in the declaration; and**


Case ID: 251202237
Control No.: 26025048

(2) for class voting on specified issues affecting a particular class of units if necessary to protect the valid interests of the owners of such units and not affecting units outside of the class.

**Cumulative voting shall only be permitted if so provided expressly in the declaration and only for the purpose of electing members of the executive board. A declarant may not utilize cumulative or class voting for the purpose of evading any limitations imposed upon declarants by this subpart.** The declaration may provide that different allocations of votes shall be made to the units on particular matters specified in the declaration.

(d) Alteration or partition of allocations.--Except in the case of eminent domain (section 3107), expansion or conversion of a flexible condominium (section 3211), withdrawal of withdrawable real estate (section 3212), relocation of boundaries between adjoining units (section 3214) or subdivision of units (section 3215), the common element interest, votes and common expense liability allocated to any unit may not be altered without unanimous consent of all unit owners. The common elements are not subject to partition and any purported conveyance, encumbrance, judicial sale or other voluntary or involuntary transfer of an undivided interest in the common elements made without the unit to which it is allocated is void.

(e) Calculations for undivided interests.--Except for minor variations due to rounding, the sums of the undivided interests in the common elements and common expense liabilities allocated at any time to all the units shall each equal one if stated as fractions or 100% if stated as percentages. In the event of discrepancy between the common element interest, votes or common expense liability allocated to a unit and the result derived from application of the formulas, the allocated common element interest, vote or common expense liability prevails.

§ 3210. Plats and plans.

(a) General rule.--Plats and plans are a part of the declaration. Separate plats and plans are not required by this subpart if all the information required by this section is contained in either a plat or plan. Each plat and plan must be clear and legible [and contain]. **The plats and plans must contain, on the first page of the plats and plans,** a certification that [the plat or plan accurately depicts all existing conditions and contains] **all of the plats and plans contain** all information required by this section.

(b) Contents of plat.--Each plat must show:

(1) The name, location and dimensions of the condominium.

(2) The location and dimensions of all existing improvements.

(3) The intended location and dimensions of any contemplated improvement to be constructed anywhere within the condominium labeled either "MUST BE BUILT" or "NEED NOT BE BUILT" but need not show contemplated improvements within the boundaries of convertible real estate.

(4) The location and dimensions of any convertible real estate, labeled as such.

Case ID: 251202237
Control No.: 26025048

(5) The location and dimensions of any withdrawable real estate, labeled as such.

(6) The extent of any encroachments by or upon any portion of the condominium.

(7) To the extent feasible, the location and dimensions of all easements serving or burdening any portion of the condominium.

(8) The location and dimensions of any vertical unit boundaries not shown or projected on plans recorded pursuant to subsection (c) and that unit's identifying number.

(9) The location with reference to established datum of any horizontal unit boundaries not shown or projected on plans recorded pursuant to subsection (c) and that unit's identifying number.

(10) The location and dimensions of any real estate in which the unit owners will own only an estate for years, labeled as "leasehold real estate."

(11) The distance between noncontiguous parcels of real estate comprising the condominium.

(12) The location and dimensions of limited common elements, including porches, balconies and patios, other than parking spaces and the other limited common elements described in section 3202(2) and (4) (relating to unit boundaries) **not shown on plans recorded pursuant to subsection (c).**

(13) All other matters customarily shown on land surveys.

(c) Contents of plan.--Plans of every building that contains or comprises all or part of any unit and is located or must be built within any portion of the condominium, other than within the boundaries of any convertible real estate, must show:

(1) The location and dimensions of the vertical boundaries of each unit, to the extent those boundaries lie within or coincide with the boundaries of the building in which the unit is located, and that unit's identifying number.

(2) Any horizontal unit boundaries, with reference to established datum, not shown on plats recorded pursuant to subsection (b), and that unit's identifying number.

(3) Any units that may be converted by the declarant to create additional units or common elements (section 3215(c)), identified appropriately.

(4) **The location and dimensions of limited common elements, including porches, balconies and patios, other than parking spaces and other limited common elements described in section 3202(2) and (4) not shown on plats recorded pursuant to subsection (b).**

(d) Horizontal boundaries of unit partly outside building.--Unless the declaration provides otherwise, the horizontal boundaries of part of a unit located outside of a building have the same elevation as the horizontal boundaries of the inside part and need not be depicted on the plats and plans.

(e) Converting or adding real estate.--Upon converting convertible real estate or adding additional real estate (section 3211), the declarant shall record new plats for that

real estate conforming to the requirements of subsection (b) and new plans for any buildings on that real estate conforming to the requirements of subsection (c). If less than all of any convertible real estate is being converted, the new plats must also show the location and dimensions of the remaining portion.

(f) Converting units.--If a declarant converts any unit into two or more units, limited common elements, or both (section 3215), he shall record new plans showing the location and dimensions of any new units and limited common elements thus created as well as the location and dimensions of any portion of that space not being converted.

(g) Alternative recording.--Instead of recording new plats and plans as required by subsections (e) and (f), the declarant may record new certifications of plats and plans previously recorded if those plats and plans show all improvements required by subsections (e) and (f).

(h) Who may make certifications.--Any certification of a plat or plan required by this section or section 3201(b) (relating to creation of condominium) must be made by an independent registered surveyor, architect or professional engineer.

§ 3211. Conversion and expansion of flexible condominiums.

(a) General rule.--To convert convertible real estate or add additional real estate pursuant to an option reserved under section 3206(1) (relating to contents of declaration; flexible condominiums), the declarant shall prepare, execute and record an amendment to the declaration (section 3219) and comply with section 3210 (relating to plats and plans). The declarant is the unit owner of any units thereby created. The amendment to the declaration must assign an identifying number to each unit formed in the convertible or additional real estate and reallocate common element interests, votes in the association and common expense liabilities. The amendment must describe or delineate any limited common elements formed out of the convertible or additional real estate, showing or designating the unit to which each is allocated to the extent required by section 3209 (relating to limited common elements).

(b) Creations within [added] **additional** real estate.-- Convertible or withdrawable real estate may be created within any additional real estate added to the condominium if the amendment adding that real estate includes all matters required by section 3205 (relating to contents of declaration; all condominiums) or section 3206 (relating to contents of declaration; flexible condominiums), as the case may be, and the plat includes all matters required by section 3210(b) (relating to plats and plans). This provision does not extend the time limit on conversion or contraction of a flexible condominium imposed by the declaration pursuant to section 3206(2).

(c) Liability for expenses and right to income.--Until conversion occurs or the period during which conversion may occur expires, whichever occurs first, the declarant alone is liable for real estate taxes assessed against convertible real estate and all other expenses in connection with that real estate. No other unit owner and no other portion of the condominium is subject to a claim for payment of those taxes

Case ID: 251202237
Control No.: 26025048

or expenses. Unless the declaration provides otherwise, any income or proceeds from convertible real estate inures to the declarant.

§ 3215. Subdivision or conversion of units.

(a) General rule.--If the declaration expressly so permits, a unit may be subdivided into two or more units or, in the case of a unit owned by a declarant, may be subdivided or converted into two or more units, common elements, or a combination of units and common elements. Subject to the provisions of the declaration and other provisions of law, upon application of a unit owner to subdivide a unit or upon application of a declarant to convert a unit the association shall prepare, execute and record an amendment to the declaration, including the plats and plans, subdividing or converting that unit.

(b) Execution and contents of amendment.--The amendment to the declaration must be executed by the owner of the unit to be subdivided, assign an identifying number to each unit created and reallocate the common element interest, votes in the association and common expense liability formerly allocated to the subdivided unit to the new units in any reasonable manner prescribed by the owner of the subdivided unit.

(c) Conversion of unit of declarant to common elements.--In the case of a unit owned by a declarant, if a declarant converts all of a unit to common elements, the amendment to the declaration must reallocate among the other units the common element interest, votes in the association and common expense liability formerly allocated to the converted unit on [the same basis used for the initial allocation thereof] **a pro rata basis, inter se.**

§ 3217. [Use for sales purposes.] **Declarant's offices, models and signs.**

[A declarant may maintain sales offices, management offices and models in the condominium only if the declaration so provides and specifies the rights of a declarant with regard to the number, size, location and relocation thereof. Any sales office, management office or model not designated a unit by the declaration is a common element, and if a declarant ceases to be a unit owner, he ceases to have any rights with regard thereto unless it is removed promptly from the condominium in accordance with a right to remove reserved in the declaration. Subject to any limitations in the declaration, a declarant may maintain signs on the common elements advertising the condominium.]

**(a) Common elements.--A declarant may maintain offices and models in the common element portion of the condominium only in connection with the management, sale or rental of units owned by the declarant in the condominium if the declaration so provides and specifies the rights of a declarant with regard to the number, size, location and relocation thereof. At such time as a declarant ceases to be a unit owner, he ceases to have any rights with regard to such portions of the common elements so used unless such portions are removed promptly from the condominium in accordance with a right to remove reserved in the declaration. Upon the relocation of a model or office constituting a common element, a declarant may remove all personal property and fixtures therefrom. Any**

Case ID: 250202237
Control No.: 26025048

fixtures not so removed shall be deemed common elements, and any personal property not so removed shall be deemed the property of the association.

(b) Signs.--Subject to any limitations in the declaration, a declarant may maintain signs in his units and on the common elements advertising units in the condominium owned by the declarant for sale or lease.

(c) Units.--A declarant shall have the right to locate, relocate and maintain offices and models used only in connection with the management, sale or rental of units owned by the declarant in the condominium in his unit or units in the condominium, notwithstanding the fact that the declaration would otherwise preclude use of units for such purpose, but subject to all other provisions in the declaration, including, without limitation, modification or elimination of declarant's rights pursuant to this subsection by specific reference thereto.

§ 3218. Easement to facilitate completion, conversion and expansion.

Subject to the provisions of the declaration, a declarant has an easement through the common elements as may be reasonably necessary for the purpose of discharging a declarant's obligations or exercising special declarant rights, [whether arising under this subpart or reserved in the declaration] however arising.

§ 3219. Amendment of declaration.

(a) Number of votes required.--Except in cases of amendments that may be executed by a declarant under [sections] section 3210(e) and (f) (relating to plats and plans), 3211(a) (relating to conversion and expansion of flexible condominiums) or 3212(a) (relating to withdrawal of withdrawable real estate); the association under [sections] subsection (f) or section 3107 (relating to eminent domain), 3207(d) (relating to leasehold condominiums), 3209(c) (relating to limited common elements) or 3215(a) (relating to subdivision or conversion of units); or certain unit owners under [sections] section 3209(b) (relating to limited common elements), 3214(a) (relating to relocation of boundaries between adjoining units), 3215(b) (relating to subdivision or conversion of units) or 3220(b) (relating to termination of condominium), and except as limited by subsection (d), the declaration, including the plats and plans, may be amended only by vote or agreement of unit owners of units to which at least 67% of the votes in the association are allocated, or any larger majority the declaration specifies. The declaration may specify a smaller number only if all of the units are restricted exclusively to nonresidential use.

(b) Limitation of action to challenge amendment.--No action to challenge the validity of an amendment adopted by the association pursuant to this section may be brought more than one year after the amendment is recorded.

(c) Recording amendment.--Every amendment to the declaration must be recorded in every county in which any portion of the condominium is located in the same records as are maintained for the recording of deeds of real property and shall be indexed in the name of the condominium in both the grantor and grantee index. An amendment is effective only upon recordation.

Case ID: 251202237
Control No.: 26025048

(d) When unanimous consent required.--Except to the extent expressly permitted or required by other provisions of this subpart, no amendment may create or increase special declarant rights, increase the number of units or change the boundaries of any unit, the common element interest, common expense liability or voting strength in the association allocated to a unit, or the uses to which any unit is restricted, in the absence of unanimous consent of the unit owners.

(e) Officer authorized to execute amendment.--Amendments to the declaration required by this subpart to be recorded by the association shall be prepared, executed, recorded and certified by any officer of the association designated for that purpose or, in the absence of designation, by the president of the association.

**(f) Corrective amendments.--Except as otherwise provided in the declaration, if any amendment to the declaration is necessary in the judgment of the executive board to cure any ambiguity or to correct or supplement any provision of the declaration, including the plats and plans, that is defective, missing or inconsistent with any other provision thereof or with this subpart or if an amendment is necessary in the judgment of the executive board to conform to the requirements of any agency or entity that has established national or regional standards with respect to loans secured by mortgages or deeds of trust on units in condominium projects (such as the Federal National Mortgage Association and the Federal Home Loan Mortgage Corporation), then, at any time and from time to time, the executive board may at its discretion effect an appropriate corrective amendment without the approval of the unit owners or the holders of any liens on all or any part of the condominium, upon receipt by the executive board of an opinion from independent legal counsel to the effect that the proposed amendment is permitted by the terms of this subsection.**

§ 3220. Termination of condominium.

(a) Number of votes required.--Except in the case of a taking of all the units by eminent domain (section 3107), a condominium may be terminated only by agreement of unit owners of units to which at least 80% of the votes in the association are allocated, or any larger percentage the declaration specifies. The declaration may specify a smaller percentage only if all of the units in the condominium are restricted exclusively to nonresidential uses.

(b) Execution and recording agreement and ratifications.-- [An agreement of unit owners to terminate a condominium must be evidenced by their execution of a termination agreement or ratifications thereof. If, pursuant to a termination agreement, the real estate constituting the condominium is to be sold following termination, the termination agreement must set forth the terms of the sale.] **An agreement of unit owners to terminate a condominium must be evidenced by their execution of a termination agreement or ratifications thereof, in the same manner as a deed, by the requisite number of unit owners who are owners of record as of the date preceding the date of recordation of the termination agreement. The termination agreement must specify the date it was first executed or ratified by a unit owner. The termination**

Case ID: 251202237
Control No.: 26025048

agreement will become null and void unless it is recorded on
or before the earlier of:

      (1) The expiration of one year from the date it was
first executed or ratified by a unit owner.

      (2) Such date as shall be specified in the termination
agreement.

 If, pursuant to a termination agreement, the real estate
constituting the condominium is to be sold following
termination, the termination agreement must set forth the
terms of the sale. A termination agreement and all
ratifications thereof must be recorded in every county in
which a portion of the condominium is located in the same
records as are maintained for the recording of deeds of real
property and shall be indexed in the name of the condominium
in both the grantor index and the grantee index. A termination
agreement is effective only upon recordation.

   (c) Status if real estate sold.--The association, on behalf
of the unit owners, may contract for the sale of the
condominium, but the contract is not binding on the unit
owners until approved pursuant to subsections (a) and (b). If
the real estate constituting the condominium is to be sold
following termination, title to that real estate, upon
termination, vests in the association as trustee for the
holders of all interests in the units. Thereafter, the
association has all powers necessary and appropriate to effect
the sale. Until the sale has been concluded and the proceeds
thereof distributed, the association continues in existence
with all powers it had before termination. Proceeds of the
sale must be distributed to unit owners and lienholders as
their interests may appear, in proportion to the respective
interests of unit owners as provided in subsection (f). Unless
otherwise specified in the termination agreement, as long as
the association holds title to the real estate, each unit
owner and his successors in interest have an exclusive right
to occupancy of the portion of the real estate that formerly
constituted his unit. During the period of that occupancy,
each unit owner and his successors in interest remain liable
for all assessments and other obligations imposed on unit
owners by this subpart or the declaration.

   (d) Status if real estate not sold.--If the real estate
constituting the condominium is not to be sold following
termination, title to the real estate, upon termination, vests
in the unit owners as tenants in common in proportion to their
respective interests as provided in subsection (f) and liens
on the units shift accordingly. While the tenancy in common
exists, each unit owner and his successors in interest have an
exclusive right to occupancy of the portion of the real estate
that formerly constituted his unit.

   (e) Distribution of assets of association.--Following
termination of the condominium, [and after payment of or
provision for the claims of the association's creditors, the
assets of the association shall be distributed to unit owners
in proportion to their respective interests as provided in
subsection (f). The proceeds of sale described in subsection
(c) and held by the association as trustee are not assets of
the association.] the proceeds of any sale of real estate,
together with the assets of the association, shall be held by
the association as trustee or unit owners and holders of liens

Case ID: 251202237
Control No.: 26025048

on the units as their interests may appear. Following termination, creditors of the association holding liens on the units which were recorded, filed of public record or otherwise perfected before termination may enforce those liens in the same manner as any lienholder. All other creditors of the association are to be treated as if they had perfected liens on the units immediately before termination.

(f) Respective interests of unit owners.--The respective interests of unit owners referred to in subsections (c), (d) and (e) are as follows:

(1) Except as provided in paragraph (2), the respective interests of unit owners are the fair market values of their units, limited common elements and common element interests immediately before the termination, as determined by one or more independent appraisers selected by the association. The decision of the independent appraisers shall be distributed to the unit owners and becomes final unless disapproved within 30 days after distribution by unit owners of units to which 25% of the votes in the association are allocated. The proportion of any unit owner's interest to that of all unit owners is determined by dividing the fair market value of that unit owner's unit and common element interest by the total fair market values of all the units and common elements.

(2) If any unit or any limited common element is destroyed to the extent that an appraisal of the fair market value thereof prior to destruction cannot be made, the interests of all unit owners are their respective common element interests immediately before the termination.

(g) Effect of foreclosure or enforcement of lien.-- [Foreclosure] **Except as provided in subsection (h),** foreclosure or enforcement of a lien or encumbrance against the entire condominium does not of itself terminate the condominium, and foreclosure or enforcement of a lien or encumbrance against a portion of the condominium, other than withdrawable real estate, does not withdraw that portion from the condominium. Foreclosure or enforcement of a lien or encumbrance against withdrawable real estate does not of itself withdraw that real estate from the condominium but the person taking title thereto has the right to require from the association, upon request, an amendment excluding the real estate from the condominium.

**(h) Exclusion from condominium upon foreclosure.--If a lien or encumbrance against a portion of the real estate comprising the condominium has priority over the declaration and if the lien or encumbrance has not been partially released, the parties foreclosing the lien or encumbrance may, upon foreclosure, record an instrument excluding the real estate subject to that lien or encumbrance from the condominium.**

Section 4. Title 68 is amended by adding sections to read:
§ 3222. Master associations.

(a) Applicability of section.--If the declaration for a condominium provides that any of the powers described in section 3302 (relating to powers of unit owners' association) with respect to the condominium are to be exercised by or may be delegated to a profit or nonprofit corporation or unincorporated association (a "master association") which

Case ID: 251202237
Control No.: 26025048

exercises those or other powers on behalf of one or more other condominiums or other incorporated or unincorporated associations, then, except as modified by this section, all provisions of this subpart applicable to unit owners' associations shall apply to any such master association insofar as its actions affect the condominium.

(b) Powers.--Unless a master association is acting in the capacity of an association described in section 3301 (relating to organization of unit owners' association) with respect to a condominium which is part of the master association, it may exercise with respect to the condominium only such powers set forth in section 3302 and only to the extent expressly permitted in the declaration of condominium which provides for the delegation of powers from its condominium association to the master association and accepted by such master association as indicated in the provisions of the declaration or other organizational documents of such master association.

(c) Liability of executive board members and officers.--If the declaration of a condominium provides that the executive board may delegate certain powers to a master association, the members of the executive board have no liability for the acts or omissions of the master association with respect to those powers following such delegation. The officers and members of the governing board of the master association are subject to liability to the condominium association whose powers are delegated thereto and the unit owners of such condominium on the same basis as officers and executive board members of such condominium immediately before such delegation of powers.

(d) Rights and responsibilities of persons electing governing body.--The rights and responsibilities of unit owners with respect to the unit owners' association set forth in sections 3303 (relating to executive board members and officers), 3308 (relating to meetings), 3309 (relating to quorums), 3310 (relating to voting; proxies) and 3320 (relating to declarant delivery of items to association) apply in the conduct of the affairs of a master association with respect to the exercise of powers delegated pursuant to a condominium declaration to such master association, but apply only to those persons who elect the governing body of a master association, whether or not those persons are otherwise unit owners within the meaning of this subpart.

(e) Election of master association governing body.-- Notwithstanding the provisions of section 3303(e) with respect to the election of the executive board by all unit owners after the period of declarant control ends and even if a master association is also an association described in section 3301, the instrument creating the master association and the declaration of each condominium or the organizational documents of other associations the powers of which are assigned pursuant to the declaration or organizational documents or delegated to the master association shall provide that the governing body of the master association must be elected after the period of declarant control in any of the following ways:

 (1) All unit owners of all condominiums and other properties subject to the master association elect all members of the governing body of the master association.

(2) All members of the governing bodies of the condominium associations and other property owners' associations subject to the master association elect all members of the master association governing body.

(3) All unit owners of each condominium and other property owners' associations subject to the master association elect specified members of the master association governing body.

(4) All members of the governing bodies of the condominiums and other property associations subject to the master association elect specified members of the master association governing body.

(f) Delegation of responsibility and authority.--The provisions of this section shall apply to a condominium if and when:

(1) there occurs either a date specified in the declaration or any amendment thereto from and after which this section shall apply to the condominium;

(2) there occurs an event or action that the declaration or any amendment thereto states shall cause this section to become applicable, and the association causes to be recorded an instrument duly executed by the president of the association stating that:

(i) such event or action has occurred and the date of such occurrence, thereby causing this section to become applicable to the condominium; and

(ii) that a copy of such instrument has been sent to all unit owners; or

(3) the declarant executes and records an instrument stating that this section shall thereafter apply to the condominium and that a copy of such instrument has been sent to the executive board and all unit owners.

Paragraph (3) shall be applicable only if the declarant shall have expressly reserved in the declaration, pursuant to section 3205(12) (relating to contents of declaration; all condominiums), the special declarant right to make this section applicable to the condominium and only if the instrument exercising such right shall have been recorded during the time period allowed for the exercise of such right.

(g) Delegation of all powers.--If all the powers of a condominium association are delegated to a master association and accepted by such master association pursuant to subsection (b), then the governing body of the master association may act in all respects as the executive board of the condominium and no separate executive board need be elected or exist.

§ 3223. Merger or consolidation of condominiums.

(a) General rule.--Any two or more condominiums by agreement of the unit owners as provided in subsection (b) may be merged or consolidated into a single condominium. In the event of a merger or consolidation, unless the agreement otherwise provides, the resultant condominium is, for all purposes, the legal successor of all of the preexisting condominiums, and the operations and activities of all associations of the preexisting condominiums shall be merged or consolidated into a single association which shall hold all powers, rights, obligations, assets and liabilities of all preexisting associations. The resultant condominium shall, in addition, be subject in all respects to the provisions and

Case ID: 251202237
Control No.: 26025048

requirements of this subpart regardless of whether or not any of the preexisting condominiums shall have been established under this subpart.

(b) Requirements of agreement.--The merger or consolidation of two or more condominiums pursuant to subsection (a) must be evidenced by a recorded agreement duly executed by the president of the association of each of the preexisting condominiums following approval by owners of units to which are allocated the percentage of votes in each condominium required to terminate such condominium. Any such agreement must be recorded in every county in which a portion of the condominium is located and is not effective until so recorded.

(c) Reallocations.--Every merger or consolidation agreement must provide for the reallocation of the common element interests, common expense liability, including both general and limited common expenses, and portion of the votes in the resulting association among the units of the resulting condominium either:

(1) by stating the reallocations or the formulas upon which they are based; or

(2) by stating the common element interests, common expense liability, including both general and limited common expenses, and portion of the votes in the resulting association which are allocated to all of the units comprising each of the preexisting condominiums, and providing that the common element interests, common expense liability, including both general and limited common expenses, and portion of the votes in the association for the resulting condominium shall be the same as was allocated to each unit formerly comprising a part of the preexisting condominium by the declaration of the preexisting condominium.

(d) Action by declarant.--Notwithstanding the provisions of subsections (a) and (b), if a declarant expressly retained the special declarant right to merge or consolidate a condominium pursuant to section 3205(13) (relating to contents of declaration; all condominiums) and if the declarant exercised such right within the time period allowed for such exercise by giving written notice to that effect to all unit owners accompanied by a copy of the agreement evidencing such merger or consolidation, then such agreement may be executed by the declarant rather than by the president of the association of that condominium and without the necessity for approval or consent by unit owners or their mortgagees, provided that the agreement is recorded within the time period allowed for the exercise of this special declarant right.

Section 5. Sections 3301, 3302, 3303, 3304, 3306, 3308, 3310, 3311, 3312, 3313, 3314, 3315 and 3316 of Title 68 are amended to read:

§ 3301. Organization of unit owners' association.

A unit owners' association shall be organized no later than the date [the condominium is created] **the first unit of the condominium is conveyed to a person other than a successor declarant.** The membership of the association at all times shall consist exclusively of all the unit owners or, following termination of the condominium, of all former unit owners entitled to distributions of proceeds under section 3220 (relating to termination of condominium) or their heirs,

Case ID: 250202237
Control No.: 26025048

successors or assigns. The association shall be organized as a profit or nonprofit corporation or as an unincorporated association.

§ 3302. Powers of unit owners' association.

(a) General rule.--Subject to the provisions of the declaration, the association, even if unincorporated, may:

(1) Adopt and amend bylaws and rules and regulations.

(2) Adopt and amend budgets for revenues, expenditures and reserves and collect assessments for common expenses from unit owners.

(3) Hire and terminate managing agents and other employees, agents and independent contractors.

(4) Institute, defend or intervene in litigation or administrative proceedings in its own name on behalf of itself or two or more unit owners on matters affecting the condominium.

(5) Make contracts and incur liabilities.

(6) Regulate the use, maintenance, repair, replacement and modification of common elements.

(7) Cause additional improvements to be made as a part of the common elements.

(8) Acquire, hold, encumber and convey in its own name any right, title or interest to real or personal property, **but common elements may be conveyed or subjected to a security interest only pursuant to the provisions of section 3318 (relating to conveyance or encumbrance of common elements).**

(9) Grant easements, leases, licenses and concessions through or over the common elements, **but any such easement, lease, license or concession:**

**(i) that is not for the benefit of all or substantially all of the unit owners shall not be granted without the same unit owner approval that is required for an amendment to the declaration; or**

**(ii) that materially impairs any right or benefit that one or more unit owners may have with respect to the common elements shall not be granted without the prior written approval of those unit owners.**

(10) Impose and receive any payments, fees or charges for the use, rental or operation of the common elements other than limited common elements described in section 3202(2) and (4) (relating to unit boundaries).

(11) Impose charges for late payment of assessments and, after notice and an opportunity to be heard, levy reasonable fines for violations of the declaration, bylaws and rules and regulations of the association.

(12) Impose reasonable charges for the preparation and recordation of amendments to the declaration, resale certificates required by section 3407 (relating to resales of units) or statements of unpaid assessments.

(13) Provide for the indemnification of its officers and executive board and maintain directors' and officers' liability insurance.

(14) Exercise any other powers conferred by the declaration or bylaws.

Case ID: 251202237
Control No.: 26025048

(15)  Exercise all other powers that may be exercised in this Commonwealth by legal entities of the same type as the association.

(16)  Exercise any other powers necessary and proper for the governance and operation of the association.

**(17)  Assign its right to future income, including the right to receive the payments made on account of common expense assessments, but only to the extent the declaration expressly so provides.**

**(18)  Assign or delegate any powers of the association listed in this section to a master association subject to the provisions of section 3222 (relating to master associations) and accept any assignment or delegation of powers from one or more condominiums or other incorporated or unincorporated associations.**

(b)  Restriction on limitations in declaration.--Notwithstanding subsection (a), the declaration may not impose limitations on the power of the association to deal with the declarant that are more restrictive than the limitations imposed on the power of the association to deal with other persons.

§ 3303.  Executive board members and officers.

(a)  Powers and fiduciary status.--Except as provided in the declaration, the bylaws, in subsection (b) or other provisions of this subpart, the executive board may act in all instances on behalf of the association. [The] **In the performance of their duties,** the officers and members of the executive board [appointed by the declarant are subject to liability as fiduciaries of the unit owners for their acts or omissions] **shall stand in a fiduciary relation to the association and shall perform their duties, including duties as members of any committee of the board upon which they may serve, in good faith in a manner they reasonably believe to be in the best interests of the association and with such care, including reasonable inquiry, skill and diligence, as a person of ordinary prudence would use under similar circumstances. In performing his duties, an officer or executive board member shall be entitled to rely in good faith on information, opinions, reports or statements, including financial statements and other financial data, in each case prepared or presented by any of the following:**

**(1)  One or more other officers or employees of the association whom the officer or executive board member reasonably believes to be reliable and competent in the matters presented.**

**(2)  Counsel, public accountants or other persons as to matters which the officer or executive board member reasonably believes to be within the professional or expert competence of such person.**

**(3)  A committee of the executive board upon which he does not serve, duly designated in accordance with law, as to matters within its designated authority, which committee the officer or executive board member reasonably believes to merit confidence.**

**An officer or executive board member shall not be considered to be acting in good faith if he has knowledge concerning the matter in question that would cause his reliance to be unwarranted.**

Case ID: 251202237
Control No.: 26025048

(b)  Limitation on authority.--The executive board may not act on behalf of the association to amend the declaration (section 3219), to terminate the condominium (section 3220) or to elect members of the executive board or determine the qualifications, powers and duties or terms of office of executive board members (section 3303(e)) but the executive board may fill vacancies in its membership for the unexpired portion of any term. **The executive board shall deliver to all unit owners copies of each budget approved by the executive board and notice of any capital expenditure approved by the executive board promptly after either such approval.** In addition to other rights conferred by the declaration, bylaws or this subpart, the unit owners, by majority or any larger vote specified in the declaration, may reject any budget or capital expenditure approved by the executive board, within 30 days after the approval.

(c)  Status during period of declarant control.--Subject to subsection (d), the declaration may provide for a period of declarant control of the association during which period a declarant or persons designated by him may appoint and remove the officers and members of the executive board. Any period of declarant control extends from the date of the first conveyance of a unit to a person other than a declarant for a period not exceeding seven years in the case of a flexible condominium containing convertible real estate or to which additional real estate may be added, or five years in the case of any other condominium. Regardless of the period provided in the declaration, a period of declarant control terminates no later than 180 days after conveyance of 75% of the units to unit owners other than a declarant. A declarant may voluntarily surrender the right to appoint and remove officers and members of the executive board before termination of that period but in that event he may require, for the duration of the period of declarant control, that specified actions of the association or executive board, as described in a recorded instrument executed by the declarant, be approved by the declarant before they become effective.

(d)  Election of members during transfer of declarant control.--Not later than 60 days after conveyance of 25% of the units to unit owners other than a declarant, not less than 25% of the members of the executive board shall be elected by unit owners other than the declarant. Not later than 60 days after conveyance of 50% of the units to unit owners other than a declarant, not less than 33 1/3% of the members of the executive board shall be elected by unit owners other than the declarant.

(e)  Election of members and officers following declarant control.--Not later than the termination of any period of declarant control, the unit owners shall elect an executive board of at least three members at least a majority of whom must be unit owners, **except that the executive board may consist of two members, both of whom must be unit owners, if the condominium consists of two units.** The executive board shall elect the officers. The persons elected shall take office upon election.

(f)  Calculation of percentages of units conveyed.--In determining whether the period of declarant control has terminated under subsection (c), or whether unit owners other

Case ID: 251202237
Control No.: 26025048

than a declarant are entitled to elect members of the
executive board under subsection (d), the percentage of the
units conveyed is presumed to be that percentage which would
have been conveyed if all the units the declarant has built or
reserved the right to build in the declaration were included
in the condominium.

§ 3304.  Transfer of special declarant rights.

   (a)  Execution and recording instrument of transfer.--No
special declarant rights (section 3103) created or reserved
under this subpart may be transferred except by an instrument
evidencing the transfer recorded in every county in which any
portion of the condominium is located in the same records as
are maintained for the recording of deeds of real property and
shall be indexed in the name of the condominium in both the
grantor and grantee index. The instrument is not effective
unless executed by the transferee.

   (b)  Liability of declarant following transfer.--Upon
transfer of any special declarant right, the liability of a
transferor declarant is as follows:

       (1)  A transferor is not relieved of any obligation or
   liability arising before the transfer and remains liable
   for warranty obligations imposed upon him by this subpart.
   Lack of privity does not deprive any unit owner of standing
   to bring an action to enforce any obligation of the
   transferor.

       (2)  If [a transferor retains any special declarant
   right or if] a successor to any special declarant right is
   an affiliate of a declarant (section 3103), the transferor
   [is subject to liability for all obligations and
   liabilities imposed on a declarant by this subpart or by
   the declaration arising after the transfer and] is jointly
   and severally liable with [the] **any** successor for the
   liabilities and obligations **or liabilities** of the successor
   [which relate] **relating** to the condominium.

       **(2.1)  If a transferor retains any special declarant
   right, but transfers one or more other special declarant
   rights to a successor who is not an affiliate of the
   declarant, the transferor is liable for any obligations or
   liabilities imposed on a declarant by this subpart or by
   the declaration relating to the retained special declarant
   rights arising after the transfer.**

       (3)  A transferor [who retains no special declarant
   right] has no liability for any act or omission or any
   breach of a contractual or warranty obligation arising from
   the exercise of a special declarant right by a successor
   declarant who is not an affiliate of the transferor **and to
   whom the special declarant right has not theretofore been
   assigned.**

   (c)  Rights of purchaser in foreclosure, etc. proceedings.-
-Unless otherwise provided in a mortgage instrument or deed of
trust, in case of foreclosure of a mortgage, sale by a trustee
under a deed of trust or sale under [the Federal Bankruptcy
Act] **11 U.S.C. (relating to bankruptcy)** or receivership
proceedings of any units owned by a declarant in the
condominium **or additional real estate in a flexible
condominium**, a person acquiring title to all the units being
foreclosed or sold, but only upon his request, succeeds to all
special declarant rights **related to such units or additional**

Case ID: 251202237
Control No.: 26025048

**real estate**, or only to any rights reserved in the declaration
pursuant to section 3217 (relating to [use for sales purposes]
**declarant's offices, models and signs) and held by that
declarant** to maintain models, sales offices and signs. The
judgment or instrument conveying title shall provide for
transfer of only the special declarant rights requested.

(d) Rights of declarant following foreclosure, etc.
proceedings.--Upon foreclosure, **tax sale, judicial sale**, sale
by a trustee under a deed of trust or sale under [the Federal
Bankruptcy Act] **11 U.S.C. (relating to bankruptcy)** or
receivership **or similar** proceedings of all units **and other
real estate** in a condominium owned by a declarant:

(1) the declarant ceases to have any special declarant
rights; and

(2) the period of declarant control (section 3303(c))
terminates unless the judgment or instrument conveying
title provides for transfer of all special declarant rights
**held by that declarant** to a successor declarant.

(e) Liabilities and obligations of successors.--The
liabilities and obligations of persons who succeed to special
declarant rights are as follows:

(1) A successor to any special declarant right who is
an affiliate of a declarant is subject to all obligations
and liabilities imposed on [any declarant] **the transferor**
by this subpart or by the declaration.

(2) A successor to any special declarant right, other
than a successor described in paragraph (3) or (4), who is
not an affiliate of a declarant is subject to all
obligations and liabilities imposed [upon a declarant] by
this subpart or the declaration [but he is not subject to
liability for misrepresentations or warranty obligations on
components made by any previous declarant or made before
the condominium was created, or for a breach of fiduciary
obligation by any previous declarant.]:

(i) **on a declarant which relate to his exercise
or nonexercise of special declarant rights; or**

(ii) **on his transferor, other than:**

(A) **misrepresentations by any previous
declarant, except to the extent knowingly
continued or permitted to continue without
correcting such misrepresentations;**

(B) **warranty obligations on improvements
made by any previous declarant or made before the
condominium was created;**

(C) **breach of any fiduciary obligation by
any previous declarant or his appointees to the
executive board; or**

(D) **any liability or obligation imposed on
the transferor as a result of the transferor's
acts or omissions after the transfer.**

(3) A successor to only a right reserved in the
declaration to maintain models, sales offices and signs
(section 3217), if he is not an affiliate of a declarant,
may not exercise any other special declarant right and is
not subject to any liability or obligation as a declarant
except the obligation to provide a public offering
statement and any liability arising as a result thereof.

Case ID: 251202237
Control No.: 26025048

(4) A successor to all special declarant rights **held by his transferor** who is not an affiliate of [a] **that transferor** declarant and who succeeded to those rights pursuant to a deed in lieu of foreclosure or a judgment or instrument conveying title to units under subsection (c) may declare his intention in a recorded instrument to hold those rights solely for transfer to another person. Thereafter, until transferring all special declarant rights to any person acquiring title to any unit owned by the successor or until recording an instrument permitting exercise of all those rights, that successor may not exercise any of those rights other than [the] **any** right **held by his transferor** to control the executive board in accordance with the provisions of section 3303(c) (relating to executive board members and officers) for the duration of any period of declarant control and any attempted exercise of those rights is void. So long as a successor declarant may not exercise special declarant rights under this subsection he is not subject to any liability or obligation as a declarant other than liability for the successor's acts and omissions under section 3303(c).

(f) Limitation on liability of successor.--Nothing in this section subjects any successor to a special declarant right to any claims against or other obligations of a transferor declarant other than claims and obligations arising under this subpart or the declaration.

§ 3306. Bylaws.

(a) Mandatory provisions.--The bylaws of the association must provide for:

(1) The number of members of the executive board and the titles of the officers of the association.

(2) Election by the executive board of a president, treasurer, secretary and any other officers of the association the bylaws specify.

(3) The qualifications, powers and duties, terms of office and manner of electing and removing executive board members and officers and filling vacancies.

(4) Which, if any, of its powers the executive board or officers may delegate to other persons or to a managing agent.

(5) Which of its officers may prepare, execute, certify and record amendments to the declaration on behalf of the association.

**(6) The method of amending the bylaws.**

(b) Other provisions.--Subject to the provisions of the declaration, the bylaws may provide for any other matters the association deems necessary and appropriate.

§ 3308. Meetings.

The bylaws must require that meetings of the association be held at least once each year and provide for special meetings. The bylaws must specify which of the association's officers, not less than ten nor more than 60 days in advance of any meeting, shall cause notice to be hand delivered or sent prepaid by United States mail to the mailing address of each unit or to any other mailing address designated in writing by the unit owner. The notice of any meeting must state the time and place of the meeting and the items on the agenda, including the general nature of any proposed amendment to the

Case ID: 251202237
Control No.: 26025048
Case ID: 251202237

declaration or bylaws, **any budget or assessment changes and,
where the declaration or bylaws require approval of unit
owners, any proposal to remove an executive board member or
officer.**
§ 3310.  Voting; proxies.
    (a)  [Multiple owners of a unit.--If only one of the
multiple owners of a unit is present at a meeting of the
association, he is entitled to cast all the votes allocated to
that unit.] **Unit owner other than natural person.--If the
owner of a unit is a corporation, joint venture, partnership
or unincorporated association, the natural person who shall be
entitled to cast the vote for such unit shall be the person
named in a certificate executed by such entity pursuant to its
governing documents. If the owner of a unit is a trust, the
trustee or trustees shall be deemed to be the owner for the
voting purposes. Where the ownership of a unit is in more than
one person, the natural person who shall be entitled to cast
the vote of such unit shall be the person named in a
certificate executed by all of the owners of such unit and
filed with the secretary or, in the absence of such named
person from the meeting or the failure to execute and file
such a certificate, the person who shall be entitled to cast
the vote of such unit shall be the person owning such unit who
is present.** If more than one of the multiple owners are
present, the votes allocated to that unit may be cast only in
accordance with their unanimous agreement unless the
declaration expressly provides otherwise. There [is] **shall be
deemed to be unanimous agreement if any one of the multiple
owners casts the votes allocated to that unit without protest
being made promptly to the person presiding over the meeting
by any of the other owners of the unit. Such certificate shall
be valid until revoked by a subsequent certificate similarly
executed. Except where execution by owners of a unit in the
same manner as a deed is required in this subpart and subject
to the provisions of the declaration and bylaws, wherever the
approval or disapproval of a unit owner is required by this
subpart, the declaration or the bylaws, such approval or
disapproval shall be made only by the person who would be
entitled to cast the vote of such unit at any meeting of the
association.**
    (b)  Proxies.--Votes allocated to a unit may be cast
pursuant to a proxy duly executed by a unit owner. If a unit
is owned by more than one person, each owner of the unit may
vote or register protest to the casting of votes by the other
owners of the unit through a duly executed proxy. A unit owner
may not revoke a proxy given pursuant to this section except
by actual notice of revocation to the person presiding over a
meeting of the association. A proxy is void if it is not dated
or purports to be revocable without notice. A proxy terminates
one year after its date unless it specifies a shorter term.
    [(c)  Cumulative and class voting.--The declaration may
provide for cumulative voting only for the purpose of electing
members of the executive board and for class voting on
specified issues affecting the class if necessary to protect
valid interests of the class. A declarant may not utilize
cumulative or class voting for the purpose of evading any
limitation imposed on declarants by this subpart.]

Case ID: 250202237
Control No.: 26025048

(d)  Units owned by association.--No votes allocated to a
unit owned by the association may be cast.
§ 3311.  Tort and contract liability.
    (a)  General rule.--
        (1)  An action in tort alleging a wrong done by a
    declarant or his agent or employee in connection with a
    portion of any convertible or withdrawable real estate or
    other portion of the condominium which the declarant has
    the responsibility to maintain may not be brought against
    the association or against a unit owner other than a
    declarant.
        (2)  Except as otherwise provided by paragraph (1):
            (i)  An action in tort alleging a wrong done by
        the association or by an agent or employee of the
        association, or an action arising from a contract made
        by or on behalf of the association, shall be brought
        against the association.
            (ii)  A unit owner shall not be subject to suit
        or, except as otherwise provided by subsection (b), be
        otherwise directly or indirectly held accountable for
        the acts of the association or its agents or employees
        on behalf of the association.
        (3)  If the tort or breach of contract occurred during
    any period of declarant control (section 3303(c)), the
    declarant is liable to the association for all unreimbursed
    losses suffered by the association as a result of that tort
    or breach of contract, including costs and reasonable
    attorney's fees. **If a claim for a tort or breach of
    contract is made after the period of declarant control, the
    association shall have no right against the declarant under
    this paragraph unless the association shall have given the
    declarant:**
            **(i)  notice of the existence of such a claim
        promptly after the date on which one or more members
        of the executive board who are not designees of the
        declarant learns of the existence of such a claim; and**
            **(ii)  an opportunity to defend against such claim
        on behalf of the association but at the declarant's
        expense.**
            Any statute of limitation affecting the
        association's right of action under this section is
        tolled until the period of declarant control
        terminates.
        (4)  A unit owner is not precluded from bringing an
    action contemplated by this subsection because he is a unit
    owner or a member or officer of the association.
    (b)  Lien of judgment.--[A] **Except as otherwise provided in
this subpart, a** judgment for money against the association, if
and when entered of record against the name of the association
in the office of the clerk of the court of common pleas of the
county or counties where the condominium is located, or in the
office of the branch of the court of common pleas embracing
such county or counties, shall also constitute a lien against
each unit for a pro rata share of the amount of that judgment,
including interest thereon, based on the common expense
liability allocated to that unit (section 3208). No other
property of a unit owner is subject to the claims of creditors
of the association.

Case ID: 251202237
Control No.: 26025048

(c)  Indexing judgment.--A judgment against the association shall be indexed in the name of the condominium.

(d)  Applicability of section.--The provisions of this section shall be applicable to all associations without regard to whether the association is organized as a corporation or as an unincorporated association.

§ 3312.  Insurance.

(a)  Insurance to be carried by association.--Commencing not later than the time of the first conveyance of a unit to a person other than a declarant, the association shall maintain, to the extent reasonably available:

(1)  Property insurance on the common elements and units exclusive of improvements and betterments installed in units [by unit owners] insuring against all risks of direct physical loss commonly insured against or, in the case of a conversion [condominium] **building**, against fire and extended coverage perils. The total amount of insurance after application of any deductibles shall be not less than 80% of the actual cash value of the insured property exclusive of land, excavations, foundations and other items normally excluded from property policies.

(2)  Comprehensive general liability insurance, including medical payments insurance, in an amount determined by the executive board but not less than any amount specified in the declaration covering all occurrences commonly insured against for death, bodily injury and property damage arising out of or in connection with the use, ownership or maintenance of the common elements.

(b)  Other insurance carried by association.--If the insurance described in subsection (a) is not maintained, the association promptly shall cause notice of that fact to be hand delivered or sent prepaid by United States mail to all unit owners. The declaration may require the association to carry any other insurance and the association in any event may carry any other insurance it deems appropriate to protect the association or the unit owners.

(c)  Contents of insurance policies.--Insurance policies carried pursuant to subsection (a) must provide that:

(1)  Each unit owner is an insured person under the policy with respect to liability arising out of his ownership of an undivided interest in the common elements or membership in the association.

(2)  The insurer waives its right to subrogation under the policy against any unit owner of the condominium or members of his household.

(3)  No act or omission by any unit owner, unless acting within the scope of his authority on behalf of the association, will void the policy or be a condition to recovery under the policy.

(4)  If, at the time of a loss under the policy, there is other insurance in the name of a unit owner covering the same property covered by the policy, the policy is primary insurance not contributing with the other insurance.

(d)  Proceeds from property insurance.--Any loss covered by the property policy under subsection (a)(1) shall be adjusted with the association but the insurance proceeds for that loss shall be payable to any insurance trustee designated for that

Case ID: 251202237
Case ID: 251202237
Control No.: 26025048

purpose or otherwise to the association and not to any
mortgagee or beneficiary under a deed of trust. The insurance
trustee or the association shall hold any insurance proceeds
in trust for unit owners and lienholders as their interests
may appear. Subject to the provisions of subsection (g), the
proceeds shall be disbursed first for the repair or
restoration of the damaged common elements and units and unit
owners and lienholders are not entitled to receive payment of
any portion of the proceeds unless there is a surplus of
proceeds after the common elements and units have been
completely repaired or restored or the condominium is
terminated.

    (e) Unit owner may obtain insurance.--An insurance policy
issued to the association does not prevent a unit owner from
obtaining insurance for his own benefit.

    (f) Evidence· and cancellation of insurance.--An insurer
that has issued an insurance policy under this section shall
issue certificates or memoranda of insurance to the
association and, upon request, to any unit owner, mortgagee or
beneficiary under a deed of trust. The insurance may not be
cancelled until 30 days after notice of the proposed
cancellation has been mailed to the association, each unit
owner and each mortgagee or beneficiary under a deed of trust
to whom certificates of insurance have been issued.

    (g) Disposition of insurance proceeds.--

       (1) Any portion of the condominium damaged or
destroyed shall be repaired or replaced promptly by the
association unless:

           (i) the condominium is terminated;

           (ii) repair or replacement would be illegal under
any state or local health or safety statute or
ordinance; or

           (iii) eighty percent of the unit owners,
including every owner of a unit or assigned limited
common element which will not be rebuilt, vote not to
rebuild.

       The cost of repair or replacement in excess of
insurance proceeds and reserves is a common expense.

       (2) If the entire condominium is not repaired or
replaced:

           (i) the insurance proceeds attributable to the
damaged common elements shall be used to restore the
damaged area to a condition compatible with the
remainder of the condominium;

           (ii) the insurance proceeds attributable to units
and limited common elements which are not rebuilt
shall be distributed to the owners of those units and
the owners of the units to which those limited common
elements were assigned; and

           (iii) the remainder of the proceeds shall be
distributed to all the unit owners in proportion to
their common element interests.

       If the unit owners vote not to rebuild any unit,
that unit's entire common element interest, votes in
the association and common expense liability are
automatically reallocated upon the vote as if the unit
had been condemned under section 3107(a) (relating to
eminent domain) and the association promptly shall

Case ID: 251202237
Control No.: 26025048

prepare, execute and record an amendment to the
declaration reflecting the reallocations.

(3) Notwithstanding the provisions of this subsection,
section 3220 (relating to termination of condominium)
governs the distribution of insurance proceeds if the
condominium is terminated.

(h) Nonresidential condominiums.--The provisions of this
section may be varied or waived in the case of a condominium
all of whose units are restricted to nonresidential use.

§ 3313. Surplus funds.

[Unless otherwise provided in the declaration, any surplus
funds of the association remaining after payment of or
provision for common expenses and any prepayment of reserves
must be credited to the unit owners to reduce their future
common expense assessments.] **Any amounts accumulated from
assessments for limited common expenses and income from the
operation of limited common elements to which such limited
common expenses pertain in excess of the amount required for
actual limited common expenses and reserves for future limited
common expenses shall be credited to each unit assessed for a
share of such limited common expenses in proportion to the
share of such limited common expenses so assessed, these
credits to be applied, unless the declaration provides
otherwise, to the next monthly assessments of limited common
expenses against that unit under the then current fiscal
year's budget, and thereafter, until exhausted. Any amounts
accumulated from assessments for general common expenses and
income from the operation of the common elements, other than
limited common elements with regard to which limited common
expenses are assessed, in excess of the amount required for
actual general common expenses and reserves for future general
common expenses shall be credited to each unit in accordance
with such unit's interests in common elements, these credits
to be applied, unless the declaration provides otherwise, to
the next monthly assessments of general common expenses
against that unit under the then current fiscal year's budget,
and thereafter, until exhausted.**

§ 3314. Assessments for common expenses.

(a) General rule.--Until the association makes a common
expense assessment, the declarant shall pay all the expenses
of the condominium. After any assessment has been made by the
association, assessments shall be made at least annually and
shall be based on a budget adopted at least annually by the
association. **The budgets of the association shall segregate
limited common expenses from general common expenses if and to
the extent appropriate.**

(b) Allocation and interest.--Except for assessments under
subsection (c), common expenses shall be assessed against all
the units in accordance with the common expense liability
allocated to each unit (section 3208) **in the case of general
common expenses and in accordance with subsection (c) in the
case of special allocations of expenses.** Any past due
assessment or installment thereof shall bear interest at the
rate established by the association not exceeding 15% per
year.

(c) [Limited] **Special allocations** of expenses.--Except as
provided by the declaration:

Case ID: 251202237
Control No.: 26025048

(1) [any] **Any** common expense associated with the maintenance, repair or replacement of a limited common element shall be assessed in equal shares against the units to which that limited common element was assigned at the time the expense was incurred[; and].

(2) [any] **Any** common expense benefiting fewer than all of the units shall be assessed exclusively against the units benefited.

**(3) The costs of insurance shall be assessed in proportion to risk and the costs of utilities that are separately metered to each unit shall be assessed in proportion to usage.**

**(4) If any common expense is caused by the negligence or misconduct of any unit owner, the association may assess that expense exclusively against his unit.**

(d) Reallocation.--If common expense liabilities are reallocated, common expense assessments and any installment thereof not yet due shall be recalculated in accordance with the reallocated common expense liabilities.

§ 3315. Lien for assessments.

(a) General rule.--The association has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes due. The association's lien may be foreclosed in like manner as a mortgage on real estate. **A judicial or other sale of the unit in execution of a common element lien or any other lien shall not affect the lien of a mortgage thereon, except the mortgage for which the sale is being held, if the mortgage is or shall be prior to all other liens upon the same property except those liens identified in 42 Pa.C.S. § 8152(a) (relating to judicial sale as affecting lien of mortgage) and liens for condominium assessments created under this section.** Unless the declaration otherwise provides, fees, charges, late charges, fines and interest charged pursuant to section 3302(a)(10), (11) and (12) (relating to powers of unit owners' association) **and reasonable costs and expenses of the association, including legal fees, incurred in connection with collection of any sums due the association by the unit owner or enforcement of the provisions of the declaration, bylaws, rules or regulations against the unit owner are enforceable as** assessments under this section. If an assessment is payable in installments[, the full amount of the assessment becomes effective as a lien from the time the first installment thereof becomes due] **and one or more installments is not paid when due, the entire outstanding balance of the assessment becomes effective as a lien from the due date of the delinquent installment.**

(b) Priority of lien.--

(1) General rule.--A lien under this section is prior to all other liens and encumbrances on a unit except:

(i) Liens and encumbrances recorded before the recordation of the declaration.

(ii) [Mortgages and deeds of trust on the unit securing first mortgage holders and recorded before the due date of the assessment or the due date of the first installment payable on the assessment.] **Mortgages and deeds of trust on the unit securing first mortgage holders and recorded before the due**

Case ID: 251202237
Case ID: 251202237
Control No.: 26025048

**date of the assessment, if the assessment is not payable in installments, or the due date of the unpaid installment, if the assessment is payable in installments.**

(iii) Liens for real estate taxes and other governmental assessments or charges against the unit.

(2) Limited nondivestiture.--The association's lien for common expenses shall be divested by a judicial sale of the unit:

(i) As to unpaid common expense assessments made under section 3314(b) (relating to assessments for common expenses) that come due during the six months immediately preceding institution of an action to enforce collection of a lien against a unit by a judicial sale, only to the extent that the six months unpaid assessments are paid out of the proceeds of the sale.

(ii) As to unpaid common expense assessments made under section 3314(b) other than the six months assessment referred to in subparagraph (i), in the full amount of these unpaid assessments, whether or not the proceeds of the judicial sale are adequate to pay these assessments. To the extent the proceeds of the sale are sufficient to pay some or all of these additional assessments, after satisfaction in full of the costs of the judicial sale, and the liens and encumbrances of the types described in paragraph (1) and the unpaid common expense assessments that come due during the six-month period described in subparagraph (i), they shall be paid before any remaining proceeds may be paid to any other claimant, including the prior owner of the unit.

(3) Monetary exemption.--The lien is not subject to the provisions of 42 Pa.C.S. § 8123 (relating to general monetary exemption).

(c) Notice and perfection of lien.--Subject to the provisions of subsection (b), recording of the declaration constitutes record notice and perfection of the lien.

(d) Limitation of actions.--A lien for unpaid assessments is extinguished unless proceedings to enforce the lien are instituted within three years after the assessments become payable.

(e) Other remedies preserved.--Nothing in this section shall be construed to prohibit actions or suits to recover sums for which subsection (a) creates a lien or to prohibit an association from taking a deed in lieu of foreclosure.

(f) Costs and attorney's fees.--A judgment or decree in any action or suit brought under this section shall include costs and reasonable attorney's fees for the prevailing party.

(g) Statement of unpaid assessments.--The association shall furnish to a unit owner upon written request a recordable statement setting forth the amount of unpaid assessments currently levied against his unit **and any credits of surplus in favor of his unit pursuant to section 3313 (relating to surplus funds).** The statement shall be furnished within ten business days after receipt of the request and is binding on the association, the executive board and every unit owner.

Case ID: 251202237
Control No.: 26025048

§ 3316. Association records.

During the period of declarant control, the association shall keep detailed financial records, including, without limitation, a record of expenses paid by the declarant until the commencement of common expense assessments by the association under section 3314(a) (relating to assessments for common expenses), the commencement date of common expense assessments by the association and, for the period commencing on such date, a record for each unit in the condominium (including those owned by the declarants) of its common expense assessments and the payments thereof. The association shall keep financial records sufficiently detailed to enable the association to comply with section 3407 (relating to resales of units). All financial and other records shall be made reasonably available for examination by any unit owner and his authorized agents.

Section 6. Title 68 is amended by adding sections to read:

§ 3318. Conveyance or encumbrance of common elements.

(a) General rule.--Portions of the common elements may be conveyed or subjected to a security interest by the association if the persons entitled to cast at least 80% of the votes in the association, including 80% of the votes allocated to units not owned by a declarant or any larger percentage the declaration specifies, agree to that action, but all the owners of units to which any limited common element is allocated must agree in order to convey that limited common element or subject it to a security interest. The declaration may specify a smaller percentage only if all of the units are restricted exclusively to nonresidential uses. Proceeds of the sale are an asset of the association.

(b) Required agreement.--An agreement to convey common elements or subject them to a security interest must be evidenced by the execution of an agreement, or ratifications thereof, in the same manner as a deed, by the requisite number of unit owners. The agreement must specify a date after which the agreement will be void unless recorded before that date. The agreement and all ratifications thereof must be recorded in every county in which a portion of the condominium is situated and is effective only upon recordation.

(c) Association powers.--The association on behalf of the unit owners may contract to convey common elements or subject them to a security interest, but the contract is not enforceable against the association until approved pursuant to subsections (a) and (b). Thereafter, the association has all powers necessary and appropriate to effect the conveyance or encumbrance, including the power to execute deeds or other instruments.

(d) Other conveyances or encumbrances void.--Any purported conveyance, encumbrance, judicial sale or other voluntary transfer of common elements, unless made pursuant to this section, is void.

(e) Right of access and support.--A conveyance or encumbrance of common elements pursuant to this section does not deprive any unit of its right of access and support.

(f) Preexisting encumbrances.--Unless the declaration otherwise provides, a conveyance or encumbrance of common elements pursuant to this section does not affect the priority or validity of preexisting encumbrances.

Case ID: 251202237
Control No.: 26025048

(g) Limitation.--Common elements which may be conveyed or encumbered pursuant to this section shall not include any land, buildings or other facilities:

    (1) containing or comprising one or more units; or

    (2) necessary for the use or operation of one or more units.

§ 3319. Other liens affecting the condominium.

(a) General rule.--Except as provided in subsection (b), a judgment for money against the association, if and when the judgment has been perfected as a lien on real property, is not a lien on the common elements, but is a lien in favor of the judgment lienholder against all of the units in the condominium at the time the judgment was entered. No other property of a unit owner is subject to the claims of creditors of the association.

(b) If security interest in common elements.--If the association has granted a security interest in the common elements to a creditor of the association pursuant to section 3318 (relating to conveyance or encumbrance of common elements), the holder of that security interest shall exercise its right against the common elements before its judgment lien on any unit may be enforced.

(c) Release upon payment of unit owner's share.--Whether perfected before or after the creation of the condominium, if a lien other than a deed of trust or mortgage, including a judgment lien or lien attributable to work performed or materials supplied before creation of the condominium, becomes effective against two or more units, the unit owner of an affected unit may pay to the lienholder the amount of the lien attributable to his unit, and the lienholder, upon receipt of payment, promptly shall deliver a release of the lien covering that unit. The amount of the payment must be proportionate to the ratio which that unit owner's common expense liability bears to the common expense liabilities of all unit owners whose units are subject to the lien. After payment, the association may not assess or have a lien against that unit owner's unit for any portion of the common expenses incurred in connection with that lien.

(d) Indexing of judgments.--A judgment against the association must be indexed in the name of the condominium and the association and, when so indexed, is notice of the lien against the units.

§ 3320. Declarant delivery of items to association.

Except as set forth in paragraph (9), not later than 60 days after the required termination of the period of declarant control pursuant to section 3303(c) (relating to executive board members and officers) or the declarant's earlier voluntary termination of control, the declarant shall deliver to the association all property of the unit owners and of the association held by or controlled by the declarant, including, without limitation, all of the following items, if applicable, as to each condominium or other owners' association operated by the association:

    (1) The original or a certified copy or a photocopy of the recorded declaration and all amendments thereto. If a photocopy is delivered, such photocopy shall reflect the recording information and shall be accompanied by an affidavit executed by the declarant certifying such

Case ID: 251202237
Control No.: 26025048

photocopy to be a true, correct and complete copy of the actual recorded declaration and all amendments thereto.

(2) The association articles of incorporation, if incorporated, with evidence of filing with the Department of State.

(3) A copy of the bylaws.

(4) A complete set of all executive board minutes and resolutions and all other books and records of the association.

(5) A complete copy of all rules and regulations that may have been adopted.

(6) Copies of all Federal, State and local tax returns filed by or on behalf of the association and copies of any tax-exempt elections made by or on behalf of the association.

(7) Copies of all past and current budgets of the association.

(8) Resignations of officers and members of the executive board who are required to resign because the declarant is required to relinquish or has relinquished control of the association.

(9) Not later than 90 days after the required termination of the period of declarant control pursuant to section 3303(c) or the declarant's earlier voluntary termination of control, a complete audit of the finances of the association for the time period between the last audit of the association's financial books and records and the date of termination of the period of declarant control, prepared by an independent certified public accountant in accordance with generally accepted accounting principles, the costs of which audit are to be borne equally by the declarant and the association. If the condominium consists of not more than 12 units, a warranty from the declarant to the association that the books and records of the association completely and accurately reflect all activities of the association from its inception through the date of termination of the period of declarant control may be substituted for the audit referred to in this paragraph.

(10) All association funds or control thereof.

(11) All tangible personal property and inventories thereof:

(i) that may have been represented or should have been represented by the declarant in any public offering statement, sales materials or other writings to be part of the common elements; or

(ii) that is otherwise property of the association.

(12) A copy of the plans or drawings and specifications, if any, utilized in the construction, rehabilitation, renovation or remodeling of any buildings and improvements within the condominium and in the construction and installation of any mechanical components and equipment serving the buildings and improvements and property, if and to the extent the construction, rehabilitation, renovation, remodeling or installation was performed by or on behalf of the declarant and substantially completed during the period commencing three

Case ID: 251202237
Control No.: 26025048

years prior to the date of the first public offering statement regarding the condominium, unless no public offering statement is required for any unit in the condominium in which event such period shall commence on the date of the recordation of the condominium declaration or amendment thereto with respect to such improvements, and ending on the date by which compliance with this section is required. In the event such construction, rehabilitation, renovation, remodeling or installation was substantially completed within such period but not by or on behalf of the declarant, the obligation of the declarant under this paragraph shall be to provide all such plans, drawings and specifications in the possession of the declarant and to use reasonable efforts to obtain and provide any such plans, drawings or specifications not within the possession of the declarant. If such construction, rehabilitation, renovation, remodeling or installation was substantially completed more than three years prior to the commencement of the period described in this paragraph, the obligations of the declarant under this paragraph shall be to provide all such plans, drawings and specifications in the possession of the declarant. To the extent previously made available to the declarant, the declarant in all cases shall deliver to the association owners, operating, care and maintenance manuals and other information regarding mechanical components and equipment serving any buildings and improvements in the condominium. A declarant's delivery of any plans, drawings or specifications pursuant to this paragraph shall not constitute a representation or warranty of the accuracy or completeness of such plans, drawings or specifications and shall not expand or otherwise affect the declarant's warranties created under section 3411 (relating to warranty against structural defects).

(13) All insurance policies insuring the association then in force.

(14) Copies of any certificates or statements of occupancy which may have been issued with respect to the improvements comprising the condominium, if and to the extent available.

(15) Any other permits issued by governmental bodies applicable to the condominium property which are then currently in force, all notices of violations of governmental requirements then outstanding and uncured and all reports of investigations for the presence of hazardous conditions as defined in section 3402(a)(26) (relating to public offering statement; general provisions).

(16) Any written warranties then in force and effect from contractors, subcontractors, suppliers or manufacturers who have performed work with respect to the condominium property or have supplied equipment or services to the condominium property.

(17) A roster of unit owners and mortgagees and their respective addresses and telephone numbers, if known, as shown on the declarant's records.

(18) Employment contracts in which the association is or is to be one of the contracting parties.

(19) Service and other contracts and leases in which the association is or is to be one of the contracting

Case ID: 251202237
Control No.: 26025048

parties and service contracts in which the association has directly or indirectly an obligation or a responsibility to pay some or all of the fees or charges of the person or persons performing such services.

Section 7.  Section 3401, 3402, 3403, 3404, 3405, 3406, 3407, 3408, 3409, 3410, 3411 and 3414 of Title 68 are amended to read:

§ 3401.  Applicability; waiver.

(a)  General rule.--This chapter applies to all units subject to this subpart, except as provided in subsection (b) and section 3411 (relating to warranty against structural defects) or as modified or waived by agreement of [purchasers of units in a condominium in which all units are restricted to residential use.] the purchaser of any unit which is intended for nonresidential use at the time of sale of such unit by the declarant or by agreement of purchasers of units in a condominium who are or intend to be in the business of buying and selling condominium units, provided that:

(1)  a purchaser of a unit intended for residential use at the time of sale by the declarant may not modify or waive the provisions of section 3411 with regard to such unit and the common elements;

(2)  with regard to any limited common element appurtenant only to nonresidential units, the unit owners of all such units have agreed to such modification or waiver and, with regard to any common elements, other than limited common elements, in a condominium in which all units are restricted to nonresidential use, all unit owners have agreed to such modification or waiver; and

(3)  no modification or waiver shall prevent any unit owner from indirectly benefiting from any provision in this chapter by reason of such unit owner being a unit owner in the condominium and a member of the association.

(b)  Public offering statements.--A public offering statement need not be prepared or delivered in the case of:

(1)  a gratuitous transfer of a unit;

(2)  a disposition pursuant to court order;

(3)  a disposition by a government or governmental agency;

(4)  a disposition by foreclosure or deed in lieu of foreclosure;

(5)  a disposition of a condominium situated wholly outside this Commonwealth pursuant to a contract executed wholly outside this Commonwealth; or

(6)  a transfer to which section 3507 (relating to resales of units) applies.

(c)  Resale certificates.--A resale certificate as described in section 3407 need not be prepared or delivered in the cases described in subsection (b)(1) through (5).

(d)  Unified public offering statement.--If a unit is part of a condominium and is part of any other real estate regime in connection with the sale of which the delivery of a public offering statement is required under the laws of this Commonwealth, a single public offering statement conforming to the requirements of sections 3402 (relating to public offering statement; general provisions), 3403 (relating to public offering statement; time-share estates) and 3404 (relating to public offering statement; condominiums containing conversion

Case ID: 251202237
Control No.: 26025048

buildings) as those requirements relate to any real estate regimes in which the unit is located and to any other requirements imposed under the laws of this Commonwealth may be prepared and delivered in lieu of providing two or more public offering statements.

§ 3402. Public offering statement; general provisions.

(a) General rule.--Except as provided in subsection (b), a public offering statement must contain or fully and accurately disclose:

(1) The name and principal address of the declarant and of the condominium.

(2) A general description of the condominium, including without limitation the types, number and declarant's schedule of commencement and completion of construction of all buildings, units and amenities. **The public offering statement shall also contain a narrative description of the type and character of units offered, including a statement of the degree of completion to be provided or undertaken by the declarant of such units and the common elements necessary for use and enjoyment of such units upon the conveyance by the declarant of the units offered.**

(3) The total number of additional units that may be included in the condominium and the proportion of units the declarant intends to rent or market in blocks of units to investors.

(4) A brief narrative description of any options reserved by a declarant to withdraw withdrawable real estate under section 3206(1) (relating to contents of declaration; flexible condominiums) and the expected effects that withdrawal would have on the remaining portion of the condominium.

(5) Copies and a brief narrative description of the significant features of the declaration (other than the plats and plans), **and** the bylaws, [and] rules and regulations, **the agreement of sale,** copies of any contracts and leases to be signed by **the** purchasers **prior to or** at closing and a brief narrative description of any **other** contracts or leases **or agreements of a material nature to the condominium** that will or may be subject to cancellation by the association under section 3305 (relating to termination of contracts and leases of declarant).

(6) Any current balance sheet and a projected budget for the association, either within or as an exhibit to the public offering statement, for one year after the date of the first conveyance to a purchaser, and thereafter the current budget of the association, a statement of who prepared the budget and a statement of the budget's **material** assumptions, **including those** concerning occupancy and inflation factors. The budget must include, without limitation:

(i) A statement of the amount, or a statement that there is no amount, included in the budget as a reserve for repairs and replacement.

(ii) A statement [of any other reserves] **containing a description of any provisions made in the budget for reserves for anticipated material capital**

expenditures or any other reserves or, if no provision is made for reserves, a statement to that effect.
    (iii) The projected common expense assessment by category of expenditures for the association.
    (iv) The projected monthly common expense assessment for each type of unit.
  (7) Any:
    **(i)** services not reflected in the budget that the declarant provides, or expenses that he pays, and that he expects may become at any subsequent time a common expense of the association; and
    **(ii) personal property not owned by the association but provided by the declarant and being used or to be used in the operation and enjoyment of the common elements which is or will be required in connection with the operation and enjoyment of the common elements after such personal property is no longer provided by the declarant, and the projected common expense assessment for the association and for each type of unit** attributable to each of those services or expenses [for the association and for each type of unit] **and purchase or rental of such personal property.**
  (8) Any initial or special fee due from the purchaser at closing together with a description of the purpose and method of calculating the fee.
  (9) A description of any liens, defects or encumbrances on or affecting the title to the condominium.
  (10) A description of any financing **for purchasers** offered **or arranged** by the declarant.
  (11) The terms and significant limitations of any warranties provided by the declarant including statutory warranties and limitations on the enforcement thereof or on damages.
  (12) A statement in at least ten-point bold face type, appearing on the first page of the public offering statement, [that] **as follows:**
    (i) [Within 15 days after receipt of a public offering statement a] **That within 15 days after receipt of a public offering statement, or within seven days in the case of the sale of a time-share estate, or an amendment to the public offering statement that materially and adversely affects the rights or obligations of the purchaser, the purchaser,** before conveyance, may cancel any contract for purchase of a unit from a declarant.
    (ii) [If] **That if** a declarant fails to provide a public offering statement, **and any amendments thereto,** to a purchaser before conveying a unit, that purchaser may recover from the declarant damages as provided in section 3406(c) (relating to purchaser's right to cancel) [and a description of such damages].
    **(iii) A description of such damages.**
    [(iii) If] **(iv) That if** a purchaser receives the public offering statement more than 15 days before signing a contract, he cannot cancel the contract, **or more than seven days in the case of the sale of a time-share estate, except that, in accordance with**

Case ID: 251202237
Case ID: 251202237
Control No.: 26025048

subparagraph (i), he shall have the right to cancel the contract before conveyance within 15 days (seven days in the case of the sale of a time-share estate) after receipt of any amendment thereto that would have a material and adverse effect on the rights or obligations of that purchaser.

(13) A statement of any judgments against the association, the status of any pending suits to which the association is a party and the status of any pending suits material to the condominium of which a declarant has actual knowledge.

(14) A statement that any deposit made in connection with the purchase of a unit will be held in an escrow account in accordance with the provisions of section 3408 (relating to escrow of deposits) and will be returned to the purchaser if the purchaser cancels the contract pursuant to section 3406.

(15) Any restraints on alienation of any portion of the condominium.

(16) A description of [the] all insurance coverage provided or intended to be provided if such insurance is not then in effect for the benefit of unit owners, including the types and extent of coverage and the extent to which such coverage includes or excludes improvements or betterments made to units.

(17) Any current or expected fees or charges to be paid by unit owners for the use of the common elements and other facilities related to the condominium.

(18) The extent to which financial arrangements have been provided for completion of all improvements labeled "MUST BE BUILT" pursuant to section 3414 (relating to declarant's obligation to complete and restore).

(19) All unusual and material circumstances, features and characteristics of the condominium and the units.

(20) In the case of a leasehold condominium, at least the following information:

(i) The name and address of each lessor and his assignee, if any.

(ii) Any relationship between the declarant and any lessor or assignee.

(iii) A description of the leased property.

(iv) The rent and any provision in the lease for increases in the rent and any other charges or payments required to be paid by the lessee under the lease.

(v) Whether the lessee has any right to terminate the lease.

(vi) The information contained in the declaration as required by section 3207(a) (relating to leasehold condominiums).

(vii) The following notice in bold type: "Purchasers should be aware that this is a leasehold condominium and the purchaser's interest therein may be less valuable than a fee interest, may depreciate over time and may be of questionable marketability."

[(21) A statement containing a description of any provisions made in the budget for reserves for capital

Case ID: 251202237
Control No.: 26025048

expenditures or, if no provision is made for reserves, a statement to this effect.

(22)] **(21)** A statement containing a declaration as to the present condition of all structural components and major utility installations in the subject property, including the dates of construction, installation and major repairs if known or ascertainable, and the expected useful life of each item, together with the estimated cost (in current dollars) of replacing each of the same.

**(22)** A description of how votes are allocated among the units and a statement as to whether cumulative or class voting is permitted and, if so, under what circumstances. Such statement shall also explain the operation of such cumulative or class voting.

**(23)** A description of any circumstances under which the association is to become a master association or part of a master association.

**(24)** A statement of all governmental approvals and permits required for the use and occupancy of the condominium indicating the name and expiration date of each such approval or permit that has been obtained and, as to any governmental approvals or permits that have not been obtained, a statement indicating when each such permit or approval is expected to be obtained and the person who shall bear the expense of obtaining each such permit or approval.

**(25)** A statement as to whether there are any outstanding and uncured notices of violations of governmental requirements and, if there are any such notices of violations, a description of the alleged violation and a statement indicating when each violation is expected to be cured and the person who shall bear the expense of curing such violation.

**(26)** A statement as to whether the declarant has knowledge of any one or more of the following:

**(i)** Hazardous conditions, including contamination affecting the condominium site by hazardous substances, hazardous wastes or the like, or the existence of underground storage tanks for petroleum products or other hazardous substances.

**(ii)** Any investigation conducted to determine the presence of hazardous conditions on or affecting the condominium site.

**(iii)** Any finding or action recommended to be taken in the report of any such investigation or by any governmental body, agency or authority in order to correct any hazardous conditions, and any action taken pursuant to those recommendations.

If the declarant has no knowledge of such matters, the declarant shall make a statement to that effect. Declarant shall also set forth the address and phone number of the regional offices of the Department of Environmental Resources and the United States Environmental Protection Agency where information concerning environmental conditions affecting the condominium site may be obtained.

(b) Exceptions.--If a condominium composed of not more than 12 units is not a flexible condominium and no power is reserved to a declarant to make the condominium part of a

Case ID: 251202237
Case ID: 251202237
Control No.: 26025048

larger condominium, group of condominiums or other real estate, a public offering statement may but need not include the information otherwise required by subsection (a)(3), (4) and (18) and the narrative descriptions of documents required by subsection (a)(5).

(c)  Amendment for material change in information.--A declarant promptly shall amend the public offering statement to report any material change in the information required by this section.

§ 3403.  Public offering statement; time-share estates.

(a)  Definition.--For purposes of this section, "time-share estate" means either:

(1)  an "interval estate," meaning a combination of:

(i)  an estate for years in a unit, during the term of which title to the unit rotates among the time-share owners thereof, vesting in each of them in turn for periods established by a fixed recorded schedule, with the series thus established recurring regularly until the term expires, coupled with

(ii)  a vested undivided fee simple interest in the remainder in that unit, the magnitude of that interest having been established by the declaration or by the deed creating the interval estate; or

(2)  a "time-span estate," meaning a combination of:

(i)  an undivided interest in a present estate in fee simple in a unit, the magnitude of that interest having been established by the declaration or by the deed conveying the time-span estate, coupled with

(ii)  the exclusive right to possession and occupancy of that unit during a regularly recurring period designated by that deed or by a recorded document referred to therein.

(b)  General rule.--If the declaration provides that ownership or occupancy of [the] **any** units are or may be owned in time-shares, the public offering statement shall contain or disclose in addition to the information required by section 3402 (relating to public offering statement; general provisions):

(1)  The total number of units in which time-share estates may be created.

(2)  The total number of time-share estates that may be created in the condominium.

(3)  The projected common expense assessment for each time-share estate and whether those assessments may vary seasonally.

(4)  A statement of any services not reflected in the budget which the declarant provides, or expenses which he pays, and which he expects may become at any subsequent time a common expense of the association, and the projected common expense assessment attributable to each of those services or expenses for each time-share estate.

(5)  The extent to which the time-share owners of a unit are jointly and severally liable for the payment of real estate taxes and all assessments and other charges levied against that unit.

(6)  The extent to which a suit for partition may be maintained against a unit owned in time-share estates.

Case ID: 251202237
Control No.: 26025048

(7) The extent to which a time-share estate may become subject to a tax or other lien arising out of claims against other time-share owners of the same unit.

(8) A statement in at least ten-point bold face type, appearing on the first page of the public offering statement, that:

(i) Within seven days after receipt of a public offering statement a purchaser, before conveyance, may cancel any contract for purchase of a unit from a declarant.

(ii) If a declarant fails to provide a public offering statement to a purchaser before conveying a unit, the purchaser may recover from the declarant damages as provided in section 3406(c) (relating to purchaser's right to cancel) and a description of such damages.

(iii) If a purchaser receives the public offering statement more than seven days before signing a contract, he cannot cancel the contract.

§ 3404. Public offering statement; [conversion] condominiums containing conversion buildings.

(a) General rule.--The public offering statement of a [conversion] condominium **containing a conversion building** must contain, in addition to the information required by section 3402 (relating to public offering statement; general provisions):

(1) A statement by the declarant, based on a report prepared by an independent registered architect or professional engineer[,]:

(i) describing the age and present condition and, **if known or reasonably ascertainable, the dates of construction, installation and major repairs** of all structural components and mechanical and electrical installations, including, but not limited to, roofs, plumbing, heating, air conditioning[,] and elevators [and pest control conditions], material to the use and enjoyment of the condominium[.]; and

(ii) **describing the results of the inspection of the units and common elements required pursuant to section 3411(c) (relating to warranty against structural defects) for visible conditions that adversely affect the health or safety of residential occupants. The statement should also state the extent to which the report by the architect or professional engineer is based upon a visual inspection of the units as well as the common elements.**

(2) A statement by the declarant of the expected useful life of each item reported on in paragraph (1) including the current replacement costs of such item.

(3) A list of any outstanding notices of uncured violations of building code or other municipal regulations, together with the estimated cost of curing those violations.

(4) **A statement by the declarant, based on a report prepared by an independent licensed exterminating company, describing the presence at the condominium of any visible pest conditions dangerous to health and safety, such as the presence of insects and rodents dangerous to health or**

Case ID: 251202237
Case ID: 251202237
Control No.: 26025048

safety, and outlining actions taken or to be taken to
eliminate the existence of pest conditions dangerous to
health or safety.

(b) Applicability of section.--This section applies only
to units that may be occupied for residential use.

§ 3405. Public offering statement; condominium securities.

If an interest in a condominium is currently registered
with the Securities and Exchange Commission of the United
States, a declarant satisfies all requirements relating to the
preparation of a public offering statement in this subpart if
he delivers to the purchaser a copy of the public offering
statement filed with the Securities and Exchange Commission.
An interest in a condominium is not, **in and of itself,** a
security under the provisions of the act of December 5, 1972
(P.L.1280, No.284), known as the ["]Pennsylvania Securities
Act of 1972[."], **and the offer and sale of condominium units
in accordance with the requirements of this chapter shall** not
also be subject to the registration requirements of sections
201 or 301 of the Pennsylvania Securities Act of 1972 or the
promotional real estate sales requirements of the act of
February 19, 1980 (P.L.15, No.9), known as the Real Estate
Licensing and Registration Act.

§ 3406. Purchaser's right to cancel.

(a) General rule.--[Unless] **In cases where** delivery of a
public offering statement is [not] required under section
3401[(b)] (relating to applicability; waiver), a declarant
shall provide a purchaser of a unit with a copy of the public
offering statement and all amendments thereto not later than
the date [of any] **the purchaser executes the** contract of sale
**for such unit or, if no contract of sale is executed, 15 days
before conveyance of such unit.** Unless a purchaser is given
the public offering statement [more than 15 days before]
execution of a contract for the purchase of a unit], **including
all the currently effective amendments thereof, within the
time period referred to in the preceding sentence,** the
purchaser, before conveyance, may cancel the contract within
15 days after first receiving the public offering statement
**and all currently effective amendments thereof,** except in the
case of the sale of a time-share estate. Unless a purchaser of
a time-share estate is given the public offering statement,
**including all the currently effective amendments thereof,** more
than seven days before [execution of a] **the purchaser executes
the** contract for the purchase of [a] **such unit or, if no
contract of sale is executed, seven days before conveyance of**
such unit, the purchaser, before conveyance, may cancel the
contract within seven days after first receiving the public
offering statement **and all currently effective amendments**
thereof. **If a public offering statement is amended after the
public offering statement has been received by a purchaser of
a unit, the amendment shall be provided to the purchaser
promptly after it becomes effective, and, if the amendment
materially and adversely affects the rights or obligations, or
both, of the purchaser, then the purchaser, before conveyance,
may cancel the contract of sale within 15 days, or seven days
in case of the sale of a time-share estate, after receiving
the amendment.**

(b) Method and effect of cancellation.--If a purchaser
elects to cancel a contract pursuant to subsection (a), he may

Case ID: 251202237
Case ID: 251202237
Control No.: 26025048

do so by hand delivering notice thereof to the declarant, or by mailing notice thereof by prepaid United States mail to the declarant or to his agent for service of process. Cancellation is without penalty and all payments made by the purchaser before cancellation shall be refunded promptly.

(c)  Penalty for noncompliance by declarant.--If a declarant fails to provide a purchaser to whom a unit is conveyed with a public offering statement and all amendments thereto as required by subsection (a), the purchaser, in addition to any other relief, is entitled to receive from the declarant an amount equal to 5% of the sales price of the unit up to the maximum of $2,000, or actual damages, whichever is the greater amount. A minor omission or error in the public offering statement or an amendment thereto, that is not willful, shall entitle the purchaser to recover only actual damages, if any.

§ 3407.  Resales of units.

(a)  Information supplied by unit owner.--In the event of a resale of a unit by a unit owner other than a declarant, the unit owner shall furnish to a purchaser before execution of any contract for sale of a unit, or otherwise before conveyance, a copy of the declaration (other than the plats and plans), the bylaws, the rules or regulations of the association and a certificate containing:

(1)  A statement disclosing the effect on the proposed disposition of any right of first refusal or other restraint on the free alienability of the unit.

(2)  A statement setting forth the amount of the monthly common expense assessment and any unpaid common expense or special assessment currently due and payable from the selling unit owner **and any surplus fund credits to be applied with regard to the unit pursuant to section 3313 (relating to surplus funds)**.

(3)  A statement of any other fees payable by unit owners.

(4)  A statement of any capital expenditures proposed by the association for the current and two next succeeding fiscal years.

(5)  A statement of the amount of any reserves for capital expenditures and of any portions of those reserves designated by the association for any specified project.

(6)  The most recent regularly prepared balance sheet and income and expense statement, if any, of the association.

(7)  The current operating budget of the association.

(8)  A statement of any judgments against the association and the status of any pending suits to which the association is a party.

(9)  A statement describing any insurance coverage provided for the benefit of unit owners.

(10)  A statement as to whether the executive board has knowledge that any alterations or improvements to the unit or to the limited common elements assigned thereto violate any provision of the declaration.

(11)  A statement as to whether the executive board has knowledge of any violations of [the health or building codes] **applicable governmental requirements or knowledge of the existence of any hazardous conditions pursuant to**

Case ID: 251202237
Case ID: 251202237
Control No.: 26025048

**section 3402(a)(26) (relating to public offering statement; general provisions)** or with respect to the unit, the limited common elements assigned thereto or any other portion of the condominium.

(12) A statement of the remaining term of any leasehold estate affecting the condominium and the provisions governing any extension or renewal thereof.

**(13) A statement as to whether the declaration provides for cumulative voting or class voting.**

**(14) A statement as to whether an agreement to terminate the condominium has been submitted to the unit owners for approval and remains outstanding.**

**(15) A statement of whether the condominium is a master association or is part of a master association or could become a master association or part of a master association.**

**(16) A statement describing which units, if any, may be owned in time-share estates and the maximum number of time-share estates that may be created in the condominium.**

**(17) A statement of whether the declarant retains the special declarant right to cause a merger or consolidation of the condominium and, if so, the information describing such right which was supplied by the declarant pursuant to section 3205(13) (relating to contents of declaration; all condominiums), if any.**

(b)  Information supplied by association.--The association, within ten days after a request by a unit owner, shall furnish a certificate containing the information **and copies of documents** necessary to enable the unit owner to comply with this section. A unit owner providing a certificate pursuant to subsection (a) is not liable to the purchaser for any erroneous information provided by the association and included in the certificate.

(c)  Liability for error or inaction by association.--A purchaser is not liable for any unpaid assessment or fee greater than the amount set forth in the certificate prepared by the association. A unit owner is not liable to a purchaser for the failure or delay of the association to provide the certificate in a timely manner but the purchase contract is voidable by the purchaser until the certificate has been provided and for five days thereafter or until conveyance, whichever first occurs.

§ 3408.  Escrow of deposits.

Any deposit (which shall not include any installment payment under an installment sales contract **nor payments specifically stated in a sales contract to be in payment of or on account of extras, changes or custom work)** made in connection with the purchase or reservation of a unit from a declarant shall be placed in escrow and held in this Commonwealth **by a licensed real estate broker, an attorney admitted to practice in this Commonwealth, a financial institution or a licensed title insurance company**, in an account, **or in the form of a certificate of deposit**, designated solely for that purpose [by an] **with a financial** institution whose accounts are insured by a governmental agency or instrumentality until:

(1)  delivered to the declarant at closing, or in the case of the sale of a unit pursuant to an installment sales

Case ID: 251202237
Case ID: 251202237
Control No.: 26025048

contract, upon the expiration of 30 days from the date of
occupancy of the unit;

     (2) delivered to the declarant because of purchaser's
default under a contract to purchase the unit; or

     (3) refunded to the purchaser.

§ 3409. Release of liens.

    (a) General rule.--Before conveying a unit, other than by
deed in lieu of foreclosure, to a purchaser other than a
declarant, a declarant shall record or furnish to the
purchaser releases of all liens affecting that unit and its
common element interest which the purchaser does not expressly
agree to take subject to or assume, or shall provide a surety
bond or substitute collateral for or insurance against the
lien adequate in nature and amount. This subsection does not
apply to any **convertible or** withdrawable real estate in which
no unit has been conveyed.

    (b) [Lien against multiple units.--Whether perfected
before or after creation of the condominium, if a lien other
than a deed of trust or mortgage, including a lien
attributable to work performed or materials supplied before
creation of the condominium, becomes effective against two or
more units, the unit owner of an affected unit may pay to the
lienholder the amount of the lien attributable to his unit and
the lienholder, upon receipt of payment, promptly shall
deliver a release of the lien covering that unit and its
common element interest. The amount of the payment must be
proportionate to the ratio which that unit owner's common
expense liability bears to the common expense liabilities of
all unit owners whose units are subject to the lien. After
payment, the association may not assess or have a lien against
that unit owner's unit for any portion of the common expenses
incurred in connection with that lien.] **Other liens.--Before
conveying real estate to the association, the declarant shall
have the real estate released from:**

     **(1) All liens, the foreclosure of which would deprive
unit owners of any right of access to or easements of
support of their units.**

     **(2) All other liens on that real estate unless the
public offering statement describes certain real estate
which may be conveyed subject to liens in specified
amounts.**

§ 3410. [Conversion condominiums] **Condominiums containing
conversion buildings.**

    (a) Notice of conversion.--[A] **The** declarant of every
[conversion] condominium **containing one or more conversion
buildings** shall give each of the **residential** tenants and [any
subtenant] **residential subtenants, if any,** lawfully in
possession of a unit or units in a **conversion** building or
buildings [subject to this subpart], a **conversion** notice [of
the conversion] no later than one year before the declarant
will require [the tenants and any] **such residential tenant and
residential** subtenant [in possession] to vacate. The
**conversion** notice must set forth generally the rights of
**residential** tenants and **residential** subtenants under this
section and shall be **hand delivered to the unit or** mailed by
prepaid United States **certified or** registered mail return
receipt requested to the **residential** tenant and **residential**
subtenant at the address of the unit and not more than one

Case ID: 251202237
Case ID: 251202237
Control No.: 26025048

other mailing address provided by a **residential** tenant. Every
notice shall be accompanied by a public offering statement
concerning the proposed sale of condominium units within such
building or buildings. Except as otherwise provided in
subsection (f), no **residential** tenant or **residential** subtenant
**in a conversion building** may be required by the declarant to
vacate [upon less] **the unit he leases earlier** than one
[year's] **year after the conversion** notice **date**, except by
reason of nonpayment of rent, waste or conduct that disturbs
other tenants' peaceful enjoyment of the premises and the
terms of the tenancy, **including those terms that apply to a
period occurring in whole or in part after the conversion
notice date**, may not be altered, **but may be enforced**, during
that period. Failure of a declarant to give notice [as
required by] **to a residential tenant or residential subtenant
entitled to such notice pursuant to** this subsection is a
defense to an action for possession **against such residential
tenant or residential subtenant.**

(b) Offer to tenant to purchase unit.--For six months
after [delivery or mailing of the notice described in
subsection (a)] **the conversion notice date**, the declarant
shall offer to convey each unit or proposed unit occupied for
residential use **in a conversion building** to the tenant who
leases that unit. If [a] **the** tenant fails to purchase [the]
**his** unit during that six-month period, the declarant may not
offer to dispose of an interest in that unit during the
following six months at a price or on terms more favorable to
the offeree than the price or terms offered to the tenant.
This [section] **subsection** shall not apply to any rental unit
which immediately prior to the conversion **notice date** was
restricted **or devoted** exclusively to nonresidential use **or the
boundaries of which unit, after the creation of the
condominium, will not substantially conform to the boundaries
of such unit on the conversion notice date.** [The purchase
option set forth in this subsection shall be recorded in the
recorder of deeds office in any county in which the proposed
conversion condominium is located.]

(c) Effect of wrongful conveyance.--If a declarant, in
violation of subsection (b), conveys a unit to a purchaser for
value who has no knowledge of the violation, recordation of
the deed conveying the unit extinguishes any right a tenant
may have under subsection (b) to purchase that unit if the
deed states that the seller has complied with subsection (b)
but does not affect the right of a tenant to recover damages
from the declarant for a violation of subsection (b).

(d) Notice to vacate.--If a [notice of] conversion **notice**
specifies a date by which a unit or proposed unit must be
vacated, the **conversion** notice also constitutes **a notice of
termination of the tenant's lease, subject to revocation in
accordance with subsection (j)**, and a notice to quit specified
by section 501 of the act of April 6, 1951 (P.L.69, No.20),
known as ["]The Landlord and Tenant Act of 1951.["]

(e) Improper lease termination prohibited.--

(1) Nothing in this section permits termination of a
lease by a declarant in violation of its terms.

(2) Nothing in this section or in any lease shall
prohibit a **residential** tenant, after receiving notice
pursuant to subsection (a), from terminating any lease

Case ID: 251202235
Case ID: 251202237
Control No.: 26025048

without any liability for such termination provided such tenant gives the building owner 90 days' written notice of the intent to terminate the lease.

(3) The **declarant or** owner of any proposed conversion condominium shall not engage in any activity of any nature which would coerce the tenant into terminating any lease, including but not limited to stampeding, harassing tenants or withholding normal services or repairs.

(f) Units leased to senior citizens and [blind and] disabled persons.--

(1) For the purpose of this subsection, an eligible tenant or subtenant shall be a natural person who, [at the time the notice described in subsection (a) is given by the declarant,] **on the conversion notice date, lawfully occupies a unit in a conversion building as his principal residence** and is 62 years of age or older or is [blind or] disabled, and has occupied the unit for at least two years. **For the purpose of this subsection, a person shall be deemed to be "disabled" if on the conversion notice date he is totally and permanently unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impediment, including, but not limited to, blindness.**

(2) Within [30] **60** days after [receipt of] the conversion notice [from the declarant referred to in subsection (a)] **date,** any tenant, or subtenant, in possession of a unit, who believes that he is an eligible tenant or subtenant shall so notify the declarant and shall provide the declarant with proof of his eligibility. Any eligible tenant or subtenant who has established his eligibility as aforesaid shall be entitled to remain in possession of his unit for two years following the **conversion notice** date [of the notice referred to in subsection (a)], notwithstanding any prior termination date in his lease, except by reason of nonpayment of rent, waste or conduct that disturbs other occupants' peaceful enjoyment of the condominium, and the terms of the tenancy, **including terms that apply to a time period after the conversion notice date,** may not be altered, **but may be enforced,** during the time period between the **original lease termination** date [on which the tenant's lease would otherwise terminate] and the expiration of this two-year period except [that the rental may be increased to the extent necessary to reflect any increase in real estate taxes and utility charges, applicable to the unit and not separately paid by the tenant, for the time·period between the date of the notice referred to in subsection (a) and the date on which the tenant's lease would otherwise terminate.] **as is otherwise provided in paragraph (3).**

(3) **The monthly rental payable by the tenant during the time period commencing upon the later to occur of the original lease termination date or the first anniversary of the conversion notice date and ending upon the expiration of the two-year period described in paragraph (2) shall be the same monthly rental as was payable for the month** immediately **preceding the original lease termination date,** except that, at the landlord's option, such monthly rental **may be increased by the lesser of 5% of such monthly rental**

Case ID: 251202237
Case ID: 251202237
Control No.: 26025048

or the same percentage increase as the percentage increase, if any, in the Consumer Price Index as calculated and published by the United States Department of Labor for the six-month time period commencing on the first day of the first full calendar month after the conversion notice date.

(4) Failure of a declarant to comply with the provisions of this subsection is a defense to an action for possession.

(g) Tenant meetings; open to the public.--[At] **With respect to any conversion building containing one or more units then occupied for residential use, at** least 30 days before the [notice of] conversion [is given] **notice date**, the declarant shall hold a tenant meeting open to the public in the municipality where the [conversion is] proposed **conversion building is located** at a place and time convenient to the persons who may be directly affected by the conversion. **At least ten days' notice of the time and place of the meeting shall be given to residential tenants and subtenants in lawful possession of their units in the same manner as is required for the giving of the conversion notice and to the general public by a notice in a newspaper of general circulation in the municipality in which the condominium is located, except that no notice to the general public need be given with respect to conversion buildings as to which the provisions of section 3402(b) (relating to public offering statement; general provisions) are applicable.** At such meeting, representatives of the declarant shall briefly describe the following and may, but shall not be required to, discuss other matters:

(1) The rights and obligations of tenants and subtenants pursuant to this section.

(2) Improvements, if any, then planned to be made to the condominium by the declarant.

(3) The anticipated approximate range of initial unit sales prices. Specific unit sales prices need not, however, be provided.

(4) The anticipated approximate range of estimated monthly common expenses for various types of units, however, specific per unit estimates need not be provided.

(h) Community development grants.--If Federal funds under Title I of the Community Development Act of 1974 have been used to finance the rehabilitation of multifamily rental housing, with the intent that such housing subsequent to the rehabilitation is to be used for residential rental purposes, such housing shall not be converted to a condominium for a period of ten years from the date the rehabilitation is completed.

(i) Revocation.--A declarant may subsequently revoke a conversion notice if the declarant has expressly reserved the right of revocation in the conversion notice and if the notice of revocation:

(1) is given prior to the conveyance of any unit in the condominium occurring after the conversion notice date other than a unit or units conveyed to a successor declarant or as a result of foreclosure of a mortgage on the unit or a deed in lieu thereof;

(2) is given in the same manner as is required for the giving of the conversion notice; and

Case ID: 251202237
Case ID: 251202237
Control No.: 26025048

    (3) is given to all persons who were entitled to receive the conversion notice and who continue to be in lawful occupancy at the time such notice of revocation is given.

The giving of a notice of revocation revokes all rights granted under this section, but does not revoke the rights granted to residential tenants under subsection (a) or (f), and such rights shall be deemed to have been incorporated in each residential tenant's lease.

    (j) Waiver of purchase rights.--Notwithstanding any provisions of this subpart prohibiting waiver of rights, any tenant may waive his right to purchase a unit pursuant to subsection (b) if the waiver is in writing, is acknowledged and is given in consideration of:

        (1) an extension of the term of the tenant's tenancy and right of occupancy under this subpart beyond the time period required by subsection (b);

        (2) the tenant entering into an agreement to purchase another unit in the condominium; or

        (3) all occupants of the unit making alternative living arrangements.

    (k) Alteration of terms of tenancy.--Notwithstanding any provisions of subsection (a) or (f), the terms of the tenancy of a tenant or subtenant may be altered with the express written consent of that tenant or subtenant, and such altered terms shall then be the terms of tenancy referred to in this section.

    (l) Application of section.--The provisions of this section shall apply only with respect to conversion buildings in which one or more residential tenants or residential subtenants are in lawful occupancy on the conversion notice date and the only tenants who are entitled to exercise the rights granted under this section are residential tenants or residential subtenants:

        (1) who are in lawful occupancy of conversion building on the date the declarant gives the conversion notice; or

        (2) who commence their tenancy after the notice of conversion is given to the other residential tenants without having been notified in writing, at or prior to the commencement of their tenancy, that the property is then a condominium and that they are not entitled to the rights granted under this section.

Such rights continue only so long as the lawful occupancy of the tenant or subtenant continues.

§ 3411. Warranty against structural defects.

    (a) Definition.--As used in this section, "structural defects" means those defects in components constituting any unit or common element which reduce the stability or safety of the structure below accepted standards or restrict the normal intended use of all or part of the structure and which require repair, renovation, restoration or replacement. Nothing in this section shall be construed to make the declarant responsible for any items of maintenance relating to the units or common elements.

    (b) General rule.--A declarant warrants against structural defects in each of the units for two years from the date each is conveyed to a bona fide purchaser, and all of the common elements for two years. Any conveyance of a unit during the

Case ID: 251202237
Case ID: 251202237
Control No.: 26025048

two-year warranty period shall be deemed to transfer to the purchaser all of the declarant's warranties created under this section. The two years shall begin as to each of the common elements whenever the common element has been completed or, if later:

    (1) as to any common element within any additional real estate or portion thereof, at the time the first unit therein is conveyed to a bona fide purchaser;

    (2) as to any common element within any convertible real estate or portion thereof, at the time the first unit therein is conveyed to a bona fide purchaser; and

    (3) as to any common element within any other portion of the condominium, at the time the first unit therein is conveyed to a bona fide purchaser.

    (c) [Conversion condominiums.--A declarant of a conversion condominium warrants against structural defects in components installed by the declarant, work done or improvements made by the declarant, and that the unit and common elements have been inspected for structural and mechanical defects and that any such defects found have been repaired. Otherwise, the declarant of a conversion condominium may offer the units, common elements, or both in an "as is" condition. The declarant of a conversion condominium may also give a more extensive warranty in writing. The times at which these warranties commence and the duration of these warranties shall be as provided in subsection (b).] **Condominiums containing conversion buildings.--A declarant of a condominium containing one or more conversion buildings warrants as follows:**

    **(1) That there are no structural defects in components installed anywhere in the condominium by or on behalf of the declarant or in work done or improvements made by or on behalf of the declarant anywhere in the condominium.**

    **(2) That all units and common elements in each conversion building have been inspected for visible structural and mechanical defects and for other visible conditions that adversely affect the health or safety of residential occupants, as required by section 3404(a)(1) (relating to public offering statement; condominiums containing conversion buildings), except that no such inspection is required of any unit if the tenant or other lawful occupant of the unit does not permit such inspection to be conducted.**

    **(3) That any such defects and other visible conditions found have been repaired.**

The warranties set forth in subsection (b) shall be applicable to any units and common elements that are located within a building that contains or comprises one or more units and is not a conversion building. Otherwise, such a declarant may offer the units, common elements, or both, in an "as is" condition. The declarant of a condominium containing any conversion buildings may also give a more extensive warranty in writing. The times at which the warranties required by this subsection commence and the duration of such warranties shall be as provided in subsection (b).

    (d) Exclusion or modification of warranty.--Except with respect to a purchaser of a unit for residential use, the warranty against structural defects:

Case ID: 251202237
Case ID: 251202237
Control No.: 26025048

    (1) may be excluded or modified by agreement of the parties; and
    (2) is excluded by expression of disclaimer, such as "as is," "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties.
  (e) Limitation of actions.--No action to enforce the warranty created by this section shall be commenced later than six years after the warranty begins.
§ 3414. Declarant's obligation to complete and restore.
  (a) Completing improvements.--The declarant shall complete all improvements labeled "MUST BE BUILT" on plats or plans prepared pursuant to section 3210 (relating to plats and plans).
  (b) Repair and restoration.--The declarant is subject to liability for the prompt repair and restoration, to a condition compatible with the remainder of the condominium, of any portion of the condominium affected by the exercise of rights reserved pursuant to or created by sections 3211 (relating to conversion and expansion of flexible condominiums), 3212 (relating to withdrawal of withdrawable real estate), 3217 (relating to [use for sales purposes] declarant's offices, models and signs) and 3218 (relating to easement to facilitate completion, conversion and expansion).
  (c) Substantial completion prerequisite to conveyance.--A unit which is part of or constitutes a structure shall not be conveyed unless all structural components and common element mechanical systems of the structure containing or constituting such unit or units are substantially completed to the extent required of declarant so as to permit the use of such unit or units and any limited common elements appurtenant thereto for their intended use. Such substantial completion shall be evidenced by a recorded certification of completion executed by an independent registered surveyor, architect or professional engineer with regard to any such structure.
  (d) Substantial completion of unit.--No interest in a unit shall be conveyed until the unit is substantially completed in accordance with the descriptions set forth in both the declaration pursuant to section 3205(4) (relating to contents of declaration; all condominiums) and in the public offering statement pursuant to section 3402(a) (relating to public offering statement; general provisions) as evidenced by a recorded certificate of completion executed by an independent registered surveyor, architect or professional engineer.
  (e) Construction of section.--Nothing contained in this subpart shall prevent the offering for sale of a unit or interest in a unit or the execution of any agreement to sell and purchase a unit or any interest in a unit (as opposed to actual conveyance) prior to the completion of the unit or any other portion of the condominium.
  Section 8. (a) Except as set forth in this section, the amendments to 68 Pa.C.S. made by this act shall apply only with respect to events and circumstances occurring after the effective date of this act. The changes to 68 Pa.C.S. made by this act neither invalidate otherwise valid provisions of the declaration, code of regulations, bylaws, declaration plan or plats and plans of any condominium created prior to the effective date of this act nor invalidate otherwise proper

Case ID: 251202237
Case ID: 251202237
Control No.: 26025048

actions of any declarant, condominium association, council or executive board taken prior to the effective date of this act.

(b) The amendment of 68 Pa.C.S. §§ 3208(b) and (c), 3215(c), 3217(c) and 3306(a)(6) shall apply only to condominiums created after the effective date of this act.

(c) The amendment of 68 Pa.C.S. § 3220 shall apply only with regard to a termination agreement or ratifications thereof not executed by any unit owner prior to the effective date of this act.

(d) The amendment of 68 Pa.C.S. § 3308 shall apply only with regard to notices of meetings given after the effective date of this act.

(e) The amendment of 68 Pa.C.S. § 3311(a)(3) shall apply only with regard to a claim for a tort or breach of contract for which litigation shall have been initially instituted after the effective date of this act.

(f) The amendment of 68 Pa.C.S. §§ 3313 and 3314 shall apply only with regard to fiscal years of the association commencing after the effective date of this act.

(g) The amendment of 68 Pa.C.S. §§ 3402(a) and 3404 shall apply only with regard to a public offering statement not delivered to any purchaser prior to the effective date of this act.

(h) The amendment of 68 Pa.C.S. § 3411(c) shall not apply to a conversion building in a condominium with regard to which there has been a conveyance or binding agreement to sell any unit in the conversion building to a bona fide purchaser prior to the effective date of this act.

Section 9. This act shall take effect in 45 days.


APPROVED--The 18th day of December, A. D. 1992.

ROBERT P. CASEY

Case ID: 251202237
Case ID: 251202237
Control No.: 26025048

# EXHIBIT C

Case ID: 251202237
Control No.: 26025048

# HARPER, PAUL & HARVEY

*Attorneys at Law*

140 West Maplewood Avenue
Philadelphia, Pennsylvania 19144-3307

Telephone (215) 844-4848
TeleFax (215) 844-0464

RONALD J. HARPER                                                                                                    GERMANTOWN

ANDREA B. PAUL

SHARON N. HARVEY

November 26, 2025

Marvin Marks
148 Benjamin Court
Philadelphia, Pa. 19114

RE:    **Fountain Pointe Condominium Association**
Premises:    **148 Benjamin Court**
                **Philadelphia, Pa. 19114**

Dear Mr. Marks:

Please be advised that I represent the Fountain Pointe Condominium Association. Your condominium dues, assessments, charges and fees are delinquent.

By this letter, we demand payment of the sums due immediately in the amount of $27,326.85, see attached.

Failure to make payment shall leave us no alternative but to file a lawsuit against you for all fees due plus legal fees, interest and costs.

Sincerely,

RONALD J. HARPER

RJH/dw
cc:    Fountain Pointe Condominium Association

Case ID: 251202237
Control No.: 26025048

2:16 PM
11/25/25
Accrual Basis

# FOUNTAIN POINTE CONDOMINIUMS
## Customer Open Balance
### All Transactions

| Type | Date | Num | Memo | Due Date | Open Balance | Amount |
|------|------|-----|------|----------|--------------|--------|
| **G148** | | | | | | |
| Invoice | 01/01/2022 | G148CF | | 01/01/2022 | 1,750.00 | 4,200.00 |
| Invoice | 05/01/2022 | G148BC | | 05/01/2022 | 39.00 | 389.00 |
| Invoice | 05/01/2022 | G148BC | | 05/01/2022 | 389.00 | 389.00 |
| Invoice | 05/01/2022 | G148LF | | 05/01/2022 | 295.00 | 295.00 |
| Invoice | 05/01/2022 | G148L... | | 05/01/2022 | 443.35 | 443.35 |
| Invoice | 06/13/2022 | G148... | | 05/01/2022 | 150.00 | 150.00 |
| Invoice | 12/31/2022 | G148CF | | 06/23/2022 | 4,500.00 | 4,500.00 |
| Invoice | 01/11/2023 | G148LF | | 12/14/2022 | 450.00 | 450.00 |
| Invoice | 01/11/2023 | G148L... | | 01/11/2023 | 4,500.00 | 4,500.00 |
| Invoice | 01/31/2023 | G148... | | 01/11/2023 | 450.00 | 450.00 |
| Invoice | 01/02/2024 | G148CF | | 01/11/2023 | 675.00 | 675.00 |
| Invoice | 01/02/2024 | G148CF | | 01/02/2024 | 4,500.00 | 4,500.00 |
| Invoice | 01/11/2024 | G148L | | 01/11/2024 | 450.00 | 450.00 |
| Invoice | 10/24/2024 | G148ER | | 01/11/2024 | 675.00 | 675.00 |
| Invoice | 11/19/2024 | G148BG | | 10/24/2024 | 260.00 | 260.00 |
| Invoice | 12/05/2024 | G148BG | | 11/19/2024 | -39.00 | 389.00 |
| Invoice | 01/02/2025 | G148LF | | 12/05/2024 | 389.00 | 389.00 |
| Invoice | 01/02/2025 | G148CF | | 12/11/2024 | 37.50 | 37.50 |
| Invoice | 03/12/2025 | G148BC | | 01/02/2025 | 2,700.00 | 4,300.00 |
| Invoice | 03/12/2025 | G148BC | | 01/11/2025 | 39.00 | 389.00 |
| Invoice | 04/15/2025 | G148BC | | 03/12/2025 | 389.00 | 389.00 |
| Invoice | 05/05/2025 | G148BC | | 04/15/2025 | 389.00 | 389.00 |
| Invoice | 06/02/2025 | G148BC | | 05/05/2025 | 389.00 | 389.00 |
| Invoice | 07/14/2025 | G148BC | | 06/02/2025 | 389.00 | 389.00 |
| Invoice | 08/10/2025 | G148BC | | 07/14/2025 | 389.00 | 389.00 |
| Invoice | 11/24/2025 | G148BC | | 08/10/2025 | 829.00 | 829.00 |
| Invoice | 11/24/2025 | G148BC | | 11/24/2025 | 389.00 | 389.00 |
| Invoice | 11/24/2025 | G148DC | | 11/24/2025 | 389.00 | 389.00 |
| **Total G148** | | | | | **21,376.85** | **27,326.85** |
| **TOTAL** | | | | | **21,376.85** | **27,326.85** |

Case ID: 251202237
Case ID: 251202237
Control No.: 26025048

20 FEB 2026 09:39 am
Civil Administration
J. BOYD

# EXHIBIT B

Case ID: 251202237
Control No.: 26025048

This Document Prepared By:
**AMERICAN REVERSE MORTGAGE**

**605 SW FIRST AVENUE**
**OCALA, FLORIDA 34474**

Recording Requested by &
When Recorded Return To:
US Recordings, Inc.
2925 Country Drive
St. Paul, MN 55117

2544.1940-00

Parcel No:

**51596111**
**Page: 1 of 12**
12/20/2006 11 11AM

This Document Recorded
12/20/2006
11:11AM
Doc Code: M          Commissioner of Records, City of Philadelphia

Doc Id: 51596111
Receipt #: 560109
Rec Fee 126 50

---

[Space Above This Line For Recording Data]

**Commonwealth of Pennsylvania**

FHA Case No. **441-7866087-958/255**
**4403138**

# ADJUSTABLE RATE OPEN-END
# HOME EQUITY CONVERSION SECOND MORTGAGE

### THIS MORTGAGE ("SECURITY INSTRUMENT") SECURES FUTURE ADVANCES

THIS MORTGAGE ("Security Instrument" or "Second Security Instrument") is given on **DECEMBER 05, 2006** . The mortgagor is

**THE MARVIN L MARKS AND MARLENE MARKS LIVING TRUST**
By Marvin L. Marks and Marlene Marks as Trustees and
Individuals.

whose address is **148 BENJAMIN COURT,**
**PHILADELPHIA, PENNSYLVANIA 19114**                ("Borrower"). This Security Instrument is given to the Secretary of Housing and Urban Development, whose address is 451 Seventh Street, S.W., Washington, DC 20410 ("Lender" or "Secretary"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Second Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Second Note, with interest, at a rate subject to adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of **THREE HUNDRED TWENTY SEVEN THOUSAND AND 00/100 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -** (U.S. $ **327,000.00**         ); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Second Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in **PHILADELPHIA**         County, Pennsylvania:

36XC 02/02                Page 1

Case ID: 251202237
Control No: 26025048

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which has the address of **148 BENJAMIN COURT**                                                    ,
                                                          [Street]

**PHILADELPHIA**                , **PENNSYLVANIA**            **19114**        ("Property Address");
       [City]                             [State]            [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is only encumbered by a First Security Instrument given by Borrower and dated the same date as this Security Instrument ("First Security Instrument"). Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Second Note.

**2. Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement. Lender may require Borrower to pay specified property charges directly to the party owed payment even though Lender pays other property charges as provided in this Paragraph.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's

10X4 : 09/97                        Page 2

Case ID: 251202237
Control No.: 26025048

security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under the Second Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**4. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument, and Lender (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**5. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

**6. Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Second Note and this Security Instrument shall be paid to the entity legally entitled thereto.

Case ID: 251202237
Control No.: 26025048

8. **Fees.** Lender may collect fees and charges authorized by the Secretary for the Home Equity Conversion Mortgage Insurance Program.

9. **Grounds for Acceleration of Debt.**

(a) **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

(i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

(ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains title to the Property in fee simple or retains a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower or retains a life estate (or retaining a beneficial interest in a trust with such an interest in the Property); or

(iii) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(iv) For a period of longer than twelve (12) consecutive months, a Borrower fails to occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(v) An obligation of the Borrower under this Security Instrument is not performed.

(b) **Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in Paragraph 9(a)(ii)-(v) occur.

(c) **Notice to Borrower.** Lender shall notify Borrower whenever the loan becomes due and payable under Paragraph 9 (a)(ii)-(v). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

(d) **Trusts.** Conveyance of Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

10. **No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed.

11. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

Case ID: 251202237
Control No.: 26025048

**12. Lien Status.**

(a) **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except the First Security Instrument described in Paragraph 13(a), this Second Security Instrument and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

(b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**13. Relationship to First Security Instrument.**

(a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to execute a Second Note and this Second Security Instrument. Borrower also has executed a First Note and First Security Instrument.

(b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the First Note unless:

(i) The First Security Instrument is assigned to the Secretary; or

(ii) The Secretary accepts reimbursement by the holder of the First Note for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the First Note.

(c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under the First Note, or pay any rents and revenues of the Property under Paragraph 19 to the holder of the First Note or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

(ii) Be obligated to pay interest or shared appreciation under the First Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the First Note.

(d) **No Duty of the Secretary.** The Secretary has no duty to the holder of the First Note to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though the holder of the First Note may be unable to collect amounts owed under the First Note because of restrictions in this Paragraph 13.

Case ID: 251202237
Control No.: 26025048

(e) **Restrictions on Enforcement.** Notwithstanding anything else in this Security Instrument, the Borrower shall not be obligated to comply with the covenants hereof, and Paragraph 19 shall have no force and effect, whenever there is no outstanding balance under the Second Note.

**14. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**15. Successors and Assigns Bound; Joint and Several Liability.** Borrower may not assign any rights or obligations under this Security Instrument or the Second Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

**16. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to the Secretary shall be given by first class mail to the HUD Field Office with jurisdiction over the Property or any other address designated by the Secretary. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

**17. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Second Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Second Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Second Note are declared to be severable.

**18. Borrower's Copy.** Borrower shall be given one conformed copy of the Second Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**19. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19, except as provided in the First Security Instrument.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**20. Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, Lender at its option may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, reasonable attorneys' fees and costs of title evidence to the extent permitted by applicable law.**

Case ID: 251202237
Control No.: 26025048

21. **Lien Priority.** The full amount secured by this Security Instrument shall have a lien priority subordinate only to the full amount secured by the First Security Instrument.

22. **Adjustable Rate Feature.** Under the Second Note, the initial stated interest rate of **6.4500** % which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board in Statistical Release H.15 (519) ("Index") plus a margin. If the Index is no longer available, Lender will use as a new index any index prescribed by the Secretary. Lender will give Borrower notice of the new Index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of **MARCH, 2007**            , and on ☐      that day of each succeeding ☒ the first day of each succeeding month ("Change Date") until the loan is repaid in full.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

☐ (Annually Adjusting Variable Rate Feature) The Calculated Interest Rate cannot be more than 2.0% higher or lower than the Existing Interest Rate, nor can it be more than 5.0% higher or lower than the Initial Interest Rate.

☒ (Monthly Adjusting Variable Rate Feature) The Calculated Interest Rate will never increase above **SIXTEEN AND 450/1000**                percent ( **16.45000** %).

The Calculated Interest Rate will be adjusted if necessary to comply with these rate limitation(s) and will be in effect until the next Change Date. At any Change Date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

23. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

24. **Waivers.** Borrower to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

25. **Reinstatement Period.** Borrower's time to reinstate provided in Paragraph 11 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

26. **Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

27. **Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

28. **Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower as well as Loan Advances of interest, MIP, Servicing Fees, and other charges shall be obligatory.

Case ID: 251202237
Control No.: 26025048

**29. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☒ Condominium Rider ☐ Shared Appreciation Rider ☐ Planned Unit Development Rider

☐ Other (Specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

*Of The Marvin L.
Marks and Marlene
Marks Living Trust

_____ -Borrower
MARVIN L. MARKS

_____ *
MARVIN L MARKS, AS TRUSTEE

_____ -Borrower
MARLENE MARKS

_____ *
MARLENE MARKS, AS TRUSTEE

————————————[Space Below This Line For Acknowledgement]————————————

COMMONWEALTH OF _Penna_ ,                    COUNTY SS: _Phila_.

On this, the _5_ day of _December 2004_ before me _DEBRA J. POHL_
, the undersigned officer, personally appeared

Marvin L. Marks and Marlene Marks as Trustees of The Marvin L.
Marks and Marlene Marks Living Trust and as Individuals.

known to me (or satisfactorily proven) to be the person whose name                    subscribed to the within
instrument, and acknowledged that _they_ executed the same for the purposes therein contained.
IN WITNESS WHEREOF, I hereunto set my hand and official seal.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
DEBRA J. POHL, Notary Public
City of Philadelphia, Phila. County
My Commission Expires December 23, 2008

_Debra J. Pohl_ , notary public

_notary public_
Title of Officer

Certificate of Residence
I hereby certify that the correct address of the mortgagee is
**SECRETARY OF HOUSING AND URBAN DEVELOPMENT**
**451 SEVENTH STREET, S.W.**
**WASHINGTON, DC 20410**

By: _Heidi Oppenheaver_
Name: Heidi Oppenheaver
Title: Agent of Title Co.

39XC : 01/97                    Page 8 of 8

Case ID: 251202237
Control No.: 26025048

Lender: AMERICAN REVERSE MORTGAGE

Borrower: MARVIN L. MARKS AND MARLENE MARKS

Property Address: **148 BENJAMIN COURT**
**PHILADELPHIA, PENNSYLVANIA 19114**

Loan Number: **4403138**

## PENNSYLVANIA
## CERTIFICATE OF RESIDENCE

I, *Heidi Copenheaver*
**AMERICAN REVERSE MORTGAGE**                                      , on behalf of

,

(Mortgagee) certify, pursuant to Pennsylvania Statute Section 625 that the following address
**605 SW FIRST AVENUE**
**OCALA, FLORIDA 34474**
is the precise address of Mortgagee.

Date: **DECEMBER 05, 2006**

AMERICAN REVERSE MORTGAGE

By: *Heidi Copenheaver*

67SP : 01.04

Case ID: 251202237
Control No.: 26025048

# CONDOMINIUM RIDER
## (Home Equity Conversion Mortgage)

441-7866087-958/255
4403138

THIS CONDOMINIUM RIDER is made this **05TH** day of **DECEMBER, 2006**      , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **SECRETARY OF HOUSING AND URBAN DEVELOPMENT**

("Lender") of the same date and covering the Property described in the Security Instrument and located at:

**148 BENJAMIN COURT, PHILADELPHIA, PENNSYLVANIA 19114**
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:
**FOUNTAIN POINTE**

[Name of Condominium Project]

("Condominium Project"). If the owners association or other entity which acts for the Condominium Project ("Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring all property subject to the condominium documents, including all improvements now existing or hereafter erected on the Property, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender or the Secretary require, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the payment of the premium for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 3 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the condominium unit or to the common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the Condominium Project.

Case ID: 251202237
Control No.: 26025048

C  If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument.  Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_____ (Seal)
MARVIN L. MARKS                    -Borrower

_____
MARVIN L MARKS, AS TRUSTEE

_____ (Seal)
MARLENE MARKS                      -Borrower

_____
MARLENE MARKS, AS TRUSTEE

21XA  11/96                    Page 2 of 2

Case ID: 251202237
Control No.: 26025048

EXHIBIT A

AS G-148, OF THE FOUNTAIN POINTE OF PHILADELPHIA CONDOMINIUM
ACCORDING TO THE DECLARATION OF CONDOMINIUM FILED IN BOOK FHS 1631
PAGE 481, AND ANY AMENDMENTS THERETO, IN THE PHILADELPHIA COUNTY
RECORDS.  TOGETHER WITH AN UNDIVIDED 0.8772 PERCENTAGE INTEREST IN
THE COMMON ELEMENTS THERETO.
TAX PARCEL ID: 129N19-319
ADDRESS: 148 BENJAMIN COURT
         PHILADELPHIA, PA  19114

U35449140-02AI12
MORTGAGE
LOAN# 4403138
US Recordings

20 FEB 2026 09:39 am

Civil Administration

J. BOYD

`

# EXHIBIT C

Case ID: 251202237
Control No.: 26025048



**OFFICE OF THE PROTHONOTARY**
COURT OF COMMON PLEAS
ROOM 284, CITY HALL • PHILADELPHIA, PA 19107

*Filed and Attested by the Office of Judicial Records 03 FEB 2026 09:41 am A. STAMATO*

JOSEPH H. EVERS
Prothonotary

To: The Marvin L. Marks and Marlene Marks Living Trust
a/k/a Marks Living Trust
148 Benjamin Court
Philadelphia, Pa. 19114

|   |   |   |
|---|---|---|
|  | : | COURT OF COMMON PLEAS |
|  | : | (Philadelphia County) |
| Fountain Pointe Condominium Association | : |  |
|  | : | _____ December Term, 2025 ____ |
| vs. | : |  |
| The Marvin L. Marks and Marlene Marks | : |  |
| Living Trust a/k/a Marks Living Trust etal: | No. 02237 _____ |

# Notice

Pursuant to Rule 236 of the Supreme Court of Pennsylvania, you are hereby notified that a Judgment has been entered against you in the above proceeding as indicated below.

JOSEPH H. EVERS
*Prothonotary*

☒ Judgment by Default

☐ Money Judgment

☐ Judgment in Replevin

☐ Judgment for Possession

☐ Judgment on Award of Arbitration

☐ Judgment on Verdict

☐ Judgment on Court Findings

**If you have any questions concerning this notice, please call:**

Attorney _____ Ronald J. Harper _____, Esquire
*(Insert Attorney's Name)*

at this telephone number: __ 215-844-4848 _____.

10-232 (Rev. 2/00)

Case ID: 251202237
Control No.: 26025048

**RONALD J. HARPER, Esquire**
Identification No. 10345                          Attorney for Plaintiff
140 West Maplewood Avenue
Philadelphia, Pa. 19144-3307
(215) 844-4848

---

FOUNTAIN POINTE CONDOMINIUM ASSOCIATION : COURT OF COMMON PLEAS
:
vs.                                                      :
MARVIN MARKS                                    : DECEMBER TERM, 2025
   and                                                  :
THE MARVIN L. MARKS and MARLENE MARKS  :
LIVING TRUST a/k/a MARKS LIVING TRUST   : NO. 02237
   and                                                  :
AMERICAN REVERSE MORTGAGE             :
:

---

### PRAECIPE FOR DEFAULT JUDGMENT AGAINST DEFENDANT, THE MARVIN L. MARKS and MARLENE MARKS LIVING TRUST a/k/a MARKS LIVING TRUST AND ASSESSMENT OF DAMAGES

TO THE PROTHONOTARY:

    Enter Judgment in favor of the Plaintiff and against the Defendant, Marvin L. Marks and Marlene Marks Living Trust a/k/a Marks Living Trust, for failure to file an Answer in the above action within twenty (20) days from the date of service of the Civil Action and Assessment of Damages as follows:

| | |
|---|---|
| Real Debt | $27,326.86 |
| Interest | $18,116.89 |
| Costs/Legal Fees | $7,500.00 |
| | $52,943.75 |

_Ronald J. Harper_
RONALD J. HARPER, Esquire
Attorney for Plaintiff

    AND NOW, to wit, this _____ day of _____ ,2026 Entry of Judgment is entered in favor of the above named Plaintiff and against the Defendant, The Marvin L. Marks and Marlene Marks Living Trust a/k/a Marks Living Trust in the amount of $52,943.75.

---

PROTHY.

Case ID: 251202237
Control No.: 26025048

**RONALD J. HARPER, Esquire**
Identification No. 10345
140 West Maplewood Avenue
Philadelphia, Pa. 19144-3307
(215) 844-4848

Attorney for Plaintiff

|  |  |
|---|---|
| FOUNTAIN POINTE CONDOMINIUM ASSOCIATION | : COURT OF COMMON PLEAS |
| | : |
| vs. | : |
| MARVIN MARKS | : DECEMBER TERM, 2025 |
| and | : |
| THE MARVIN L. MARKS and MARLENE MARKS | : |
| LIVING TRUST a/k/a MARKS LIVING TRUST | : NO. 02237 |
| and | : |
| AMERICAN REVERSE MORTGAGE | : |
| | : |

## <u>CERTIFICATION OF ADDRESSES</u>

RONALD J. HARPER, Esquire, hereby certify the following:

1.　　The current address of the Plaintiff is:

　　　9200 Blue Grass Road
　　　Philadelphia, Pa. 19114

2.　　The current address of the Defendant is:

　　　148 Benjamin Court
　　　Philadelphia, Pa. 19114

_____
RONALD J. HARPER, Esquire
Attorney for Plaintiff

Case ID: 251202237
Control No.: 26025048

**RONALD J. HARPER, Esquire**
Identification No. 10345
140 West Maplewood Avenue
Philadelphia, Pa. 19144-3307
(215) 844-4848

Attorney for Plaintiff

|  |  |
|---|---|
| FOUNTAIN POINTE CONDOMINIUM ASSOCIATION | : COURT OF COMMON PLEAS |
| vs. | : |
| MARVIN MARKS | : DECEMBER TERM, 2025 |
| and | : |
| THE MARVIN L. MARKS and MARLENE MARKS | : |
| LIVING TRUST a/k/a MARKS LIVING TRUST | : NO. 02237 |
| and | : |
| AMERICAN REVERSE MORTGAGE | : |

## AFFIDAVIT OF NON-MILITARY SERVICE

COMMONWEALTH OF PENNSYLVANIA:

                 ss.

COUNTY OF PHILADELPHIA   :

    RONALD J. HARPER, Esquire, being duly sworn according to law, deposes and says that defendant, The Marvin L. Marks and Marlene Marks Living Trust a/ka Marks Living Trust, is not in the military service of the United States, or any State or Territory therein, and is not subject to the provisions of the solders' and sailors' Civil Relief act of 1940, and its amendments. On the contrary, the information is provided pertaining to defendant's age, employment and residence as follows:

|  |  |  |
|---|---|---|
| AGE | : | N/A |
| EMPLOYMENT: | | Trust |
| ADDRESS | : | 148 Benjamin Court |
| | | Philadelphia, Pa. 19114 |

 

RONALD J. HARPER, Esquire
Attorney for Plaintiff

Sworn to and Subscribed
before me this 2nd day
of February , 2026

NOTARY PUBLIC

Commonwealth of Pennsylvania - Notary Seal
BECKY L DUBOSE - Notary Public
Philadelphia County
My Commission Expires November 3, 2027
Commission Number 1294337

**RONALD J. HARPER, Esquire**
Identification No. 10345
140 West Maplewood Avenue
Philadelphia, Pa. 19144-3307
(215) 844-4848

Attorney for Plaintiff

| | |
|---|---|
| FOUNTAIN POINTE CONDOMINIUM ASSOCIATION | : COURT OF COMMON PLEAS |
| vs. | : |
| MARVIN MARKS | : DECEMBER TERM, 2025 |
| and | : |
| THE MARVIN L. MARKS and MARLENE MARKS | : |
| LIVING TRUST a/k/a MARKS LIVING TRUST | : NO. 02237 |
| and | : |
| AMERICAN REVERSE MORTGAGE | : |

## RULE 237.1 CERTIFICATION

TO THE PROTHONOTARY:

I, hereby certify that on January 22, 2026, the 10 Day Notice Letter was mailed to The Marvin L. Marks

and Marlene and Marks Living Trust a/k/a Marks Living Trust, 148 Benjamin Court, Philadelphia, Pa. 19114

_____
RONALD J. HARPER, Esquire
Attorney for Plaintiff

Case ID: 251202237
Control No.: 26025048

**RONALD J. HARPER, Esquire**
Identification No. 10345                          Attorney for Plaintiff
140 West Maplewood Avenue
Philadelphia, Pa. 19144-3307
(215) 844-4848

---

FOUNTAIN POINTE CONDOMINIUM ASSOCIATION : COURT OF COMMON PLEAS
               :
          vs.               :
MARVIN MARKS               : DECEMBER TERM, 2025
        and             :
THE MARVIN L. MARKS and MARLENE MARKS   :
LIVING TRUST a/k/a MARKS LIVING TRUST    : NO. 02237
        and             :
AMERICAN REVERSE MORTGAGE       :
               :

---

TO:   The Marvin L. Marks and Marlene Marks Living Trust
       a/k/a Marks Living Trust
       148 Benjamin Court
       Philadelphia, Pa. 19114

Dated: January 22, 2026

### IMPORTANT NOTICE

     You are in default because you have failed to take action required of you in this case. Unless you act within ten (10) days from the date of this notice, a judgment may be entered against you without a hearing and you may lose your property or other important rights.

     **YOU SHOULD TAKE THIS NOTICE TO A LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE FOLLOWING OFFICE TO FIND OUT WHERE YOU CAN GET LEGAL HELP:**

     Philadelphia Bar Association      Associacion De Licenciados
     Referral and Information         De Lawyer
     One Reading Center            Filadelfia Serivicio De Referencia
     1101 Market Street             Informacion Legal
     Philadelphia, Pa. 19107        One Reading Center
     (215) 238-1701               1101 Market Street
                               Filadelfia, Pa. 19107
                               (215) 238-1701

RONALD J. HARPER, Esquire
Attorney for Plaintiff

Case ID: 251202237
Control No.: 26025048

# City of Philadelphia Department of Records

## RECORDING INFORMATION SUMMARY (RIS)

The information provided by you will be relied upon by the Department of Records for examination and indexing purposes. If there is any conflict between the RIS and the attached document, the information on the RIS shall prevail for examination and indexing purposes.

**1) RETURN DOCUMENT TO:**
Name: Marvin L. Marks + Marlene Marks
Address: 148 Benjamin Court
Philadelphia, PA 19114
Telephone: 215-673-6762

**2) Type of Document:**
- [✓] Deed
- [ ] Sheriff's Deed
- [ ] Deed of Condemnation
- [ ] Other Deed
- [ ] Mortgage
- [ ] Release of Mortgage
- [ ] Assignment of Mortgage
- [ ] Satisfaction of Mortgage
- [ ] Lease/Memorandum of Lease
- [ ] Assignment of Lease & Rent
- [ ] Easement
- [ ] Other _____ (specify)

**3) Date of Document:** 9 / 10 / 2003
   month / day / year

**4) Grantor/Mortgagor/Assignor/Lessor/Other:**
   a) Marks, Marvin L.
   b) Marks, Marlene
   (Last Name First Name Middle Initial)

**5)** [ ] Additional names on Continuation Page of RIS

**6) Grantee/Mortgagee/Assignee/Lessee/Other:**
   a) The Marvin L. Marks and Marlene
   b) Marks Living Trust
   (Last Name First Name Middle Initial)

**7)** [ ] Additional names on Continuation Page of RIS

**8) Property Address:**
   a) House No. & Street Name: 148 Benjamin Court
   Condo Name(if applicable): Fountain Pointe  Unit # G-148  Philadelphia, PA  Zip Code: 19114
   BRT Account # (optional): _____  Parcel Identification Number (PIN) (optional): X

**9)** [ ] Additional addresses on Continuation Page of RIS

**10) Grantee's Mailing Address (Deed Only):**
   (If Grantee is at a different address than the Property Address listed in Section 8, complete this section.)
   a) Grantee or Designee Name: _____
   House No. & Street Name: _____
   City: _____  State: _____  Zip Code: _____ - _____

**11) Recording Information to be Referenced.** Mortgage to be released/satisfied/assigned/modified:
   a) Name of Original Mortgagee: _____
   Recording Date of Original Mortgage: _____ / _____ / _____
   month / day / Year
   Recorder's Index Information of Original Mortgage: _____
   Initials, Book and Page or Doc ID#

**12)** [ ] Additional references on Continuation Page of RIS

**13) If applicable, please check:** [ ] Consolidation  [ ] Subdivision

**14) Signature Information**
   a) 'OR -or- 'EE Name: Marvin L. Marks
   b) 'OR -or- 'EE Telephone Number: 215-673-6702
   c) 'OR -or- 'EE Signature: Marvin L. Marks    Marlene Marks

**15) Page 1 of**

for Records Department use only

**50962491**
Page: 1 of 5
07/06/2004 10:21AM

This Document Recorded
07/06/2004   State RTT: 0.00
10:21AM      Local RTT: 0.00
Doc Code: D   Commissioner of Records, City of Philadelphia

Doc Id: 50962491
Receipt #: 339490
Rec Fee: 74.50

82-337 (Rev. 01/01/01)

Case ID: 251202237
Control No.: 26025048

# QUIT CLAIM DEED

THIS INDENTURE made the 17 day of September 2003.

BETWEEN MARVIN L. MARKS and MARLENE MARKS, his wife, (hereinafter called the "Grantor") having an address of 148 Benjamin Court, Philadelphia, Philadelphia County, Commonwealth of Pennsylvania, 19114 and THE MARVIN L. MARKS AND MARLENE MARKS LIVING TRUST (hereinafter called the "Grantee"); having an address of 148 Benjamin Court, Philadelphia, Philadelphia County, Commonwealth of Pennsylvania, 19114.

WITNESSETH, that the said party of the first part, for and in consideration of the sum of One ($1.00) Dollar lawful money of the United States of America, to them well and truly paid by the said party of the second part, at and before the sealing and delivery of these presents, the receipt whereof, is hereby acknowledged, have remised, released and quit-claimed, and by these presents, does remise, release and quit-claim unto the said party of the second part and to their successors and assigns forever,

ALL THAT CERTAIN Unit designated as G-148, being a Unit in Fountain Pointe of Philadelphia, a Condominium located n the City of Philadelphia, Commonwealth of Pennsylvania, which has heretofore been submitted to the provisions of the Pennsylvania Uniform Condominium Act (68 Pa. C.S.A. Section 3101 et seq.), by the recording of the Declaration of Condominium of Century Village of Philadelphia, a Condominium dated 5-18-90 and recorded 6-1-90 in the Department of Records in and for the City of Philadelphia in Deed Book FHS 1631 page 481, and subject to any amendments therto togther with an undivided 0.8772% interest in and to the common elements.

BEING Unit G-148, Premises known as 148 Benjamin Court.

BEING PARCEL ID NO. 16860 00148 G148 .

FOR chain of title see deed recorded in the aforesaid County in Deed Book 1988, Page 583.

TOGETHER with all and singular, the tenements, hereditaments and appurtenances thereunto belonging, or in any wise appertaining, and the reversions, remainders, rents, issues and profits thereof: AND also, all the estate, right, title, interest, property, claim and demand whatsoever, as well in law as in equity, of the said party of the first part, of in, or to the above-described premises, and every part and parcel thereof, with the appurtenances.

TO HAVE AND TO HOLD all and singular the above-mentioned and described premises, together with the appurtenances, unto the said party of the second part, his heirs and assigns forever.

Case ID: 251202237
Control No.: 26025048

IN WITNESS WHEREOF the Grantors have hereunto set their hand and seal.

MARVIN L. MARKS

MARLENE MARKS

SEALED and DELIVERED )
in the Presence of us: )

COMMONWEALTH OF PENNSYLVANIA )
                                                      ) SS.
COUNTY OF PHILADELPHIA )

On this the 17 day of September, 20 03 before me, the Undersigned Officer, a Notary Public of the Commonwealth of Pennsylvania, personally appeared MARVIN L. MARKS and MARLENE MARKS known to me to be the persons whose names are subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

Notary Public

NOTARIAL SEAL
ADRIENNE S REDHOUSE, Notary Public
Tredyffrin Twp., Chester County
My Commission Expires August 28, 2006

I hereby certify the address of the above-named within Grantee is: having an address of 148 Benjamin Court, Philadelphia, Philadelphia County, Commonwealth of Pennsylvania, 19114.

The address of the above-named property is: having an address of 148 Benjamin Court, Philadelphia, Philadelphia County, Commonwealth of Pennsylvania, 19114.

Case ID: 251202237
Control No.: 26025048

DEED

MARVIN L. MARKS  and MARLENE MARKS
Grantor

TO

THE MARVIN L. MARKS AND MARLENE MARKS LIVING TRUST
Grantee

Case ID: 251202237
Control No.: 26025048

# PHILADELPHIA REAL ESTATE
# TRANSFER TAX CERTIFICATION

| Book No. | Page No. |
|---|---|

Date Recorded

City Tax Paid

Complete each section and file in duplicate with Recorder of Deeds when (1) the full value / consideration is not set forth in the deed, (2) when the deed is without consideration, or by gift, or (3) a tax exemption is claimed. A Statement of Value is not required if the transfer is wholly exempt from tax based on: (1) family relationship or (2) public utility easement. If more space is needed, attach additional sheet(s).

## A    CORRESPONDENT - All inquiries may be directed to the following person:

Name
**MARVIN L. MARKS AND MARLENE MARKS**

Telephone Number
Area Code 215-673-6762

Street Address
**148 BENJAMIN COURT**

City
**PHILADELPHIA**

State
**PA**

Zip Code
**19114**

## B    TRANSFER DATA

Date of Acceptance of Document **9-19-03**

Grantor(s)/Lessor(s)
**MARVIN L. MARKS AND MARLENE MARKS**

Grantee(s)/Lessee(s) **MARVIN L. MARKS AND MARLENE MARKS**
**LIVING TRUST**

Street Address
**148 BENJAMIN COURT**

Street Address
**148 BENJAMIN COURT**

City
**PHILADELPHIA**

State
**PA**

Zip Code
**19114**

City
**PHILADELPHIA**

State
**PA**

Zip Code
**19114**

## C    PROPERTY LOCATION

Street Address
**148 BENJAMIN COURT**

City, Township, Borough
**PHILADELPHIA**

County
**PHILADELPHIA**

School District
**PHILADELPHIA**

Tax Parcel Number
**16860 00148 G14K**

## D    VALUATION DATA

1. Actual Cash Consideration
**$1.00**

2. Other Consideration
+ **$0.00**

3. Total Consideration
= **$1.00**

4. County Assessed Value
$ **63500**

5. Common Level Ratio Factor
x **3.19**

6. Fair Market Value
$ **202,565**

## E    EXEMPTION DATA

1A. Amount of Exemption Claimed
**100%**

1b. Percentage of Interest Conveyed
**100%**

2. Check Appropriate Box Below for Exemption Claimed

☐ Will or intestate succession _____ ***(Name) of Decedent _____ (Estate File Number)

☐ Transfer to Industrial Development Agency.

■ Transfer to a trust (Attach complete copy of trust agreement identifying all beneficiaries.)

☐ Transfer between principal and agent. (Attach complete copy of agency/straw party agreement.)

☐ Transfers to the Commonwealth, the United States and Instrumentalities by gift, dedication, condemnation or in lieu of condemnation. (If condemnation or in lieu of condemnation, attach copy of resolution.)

☐ Transfer from mortgagor to a holder of a mortgage in default. Mortgage Book Number _____, Page Number _____

☐ Corrective or confirmatory deed. (Attach complete copy of the prior deed being corrected or confirmed.)

☐ Statutory corporate consolidation, merger or division. (Attach copy of articles.)

☐ Other (Please explain exemption claimed, if other than listed above.) _____

Under penalties of law, I declare that I have examined this Statement, including accompanying information, and to the best of my knowledge and belief, it is true, correct and complete.

Signature of Correspondent or Responsible Party
X _Marvin L. Marks_    _Marlene Marks_

Date
**9-19-03**

Case ID: 251202237
Control No.: 26025048

20 FEB 2026 09:39 am

Civil Administration

J. BOYD

# EXHIBIT D

Case ID: 251202237
Control No.: 26025048

**ARTICLES OF DISSOLUTION**
**OF**
**AMERICAN REVERSE MORTGAGE CORPORATION**

American Reverse Mortgage Corporation, a Florida corporation, submits these Articles of Dissolution pursuant to Chapter 607.1403, Florida Statutes.

ARTICLE I – NAME

The name of this corporation is American Reverse Mortgage Corporation, a Florida corporation.

ARTICLE II – DOCUMENT NUMBER

The Articles of Incorporation were filed on December 22, 2000 and assigned document number P01000000267.

ARTICLE III – EFFECTIVE DATE

The date dissolution was authorized is December 20, 2010. The effective date of this dissolution is December 31, 2010.

ARTICLE IV –AUTHORIZATION OF DISSOLUTION

Dissolution was approved by the shareholders. The number of votes cast for dissolution was sufficient for approval.

Executed this _20_ day of _DECEMBER_, 2010.

AMERICAN REVERSE MORTGAGE CORPORATION

By: _____
W.L. Pulsipher, President

FILED
10 DEC 21 AM 9: 32
SECRETARY OF STATE
DIVISION OF CORPORATIONS

Case ID: 251202237
Control No.: 26025048

20 FEB 2026 09:39 am

Civil Administration

J. BOYD

# EXHIBIT E

Case ID: 251202237
Control No.: 26025048

RE: Fountain Pointe Condominium Association vs Marks and The Marvin L. Marks and Marlene living Trust and American Reverse Mortgage

From: Stacy Ford (s.ford@24asset.com)
To:     lawabp@aol.com
Date:  Wednesday, February 4, 2026 at 09:51 AM EST

Good morning,

This property was removed from our inventory.

| 441-786608 | 148 BENJAMIN CT | PHILADELPHIA | PA | 19114 | 1/8/2026 | CS | 1-A |

Thank you,
**Stacy Ford**
**Recurring Specialist**
24 Asset Management Corp.
13155 SW 42nd Street, Suite 200
Miami, FL 33175
855-414-2424 ext. 380
S.ford@24Asset.com
www.24Asset.com

 

This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you received this email in error, please contact the sender by reply email and permanently delete all copies of the original message. Information contained within or attached to this email is considered to be the confidential correspondence of 24 Asset Management Corp. Although this email and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by 24 Asset Management Corp. for damage arising in any way from its use. **Please consider the environment before printing this email.**

**From:** lawabp@aol.com <lawabp@aol.com>
**Sent:** Wednesday, February 4, 2026 9:42 AM
**To:** Stacy Ford <s.ford@24asset.com>
**Subject:** Re: Fountain Pointe Condominium Association vs Marks and The Marvin L. Marks and Marlene living Trust and American Reverse Mortgage

Attached is a copy of the Default Judgment entered with the Court against the property owner

Andrea B. Paul, Esq

Harper Paul and Harvey

140 West Maplewood Avenue

Philadelphia, PA 19144

215 844 4848

Confidentiality Notice: This electronic mail transmission is privileged and confidential and is intended only for the review of the party to whom it is addressed.

If you have received this transmission in error, please immediately return it to the sender. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

On Monday, January 12, 2026 at 02:03:30 PM EST, Stacy Ford <s.ford@24asset.com> wrote:

Received. I will get this over to my manager.

Thank you,

**Stacy Ford**

**Recurring Specialist**

Case ID: 251202237
Control No.: 26025048

24 Asset Management Corp.

13155 SW 42nd Street, Suite 200

Miami, FL 33175

855-414-2424 ext. 380

S.ford@24Asset.com
www.24Asset.com

 

This email message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential information. Any unauthorized review, use, disclosure, or distribution is prohibited. If you received this email in error, please contact the sender by reply email and permanently delete all copies of the original message. Information contained within or attached to this email is considered to be the confidential correspondence of 24 Asset Management Corp. Although this email and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by 24 Asset Management Corp. for damage arising in any way from its use. **Please consider the environment before printing this email.**

**From:** lawabp@aol.com <lawabp@aol.com>
**Sent:** Monday, January 12, 2026 2:01 PM
**To:** Stacy Ford <s.ford@24asset.com>
**Subject:** Fw: Fountain Pointe Condominium Association vs Marks and The Marvin L. Marks and Marlene living Trust and American Reverse Mortgage

Stacy

Please be advised that we represent Fountain Pointe Condominium Association in the lawsuit against the owners of 148 Benjamin Court and the Mortgage Company for Condo fees and assessments not paid

Attached is a copy of most of the lawsuit that we filed with the Court of Common Pleas, Philadelphia County. It is in parts and Exhibit B is so large that I have to send it in a separate email

Andrea

Andrea B. Paul, Esq

Harper Paul and Harvey

140 West Maplewood Avenue

Philadelphia, PA 19144

215 844 4848

Confidentiality Notice: This electronic mail transmission is privileged and confidential and is intended only for the review of the party to whom it is addressed.

If you have received this transmission in error, please immediately return it to the sender. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege.

Case ID: 251202237
Control No.: 26025048

# Counsel's Entry of Appearance



**ANDREA B. PAUL, Esquire**
Identification No. 27192
140 West Maplewood Avenue
Philadelphia, Pa. 19144-3307
(215) 844-4848

Attorney for Plaintiff

_____ :
                                           :
FOUNTAIN POINTE CONDOMINIUM ASSOCIATION : COURT OF COMMON PLEAS
                                           :
    vs.                                    : DECEMBER TERM, 2025
                                           :
MARVIN MARKS etal                          : NO. 02237
                                           :
_____ :

### ENTRY OF APPEARANCE

TO THE PROTHONOTARY:

 Kindly enter my appearance as Co-counsel for the Plaintiff in the above captioned

matter.

_____
ANDREA B. PAUL, Esquire
Co-counsel for Plaintiff

# Petition to Intervene

FILED

09 MAR 2026 04:10 pm

Civil Administration

A. MALONIS

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
### TRIAL DIVISION-CIVIL

FOUNTAIN POINTE                    :
CONDOMINIUM ASSOCIATION,           :     DECEMBER TERM 2025
                                   :
                        Plaintiff, :
v.                                 :     CASE ID: 251202237
                                   :
MARVIN MARKS, MARVIN L.            :
MARKS and MARLENE MARKS            :
LIVING TRUST, and AMERICAN         :
REVERSE MORTGAGE,                  :
                                   :
                       Defendants. :

## ORDER

AND NOW, this _____ day of _____ 2026, upon

consideration of the PETITION TO INTERVENE filed by the United States of

America, on behalf of its agency the U.S. Department of Housing and Urban

Development, and any response thereto, it is hereby **ORDERED** and **DECREED**

that said PETITION TO INTERVENE is GRANTED and the Intervenor has now

been added to the case.

IT IS FURTHER ORDERED that the Clerk of Court shall file the United

States' Notice of Filing of Notice of Removal, attached as Exhibit 1 to the

government's intervention petition, on the docket of this case.

**BY THE COURT:**

_____

Case ID: 251202237
Control No.: 26032167

**UNITED STATES ATTORNEY**
**EASTERN DISTRICT OF PENNSYLVANIA**
BY:  Erin E. Lindgren, Assistant U.S. Attorney
615 Chestnut St., Suite 1250
Philadelphia, PA 19106
(215) 861-8564
Attorney for United States of America

### IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
### FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
### TRIAL DIVISION-CIVIL

| | | |
|---|---|---|
| FOUNTAIN POINTE CONDOMINIUM ASSOCIATION, | : | DECEMBER TERM 2025 |
| | : | |
| Plaintiff, | : | |
| v. | : | CASE ID: 251202237 |
| | : | |
| MARVIN MARKS, MARVIN L. MARKS and MARLENE MARKS LIVING TRUST, and AMERICAN REVERSE MORTGAGE, | : | |
| | : | |
| Defendants. | : | |

### PETITION TO INTERVENE BY THE U. S. DEPARTMENT
### OF HOUSING AND URBAN DEVELOPMENT

The United States of America, on behalf of its agency, the U.S. Department of
Housing and Urban Development ("HUD"), petitions this Court to allow it to
intervene in this matter pursuant to Pennsylvania Rules of Civil Procedure 2327
and 2328, and to file the attached Notice of Filing of Notice of Removal. In support
of its Petition to Intervene, the United States avers the following

1. As set forth below, HUD has interests related to the subject of this action. It
   holds a mortgage on the real property that is the subject of this action,
   disposition of this case will impair HUD's legal enforceable interest in its
   mortgage, and HUD's interests are not being adequately represented by existing
   parties.

Procedural Background

2.  Plaintiff Fountain Pointe Condominium Association ("the Condo Association")

    filed suit on December 16, 2025, seeking to reduce to judgment unpaid condo

    association fees that the Condo Association asserts accrued between January

    2022 and November 2025 on a condo located at 148 Benjamin Court in

    Philadelphia ("the Property") that is owned by Marvin and Marlene Marks.

3.  The Condo Association's Complaint also seeks a determination regarding the

    priority of the condo association debt vis-à-vis other liens on the Property,

    including the reverse mortgage held by HUD—incorrectly identified by the

    Condo Association as being held by American Reverse Mortgage.

4.  The Condo Association named as defendants Marvin Marks, The Marvin L.

    Marks and Marlene Marks Living Trust, and American Reverse Mortgage. The

    Condo Association asserted American Reverse Mortgage holds a reverse

    mortgage in the amount of $327,000 secured by the Property.

5.  On February 3, 2026, this Court granted a motion for default judgment in favor

    of the Condo Association and against Marvin Marks, Marlene Marks, and the

    Marks Living Trust.

6.  On February 20, 2026, the Condo Association filed a Motion to Execute

    Judgment free and clear of mortgages.

7.  In its motion, the Condo Association asserts that "[t]here are mortgages against

    [the Property] that were never approved or allowed" by it. Mot. at ¶ 3. It further

Case ID: 251202237
Control No.: 26032167

asserts that the incorrectly named mortgage holder, American Reverse Mortgage, "could not be served as the Corporation is dissolved." Mot. at ¶ 5.

8. The Condo Association further asserts, though it never named HUD or served it with process, that "Asset Management Corporation servicer of U.S. Department of Housing and Urban Development has no interest in [the Property]." Mem. of Law at 1. This is not the case.

9. The Condo Association did not name HUD as a defendant to this action, even though HUD holds a recorded lien on the property by virtue of its reverse mortgage, and even though the Condo Association now seeks to sell the Property free and clear of the reverse mortgage.


Factual Background

10. Marvin L. Marks and Marlene Marks own the Property at issue. On December 5, 2006, Marvin L. Marks and Marlene Marks, in their individual capacities and as Trustees of the Marvin L. Marks and Marlene Marks Living Trust, took out a home equity conversion mortgage on the Property.

11. Pursuant to Section 255 of the National Housing Act, HUD carries out a program to insure home equity conversion mortgages (referred to as "HECMs" or "reverse mortgages") for elderly homeowners (the "HECM Program"). 12 U.S.C. § 1715z-20; 24 C.F.R. Part 206. The HECM Program is designed "to meet the special needs of elderly homeowners by reducing the effect of economic hardship" and "to encourage and increase the involvement of mortgagees and participants

Case ID: 251202237
Control No.: 26032167

in the mortgage markets in making and servicing home equity conversion mortgages for elderly homeowners." 12 U.S.C. § 1715z-20(a); 24 C.F.R. § 206.1.

12. The Marks' reverse mortgage was given to American Reverse Mortgage, and insured by HUD. The mortgage was recorded on December 20, 2006, with the Philadelphia Commissioner of Records as Doc ID 51596112. *See* Reverse Mortgage, Exhibit A.

13. On December 5, 2006, American Reverse Mortgage assigned the reverse mortgage to Seattle Mortgage Company. This assignment was recorded on April 2, 2007, with the Philadelphia Commissioner of Records as Doc ID 51662125. *See* SMC Assignment, Exhibit B.

14. On February 8, 2011, Seattle Mortgage Company assigned the reverse mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS"). This assignment was recorded on February 15, 2011, with the Philadelphia Commissioner of Records as Doc ID 52315985. *See* MERS Assignment, Exhibit C.

15. On November 26, 2012, MERS assigned the reverse mortgage to Champion Mortgage Company. This assignment was recorded on November 27, 2012, with the Philadelphia Commissioner of Records as Doc ID 52565021. *See* Champion Assignment, Exhibit D.

16. On March 13, 2019, a corrected record of the 2011 MERS assignment was created to correct the borrowers' name. This corrected assignment was recorded on March 27, 2019, with the Philadelphia records Department as Doc ID 53492269. *See* Corrective MERS Assignment, Exhibit E.

17. On April 19, 2019, a corrected record of the 2006 assignment to Seattle Mortgage Company was drafted to correct the borrowers' name. This corrected assignment was recorded on April 22, 2019, with the Philadelphia records Department as Doc ID 53492269. *See* Corrective Assignment, Exhibit F.

18. On July 17, 2019, Champion Mortgage Company (then known as Nationstar Mortgage d/b/a Champion Mortgage Company) assigned the reverse mortgage to HUD. This assignment was recorded on July 18, 2019, with the Philadelphia Commissioner of Records as Doc ID 53539126. *See* HUD Assignment, Exhibit G. As a result of the assignment, HUD holds the deed of trust on the mortgage.

19. HUD is the senior and primary lienholder on the Property by virtue of the reverse mortgage assigned to HUD and recorded in 2019. The loan balance is approximately $305,000.

20. When the reverse mortgage becomes payable, the only recourse for the mortgage is against the property. See 12 U.S.C. § 1715z-20(d)(7). Because the reverse mortgage is a non-recourse mortgage, the only source for the government to recoup these funds is through any proceeds earned through sale of the property.

21. HUD's mortgage is due and collectible and HUD plans to enforce its debt against the property through a nonjudicial sale, as authorized by federal law.

22. Accordingly, HUD has a property interest in the Property that is superior in priority to the interest of the Condo Association, other than any condo fees which may accrue in the six-month period before HUD's foreclosure. *See* 42 Pa. C.S.

Case ID: 251202237
Control No.: 26032167

§ 8141 (establishing lien priority); 68 Pa. C.S. § 3315(b) (regarding priority of condo association fees).

23. HUD's interests are not adequately represented in this matter as it was not named as a defendant and was not served with process. Furthermore, its interests are implicated by the relief the Condo Association seeks. In particular, the Condo Association's recent motion to execute its judgment free and clear of any mortgages, including HUD's reverse mortgage, would affect HUD's interests.

24. HUD has not unduly delayed in seeking intervention and its intervention will not unduly delay, embarrass or prejudice the trial or the adjudication of the rights of the parties. *See* Pa. Rule 2329.

25. Following intervention, HUD plans to remove this case to federal court. HUD has attached to this petition its Notice of Filing of Notice of Removal, which HUD requests this Court docket after it grants HUD's petition to intervene. *See* Notice of Filing Notice of Removal, Exhibit 1.

26. HUD has also attached, for this Court's reference, a draft Notice of Removal, which HUD will file in federal court. *See* Notice of Removal, Exhibit 1(a).

Accordingly, HUD request this Court grant its Petition to Intervene, and docket the attached Notice of Filing of Notice of Removal, at which point this case will stand removed to federal court for further adjudication.

Respectfully submitted,

DAVID METCALF
United States Attorney

*s/ Gregory B. David/SRB*
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

Dated: <u>March 9, 2026</u>

*s/ Erin Lindgren*
ERIN LINDGREN
Assistant United States Attorney
United States Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
Tel: (215) 861-8443
Erin.Lindgren@usdoj.gov
*Appearing pursuant to 28 U.S.C. § 517*

## **VERIFICATION**

I, Brad Rader, Regional Counsel, Region III, for the Office of the Regional Counsel for the U.S. Department of Housing and Urban Development, Proposed Intervenor, verify that the facts set forth in the foregoing are true and correct to the best of my information, knowledge and belief.

I understand that the statements contained herein are subject to the Penalties of 18 Pa.C.S.A., Section 4904 relating to unsworn falsification to authorities.

Date: <u>March 5, 2026</u>

*s/ Brad E. Rader*
Brad E. Rader

Case ID: 251202237
Control No.: 26032167

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of March 2026, I caused the foregoing

United States of America's Petition to Intervene to be filed with the Court and

caused the same to be served by first-class U.S. mail and email on the following:

Ronald Harper Sr.
Andrea Harper
140 Maplewood Avenue
Philadelphia, PA 19144-3307
Harper140@aol.com
Lawabp@aol.com
*Counsel for Plaintiff Fountain Pointe Condominium Association*

Marvin Marks
148 Benjamin Court
Philadelphia, PA 19144

Marvin Marks & Marlene Marks Living Trust
148 Benjamin Court
Philadelphia, PA 19144

Marvin Marks & Marlene Marks Living Trust
9200 Blue Grass Road
Philadelphia, PA 19144

American Reverse Mortgage
605 SW First Avenue
Ocala, FL 34471

*s/ Erin Lindgren*
ERIN LINDGREN
Assistant United States Attorney

Civil Administration

This Document Prepared By:
AMERICAN REVERSE MORTGAGE A. MALONIS

605 SW FIRST AVENUE
OCALA, FLORIDA 34474

**51596112**
Page: 1 of 12
12/20/2006 11:11AM

Recording Requested by &
When Recorded Return To:
US Recordings, Inc.
2925 Country Drive
St. Paul, MN 55117
25440914b-01

This Document Recorded
12/20/2006                    Doc Id: 51596112
11:11AM                       Receipt #: 560109
Doc Code: M                   Rec Fee: 126.50
          Commissioner of Records, City of Philadelphia

Parcel No:

─────────────── [Space Above This Line For Recording Data] ───────────────

FHA Case No. **441-7866087-958/255**

Commonwealth of Pennsylvania                          **4403138**

# ADJUSTABLE RATE OPEN-END
# HOME EQUITY CONVERSION MORTGAGE

### THIS MORTGAGE ("SECURITY INSTRUMENT") SECURES FUTURE ADVANCES

THIS MORTGAGE ("Security Instrument") is given on **DECEMBER 05, 2006**                    . The mortgagor is
THE MARVIN L MARKS AND MARLENE MARKS LIVING TRUST
By Marvin L. Marks and Marlene Marks as Trustees and
Individuals.

                                                                      ("Borrower").

whose address is **148 BENJAMIN COURT,**
**PHILADELPHIA, PENNSYLVANIA 19114**
This Security Instrument is given to                                   , which is
**AMERICAN REVERSE MORTGAGE**
                                                                      , and whose address is
organized and existing under the laws of **THE STATE OF FLORIDA**
**605 SW FIRST AVENUE, OCALA, FLORIDA 34474**       ("Lender"). Borrower has agreed to repay to Lender
amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity
Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement
to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"). This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest at a rate subject
to adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of
**THREE HUNDRED TWENTY SEVEN THOUSAND AND 00/100** - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
(U.S. $    **327,000.00**          ); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to
protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and
(c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.
For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property
located in **PHILADELPHIA**              County, Pennsylvania:

Page 1

32XC : 02/02

Case ID: 251202237
Control No.: 26032167

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF**

which has the address of   **148 BENJAMIN COURT**                                    ,

[Street]

**PHILADELPHIA**                       , **PENNSYLVANIA**               **19114**          ("Property Address");
[City]                                        [State]                        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

**2. Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender and the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and to Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be

00XA : 02/02                              Page 2

Case ID: 251202237
Control No.: 26032167

**29. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

[X] Condominium Rider  [ ] Shared Appreciation Rider  [ ] Planned Unit Development Rider
[ ] Other (Specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

*Of The Marvin L. Marks and Marlene Marks Living Trust.

_Marvin L. Marks_ — -Borrower
**MARVIN L. MARKS**

_Marvin L. Marks, as Trustee_
**MARVIN L. MARKS, AS TRUSTEE ***

_Marlene Marks_ — -Borrower
**MARLENE MARKS**

_Marlene Marks as Trustee_
**MARLENE MARKS, AS TRUSTEE ***

---

[Space Below This Line For Acknowledgment]

**COMMONWEALTH OF** Penna,                    **COUNTY SS:** Phila

On this, the 5 day of December 2006 before me DEBRA J. POHL, the undersigned officer, personally appeared Marvin L. Marks and Marlene Marks as Trustees of The Marvin L. Marks aNd Marlene Marks Living Trust and as Individuals.

known to me (or satisfactorily proven) to be the person whose name subscribed to the within instrument, and acknowledged that _they_ executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
DEBRA J. POHL, Notary Public
City of Philadelphia, Phila. County
My Commission Expires December 23, 2008

_Debra J. Pohl_ , notary public

_notary public_
Title of Officer

Certificate of Residence
I hereby certify that the correct address of the mortgagee is
**AMERICAN REVERSE MORTGAGE**
**605 SW FIRST AVENUE**
**OCALA, FLORIDA 34474**

By: _Heidi Coyenhearer_
Name: Heidi Coyenhearer
Title: Agent of Title Co.

35XC : 05/97                    Page 8

Case ID: 251202237
Control No.: 26032167

Lender: **AMERICAN REVERSE MORTGAGE**

Borrower: **MARVIN L. MARKS AND MARLENE MARKS**

Property Address: **148 BENJAMIN COURT**
               **PHILADELPHIA, PENNSYLVANIA 19114**

Loan Number: **4403138**

# PENNSYLVANIA
# CERTIFICATE OF RESIDENCE

I, *Heidi Copenheaver*                                              , on behalf of
**AMERICAN REVERSE MORTGAGE**

(Mortgagee) certify, pursuant to Pennsylvania Statute Section 625 that the following address
**605 SW FIRST AVENUE**
**OCALA, FLORIDA 34474**
is the precise address of Mortgagee.

Date: **DECEMBER 05, 2006**

**AMERICAN REVERSE MORTGAGE**

By: *Heidi Cenheaver*

67SP : 01/0a

Case ID: 251202237
Control No.: 26032167

# CONDOMINIUM RIDER
## (Home Equity Conversion Mortgage)

441-7866087-958/255
4403138

THIS CONDOMINIUM RIDER is made this **05TH** day of **DECEMBER, 2006**      , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **AMERICAN REVERSE MORTGAGE**

("Lender") of the same date and covering the Property described in the Security Instrument and located at:

**148 BENJAMIN COURT, PHILADELPHIA, PENNSYLVANIA 19114**
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:
**FOUNTAIN POINTE**
[Name of Condominium Project]

("Condominium Project"). If the owners association or other entity which acts for the Condominium Project ("Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring all property subject to the condominium documents, including all improvements now existing or hereafter erected on the Property, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender or the Secretary require, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the payment of the premium for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 3 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the condominium unit or to the common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the Condominium Project.

20XA : 11/96

Page 1 of 2

Case ID: 251202237
Control No.: 26032167

C. If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

                                                   (Seal)
                                                   -Borrower
MARVIN L. MARKS

MARVIN L MARKS, AS TRUSTEE

                                                   (Seal)
                                                   -Borrower
MARLENE MARKS

MARLENE MARKS, AS TRUSTEE

Case ID: 251202237
Control No.: 26032167

EXHIBIT A

AS G-148, OF THE FOUNTAIN POINTE OF PHILADELPHIA CONDOMINIUM
ACCORDING TO THE DECLARATION OF CONDOMINIUM FILED IN BOOK FHS 1631
PAGE 481, AND ANY AMENDMENTS THERETO, IN THE PHILADELPHIA COUNTY
RECORDS.  TOGETHER WITH AN UNDIVIDED 0.8772 PERCENTAGE INTEREST IN
THE COMMON ELEMENTS THERETO.
TAX PARCEL ID: 129N19-319
ADDRESS: 148 BENJAMIN COURT
         PHILADELPHIA, PA  19114

U35449140-01AI12
MORTGAGE
LOAN# 4403138
US Recordings

Case ID: 251202237
Control No.: 26032167

**Civil Administration**
A. MALONIS

Prepared By:
WHEN RECORDED MAIL TO:
AMERICAN REVERSE MORTGAGE

**605 SW FIRST AVENUE**
**OCALA, FLORIDA 34474**

Order No.
Escrow No.
Loan No.   **4403138**

Recording Requested by &
When Recorded Return To:
US Recordings, Inc.
PO Box 19989
Louisville, KY 40259

51662125
Page: 1 of 3
04/02/2007 10:41AM

This Document Recorded
04/02/2007
10:41AM
Doc Code: A      Commissioner of Records, City of Philadelphia

Doc Id: 51662125
Receipt #: 587352
Rec Fee: 124.50

——————— SPACE ABOVE THIS LINE FOR RECORDER'S USE ———————

## Corporation Assignment of Mortgage

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to

**SEATTLE MORTGAGE COMPANY**   11120 NE 33rd Pl, Bellevue, WA 98004

all beneficial interest under that certain Mortgage dated **DECEMBER 05, 2006**

executed by

   THE MARVIN L MARKS AND MARLENE MARKS LIVING TRUST

to **AMERICAN REVERSE MORTGAGE**                                        , Mortgagor

and recorded as Instrument No. **51596112**    on **12/20/2006**    in book        , Mortgagee
        of Official Records in the County Recorder's office of **PHILADELPHIA**      , page
**PENNSYLVANIA**                      , describing land therein as:       County,
**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF**

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with
interest, and all rights accrued or to accrue under said Mortgage

STATE OF   PENNSYLVANIA  FLORIDA   SS.
COUNTY OF  PHILADELPHIA  MARION
On  DECEMBER 05, 2006                before me,
   CHERYL KLINDERA

personally appeared

   W.L. PULSIPHER, President of
American Reverse Mortgage
personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature:

(This area for official notarial seal)

**AMERICAN REVERSE MORTGAGE**

W.L. PULSIPHER
PRESIDENT

UF00 : 06/04

Case ID: 251202237
Control No.: 26032167

## EXHIBIT A

AS G-148, OF THE FOUNTAIN POINTE OF PHILADELPHIA CONDOMINIUM
ACCORDING TO THE DECLARATION OF CONDOMINIUM FILED IN BOOK FHS 1631
PAGE 481, AND ANY AMENDMENTS THERETO, IN THE PHILADELPHIA COUNTY
RECORDS.  TOGETHER WITH AN UNDIVIDED 0.8772 PERCENTAGE INTEREST IN
THE COMMON ELEMENTS THERETO.
TAX PARCEL ID: 129N19-319
ADDRESS: 148 BENJAMIN COURT
         PHILADELPHIA, PA  19114

U37790554-01AI02
ASSIGNMENT OF MO
LOAN# 4403138
US Recordings

Case ID: 251202237
Control No.: 26032167

A 0509 267

LOAN NUMBER: 0006264733
ST-CO CODE: 37-101
=====================================================================

EXHIBIT "A"

ALL THAT CERTAIN UNIT IN THE CONDOMINIUM PROPERLY KNOWN, AND
IDENTIFIED IN THE DECLARATION OF CONDOMINIUM AND CONDOMINIUM
PLATS AND PLANS REFERRED TO AS FOUNTAIN POINTE OF PHILADELPHIA
(FORMERLY KNOWN AS CENTURY VILLAGE), A CONDOMINIUM LOCATED IN
THE 57TH WARD OF THE CITY OF PHILADELPHIA, COMMONWEALTH OF
PENNSYLVANIA, WHICH HAS HERETOFORE BEEN SUBMITTED TO THE
PROVISIONS OF THE PENNSYLVANIA UNIFORM CONDOMINIUM ACT, THE ACT
OF JULY 2, 1980, TITLE 68 OF PA., C.S.A. SECTION 3101 ET SEQ.
BY THE RECORDING IN THE PHILADELPHIA DEPARTMENT OF RECORDS OF A
DECLARATION OF CONDOMINUM DATED 5/18/1990 AND RECORDED 6/1/1990
IN DEED BOOK FHS 1631, PAGE 481 AND FIRST AMEMDMENT THERETO DATED
8/23/1990 AND RECORDED 8/29/1990 IN DEED BOOK FHS 1693, PAGE
365 AND SECOND AMENDMENT THERETO DATED 11/12/1990 AND RECORDED
11/15/1990 IN DEED BOOK FHS 1749 PAGE 155 AND THIRD AMENDMENT
THERETO DATED 7/15/1991 AND RECORDED 7/24/1991 IN DEED BOOK IN
DEED BOOK FHS 1910, PAGE 369 AND FOURTH AMENDMENT THERETO DATED
11/20/92 RECORDED 1/5/93 IN DEED BOOK VCS 220 PAGE 106.

BEING DESIGNATED AS UNIT NO. G-148, IN SUCH AMENDMENT TO
DECLARATION OF CONDOMINIUM AND AMENDMENT DECLARATION PLATS AND
PLANS.

BEING KNOWN AS 148 BENJAMIN COURT
=====================================================================

Case ID: 251202237
Control No.: 26032167

## Civil Administration
### A. MALONIS



**52315985**
Page: 1 of 2
02/15/2011 03:18PM

This Document Recorded
02/15/2011
03:18PM
Doc Code: A    Commissioner of Records, City of Philadelphia

Doc Id: 52315985
Receipt #: 98093
Rec Fee: 168.00

_____ THE SPACE ABOVE THIS LINE FOR RECORDER'S _____

LOAN NO. 4403138    **ASSIGNMENT OF MORTGAGE**
TAX MAP NUMBER:
MERS MIN NUMBER 100139220044031389

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to **Mortgage Electronic Registration Systems, Inc., 1595 Spring Hill Road, Suite 310, Vienna, VA 22182,** all beneficial interest under that certain deed of trust dated **12-5-06** executed by **MARVIN MARLENE MARKS**, recorded on **12-20-06** and recorded in book/volume No., page(s), auditors File No. **51596112**, Records of **PHILADELPHIA** County, **PA.** The real property located at the address **148 BENJAMIN COURT, PHILADELPHIA, PA 19114** in the county of **PHILADELPHIA** state of **PA**, describing land therein as: SEE LEGAL DESCRIPTION ATTACHED

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

Date:   **FEBRUARY 8, 2011**          **SEATTLE MORTGAGE COMPANY**

**MARGARET BAME/ VICE PRESIDENT**

STATE OF WASHINGTON, COUNTY OF KING
ON **FEBRUARY 8, 2011** the undersigned, a Notary Public in and for the said County and State, personally appeared **MARGARET BAME** to me personally known, who being duly sworn by me, did say that he/she is the **VICE PRESIDENT** of the corporation named herein which executed the within instrument, that the seal affixes to said instrument in the corporate seal of said corporation; that said instrument was signed and sealed on behalf of the said corporation pursuant to its by-laws or a resolution of its Board of Directors and that he/she acknowledges said instrument to be the free act and deed of said corporation.

MORTGAGE ELECTRONIC REGISTRATION
SYSTEM, INC. RESIDES IN 1595 SPRING HILL
ROAD, SUITE 310, VIENNA VA 22182

NOTARY PUBLIC FOR THE STATE OF: WASHINGTON
RESIDING IN: CITY OF RENTON, KING COUNTY
MY COMMISSION EXPIRES: 11-10-14

Lynne Gladney, Seattle Mortgage Company

LYNNE GLADNEY
COMMISSION EXPIRES
NOTARY
PUBLIC
11-10-14
STATE OF WASHINGTON

**When Recorded Mail to:**
SEATTLE MORTGAGE COMPANY
190 QUEEN ANNE AVENUE NORTH, SUITE 100
SEATTLE, WA 98109
PREPARED BY LYNNE GLADNEY-ADDRESS IS SAME AS ABOVE FOR SEATTLE MORTGAGE

Case ID: 251202237
Control No.: 26032167

EXHIBIT A

AS G-148, OF THE FOUNTAIN POINTE OF PHILADELPHIA CONDOMINIUM
ACCORDING TO THE DECLARATION OF CONDOMINIUM FILED IN BOOK FHS 1631
PAGE 481, AND ANY AMENDMENTS THERETO, IN THE PHILADELPHIA COUNTY
RECORDS.  TOGETHER WITH AN UNDIVIDED 0.8772 PERCENTAGE INTEREST IN
THE COMMON ELEMENTS THERETO.
TAX PARCEL ID: 129N19-319
ADDRESS: 148 BENJAMIN COURT
         PHILADELPHIA, PA  19114



Recorded in Philadelphia PA    Doc Id: 52565021
09 MAR 2026 04:10 PM    11/27/2012 11:31AM    Receipt#: 1179691
Civil Administration    Page 1 of 2    Rec Fee: $198.00
A. MALONE, Commissioner of Records    Doc Code: A
State RTT:    Local RTT:

Recording Requested By:
**Bank of America**
Prepared By:
**Diana De Avila**
**800-444-4302**
**1800 Tapo Canyon Road**
**Simi Valley, CA 93063**
When recorded mail to:
**CoreLogic**
**Mail Stop: ASGN**
**1 CoreLogic Drive**
**Westlake, TX 76262-9823**

DocID#   **12985086920430**
Tax ID:   **88-8570496**
Property Address:
**148 Benjamin Ct**
**Philadelphia, PA 19114-3229**
Property Location:
**8TH Ward City of PHILADELPHIA**
PAOv5M-AM 21057698_E  11/21/2012

MIN #:  **100605120044031386**    MERS Phone #:   **888-679-6377**

This space for Recorder's use

## ASSIGNMENT OF MORTGAGE

For Value Received, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS")** its successors and assigns (herein "Assignor") whose address is **1901 E Voorhees Street, Suite C, Danville, IL 61834** hereby assign and transfer to **CHAMPION MORTGAGE COMPANY** its successors and assigns whose address is **350 HIGHLAND DRIVE, LEWISVILLE, TEXAS 75067** all its right, title, and interest to a certain Mortgage described below.

Original Lender:    **AMERICAN REVERSE MORTGAGE**
Mortgagor(s):    **THE MARVIN L MARKS AND MARLENE MARKS LIVING TRUST BY MARVIN L. MARKS AND MARLENE MARKS AS TRUSTEES AND INDIVIDUALS**

Date of Mortgage:   **12/5/2006**    Original Loan Amount:   **$327,000.00**

Recorded in **Philadelphia County, PA** on: **12/20/2006**, book N/A, page N/A and instrument number **51596112**

This Mortgage has not been assigned unless otherwise stated below:
Assigned From: AMERICAN REVERSE MORTGAGE
Assigned To: SEATTLE MORTGAGE COMPANY
Recording Date: 4/2/2007 Book/Liber: Page: Instrument Number: 51662125

Assigned From: SEATTLE MORTGAGE COMPANY
Assigned To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS")
Recording Date: 2/15/2011 Book/Liber: Page: Instrument Number: 52315985

Property Legal Description:
**AS G-148, OF THE FOUNTAIN POINTE OF PHILADELPHIA CONDOMINIUM ACCORDING TO THE DECLARATION OF CONDOMINIUM FILED IN BOOK FHS 1631 PAGE 481, AND ANY AMENDMENTS THERETO, IN THE PHILADELPHIA COUNTY RECORDS. TOGETHER WITH AN UNDIVIDED 0.8772 PERCENTAGE INTEREST IN THE COMMON ELEMENTS THERETO. TAX PARCEL ID: 129N19-319 ADDRESS: 148 BENJAMIN COURT PHILADELPHIA, PA 19114**

Control No.: 26032167

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on __NOV 2 6 2012__

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS")

By: _____
Mercedes Judilla
Assistant Secretary

State of **California**
County of **Ventura**

On __NOV 2 6 2012__ before me, BARBARA JOYCE LOMBRANO , Notary Public, personally appeared __Mercedes Judilla__ , who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Notary Public: _____BARBARA JOYCE LOMBRANO_____   (Seal)
My Commission Expires: _FEBRUARY 7, 2015_

I hereby certify that the address of the within named assignee is:
**350 HIGHLAND DRIVE, LEWISVILLE, TEXAS 75067**

_____
**Signature**

BARBARA JOYCE LOMBRANO
Commission # 1924780
Notary Public - California
Los Angeles County
My Comm. Expires Feb 7, 2015

DocID#   **12985086920430**

Prepared By:
T. Lewis, Mr. Cooper, 4000 Horizon
Way, Irving, TX 75063 (972)
894-9721

When Recorded Return To:
Nationstar Mortgage LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

## ASSIGNMENT OF MORTGAGE

**CORRECTIVE ASSIGNMENT OF MORTGAGE: TO CORRECT BORROWER NAME. ORIGINAL ASSIGNMENT OF MORTGAGE RECORDED ON 02/15/2011 IN INSTRUMENT#: 52315985.**

**FOR GOOD AND VALUABLE CONSIDERATION**, the sufficiency of which is hereby acknowledged, the undersigned, **SEATTLE MORTGAGE COMPANY, WHOSE ADDRESS IS 600 UNIVERSITY ST, STE 1850, SEATTLE, WA 98101, (ASSIGNOR)**, by these presents does convey, grant, assign, transfer and set over the described Mortgage therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (ASSIGNEE) (MERS Address: 1901 E Voorhees St., Suite C, Danville, IL 61834).**

Said Mortgage is dated 12/05/2006, in the amount of $327,000.00, made by **THE MARVIN L. MARKS AND MARLENE MARKS LIVING TRUST BY MARVIN L. MARKS AND MARLENE MARKS AS TRUSTEES AND INDIVIDUALS** to **AMERICAN REVERSE MORTGAGE**, recorded on 12/20/2006, in the Office of the Recorder of Deeds of **PHILADELPHIA** County, **Pennsylvania**, in **Doc ID 51596112** .
SEE EXHIBIT A ATTACHED

Property is commonly known as: 148 BENJAMIN COURT, PHILADELPHIA, PA 19114.

See Exhibit attached for Assignments, Modifications etc.

Dated on ___9 / 12 / 19___ (MM/DD/YYYY)

**SEATTLE MORTGAGE COMPANY**

By: _Kathy Hruza_

Kathy Hruza
**VP & Manager Reverse Mortgage Servicing Oversight**

PAGE 1

NSBTA 405908022  CHAMP CURATIVE (R)  N1 MIN 100139220044031389 MERS PHONE 1-888-679-6377
MERS Mailing Addresses: 1901 E Voorhees St., Suite C, Danville, IL 61834; P.O. Box 2026, Flint, MI
48501-2026 T111903-11:57:34 [C-4] FRMPA1

*D0035994556*

Control No.: 26032167

STATE OF WASHINGTON    COUNTY OF KING

I certify that I know or have satisfactory evidence that Kathy Hruza is the person who appeared before me, and said person acknowledged that he/she signed this instrument, on 3 /13 /2005 (MM/DD/YYYY) and stated that he/she was authorized to execute the instrument and acknowledged it as the VP & Manager Reverse Mortgage Servicing Oversight of SEATTLE MORTGAGE COMPANY to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.



DEBRA OGUNLEYE
Notary Public - State of WASHINGTON
Commission expires: 9/10/22

Assignment of Mortgage from:
**SEATTLE MORTGAGE COMPANY, WHOSE ADDRESS IS 600 UNIVERSITY ST, STE 1850, SEATTLE, WA 98101, (ASSIGNOR),**
to:
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (ASSIGNEE) (MERS Address: 1901 E Voorhees St., Suite C, Danville, IL 61834)**
Mortgagor: **THE MARVIN L. MARKS AND MARLENE MARKS LIVING TRUST BY MARVIN L. MARKS AND MARLENE MARKS AS TRUSTEES AND INDIVIDUALS**

All that certain lot or piece of ground situated in
Mortgage Premise: 148 BENJAMIN COURT
                  PHILADELPHIA, PA 19114
(Borough or Township, if stated), Commonwealth of Pennsylvania.
Being more particularly described in said Mortgage.

I, **Kathy Hruza** , hereby certify that the below information and address for the assignee are correct:
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (ASSIGNEE) (MERS Address: 1901 E Voorhees St., Suite C, Danville, IL 61834)**

By 

**Kathy Hruza    VP & Manager Reverse Mortgage Servicing Oversight**

                                                                              PAGE 2
*405908022*  NSBTA 405908022  CHAMP CURATIVE (R)  N1 MIN 100139220044031389 MERS PHONE 1-888-679-6377 MERS Mailing Addresses: 1901 E Voorhees St., Suite C, Danville, IL 61834; P.O. Box 2026, Flint, MI 48501-2026  T111903-11:57:34 [C-4]  FRMPA1

*D0035994556*



Control No.: 26032167

'EXHIBIT A'

ALL THAT CERTAIN UNIT IN THE CONDOMINIUM PROPERLY KNOWN, AND IDENTIFIED IN THE DECLARATION OF CONDOMINIUM AND CONDOMINIUM PLATS AND PLANS REFERRED TO AS FOUNTAIN POINTE AND PHILADELPHIA (FORMERLY KNOWN AS CENTURY VILLAGE), A CONDOMINIUM LOCATED IN THE 57TH WARD OF THE CITY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, WHICH HAS HERETOFORE BEEN SUBMITTED TO THE PROVISIONS OF THE PENNSYLVANIA UNIFORM CONDOMINIUM ACT, THE ACT OF JULY 2, 1980, TITLE 68 OF PA., C.S.A. SECTION 3101 ET SEQ. BY THE RECORDING IN THE PHILADELPHIA DEPARTMENT OF RECORDS OF A DECLARATION OF CONDOMINIUM DATED 5/18/1990 AND RECORDED 6/1/1990 IN DEED BOOK FHS 1631, PAGE 481 AND FIRST AMENDMENT THERETO DATED 8/23/1990 AND RECORDED 8/29/1990 IN DEED BOOK FHS 1693, PAGE 365 AND SECOND AMENDMENT THERETO DATED 11/12/1990 AND RECORDED 11/15/1990 IN DEED BOOK FHS 1749 PAGE 155 AND THIRD AMENDMENT THERETO DATED 7/15/1991 AND RECORDED 7/24/1991 IN DEED BOOK IN DEED BOOK FHS 1910, PAGE 369 AND FOURTH AMENDMENT THERETO DATED 11/20/92 RECORDED 1/5/93 IN DEED BOOK VCS 220 PAGE 106.



*405908022*



*D0035994556*

Assignment: AMERICAN REVERSE MORTGAGE TO SEATTLE MORTGAGE COMPANY DATED
12-05-2006. REC: 04-02-2007 INSTR# 51662125 * Assignment: SEATTLE MORTGAGE COMPANY TO
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. DATED 02-08-2011. REC: 02-15-2011
INSTR# 52315985 * Assignment: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (''MERS'')
TO CHAMPION MORTGAGE COMPANY DATED 11-26-2012. REC: 11-27-2012 INSTR# 52565021



*405908022*



*D0035994556*

Control No.: 26032167

Case 2:26-cv-01572    Document 1 Filed 03/11/26    Page 292 of 321
09 MAR 2019 19:03:46 PM
Civil Administration
A. MALLOY
Recorded in Philadelphia PA    Doc Id: 53508439
04-22-2019-38570    Page 1 of 1    Rec Fee: $224.75
Records Department    Doc Code: A

**SCRIVENER'S AFFIDAVIT**
**Prepared By/Return to**
**NATIONSTAR MORTGAGE LLC DBA CHAMPION MORTGAGE COMPANY**
**8950 CYPRESS WATERS BLVD**
**COPPELL, TX 75019**
**LN #850869**
**THE MARVIN L MARKS and MARLENE MARKS LIVING TRUST By MARVIN L. MARKS and MARLENE MARKS as TRUSTEE and INDIVIDUALS**

Document Number to Correct:
**51662125**

I, _____ Tarika Upshaw _____, the affiant and preparer of this Scrivener's Affidavit, whose relationship to the above-referenced document number is ( ex. Servicer, Drafting Attorney, Closing Title Company, Grantor/Grantee, etc.): SERVICER: NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY, do hereby swear and affirm that Document Number: 51662125, included the following mistake: INCORRECT VESTING INFORMATION FOR THE BORROWER'S which is hereby corrected as follows: THE MARVIN L MARKS and MARLENE MARKS LIVING TRUST By MARVIN L. MARKS and MARLENE MARKS as TRUSTEE and INDIVIDUALS.

Finally, I _____ Tarika Upshaw _____, the affiant, do hereby swear to the above correction, and believe it to be the true and accurate intention(s) of the parties who drafted and recorded the referenced document.

_____ Tarika Upshaw          APR 19 2019
_____

**Affiant's Signature Above**                **Affidavit Executed Date**


**NOTARY SECTION:**
State of _Texas_   Dallas          )

County of _____   Dallas          )

I, _____ **Daniela Horvath** _____, a Notary Public for the above-referenced jurisdiction do hereby swear and affirm that the above-referenced affiant _____ Tarika Upshaw _____,
_____ Assistant Secretary _____ of NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY did appear before me on the below indicated date and affix her/his signature or marking to the foregoing Scrivener's Affidavit after providing me with a government issued identification, and appearing to be of sound mind and free from any undue coercion or influence.

AFFIX NOTARY STAMP BELOW

Notary Public Signature Below          Notarized Date
                                             APR 19 2019
_____          _____
_____ **Daniela Horvath**

DANIELA HORVATH
Notary Public, State of Texas
Comm. Expires 01-27-2020
Notary ID 128862890

Control No.: 26032167

Prepared By:
**Dave LaRose/NTC, 2100 Alt. 19**
**North, Palm Harbor, FL 34683**
**(800)346-9152**

When Recorded Return To:
Nationstar Mortgage LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683



## ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY, WHOSE ADDRESS IS C/O NATIONSTAR MORTGAGE LLC, 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Mortgage therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **SECRETARY OF HOUSING AND URBAN DEVELOPMENT, WHOSE ADDRESS IS 451 7TH STREET S.W., WASHINGTON, DC 20410, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage dated 12/05/2006, in the amount of $327,000.00 made by **MARVIN L. MARKS AND MARLENE MARKS AS TRUSTEES AND INDIVIDUALS OF THE MARVIN L. MARKS AND MARLENE MARKS LIVING TRUST** to **AMERICAN REVERSE MORTGAGE** recorded on 12/20/2006, in the Office of the Recorder of Deeds of **PHILADELPHIA** County, in the State of **Pennsylvania**, in **Doc ID 51596112**.

    SEE ATTACHED EXHIBIT A
Property is more commonly known as: 148 BENJAMIN COURT, PHILADELPHIA, PA 19114.
See Exhibit attached for Assignments, Modifications etc.

**Dated this 17th day of July in the year 2019**
**NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY**

By:    *A medero*
    **JACKELYNN MEDERO**
    **VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

NSBTA 407437166 CHAMP  N1  DOCR T171907-12:26:21 [C-4] EFRMPA1




*D0038957077*

Control No.: 26032167



STATE OF FLORIDA    COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 17th day of July in the year 2019, by Jackelynn Medero as VICE PRESIDENT of NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.



**MICHELLE BROWN**
**COMM EXPIRES: 10/13/2020**

Assignment of Mortgage from:
**NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY, WHOSE ADDRESS IS C/O NATIONSTAR MORTGAGE LLC, 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019, (ASSIGNOR),**
to:
**SECRETARY OF HOUSING AND URBAN DEVELOPMENT, WHOSE ADDRESS IS 451 7TH STREET S.W., WASHINGTON, DC 20410, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

Mortgagor: **MARVIN L. MARKS AND MARLENE MARKS AS TRUSTEES AND INDIVIDUALS OF THE MARVIN L. MARKS AND MARLENE MARKS LIVING TRUST**

All that certain lot or piece of ground situated in
Mortgage Premise: 148 BENJAMIN COURT
                  PHILADELPHIA, PA 19114
                  PHILADELPHIA
(Borough or Township, if stated), Commonwealth of Pennsylvania.
Being more particularly described in said Mortgage.

### Certificate of Residence

I, **Jackelynn Medero**, do certify that the precise address of the within named Assignee is:
**SECRETARY OF HOUSING AND URBAN DEVELOPMENT, WHOSE ADDRESS IS 451 7TH STREET S.W., WASHINGTON, DC 20410, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**



**JACKELYNN MEDERO**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

*407437166*  NSBTA 407437166 CHAMP  N1  DOCR T171907-12:26:21 [C-4] EFRMPA1



*D0038957077*

Control No.: 26032167



Assignment: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (''MERS'') TO CHAMPION MORTGAGE COMPANY DATED 11-26-2012. REC: 11-27-2012 INSTR# 52565021



*407437166*



*D0038957077*

Control No.: 26032167

# Exhibit A

AS G-148, OF THE FOUNTAIN POINTE OF PHILADELPHIA CONDOMINIUM
ACCORDING TO THE DECLARATION OF CONDOMINIUM FILED IN BOOK FHS 1631
PAGE 481, AND ANY AMENDMENTS THERETO, IN THE PHILADELPHIA COUNTY
RECORDS.  TOGETHER WITH AN UNDIVIDED 0.8772 PERCENTAGE INTEREST IN
THE COMMON ELEMENTS THERETO.

**Civil Administration**

This Document Prepared By:
AMERICAN REVERSE MORTGAGE A. MALONIS

605 SW FIRST AVENUE
OCALA, FLORIDA 34474

51596112
Page: 1 of 12
12/20/2006 11:11AM

Recording Requested by &
When Recorded Return To:
US Recordings, Inc.
2925 Country Drive
St. Paul, MN 55117
25340914U0-01

This Document Recorded
12/20/2006
11:11AM
Doc Code: M          Commissioner of Records, City of Philadelphia

Doc Id: 51596112
Receipt #: 560109
Rec Fee: 126.50

Parcel No:

---

[Space Above This Line For Recording Data]

Commonwealth of Pennsylvania

FHA Case No. 441-7866087-958/255
4403138

# ADJUSTABLE RATE OPEN-END
# HOME EQUITY CONVERSION MORTGAGE

### THIS MORTGAGE ("SECURITY INSTRUMENT") SECURES FUTURE ADVANCES

THIS MORTGAGE ("Security Instrument") is given on **DECEMBER 05, 2006**. The mortgagor is
**THE MARVIN L MARKS AND MARLENE MARKS LIVING TRUST**
By Marvin L. Marks and Marlene Marks as Trustees and
Individuals.

whose address is **148 BENJAMIN COURT,
PHILADELPHIA, PENNSYLVANIA 19114**                                                           ("Borrower").
This Security Instrument is given to
**AMERICAN REVERSE MORTGAGE**                                                    , which is

organized and existing under the laws of **THE STATE OF FLORIDA**                    , and whose address is
**605 SW FIRST AVENUE, OCALA, FLORIDA 34474**          ("Lender"). Borrower has agreed to repay to Lender
amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity
Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement
to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"). This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest at a rate subject
to adjustment, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of
**THREE HUNDRED TWENTY SEVEN THOUSAND AND 00/100** - - - - - - - - - - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
(U.S. $    327,000.00        ); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to
protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and
(c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.
For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property
located in  **PHILADELPHIA**          County, Pennsylvania:

Page 1

32XC : 02/02

Case ID: 251202237
Control No.: 26032167

**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF**

which has the address of   **148 BENJAMIN COURT**                          ,
                                                        [Street]

**PHILADELPHIA**              , **PENNSYLVANIA**        **19114**      ("Property Address");
        [City]                          [State]              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

**2. Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

**3. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender and the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and to Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be

00XA : 02/02                          Page 2

Case ID: 251202237
Control No.: 26032167

**29. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

[X] Condominium Rider    [ ] Shared Appreciation Rider    [ ] Planned Unit Development Rider

[ ] Other (Specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ -Borrower
**MARVIN L. MARKS**

_____
**MARVIN L. MARKS, AS TRUSTEE ***

\*Of The Marvin L.
Marks and Marlene
Marks Living Trust.

_____ -Borrower
**MARLENE MARKS**

_____
**MARLENE MARKS, AS TRUSTEE ***

[Space Below This Line For Acknowledgment]

COMMONWEALTH OF Penna ,    COUNTY SS: Phila

On this, the 5 day of December 2006 before me DEBRA J. POHL , the undersigned officer, personally appeared Marvin L. Marks and Marlene Marks as Trustees of The Marvin L. Marks aNd Marlene Marks Living Trust and as Individuals.

known to me (or satisfactorily proven) to be the person whose name subscribed to the within instrument, and acknowledged that they executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
DEBRA J. POHL, Notary Public
City of Philadelphia, Phila. County
My Commission Expires December 23, 2008

Debra J Pohl , notary public

notary public
Title of Officer

Certificate of Residence
I hereby certify that the correct address of the mortgagee is
**AMERICAN REVERSE MORTGAGE**
**605 SW FIRST AVENUE**
**OCALA, FLORIDA 34474**

By: _____
Name: Heidi Coyenhearer
Title: Agent of Title Co.

35XC : 05/97                    Page 8

Case ID: 251202237
Control No.: 26032167

Lender: **AMERICAN REVERSE MORTGAGE**

Borrower: **MARVIN L. MARKS AND MARLENE MARKS**

Property Address: **148 BENJAMIN COURT**
**PHILADELPHIA, PENNSYLVANIA 19114**

Loan Number: **4403138**

# PENNSYLVANIA
## CERTIFICATE OF RESIDENCE

I, *Heidi Copenheaver*                                          , on behalf of
**AMERICAN REVERSE MORTGAGE**

(Mortgagee) certify, pursuant to Pennsylvania Statute Section 625 that the following address
**605 SW FIRST AVENUE**
**OCALA, FLORIDA 34474**
is the precise address of Mortgagee.

Date: **DECEMBER 05, 2006**

**AMERICAN REVERSE MORTGAGE**

By: *Heidi Copenheaver*

67SP : 01/0a

Case ID: 251202237
Control No.: 26032167

# CONDOMINIUM RIDER
## (Home Equity Conversion Mortgage)

441-7866087-958/255
4403138

THIS CONDOMINIUM RIDER is made this **05TH** day of **DECEMBER, 2006** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to **AMERICAN REVERSE MORTGAGE**

("Lender") of the same date and covering the Property described in the Security Instrument and located at:

**148 BENJAMIN COURT, PHILADELPHIA, PENNSYLVANIA 19114**
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:
**FOUNTAIN POINTE**
[Name of Condominium Project]

("Condominium Project"). If the owners association or other entity which acts for the Condominium Project ("Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring all property subject to the condominium documents, including all improvements now existing or hereafter erected on the Property, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender or the Secretary require, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the payment of the premium for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 3 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the condominium unit or to the common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the Condominium Project.

20XA : 11/96

Page 1 of 2

Case ID: 251202237
Control No.: 26032167

C. If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_____ (Seal)
MARVIN L. MARKS                              -Borrower

_____
MARVIN L MARKS, AS TRUSTEE

_____ (Seal)
MARLENE MARKS                                -Borrower

_____
MARLENE MARKS, AS TRUSTEE

21XA : 11/96                    Page 2 of 2

Case ID: 251202237
Control No.: 26032167

## EXHIBIT A

AS G-148, OF THE FOUNTAIN POINTE OF PHILADELPHIA CONDOMINIUM
ACCORDING TO THE DECLARATION OF CONDOMINIUM FILED IN BOOK FHS 1631
PAGE 481, AND ANY AMENDMENTS THERETO, IN THE PHILADELPHIA COUNTY
RECORDS.  TOGETHER WITH AN UNDIVIDED 0.8772 PERCENTAGE INTEREST IN
THE COMMON ELEMENTS THERETO.
TAX PARCEL ID: 129N19-319
ADDRESS: 148 BENJAMIN COURT
         PHILADELPHIA, PA  19114



U35449140-01AI12
MORTGAGE
LOAN# 4403138
US Recordings

Case ID: 251202237
Control No.: 26032167

**Civil Administration**
A. MALONIS

Prepared By:
WHEN RECORDED MAIL TO:
AMERICAN REVERSE MORTGAGE

605 SW FIRST AVENUE
OCALA, FLORIDA 34474    25-409TUO-
27-P105S4

Order No.
Escrow No.
Loan No.    4403138

Recording Requested by &
When Recorded Return To:
US Recordings, Inc.
PO Box 19989
Louisville, KY 40259

**51662125**
Page: 1 of 3
04/02/2007 10:41AM

This Document Recorded
04/02/2007
10:41AM
Doc Code: A    Commissioner of Records, City of Philadelphia

Doc Id: 51662125
Receipt #: 587352
Rec Fee: 124.50

————— SPACE ABOVE THIS LINE FOR RECORDER'S USE —————

## Corporation Assignment of Mortgage

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to

**SEATTLE MORTGAGE COMPANY**    1120 NE 33rd Pl, Bellevue, WA 98004

all beneficial interest under that certain Mortgage dated **DECEMBER 05, 2006**

executed by

THE MARVIN L MARKS AND MARLENE MARKS LIVING TRUST

to AMERICAN REVERSE MORTGAGE

and recorded as Instrument No. **51596112**    on **12/20/2006**    in book    , Mortgagor
. of Official Records in the County Recorder's office of **PHILADELPHIA**    , Mortgagee
                                                                                                    , page
**PENNSYLVANIA**    , describing land therein as:    County,
**SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF**

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Mortgage.

STATE OF ~~PENNSYLVANIA~~ FLORIDA    SS.
COUNTY OF ~~PHILADELPHIA~~ MARION

On **DECEMBER 05, 2006**    before me,
CHERYL KLINDERA

personally appeared

W.L. PULSIPHER, President of American Reverse Mortgage

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: _[signature]_

_(This area for official notarial seal)_

**AMERICAN REVERSE MORTGAGE**

_[signature]_

W.L. PULSIPHER
PRESIDENT

UF00 : 06/04

Case ID: 251202237
Control No.: 26032167

## EXHIBIT A

AS G-148, OF THE FOUNTAIN POINTE OF PHILADELPHIA CONDOMINIUM
ACCORDING TO THE DECLARATION OF CONDOMINIUM FILED IN BOOK FHS 1631
PAGE 481, AND ANY AMENDMENTS THERETO, IN THE PHILADELPHIA COUNTY
RECORDS.  TOGETHER WITH AN UNDIVIDED 0.8772 PERCENTAGE INTEREST IN
THE COMMON ELEMENTS THERETO.
TAX PARCEL ID: 129N19-319
ADDRESS: 148 BENJAMIN COURT
         PHILADELPHIA, PA  19114

U37790554-01A I02
ASSIGNMENT OF MD
LOAN# 4403138
US Recordings

Case ID: 251202237
Control No.: 26032167

X 0509 267

LOAN NUMBER: 0006264733
ST-CO CODE: 37-101

EXHIBIT "A"

ALL THAT CERTAIN UNIT IN THE CONDOMINIUM PROPERLY KNOWN, AND
IDENTIFIED IN THE DECLARATION OF CONDOMINIUM AND CONDOMINIUM
PLATS AND PLANS REFERRED TO AS FOUNTAIN POINTE OF PHILADELPHIA
(FORMERLY KNOWN AS CENTURY VILLAGE), A CONDOMINIUM LOCATED IN
THE 57TH WARD OF THE CITY OF PHILADELPHIA, COMMONWEALTH OF
PENNSYLVANIA, WHICH HAS HERETOFORE BEEN SUBMITTED TO THE
PROVISIONS OF THE PENNSYLVANIA UNIFORM CONDOMINIUM ACT, THE ACT
OF JULY 2, 1980, TITLE 68 OF PA., C.S.A. SECTION 3101 ET SEQ.
BY THE RECORDING IN THE PHILADELPHIA DEPARTMENT OF RECORDS OF A
DECLARATION OF CONDOMINUM DATED 5/18/1990 AND RECORDED 6/1/1990
IN DEED BOOK FHS 1631, PAGE 481 AND FIRST AMEMDMENT THERETO DATED
8/23/1990 AND RECORDED 8/29/1990 IN DEED BOOK FHS 1693, PAGE
365 AND SECOND AMENDMENT THERETO DATED 11/12/1990 AND RECORDED
11/15/1990 IN DEED BOOK FHS 1749 PAGE 155 AND THIRD AMENDMENT
THERETO DATED 7/15/1991 AND RECORDED 7/24/1991 IN DEED BOOK IN
DEED BOOK FHS 1910, PAGE 369 AND FOURTH AMENDMENT THERETO DATED
11/20/92 RECORDED 1/5/93 IN DEED BOOK VCS 220 PAGE 106.

BEING DESIGNATED AS UNIT NO. G-148, IN SUCH AMENDMENT TO
DECLARATION OF CONDOMINIUM AND AMENDMENT DECLARATION PLATS AND
PLANS.

BEING KNOWN AS 148 BENJAMIN COURT

Case ID: 251202237
Control No.: 26032167

## Civil Administration
A. MALONIS



**52315985**
Page: 1 of 2
02/15/2011 03:18PM

This Document Recorded          Doc Id: 52315985
02/15/2011                      Receipt #: 98093
03:18PM                         Rec Fee: 168.00
Doc Code: A    Commissioner of Records, City of Philadelphia

_____ THE SPACE ABOVE THIS LINE FOR RECORDER'S _____

LOAN NO. 4403138    **ASSIGNMENT OF MORTGAGE**
TAX MAP NUMBER:
MERS MIN NUMBER 100139220044031389

FOR VALUE RECEIVED, the undersigned hereby grants, assigns and transfers to **Mortgage Electronic Registration Systems, Inc., 1595 Spring Hill Road, Suite 310, Vienna, VA 22182,** all beneficial interest under that certain deed of trust dated **12-5-06** executed by **MARVIN MARLENE MARKS**, recorded on **12-20-06** and recorded in book/volume No., page(s), auditors File No. **51596112**, Records of **PHILADELPHIA** County, **PA**. The real property located at the address **148 BENJAMIN COURT, PHILADELPHIA, PA 19114** in the county of **PHILADELPHIA** state of **PA**, describing land therein as: SEE LEGAL DESCRIPTION ATTACHED

TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.
Date:  **FEBRUARY 8, 2011**          **SEATTLE MORTGAGE COMPANY**

**MARGARET BAME/ VICE PRESIDENT**

STATE OF WASHINGTON, COUNTY OF KING
ON **FEBRUARY 8, 2011** the undersigned, a Notary Public in and for the said County and State, personally appeared **MARGARET BAME** to me personally known, who being duly sworn by me, did say that he/she is the **VICE PRESIDENT** of the corporation named herein which executed the within instrument, that the seal affixes to said instrument in the corporate seal of said corporation; that said instrument was signed and sealed on behalf of the said corporation pursuant to its by-laws or a resolution of its Board of Directors and that he/she acknowledges said instrument to be the free act and deed of said corporation.

MORTGAGE ELECTRONIC REGISTRATION          NOTARY PUBLIC FOR THE STATE OF: WASHINGTON
SYSTEM, INC. RESIDES IN 1595 SPRING HILL          RESIDING IN: CITY OF RENTON, KING COUNTY
ROAD, SUITE 310, VIENNA VA 22182          MY COMMISSION EXPIRES: 11-10-14

Lynne Gladney, Seattle Mortgage Company

LYNNE GLADNEY
COMMISSION EXPIRES
NOTARY
PUBLIC
11-10-14
STATE OF WASHINGTON

When Recorded Mail to:
SEATTLE MORTGAGE COMPANY
190 QUEEN ANNE AVENUE NORTH, SUITE 100
SEATTLE, WA 98109
PREPARED BY LYNNE GLADNEY-ADDRESS IS SAME AS ABOVE FOR SEATTLE MORTGAGE

Case ID: 251202237
Control No.: 26032167

## EXHIBIT A

AS G-148, OF THE FOUNTAIN POINTE OF PHILADELPHIA CONDOMINIUM
ACCORDING TO THE DECLARATION OF CONDOMINIUM FILED IN BOOK FHS 1631
PAGE 481, AND ANY AMENDMENTS THERETO, IN THE PHILADELPHIA COUNTY
RECORDS.  TOGETHER WITH AN UNDIVIDED 0.8772 PERCENTAGE INTEREST IN
THE COMMON ELEMENTS THERETO.
TAX PARCEL ID: 129N19-319
ADDRESS: 148 BENJAMIN COURT
         PHILADELPHIA, PA  19114



Recorded in Philadelphia PA    Doc Id: 52565021
11/27/2012 11:31AM    Receipt#: 1179691
Page 1 of 2    Rec Fee: $198.00
A. MALONEY Commissioner of Records    Doc Code: A
State RTT:    Local RTT:

09 MAR 2026 04:10 PM
Civil Administration

Recording Requested By:
**Bank of America**
Prepared By:
**Diana De Avila**
**800-444-4302**
**1800 Tapo Canyon Road**
**Simi Valley, CA 93063**
When recorded mail to:
**CoreLogic**
**Mail Stop: ASGN**
**1 CoreLogic Drive**
**Westlake, TX 76262-9823**

DocID#    **12985086920430**
Tax ID:    **88-8570496**
Property Address:
**148 Benjamin Ct**
**Philadelphia, PA 19114-3229**
Property Location:
**8TH Ward City of PHILADELPHIA**
PAOv5M-AM 21057698  E  11/21/2012

MIN #:  100605120044031386    MERS Phone #:  888-679-6377

## ASSIGNMENT OF MORTGAGE

For Value Received, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS")** its successors and assigns (herein "Assignor") whose address is **1901 E Voorhees Street, Suite C, Danville, IL 61834** hereby assign and transfer to **CHAMPION MORTGAGE COMPANY** its successors and assigns whose address is **350 HIGHLAND DRIVE, LEWISVILLE, TEXAS 75067** all its right, title, and interest to a certain Mortgage described below.

Original Lender:    **AMERICAN REVERSE MORTGAGE**
Mortgagor(s):    **THE MARVIN L MARKS AND MARLENE MARKS LIVING TRUST BY MARVIN L. MARKS AND MARLENE MARKS AS TRUSTEES AND INDIVIDUALS**

Date of Mortgage:    **12/5/2006**    Original Loan Amount:    **$327,000.00**

Recorded in **Philadelphia County, PA** on: **12/20/2006**, book N/A, page N/A and instrument number **51596112**

This Mortgage has not been assigned unless otherwise stated below:
Assigned From:  AMERICAN REVERSE MORTGAGE
Assigned To:  SEATTLE MORTGAGE COMPANY
Recording Date: 4/2/2007 Book/Liber:  Page:  Instrument Number: 51662125

Assigned From:  SEATTLE MORTGAGE COMPANY
Assigned To:  MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS")
Recording Date: 2/15/2011 Book/Liber:  Page:  Instrument Number: 52315985

Property Legal Description:
**AS G-148, OF THE FOUNTAIN POINTE OF PHILADELPHIA CONDOMINIUM ACCORDING TO THE DECLARATION OF CONDOMINIUM FILED IN BOOK FHS 1631 PAGE 481, AND ANY AMENDMENTS THERETO, IN THE PHILADELPHIA COUNTY RECORDS. TOGETHER WITH AN UNDIVIDED 0.8772 PERCENTAGE INTEREST IN THE COMMON ELEMENTS THERETO. TAX PARCEL ID: 129N19-319 ADDRESS: 148 BENJAMIN COURT PHILADELPHIA, PA 19114**

This space for Recorder's use

Control No.: 26032167

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on

**NOV 2 6 2012**

                                       **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS")**

                                     By: _____

                                             Mercedes Judilla
                                             ~~Assistant Secretary~~

State of **California**
County of **Ventura**

On **NOV 2 6 2012** before me,     BARBARA JOYCE LOMBRANO    , Notary Public, personally appeared
_____ Mercedes Judilla _____
, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Notary Public: _____BARBARA JOYCE LOMBRANO_____   **(Seal)**
My Commission Expires: FEBRUARY 7, 2015

I hereby certify that the address of the within named assignee is:
**350 HIGHLAND DRIVE, LEWISVILLE, TEXAS 75067**

_____
**Signature**

BARBARA JOYCE LOMBRANO
Commission # 1924780
Notary Public - California
Los Angeles County
My Comm. Expires Feb 7, 2015

DocID#    **1298508692 0430**

Case 2:26-cv-01572   Document 1 Filed 09/11/26   Page 311 of 321

09 MAR 2019 03:40 AM

Civil Administration

A. MALANGA

Recorded in Philadelphia/PA   Doc Id: 53492621
03272019-28655   Page 1 of 4   Rec Fee: $224.75
Records Department   Doc Code: A

Prepared By:
T. Lewis, Mr. Cooper, 4000 Horizon
Way, Irving, TX 75063 (972)
894-9721

When Recorded Return To:
Nationstar Mortgage LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

## ASSIGNMENT OF MORTGAGE

**CORRECTIVE ASSIGNMENT OF MORTGAGE: TO CORRECT BORROWER NAME. ORIGINAL ASSIGNMENT OF MORTGAGE RECORDED ON 02/15/2011 IN INSTRUMENT#: 52315985.**

**FOR GOOD AND VALUABLE CONSIDERATION**, the sufficiency of which is hereby acknowledged, the undersigned, **SEATTLE MORTGAGE COMPANY, WHOSE ADDRESS IS 600 UNIVERSITY ST, STE 1850, SEATTLE, WA 98101, (ASSIGNOR)**, by these presents does convey, grant, assign, transfer and set over the described Mortgage therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (ASSIGNEE) (MERS Address: 1901 E Voorhees St., Suite C, Danville, IL 61834).**

Said Mortgage is dated 12/05/2006, in the amount of $327,000.00, made by **THE MARVIN L. MARKS AND MARLENE MARKS LIVING TRUST BY MARVIN L. MARKS AND MARLENE MARKS AS TRUSTEES AND INDIVIDUALS** to **AMERICAN REVERSE MORTGAGE**, recorded on 12/20/2006, in the Office of the Recorder of Deeds of **PHILADELPHIA** County, **Pennsylvania**, in **Doc ID 51596112** .
 SEE EXHIBIT A ATTACHED

Property is commonly known as: 148 BENJAMIN COURT, PHILADELPHIA, PA 19114.

See Exhibit attached for Assignments, Modifications etc.

Dated on ___9 / 12 / 19___ (MM/DD/YYYY)

**SEATTLE MORTGAGE COMPANY**

By: _Kathy Hruza_
 Kathy Hruza
 **VP & Manager Reverse Mortgage Servicing Oversight**

PAGE 1

NSBTA 405908022  CHAMP CURATIVE (R)  N1 MIN 100139220044031389 MERS PHONE 1-888-679-6377
MERS Mailing Addresses: 1901 E Voorhees St., Suite C, Danville, IL 61834; P.O. Box 2026, Flint, MI
48501-2026 T111903-11:57:34 [C-4] FRMPA1

*D0035994556*

Control No.: 26032167

STATE OF WASHINGTON    COUNTY OF KING

I certify that I know or have satisfactory evidence that Kathy Hruza is the person who appeared before me, and said person acknowledged that he/she signed this instrument, on 3 /13 /2005 (MM/DD/YYYY) and stated that he/she was authorized to execute the instrument and acknowledged it as the VP & Manager Reverse Mortgage Servicing Oversight of SEATTLE MORTGAGE COMPANY to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

DEBRA OGUNLEYE
Notary Public - State of WASHINGTON
Commission expires: 9/10/22

Assignment of Mortgage from:
**SEATTLE MORTGAGE COMPANY, WHOSE ADDRESS IS 600 UNIVERSITY ST, STE 1850, SEATTLE, WA 98101, (ASSIGNOR),**
to:
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (ASSIGNEE) (MERS Address: 1901 E Voorhees St., Suite C, Danville, IL 61834)**
Mortgagor: **THE MARVIN L. MARKS AND MARLENE MARKS LIVING TRUST BY MARVIN L. MARKS AND MARLENE MARKS AS TRUSTEES AND INDIVIDUALS**

All that certain lot or piece of ground situated in
Mortgage Premise: 148 BENJAMIN COURT
PHILADELPHIA, PA 19114
(Borough or Township, if stated), Commonwealth of Pennsylvania.
Being more particularly described in said Mortgage.

I, **Kathy Hruza** , hereby certify that the below information and address for the assignee are correct:
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (ASSIGNEE) (MERS Address: 1901 E Voorhees St., Suite C, Danville, IL 61834)**

By

**Kathy Hruza    VP & Manager Reverse Mortgage Servicing Oversight**

PAGE 2
*405908022*  NSBTA 405908022  CHAMP CURATIVE (R)  N1 MIN 100139220044031389 MERS PHONE 1-888-679-6377 MERS Mailing Addresses: 1901 E Voorhees St., Suite C, Danville, IL 61834; P.O. Box 2026, Flint, MI 48501-2026  T111903-11:57:34 [C-4]  FRMPA1

*D0035994556*



'EXHIBIT A'

ALL THAT CERTAIN UNIT IN THE CONDOMINIUM PROPERLY KNOWN, AND IDENTIFIED IN THE DECLARATION OF CONDOMINIUM AND CONDOMINIUM PLATS AND PLANS REFERRED TO AS FOUNTAIN POINTE AND PHILADELPHIA (FORMERLY KNOWN AS CENTURY VILLAGE), A CONDOMINIUM LOCATED IN THE 57TH WARD OF THE CITY OF PHILADELPHIA, COMMONWEALTH OF PENNSYLVANIA, WHICH HAS HERETOFORE BEEN SUBMITTED TO THE PROVISIONS OF THE PENNSYLVANIA UNIFORM CONDOMINIUM ACT, THE ACT OF JULY 2, 1980, TITLE 68 OF PA., C.S.A. SECTION 3101 ET SEQ. BY THE RECORDING IN THE PHILADELPHIA DEPARTMENT OF RECORDS OF A DECLARATION OF CONDOMINIUM DATED 5/18/1990 AND RECORDED 6/1/1990 IN DEED BOOK FHS 1631, PAGE 481 AND FIRST AMENDMENT THERETO DATED 8/23/1990 AND RECORDED 8/29/1990 IN DEED BOOK FHS 1693, PAGE 365 AND SECOND AMENDMENT THERETO DATED 11/12/1990 AND RECORDED 11/15/1990 IN DEED BOOK FHS 1749 PAGE 155 AND THIRD AMENDMENT THERETO DATED 7/15/1991 AND RECORDED 7/24/1991 IN DEED BOOK IN DEED BOOK FHS 1910, PAGE 369 AND FOURTH AMENDMENT THERETO DATED 11/20/92 RECORDED 1/5/93 IN DEED BOOK VCS 220 PAGE 106.



*405908022*



*D0035994556*

Assignment: AMERICAN REVERSE MORTGAGE TO SEATTLE MORTGAGE COMPANY DATED
12-05-2006. REC: 04-02-2007 INSTR# 51662125 * Assignment: SEATTLE MORTGAGE COMPANY TO
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. DATED 02-08-2011. REC: 02-15-2011
INSTR# 52315985 * Assignment: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (''MERS'')
TO CHAMPION MORTGAGE COMPANY DATED 11-26-2012. REC: 11-27-2012 INSTR# 52565021



*405908022*



*D0035994556*

Control No.: 26032167

**SCRIVENER'S AFFIDAVIT**
**Prepared By/Return to**
**NATIONSTAR MORTGAGE LLC DBA CHAMPION MORTGAGE COMPANY**
**8950 CYPRESS WATERS BLVD**
**COPPELL, TX 75019**
**LN #850869**
**THE MARVIN L MARKS and MARLENE MARKS LIVING TRUST By MARVIN L. MARKS and MARLENE MARKS as TRUSTEE and INDIVIDUALS**

Document Number to Correct:
**51662125**

I, _____ Tarika Upshaw _____, the affiant and preparer of this Scrivener's Affidavit, whose relationship to the above-referenced document number is ( ex. Servicer, Drafting Attorney, Closing Title Company, Grantor/Grantee, etc.): SERVICER: NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY, do hereby swear and affirm that Document Number: 51662125, included the following mistake: INCORRECT VESTING INFORMATION FOR THE BORROWER'S which is hereby corrected as follows: THE MARVIN L MARKS and MARLENE MARKS LIVING TRUST By MARVIN L. MARKS and MARLENE MARKS as TRUSTEE and INDIVIDUALS.

Finally, I _____ Tarika Upshaw _____, the affiant, do hereby swear to the above correction, and believe it to be the true and accurate intention(s) of the parties who drafted and recorded the referenced document.

_____ Tarika Upshaw        APR 19 2019
**Affiant's Signature Above**                        **Affidavit Executed Date**

**NOTARY SECTION:**
State of _Texas_  **Dallas** )

County of _____ **Dallas** )

I, _____ **Daniela Horvath** _____, a Notary Public for the above-referenced jurisdiction do hereby swear and affirm that the above-referenced affiant _____ Tarika Upshaw _____,
_____ Assistant Secretary _____ of NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY did appear before me on the below indicated date and affix her/his signature or marking to the foregoing Scrivener's Affidavit after providing me with a government issued identification, and appearing to be of sound mind and free from any undue coercion or influence.

AFFIX NOTARY STAMP BELOW

Notary Public Signature Below              Notarized Date
                                                            APR 19 2019
_____
          Daniela Horvath

DANIELA HORVATH
Notary Public, State of Texas
Comm. Expires 01-27-2020
Notary ID 128862890

Control No.: 26032167

Recorded in Philadelphia PA    Doc Id 53539326
09 MAR 2026 19:08:93 AM
07/29/2019 9:08:93 AM    Page 1 of 4    Rec Fee: $224.75
Civil Administration9-69751
A. MALDOS  Records Department    Doc Code: A

**Prepared By:**
**Dave LaRose/NTC, 2100 Alt. 19**
**North, Palm Harbor, FL 34683**
**(800)346-9152**

When Recorded Return To:
Nationstar Mortgage LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683



# ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY, WHOSE ADDRESS IS C/O NATIONSTAR MORTGAGE LLC, 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Mortgage therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **SECRETARY OF HOUSING AND URBAN DEVELOPMENT, WHOSE ADDRESS IS 451 7TH STREET S.W., WASHINGTON, DC 20410, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage dated 12/05/2006, in the amount of $327,000.00 made by **MARVIN L. MARKS AND MARLENE MARKS AS TRUSTEES AND INDIVIDUALS OF THE MARVIN L. MARKS AND MARLENE MARKS LIVING TRUST** to **AMERICAN REVERSE MORTGAGE** recorded on 12/20/2006, in the Office of the Recorder of Deeds of **PHILADELPHIA** County, in the State of **Pennsylvania**, in **Doc ID 51596112**.

SEE ATTACHED EXHIBIT A
Property is more commonly known as: 148 BENJAMIN COURT, PHILADELPHIA, PA 19114.
See Exhibit attached for Assignments, Modifications etc.

**Dated this 17th day of July in the year 2019**
**NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY**

By: _____
**JACKELYNN MEDERO**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

NSBTA 407437166 CHAMP  N1  DOCR T171907-12:26:21 [C-4] EFRMPA1

*D0038957077*

Control No.: 26032167



STATE OF FLORIDA    COUNTY OF PINELLAS

The foregoing instrument was acknowledged before me on this 17th day of July in the year 2019, by Jackelynn Medero as VICE PRESIDENT of NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.



**MICHELLE BROWN**
**COMM EXPIRES: 10/13/2020**

MICHELLE BROWN
Notary Public - State of Florida
My Commission #GG 38514
Expires October 13, 2020

Assignment of Mortgage from:
**NATIONSTAR MORTGAGE LLC D/B/A CHAMPION MORTGAGE COMPANY, WHOSE ADDRESS IS C/O NATIONSTAR MORTGAGE LLC, 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019, (ASSIGNOR),**
to:
**SECRETARY OF HOUSING AND URBAN DEVELOPMENT, WHOSE ADDRESS IS 451 7TH STREET S.W., WASHINGTON, DC 20410, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

Mortgagor: **MARVIN L. MARKS AND MARLENE MARKS AS TRUSTEES AND INDIVIDUALS OF THE MARVIN L. MARKS AND MARLENE MARKS LIVING TRUST**

All that certain lot or piece of ground situated in
Mortgage Premise: 148 BENJAMIN COURT
             PHILADELPHIA, PA 19114
             PHILADELPHIA
(Borough or Township, if stated), Commonwealth of Pennsylvania.
Being more particularly described in said Mortgage.

### Certificate of Residence

I, **Jackelynn Medero**, do certify that the precise address of the within named Assignee is:
**SECRETARY OF HOUSING AND URBAN DEVELOPMENT, WHOSE ADDRESS IS 451 7TH STREET S.W., WASHINGTON, DC 20410, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**



**JACKELYNN MEDERO**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

*407437166* NSBTA 407437166 CHAMP  N1  DOCR T171907-12:26:21 [C-4] EFRMPA1



*D0038957077*



Assignment: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (''MERS'') TO CHAMPION MORTGAGE COMPANY DATED 11-26-2012. REC: 11-27-2012 INSTR# 52565021



*407437166*



*D0038957077*

Control No.: 26032167

# Exhibit A

AS G-148, OF THE FOUNTAIN POINTE OF PHILADELPHIA CONDOMINIUM
ACCORDING TO THE DECLARATION OF CONDOMINIUM FILED IN BOOK FHS 1631
PAGE 481, AND ANY AMENDMENTS THERETO, IN THE PHILADELPHIA COUNTY
RECORDS.  TOGETHER WITH AN UNDIVIDED 0.8772 PERCENTAGE INTEREST IN
THE COMMON ELEMENTS THERETO.

# Order #25

**FILED**

09 MAR 2026 04:10 pm

Civil Administration

A. MALONIS

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
### TRIAL DIVISION-CIVIL

FOUNTAIN POINTE
CONDOMINIUM ASSOCIATION,

Plaintiff,

v.

MARVIN MARKS, MARVIN L.
MARKS and MARLENE MARKS
LIVING TRUST, and AMERICAN
REVERSE MORTGAGE,

Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

DECEMBER TERM 2025

CASE ID: 251202237



ORDER: Fountain Pointe Condominium Association Vs Marks E [TYB]

25120223700025

## ORDER

AND NOW, this ___10th___ day of ___March___ 2026, upon

consideration of the PETITION TO INTERVENE filed by the United States of

America, on behalf of its agency the U.S. Department of Housing and Urban

Development, and any response thereto, it is hereby **ORDERED** and **DECREED**

that said PETITION TO INTERVENE is GRANTED and the Intervenor has now

been added to the case.

IT IS FURTHER ORDERED that the Clerk of Court shall file the United

States' Notice of Filing of Notice of Removal, attached as Exhibit 1 to the

government's intervention petition, on the docket of this case.

**BY THE COURT:**

Christopher R. Hall

FILED

2026 MAR 10 PM 12:58

CIVIL ADMINISTRATION

Case ID: 251202237
Control No.: 26032167